UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA, individually and as the Personal Representative of the Estate of S.R.S. III, | Case No.: 6:24-cv-01903-ACC-EJK |
| Plaintiff, | |
| v. | **DEFENDANT DANIEL DE FREITAS'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FRIETAS ADIWARSANA; GOOGLE LLC; ALPHABET INC., | |
| Defendants. | |

## I.    INTRODUCTION

The First Amended Complaint ("FAC") suffers from multiple defects warranting dismissal, detailed in Character AI's ("C.AI's") memorandum of law. With regard to Daniel De Freitas[1] the case for dismissal is, if anything, even stronger. This Court lacks personal jurisdiction over Mr. De Freitas, and Plaintiff fails to state a claim upon which relief can be granted. *First*, Mr. De Freitas has no connections to this jurisdiction. He has been to Florida a grand total of one time, for a weeklong visit to Disney World this past December. He has directed no conduct toward this State, nor does the FAC adequately allege that he did anything—whether directed to Florida or not—beyond his work for C. AI that could make him a proper defendant in this tort

---

[1]    For purposes of this Motion to Dismiss, and for all future filings related to Defendant, the correct spelling of Defendant's name is Daniel De Freitas.

action.  *Second*, Plaintiff fails to state any claim upon which relief can be granted—including by filing an impermissible shotgun pleading, failing to sustain its claims with particularized facts, and by seeking to impose personal liability against Mr. De Freitas where there can be none.  Perhaps Mr. De Freitas was included in this lawsuit in a misguided "kitchen sink" effort to cover all bases, or perhaps as an attempt to apply pressure to the other defendants, but what is certain is that the claims against him have no basis and should be dismissed.[2]

## II.    BACKGROUND

Mr. De Freitas has long been interested in the promise and possibilities of artificial intelligence ("AI").  At age nine, Mr. De Freitas developed his first chatbot. From December 2016 to November 2021, Mr. De Freitas worked at Google, where he researched and developed machine learning algorithms ("MLAs").   (Ex. A, Declaration of Daniel De Freitas ("De Freitas Decl.") ¶ 12.)

In November 2021, Mr. De Freitas and Mr. Shazeer left Google and founded C.AI.  (*Id.* ¶ 13.)  From C.AI's founding until Mr. De Freitas returned to Google in August 2024, all of Mr. De Freitas's work on C.AI was carried out within the scope of

---

[2] Mr. De Freitas joins C.AI's motion to dismiss, which extensively addresses the FAC's deficiencies. Plaintiff's claims are barred by the First Amendment and an online service is not a "product" for purposes of product-liability claims.  Further, Plaintiff cannot show that any defendant owed Sewell a duty, nor can she because suicide is virtually always regarded as an unforeseeable superseding cause. The FAC's remaining claims fail—Plaintiff cannot show that any defendant directed outrageous behavior at Plaintiff or Sewell for purposes of a claim for Intentional Infliction of Emotional Distress; Sewell was compensated for any benefit he conferred on C.AI; and Plaintiff fails to meet Rule 9(b)'s heightened pleading requirement to state with particularity a deceptive-practices claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

his employment. (*Id.* ¶ 14.) Through this period, C.AI was headquartered in California and incorporated in Delaware. (*Id.*)

Mr. De Freitas is currently, and has been for the past eight years, a resident of the state of California. (*Id.* ¶ 3.) He has never lived nor worked in the state of Florida, nor does he conduct any business in the state. (*Id.* ¶¶ 4, 7–11, 17.) Mr. De Freitas has set foot in Florida only once in his life—last year, on a weeklong vacation to Walt Disney World. (*Id.* ¶ 5.)

Plaintiff alleges that her son, Sewell Setzer III ("Sewell"), was harmed due to his interactions with Characters hosted on the platform developed by C.AI—the firm co-founded by Mr. De Freitas.[3] FAC ¶¶ 196–200, 206–207. She brings claims against Mr. De Freitas and four other defendants: Mr. Noam Shazeer, a co-founder of C.AI and former CEO of the company; Google, LLC and Alphabet Inc. (collectively, "Google"); and C.AI itself (all defendants collectively, "Defendants"). *Id.* ¶¶ 1–10. The FAC alleges 12 total claims, nine of which are brought against Mr. De Freitas: (1) Strict Liability (Failure to Warn); (2) Negligence (Defective Design); (3) Negligence (Failure to Warn); (4) Intentional Infliction of Emotional Distress ("IIED"); (5) Wrongful Death; (6) Survivor Action; (7) Unjust Enrichment; (8) a claim under the

---

[3] The FAC quotes the dialogue between Sewell and the C.AI platform out of context, including the conversation in which the FAC suggests C.AI encouraged Sewell to commit suicide. As alleged in the original complaint, C.AI ***discouraged*** Sewell from committing suicide in the same conversation. Orig. Compl. ¶ 172 ("You can't do that! Don't even consider that!"); *see Lewis v. Governor of Ala.*, 944 F.3d 1287, 1298 n.7 (11th Cir. 2019) (en banc) (internal quotation marks omitted) (when a pleading "selectively quotes" a document, "the full text is incorporated . . . by reference and is thus properly considered in deciding a Rule 12 motion").

Florida Deceptive and Unfair Trade Practices Act; and (9) Loss of Consortium. *Id.* ¶¶ 325-427.

### III.  LEGAL STANDARD

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2), the plaintiff bears the "initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  The plaintiff "must do more than allege facts that show a possibility of jurisdiction." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990).  Where, as here, the defendant challenges a court's personal jurisdiction by submitting evidentiary support, the burden shifts to the plaintiff to prove personal jurisdiction through "affidavits, testimony[,] or documents." *Id.*

To avoid dismissal on a Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705, 709–10 (11th Cir. 2010).  However, conclusions in a pleading "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "[C]onclusory allegations, unwarranted factual deductions[,] or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## IV.    ARGUMENT

### A.    Pursuant to Rule 12(b)(2), This Court Lacks Personal Jurisdiction Over Mr. De Freitas

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323 (M.D. Fla. 2011).  To avoid dismissal, a plaintiff must allege sufficient jurisdictional facts to both (1) bring the action within the ambit of the state's long-arm statute and (2) to show that sufficient minimum contacts exist between the forum state and the defendant.  *Doe v. Thompson*, 620 So. 2d 1004, 1005 (Fla. 1993).  These are not coextensive inquiries, as the former is a statutory analysis and the latter is a constitutional one.  *See, e.g.*, *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1252 (11th Cir. 2000) (dismissing an action because the defendant lacked minimum contacts with Florida, even though the conduct was arguably covered by the state's long-arm statute).  The FAC falls short of both requirements because it does not "plead sufficient material facts to establish" personal jurisdiction over De Freitas. *Id.* at 1249.  Accordingly, this Court must dismiss the claims against him.

### 1.    Jurisdiction is Not Authorized by Florida's Long-arm Statute

Florida's long-arm statute enables the state to exercise personal jurisdiction over any person who "personally or through an agent" commits a tortious act or "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture" within the state.  Fla. Stat. §§ 48.193(1)(a)(1)–(2).  "'Personally' means: 'In person;

without the intervention of another.'" *Doe*, 620 So. 2d at 1005–06 (quoting THE AMERICAN HERITAGE DICTIONARY 926 (2d college ed. 1985)).

This State's long-arm statute is "strictly construed," and the plaintiff bears the burden of proving facts sufficient to establish personal jurisdiction over each defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). Any doubts about the applicability of Florida's long-arm statute must be "resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3rd DCA 2007). Plaintiff cannot meet this burden.

Under the corporate-shield doctrine, a plaintiff may not establish personal jurisdiction over individuals solely based on the acts they performed within the scope of their employment. *See Doe*, 620 So. 2d at 1006 ("[I]t is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." (quoting *Estabrook v. Wetmore*, 529 A.2d 956 (N.H. 1987))). Conduct is within the scope of employment if it "occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master." *Trabulsy v. Publix Super Mkt., Inc.*, 138 So. 3d 553, 555 (Fla. 5th DCA 2014). "[O]nly when the employee 'steps aside from his own employment to . . . accomplish some purpose of his own,' is the act not within the scope of employment." *Id.* (quoting *City of Miami v. Simpson*, 172 So.2d 435, 437 (Fla. 1965)) (alterations in original).

Here, the FAC's allegations against Mr. De Freitas describe conduct which falls squarely within Mr. De Freitas's scope of employment. *See, e.g.*, FAC ¶ 39 ("Defendants decided to pursue, launch, and then distribute their product to children[.]"); FAC ¶ 97 ("Defendants Character.AI, Shazeer, De Frietas, and Google designed their product with dark patterns and deployed a powerful LLM to manipulate Sewell—and millions of other young customers—into conflating reality and fiction; falsely represented the safety of the C.AI product; [and] ensured accessibility by minors as a matter of design[.]"); FAC ¶ 150 ("Defendants have designed the prompt interface to mirror the interface of common human-to-human messaging apps."). There is no suggestion that Mr. De Freitas had "some purpose of his own," distinct from that of C.AI, in performing his work for the company. And Mr. De Freitas's sworn declaration, submitted in conjunction with this filing, confirms that he worked on C.AI only in his professional capacity. (De Freitas Decl. ¶ 14.) Because the FAC fails to adequately allege that Mr. De Freitas's conduct was outside the scope of his employment, the corporate shield doctrine precludes application of the state's long-arm statute.[4]

---

[4] Florida recognizes an exception to the corporate shield doctrine for intentional torts. While Plaintiff filed a claim against Mr. De Freitas for IIED, Plaintiff alleges no facts showing that Mr. De Freitas deliberately and "expressly aimed" outrageous conduct at a Florida resident. *See LaFreniere v. Craig-Myers*, 264 So.3d 232, 238 (Fla. 1st DCA 2018); *Rensin v. State*, 18 So.3d 572, 576 (Fla. 1st DCA 2009) (the intentional tort exception to the corporate shield doctrine only applies where "the nonresident corporate officer personally and intentionally engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida"); *see also Harrison v. NC3 Sys., Inc.*, 395 So.3d 657, 664-65 (Fla. 6th DCA 2024) (holding that intentional-tort exception did not apply where defendant's affidavit disclaimed knowledge of the alleged intentional tort and the plaintiff failed to produce contradictory evidence).

### 2. Mr. De Freitas Lacks Minimum Contacts with Florida

Under the Fourteenth Amendment, Mr. De Freitas's lack of "minimum contacts" with Florida is an independent basis to dismiss for lack of jurisdiction. *Future Tech.*, 218 F.3d at 1250. The Eleventh Circuit employs three factors to determine whether a defendant has sufficient contacts with a state to establish jurisdiction: (1) "purposeful availment of the forum state"; (2) whether "the cause of action arises out of the activities of which you purposefully availed yourself, i.e., the contacts must proximately result from actions *by the defendant himself* that create a 'substantial connection' with the forum state"; and (3) "reasonable foreseeability that '[a defendant] should reasonably anticipate being haled into court there.'" *Id.* at 1250-51 (internal citations omitted) (emphasis added). The FAC's attempt to satisfy these factors falls short.

*First*, the FAC impermissibly "lump[s] all of the Defendants together" for purposes of establishing personal jurisdiction over each defendant. *Verizon*, 810 F. Supp. 2d at 1332 ("Verizon's arguments aggregate a number of the defendants together, and in this jurisdictional analysis, the Court must assess the actions of each defendant separately."). A plaintiff "must establish personal jurisdiction *as to each defendant*," *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added). Instead, the FAC imputes C.AI's alleged connections to Florida to all Defendants. *See, e.g.*, FAC ¶ 29 ("Defendants direct marketing and advertising to and in the State of Florida, send emails and other communications to Florida residents[,] . . . and purport to enter into thousands of contracts with Florida residents as well as Florida businesses in

connection with operation and use of C.AI."). Plaintiff's failure to separately plead facts sufficient to show De Freitas's minimum contacts with Florida is an insurmountable hurdle to establishing personal jurisdiction. *See Spigot, Inc. v. Hoggatt*, No. 218CV764FTM29NPM, 2019 WL 4980455, at *2 (M.D. Fla. Oct. 8, 2019) ("Plaintiffs must demonstrate that the exercise of case-specific personal jurisdiction would be proper as to each Defendant. In other words, that the claims arise from actions of the Defendants directly and substantially connected with this state.").

*Second*, the FAC's jurisdiction-related allegations against Mr. De Freitas are insufficiently pled. For example, Paragraph 29 alleges that "Defendants thus purposefully availed themselves of Florida law by transacting business in this State, profiting from their activities in the State of Florida, and Plaintiff's claims set forth herein arise out of and relate to Defendants' activities in the State of Florida." But Plaintiff does not describe any specific actions that Mr. De Freitas took to avail himself of Florida law, nor does she tie any Florida-specific contacts to allegedly tortious conduct. Instead, the FAC's jurisdictional allegations are conclusory and lack the specific factual support necessary to establish personal jurisdiction over Mr. De Freitas. *See Gunder's Auto Ctr. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1224 (M.D. Fla. 2009) ("[N]either a conclusory allegation nor 'a legal conclusion couched as a factual allegation' supports the sufficiency of a complaint.").

Nor could Plaintiff establish such personal jurisdiction—Mr. De Freitas has no meaningful contacts with Florida. He is a resident of the state of California, has never lived in Florida, has never worked in Florida, has never traveled for business to

Florida, has no property in Florida, has never had a bank account or any other financial account in Florida, has never maintained a place of business in Florida, and in his entire lifetime, has visited Florida once, on a personal trip to Walt Disney World. (De Freitas Decl. ¶¶ 4–11.)  The FAC's glaring omission of *any* direct contacts between Mr. De Freitas and Florida is conspicuous.  Absent personal jurisdiction, this Court must dismiss the claims against Mr. De Freitas.  *See, e.g.*, *Koeck*, 907 F.2d at 1114 (dismissing an action for lack of personal jurisdiction where a Swiss company lacked minimum contacts with Florida, even though it opened a $1.8 million letter of credit to a Florida company on behalf of a third party and twice sent agents to the state as part of the transaction).

### B.    Plaintiff Fails to State a Claim Against Mr. De Freitas

#### 1.    The FAC is an Impermissible "Shotgun Pleading"

Rules 8(a)(2) and 10(b) "require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . ." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 (11th Cir. 1985)).  Pleadings that violate this dictate are called "shotgun pleadings," *id.* at 1320, and include those that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," *id.* at 1323.  Courts have "little tolerance" for such pleadings because they fail to give proper defendants notice of the

allegations against them, complicate discovery, and muck up the courts.  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

The FAC's hodgepodge of allegations ***fails to explain what facts support which claims against whom***.  *See, e.g.*, FAC ¶ 330 ("Defendants intentionally chose to not implement any of the . . . reasonable, alternative designs."); *id.* at 335 ("Defendants financed, designed, coded, engineered, manufactured, produced, assembled, and marketed C.AI, and then placed it into the stream of commerce.").  These generalized and overbroad allegations fall far short of tying any purportedly tortious conduct to De Freitas personally and fail to provide adequate notice of the claims against him.

### 2.  Mr. De Freitas Cannot Be Held Personally Liable For C.AI's Allegedly Tortious Conduct

An officer cannot be personally liable "for [the corporation]'s torts merely by reason of [the officer]'s official character."  *Boyd v. Petco Animal Supplies Stores, Inc.*, No. 3:18-CV-639-J-32PDB, 2018 WL 4360621, at *2 (M.D. Fla. Sept. 13, 2018) (alterations in original) (quoting *Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981)).  Rather, a plaintiff must allege that the corporate officer personally participated in tortious conduct.[5]  *Accordino v. Wal-Mart Stores E., L.P.*, No. 3:05CV761J32MCR, 2005 WL 3336503, at *3 (M.D. Fla. Dec. 8, 2005); *see also Boyd*,

---

[5]  To the extent Plaintiff attempts to establish Mr. De Freitas's liability due to his status as a shareholder at the time, the same rule proscribing liability applies.  *Fulton v. Brancato*, 189 So. 3d 967, 969–70 (Fla. 4th DCA 2016) ("The main body of corporate law is to the effect that directors, officers and stockholders are not liable for corporate acts simply by reason of their official relation to the corporation." (quoting *Munder v. Circle One Condo., Inc.*, 596 So.2d 144, 145 (Fla. 4th DCA 1992))).

2018 WL 4360621, at *2 ("Florida recognizes a negligence claim against a corporate officer or agent *only if he personally participated* in the tortious conduct" (emphasis added) (quoting *Accordino*, 2005 WL 3336503, at *4)). For this reason, courts routinely dismiss claims against corporate officers when plaintiffs do not plead sufficient facts showing that the officer actively participated in the allegedly tortious conduct. *See, e.g.*, *Boyd*, 2018 WL 4360621, at *3 (dismissing claims against a PetCo manager because the pleadings were insufficient to show that the manager contributed to the slip-and-fall injury); *Accordino*, 2005 WL 3336503, at *4 (dismissing claims against a Wal-Mart manager because the complaint did not plead sufficient facts showing that the manager personally participated in or had knowledge of the conditions surrounding the accident).

The recent order dismissing Mark Zuckerberg as a defendant in Meta's product-liability litigation is instructive.[6] *See In re Soc. Media Adolescent Addiction/personal Inj. Prods. Liab. Litig.*, No. 4:22-MD-3047-YGR, 2024 WL 4719068, at *2 (N.D. Cal. Nov. 7, 2024) ("*Zuckerberg*"). There, the plaintiffs pleaded that Zuckerberg "himself directed, participated in, knew of, and in fact served as the guiding spirit behind Meta's tortious concealment and omissions." *Id.* at *3. The complaint did not list specific actions that Zuckerberg took to advance the tortious behavior, but the plaintiffs alleged that Zuckerberg (1) made misleading affirmative statements, (2) exercised supervision

---

[6] Florida law resembles that of other states that require a plaintiff to show "corporate-officer participation in the corporation's tort." *In re Soc. Media Adolescent Addiction/personal Inj. Prods. Liab. Litig.*, No. 4:22-MD-3047-YGR, 2024 WL 4719068, at *2 (N.D. Cal. Nov. 7, 2024) (recognizing that many states have a similar rule for corporate-officer liability).

and control over the company (including the disclosures it made), (3) failed to prevent Meta's tortious conduct despite knowing of its harm and having authority to take action (for example, he vetoed proposed safety measures), and (4) was involved in developing and promoting Meta's products to teens. *Id.* at *3–5.

The court found that these allegations were insufficient to state a claim against Zuckerberg because "control alone . . . is insufficient to establish a corporate officer's participation." *Id.* at *4; *see also id.* ("While Zuckerberg's vetoes are consistent with a theory that [he] chose to disbelieve or suppress any recognition of Meta's . . . negative impact on mental health, none of these instances . . . constitute the 'authorization,' 'participation,' or 'sanctioning' of the concealment of information."(emphasis omitted)). The court also highlighted the problematic and unworkable consequences of the plaintiffs' argument—it would hold a founder and corporate officer liable "for failing to disclose any negative internal reports that might come across his desk." *Id.*

The court contrasted its holding in *Zuckerberg* to that of *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 671 (N.D. Cal. 2020) ("*Juul*"). In *Juul*, the allegations against the corporate officers withstood a motion to dismiss because the plaintiffs provided extensive examples of "direct participation." *Id.* ("[The officers] carefully studied the marketing strategies of the cigarette industry and developed the deceptive youth-focused marketing campaign for JUUL; . . . 'personally reviewed images' from the 'Vaporized' campaign and provided 'specific direction on the content of the website'; . . . engineered test results consistent with the deceptive messaging; and . . . had input and control over specific advertising, including

flavor-driven and viral social media advertising, despite knowledge about the health risks and high nicotine concentration designed to addict." (internal citations omitted)).

Here, the hundred-plus-page FAC is virtually devoid of allegations directly related to Mr. De Freitas's conduct. It includes no specific examples showing that Mr. De Freitas directed C.AI's purportedly tortious marketing, design, or customer-facing disclosures. *See, e.g.*, FAC ¶ 79 (generically alleging that "Shazeer and De Freitas knowingly misrepresented to customers and the general public that C.AI was safe for minor users" without specifying any instances where De Freitas made such affirmative misrepresentations). Crucially, the FAC lacks "specific" or "direct" facts showing that Mr. De Freitas acted tortiously. *See Boyd*, 2018 WL 4360621, at *2 (holding that the allegations failed against a PetCo manager because they were neither "direct" nor "specific"). At best, the FAC alleges that Mr. De Freitas helped develop C.AI despite knowing its risks. However, Plaintiff does not point to any problematic design decisions made by ***Mr. De Freitas specifically***—only those adopted by C.AI or Defendants more broadly. *See, e.g.*, FAC ¶ 97 ("Defendants . . . designed their product with dark patterns."); *id.* ¶ 119 ("Defendants recommend and provide voice options."); *id.* ¶ 129 ("Character AI marketed and represented that their product, C.AI, was safe for children under the age of 13.").

### 3. The FAC Fails to Plead the Individualized Facts Required to Sustain a Claim Against Mr. De Freitas

(a) Plaintiff Cannot Show Actual Cause on the Failure-to-warn Claims (Counts II, VI)[7]

To bring a product-liability claim based on a failure to warn, a plaintiff must sufficiently plead that the failure to warn was the actual cause of the injury. *See Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009) (holding that a failure-to-warn claim cannot be raised as a matter of law where the plaintiff does not read warning labels). The FAC's allegations on this element are insufficient:

- "Had Plaintiff known of the inherent dangers of the app, she would have prevented Sewell from accessing or using the app and would have been able to seek out additional interventions, among other things." FAC ¶ 342.

- "Had Plaintiff received proper or adequate warnings or directions as the risks of C.AI, Plaintiff would have heeded such warnings and/or directions." FAC ¶ 377.

- "As a direct and proximate result of each Character.AI's breach of its duty to provide adequate warnings, Plaintiff was harmed and sustained the injuries set forth herein. Character.AI's failure to provide adequate

---

[7] The FAC labels two claims as "Count IV"—Negligence Per Se and Negligent Failure to Warn. FAC ¶¶ 348, 372. For the purpose of clarity and convenience, we refer to the counts as they are numbered in the FAC rather than referring to them in the order they appear.

and sufficient warnings was a substantial factor in causing the harms to Plaintiff." FAC ¶¶ 384–85.

Each allegation, without any factual support, states that Plaintiff would have both *read* any potential warnings and *limited* Sewell's access to the C.AI app as a result. Yet, the FAC alleges no facts showing that Plaintiff had a practice of restricting or monitoring Sewell's access to technology, that she used parental-restriction features, or that she routinely read warnings included alongside software downloads. In fact the FAC shows the opposite—that Plaintiff restricted Sewell's access to technology based on his behavior, not based on an app's content, and that she did not monitor his use of C.AI. *See* FAC ¶¶ 174, 211 (Plaintiff taking away Sewell's phone due to behavioral issues); *id.* ¶ 176 (Plaintiff not recognizing that Sewell was paying C.AI's subscription fee with a card "generally reserved for purchasing snacks"); *id.* ¶¶ 171–72 (Sewell began using the C.AI app without Plaintiff's authorization); *id* ¶ 208 (Plaintiff seemingly did not monitor Sewell's interactions with C.AI for "months"). Accordingly, Plaintiff's allegations are insufficient to "raise a right to relief above the speculative level" and Plaintiff's failure-to-warn claims must be dismissed. *Twombly*, 550 U.S. at 555.

(b)    C.AI Is Not a Product Under Product-Liability Law (Counts II, V–VI)

To make out a products-liability claim under strict liability or negligence, a Plaintiff must show that the harm was caused by a "product." *Colville v. Pharmacia & Upjohn Co. LLC*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008). For the purpose of

16

product-liability law, Florida courts have required "products" to be tangible.  *See id.* (adopting  Restatement (Second) of Torts § 402A cmt. (d) (1965) ("[T]he rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide.")); *see also Colville*, 665 F.2d at 1320 (the first element in a failure-to-warn claim is "that the warnings accompanying ***the item*** were inadequate" (emphasis added)).[8]

The FAC states that C.AI "is akin to a tangible product for purposes of Florida product liability law" because a user physically interacts with the service.  *See* FAC ¶ 102 ("When installed on a consumer's device, it has a definite appearance and location and is operated by a series of physical swipes and gestures. It is personal and moveable.").  Plaintiff's argument proves too much, however.  When users interact with software or an online service, they generally use a physical *product* as an intermediary to facilitate communication.  In this case, the product was Sewell's mobile phone, not the C.AI service itself.  If taken to its logical conclusion, Plaintiff's formulation would allow individuals to raise a strict-liability claim against Netflix because they use a remote control to select which show to watch.  This interpretation would erode the traditional limits of product liability and must be rejected.

Alternatively, Plaintiff alleges that "Downloadable software such as C.AI is a 'good' and is therefore subject to the Uniform Commercial Code despite not being tangible."  *Id.*  But the UCC's definition of a "good" is not coexistensive with the

---

[8]  We join C.AI's thoughtful argument on the issue of tangibility and add additional support to highlight the FAC's deficiency on this element.

definition of a "product" for the purpose of product liability. The Florida Supreme Court recognizes that the Restatement and the UCC "provide conflicting products liability rules" and cautions against confusing the two doctrines for one another. *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 88 (Fla. 1976) ("We recognize that there are two parallel but independent bodies of products liability law. One, strict liability, is an action in tort; the other, implied warranty, is an action in contract."). This Court should not take Plaintiff's invitation to subsume the two doctrines into one another. Accordingly, this count should be dismissed because Plaintiff cannot show the harm was caused by a product.

    (c)    The FAC Does Not Plead Facts Showing Mr. De Freitas's Liability Under Product-Liability Law (Counts II, V–VI)

As noted above, *supra* Subsections IV(B)(1)–(2), the FAC fails to plead individualized allegations against Mr. De Freitas. The FAC pleads no facts showing specific design decisions or marketing materials that Mr. De Freitas directed or personally participated in. Nor does the FAC show that Mr. De Freitas directed C.AI to suppress public disclosures, that he personally directed the company to make misrepresentations, or that he personally allowed minors to use the service. Absent individualized allegations of tortious conduct, the product-liability counts must be dismissed.

    **4.**    **Plaintiff Cannot Meet The Heightened Pleading Requirement on the FDUTPA Claim (Count X)**

Rule 9(b)'s "more stringent" pleading requirements apply to Plaintiff's FDUTPA claim because it alleges deceptive conduct that "sound[s] in fraud." *Smith*

*v. REV Grp., Inc.*, No. 2:22-cv-742-JES-NPM, 2023 WL 1861414, at *4 (M.D. Fla. Feb. 9, 2023) (applying Rule 9(b)'s requirements to a FDUTPA claim alleging deceptive marketing).  Accordingly, Plaintiff is required to allege "precisely what statements were made in what documents or oral representations or what omissions were made, . . . the time and place of each such statement, and the person responsible for making them (or, in the case of omissions, not making) [the] same . . . ."  *Blair v. Wachovia Mortg. Corp.*, No. 5:11–cv–566–Oc–37TBS, 2012 WL 868878, at *4 (M.D. Fla. Mar. 14, 2012) (internal citation omitted).  But the FAC does not point to any statements Mr. De Freitas made that were allegedly deceptive, nor does it specify the time or place that any such statements were made.  Even if C.AI made deceptive representations, the FAC does not plead any facts showing that Mr. De Freitas directly participated in any such conduct.  This Court must dismiss Plaintiff's FDUTPA claim.

### 5.    The IIED Claim Fails (Count X)

As explained in greater detail in the brief of C.AI, to state an IIED claim, a plaintiff must plead facts showing that the defendant's conduct "was outrageous, that is, it went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community," *Malverty v. Equifax Info. Servs.*, LLC, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019), and that the conduct was "directed" at the plaintiff, *Baker v. Fitzgerald*, 573 So. 2d 873, 873 (Fla. 3rd DCA 1990).  Here, Plaintiff does neither.  The FAC fails to allege that Mr. De Freitas engaged in "outrageous," "odious," or "intolerable" conduct that was specifically directed at Plaintiff or her son.

19

*Malverty*, 407 F. Supp. 3d at 1263.  Nor could it—Mr. De Freitas did not know Plaintiff or her son before his death.  This claim must be dismissed.

### 6.    The Unjust-Enrichment Claim Fails (Count VII)

Plaintiff fails to allege any individualized facts against Mr. De Freitas for unjust enrichment.    Further, there are no allegations that Mr. De Freitas specifically participated in or directed C.AI's allegedly unjust retention of benefits, nor are there any allegations showing that Mr. De Freitas personally retained the benefits Sewell conferred on C.AI.  *See Fulton v. Brancato*, 189 So. 3d 967, 970 (Fla. 4th DCA 2016) (dismissing an unjust-enrichment claim against an individual because there was no evidence that she benefitted separately or apart from the corporate defendant). Accordingly, this claim must be dismissed.

### 7.    The Wrongful Death, Survivor Action, and Loss of Consortium Claims Fail (Counts VII, VIII, XI)

As with the foregoing claims, this Court must dismiss the wrongful-death, survivor-action, and loss-of-consortium claims because Plaintiff fails to allege any facts showing Mr. De Freitas directing or participating in the allegedly tortious conduct. *See supra* Subsections IV(B)(1)–(2).

## V.    CONCLUSION

For the foregoing reasons, Mr. De Freitas respectfully requests that the claims asserted against him in the FAC be dismissed with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that, on January 9, 2025, counsel for movant Daniel De Freitas conferred with counsel for Plaintiff by video in a good-faith effort to resolve the motion and Plaintiff opposes the relief requested.

Respectfully submitted this 24th day of January, 2025.

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

/s/  *Olivia Barket Yeffet*

Olivia Barket Yeffet
Florida Bar No. 1026382
2601 S. Bayshore Drive, Suite 1550
Miami, Florida 33133-5417
Tel.: (305) 496-2988
Fax: (305) 901-2975
oliviayeffet@quinnemanuel.com

Andrew H. Schapiro (admitted *pro hac vice*)
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 7057401
andrewschapiro@quinnemanuel.com

Secondary:
michaelalvarez@quinnemanuel.com

*Attorney for Defendant Daniel De Freitas*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 24, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF, causing a copy to be served to all attorneys of record.

/s/  *Olivia Barket Yeffet*
Olivia Barket Yeffet
Florida Bar No. 102638