# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA, individually and as the Personal Representative of the Estate of S.R.S. III, | Civil Case No. 6:24-cv-01903-ACC-EJK |
| Plaintiff, | |
| v. | |
| CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; and ALPHABET INC., | **DEFENDANT NOAM SHAZEER'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff attempts to hold Mr. Shazeer personally liable for harms she alleges were caused by an online service provided by Character Technologies, Inc. ("Character.AI" or "C.AI").  Mr. Shazeer sympathizes with Plaintiff for the tragic death of her son.  But Plaintiff cannot hold Mr. Shazeer liable—either in his personal capacity or under a corporate-officer liability theory—for harms alleged to have been caused by C.AI's services.

The claims against Mr. Shazeer should be dismissed on two separate grounds:

*First*, the claims should be dismissed for lack of personal jurisdiction. Mr. Shazeer is not a Florida citizen and has no ties to Florida.  Plaintiff has not alleged

any facts showing a connection between Mr. Shazeer, Florida, and the facts underpinning her claims to justify personal jurisdiction.

*Second*, the claims should be dismissed for failure to state a claim.[1]  Plaintiff does not allege any facts that could support personal liability as to Mr. Shazeer.  Nor has Plaintiff alleged facts sufficient to hold Mr. Shazeer personally liable for C.AI's alleged wrongful conduct under a theory of corporate officer liability.  Plaintiff fails to make any allegations of Mr. Shazeer's specific direction or active participation in C.AI's alleged wrongful conduct as is required to hold Mr. Shazeer personally liable.

## II.    FACTUAL ALLEGATIONS

Mr. Shazeer co-founded C.AI with co-Defendant Daniel De Freitas.  FAC ¶ 66.  C.AI offers an online platform for users to engage in interactive conversations with virtual generative AI chatbots, called "Characters."  Characters may be historical or fictional figures, functional chatbots (such as an "Interviewer" that provides interview practice), or text-based games (such as "Space Adventure Game").  *Id.* ¶¶ 111-112.

Mr. Shazeer is a California citizen.  *Id.* ¶ 21.  C.AI is headquartered in California and incorporated in Delaware.  *Id.* ¶ 17.  The Complaint does not allege that Mr. Shazeer ever conducted business in Florida during his tenure with C.AI.

---

[1] In the concurrently filed Motion to Dismiss filed by C.AI, the company further explains why Plaintiff's claims–including the nine claims asserted against Mr. Shazeer—separately fail.  Since Plaintiff's claims against Mr. Shazeer are entirely derivative of her claims against Character Technologies, her claims against Mr. Shazeer should be dismissed to the same extent the Court grants C.AI's Motion.  *See* Endorsed Order Granting Unopposed Joint Motion to Join Motion to Dismiss (Dkt. No. 58) (Jan. 23, 2025); Character Technologies, Inc.'s Mot. to Dismiss Plaintiff's 1st Am. Compl. (Dkt No. 59) (Jan. 24, 2025).

The Complaint suggests S.S. was harmed by the content of his conversations with Characters on C.AI.[2] FAC ¶¶ 196–200, 206-207. Plaintiff is S.S.'s mother. *Id.* ¶ 2. She brings 12 claims against Defendants on behalf of herself and S.S.'s estate, *id.* ¶¶ 1-10, and asserts 9 of those claims against Mr. Shazeer. *Id.* ¶¶ 325-427.

## III.  LEGAL STANDARDS

On a Rule 12(b)(2) motion, the "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[A]ny doubt about . . . the Court's jurisdiction are resolved in favor of the defendant and against jurisdiction." *3Lions Publ'g, Inc. v. Interactive Media Corp.* 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019).

On a Rule 12(b)(6) motion, claims are subject to dismissal for failure to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1274 (M.D. Fla. 2015) (quoting *Iqbal*).  However, "[t]hreadbare

---

[2] The quoted conversations do not support this proposition.  The FAC selectively and misleadingly quotes conversations, including from the conversation in which the FAC suggests C.AI encouraged S.S. to commit suicide.  As alleged in the original complaint, C.AI discouraged S.S. from committing suicide in the same conversation.  Orig. Compl. ¶ 172 ("You can't do that!  Don't even consider that!"); *see Lewis v. Governor of Ala.*, 944 F.3d 1287, 1298 n.7 (11th Cir. 2019) (en banc) (internal quotation marks omitted) (when a pleading "selectively quotes" a document, "the full text is incorporated ... by reference and is thus properly considered in deciding a Rule 12 motion").

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.    ARGUMENT

### A.    Florida Courts Lack Personal Jurisdiction over Mr. Shazeer.

Because Mr. Shazeer is a California resident, Plaintiff does not (and could not) allege that Florida may exercise general jurisdiction over him. FAC ¶ 21. Instead, Plaintiff must allege facts sufficient to support the exercise of specific personal jurisdiction with respect to "each individual claim" asserted against Mr. Shazeer. *See Advantus, Corp. v. Sandpiper of Cal., Inc.*, 2019 WL 4751725, at *30 (M.D. Fla. Sept. 30, 2019). In order for a court to exercise specific personal jurisdiction in Florida, personal jurisdiction must (1) exist under Florida's long-arm statute and (2) be consistent with due process. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

#### 1.    Florida's Long-Arm Statute Does Not Confer Jurisdiction Over Mr. Shazeer.

Florida's long-arm statute confers jurisdiction "for any cause of action arising from," among other acts, tortious conduct or business activities in Florida. *See* Fla. Stat. §§ 48.193(1)(a)(1)-(2). "Florida's long-arm statute must be strictly construed, and the burden of proving facts which justify use of the statute is on Plaintiff." *Hollingsworth v. Iwerks Ent., Inc.*, 947 F. Supp. 473, 477 (M.D. Fla. 1996). Plaintiff has not alleged facts showing either tortious activities or business activities in Florida.

First, in terms of "a tortious act," Fla. Stat. § 48.193(1)(a)(2), the corporate

shield doctrine precludes personal jurisdiction over Mr. Shazeer for tortious acts he allegedly committed as a corporate officer. *See LaFreniere v. Craig-Myers*, 264 So.3d 232, 237 (Fla. Dist. Ct. App. 2018) (the corporate shield doctrine provides that "personal jurisdiction cannot be exercised over a nonresident corporate employee sued individually for acts performed in a corporate capacity"). While Florida recognizes an exception to the corporate shield doctrine for intentional torts, Plaintiff does not allege any facts showing that the sole intentional tort allegedly committed by Mr. Shazeer (IIED) was "expressly aimed" at a Florida resident. *See LaFreniere*, 264 So.3d at 238; *Rensin v. State*, 18 So.3d 572, 576 (Fla. Dist. Ct. App. 2009) (the intentional tort exception to the corporate shield doctrine only applies where "the nonresident corporate officer personally and intentionally engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida"). Nor does the Complaint contain facts suggesting Mr. Shazeer's alleged actions were "outside his duties" at C.AI. *See Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993).

Second, Plaintiff cannot base personal jurisdiction against Mr. Shazeer for "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]," Fla. Stat. § 48.193(1)(a)(1), because the Complaint never alleges that he did any of those things. To be considered "carrying on a business," the defendant's activities must "show a general course of business activity in the state for pecuniary benefit." *Stone v. Shafran*, 641 F. Supp. 3d

5

1344, 1358 (S.D. Fla. 2022) (citation and internal quotations omitted).  Plaintiff does not allege that Mr. Shazeer developed C.AI in Florida, provided services to or on behalf of C.AI in Florida, entered into any business transaction or contract in Florida on behalf of C.AI, advertised or promoted C.AI in Florida, or transacted or solicited business in Florida on behalf of C.AI.

Even if the FAC alleged that C.AI had limited business activity in Florida (it does not), *see Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (listing factors relevant to the analysis of Fla. Stat. § 48.193(1)(a)(1)), such business activity would not be sufficient to establish personal jurisdiction over Mr. Shazeer.  *See Litke v. P.B. Express, Inc.*, 2024 WL 4373634, at *6 (M.D. Fla. Oct. 2, 2024) ("Florida courts do not have personal jurisdiction over corporate officers merely because they would have jurisdiction over the corporation itself."); *Doe*, 620 So.2d at 1006 ("While [a corporation], which operates businesses in Florida, could be haled into court because of its minimum contacts, its chief executive officer is not by virtue of his position subject to personal jurisdiction."); *see also Advantus, Corp.*, 2019 WL 4751725, at *30 (personal jurisdiction "must be established for each individual claim and each defendant").  Any attempt to cure these allegations would therefore be futile.  *See Hall v. United Ins. Co. of Amer.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("a district court may properly deny leave to amend . . . when such amendment would be futile").

### 2. Exercising Specific Personal Jurisdiction Over Mr. Shazeer Would Violate Constitutional Due Process.

A Florida court's exercise of personal jurisdiction over Mr. Shazeer would also

6

violate due process.  For a court to exercise specific personal jurisdiction consistent with due process, (1) the defendant must have "purposefully availed itself of the forum" and (2) the plaintiff's claims must "arise out of or relate to" the defendant's forum-directed activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted); *see also Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355.

### a)  Plaintiff Cannot Establish "Purposeful Availment."

Due process requires that Mr. Shazeer "purposely availed" himself of the forum.  *See Burger King Corp.*, 471 U.S. at 472.  The Complaint does not allege any conduct (suit-related or otherwise) by Mr. Shazeer specifically targeting Florida—as noted, there are no allegations that Mr. Shazeer promoted C.AI in Florida, communicated with Florida residents, or entered into any business transactions with Florida residents.

The only allegations purporting to show Mr. Shazeer "purposefully availed" himself of the forum are those Plaintiff collectively alleges against all Defendants. Plaintiff alleges that "Defendants" "designed or oversaw the design" of C.AI "with the intention of promoting it to Florida residents and transacting business in Florida with Florida residents," "direct market[ed] and advertis[ed] to and in the State of Florida," "sen[t] emails and other communications to Florida residents," "collect[ed] personal and location information . . . of Florida residents as well as Florida businesses," and "thus purposefully availed themselves of Florida law[.]"  FAC ¶ 29.

It is "plainly unconstitutional" to assert jurisdiction "by considering the

7

defending parties together and aggregating their forum contacts." *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (internal quotation marks omitted); *see Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1332 (M.D. Fla. 2011) (plaintiff cannot "lump[ ] together certain defendants without distinguishing the separate actions of each defendant" because "the Court must assess the actions of each defendant separately"); *Fast Forward Acad., LLC v. Welker*, 2017 WL 10023762, at *2 (M.D. Fla. July 3, 2017) (personal jurisdiction is an "individualized inquir[y]"); *Advantus, Corp.*, 2019 WL 4751725, at *30 (personal jurisdiction "must be established for each individual claim and each defendant"). Plaintiff's improper jurisdictional group pleading must be rejected. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted.").

       **b)**       **The Claims Do Not "Arise Out of or Relate To" Mr. Shazeer's Purported Contact with Florida.**

Due process requires that "the suit" must "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *see Walden v. Fiore*, 571 U.S. 277, 277 (2014) (specific jurisdiction is based on "the relationship among the defendant, the forum, and the litigation"); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) ("a fundamental element of the specific jurisdiction calculus is that the plaintiff's claim must 'arise out

of or relate to' at least one of defendant's contacts with the forum").[3]

Plaintiff has not alleged (and cannot) facts showing a "relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 277. Plaintiff does not allege that Mr. Shazeer developed C.AI in Florida, provided services to or on behalf of C.AI in Florida, entered into any business transaction or contract in Florida on behalf of C.AI, advertised or promoted C.AI in Florida, or transacted or solicited business in Florida on behalf of C.AI. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 259 (2017) (plaintiffs' claim did not arise out of or relate to defendant's California contacts because "BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California"). Indeed, Plaintiff's failure to allege that Mr. Shazeer has *any* contacts with Florida shows that Plaintiff's claims cannot "arise out of or relate to" such suit-relevant forum contacts. This is fatal to Plaintiff's attempt to establish personal jurisdiction over Mr. Shazeer.

Nor do Plaintiff's claims "arise out of or relate to" the purported minimum contacts she pleads against "Defendants" without differentiation. The Complaint does not allege that any of C.AI's purported contacts with Florida have anything to do with

---

[3] The requirement that the suit "arise from" the defendant's contacts in the State is also imposed by Florida's long-arm statute. *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1227-28 (11th Cir. 2023) ("[Florida's] long-arm statute also imposes a connexity requirement between the enumerated activity in Florida and the plaintiff's cause of action" which "stems from the long-arm statute's mandate that, to support jurisdiction, the cause of action must 'aris[e] from' the enumerated activity.") (quoting Fla. Stat. Ann. § 48.193(1)(a)).

Plaintiff's claims.  *See Bristol-Myers Squibb*, 582 U.S. at 264 ("When there is no" "affiliation between the forum and the underlying controversy" "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").  And basing jurisdiction on allegations collectively pled against "Defendants" contravenes the requirement that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *Walden*, 571 U.S. at 284.

**B.    The Claims Against Mr. Shazeer Should Be Dismissed for Failure to State a Claim.**

**1.    Plaintiff Has Not Alleged Facts Sufficient to Hold Mr. Shazeer Liable in his Personal Capacity.**

Most allegations in the Complaint do not refer to any conduct by Mr. Shazeer. Instead, Plaintiff frequently pleads facts collectively against all Defendants without specifying what Mr. Shazeer did in his personal capacity and independent of activities by C.AI.  *See, e.g.*, FAC ¶ 93 ("Defendants Character.AI, Shazeer, De Freitas, and Google knew that C.AI came with inherent . . . risks"); *id.* ¶ 94 ("Defendants Character.AI, Shazeer, De Freitas, and Google marketed C.AI to children to obtain access to their data"); *see also id.* ¶¶ 97, 128.  This type of shotgun pleading—"asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions"—"fail[s] . . . to give [Mr. Shazeer] adequate notice of the claims against [him] and the grounds upon which each claim rests," *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015), and is not "tolera[ted]" by courts in the Eleventh Circuit, *Vibe Micro, Inc. v.*

*Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Plaintiff's specific claims against Mr. Shazeer do not specify any personal conduct of his that purportedly gives rise to those claims. FAC *Id.* ¶¶ 333-344, 361-427. Of the allegations elsewhere in the Complaint that are specific to Mr. Shazeer, they largely relate to his work on AI technology *before* founding of C.AI, *see, e.g.*, *id.* ¶¶ 54, 56, 60, 62-65, or to Google's rehiring of him in 2024, *see, e.g.*, *id.* ¶¶ 80, 86. None of these allegations have any actual connection to Plaintiff's claims against Mr. Shazeer. Plaintiff's failure to plead "sufficient factual matter" related to Mr. Shazeer's own conduct is fatal to Plaintiff's effort to hold Mr. Shazeer liable in his personal capacity. *See Iqbal*, 556 U.S. at 678.

The Complaint thus makes clear that Plaintiff seeks to hold Mr. Shazeer personally liable for C.AI's alleged wrongful conduct solely by virtue of his position as a corporate officer and former shareholder of C.AI. Neither a corporate officer nor a shareholder can be held "liable for corporate acts simply by reason of the officer's relation to the corporation." *E & A Produce Corp. v. Olmo*, 864 So.2d 447, 448 (Fla. Dist. Ct. App. 2003); *see Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 2008) ("the mere fact that Gasparini is a stockholder and officer . . . does not, without more, create personal liability"); *Fulton v. Brancato*, 189 So.3d 967, 969 (Fla. Dist. Ct. App. 2016) ("The main body of corporate law is to the effect that directors, officers and stockholders are not liable for corporate acts simply by reason of their official [capacity] to the corporation.") (citation and quotation omitted).

11

Because "a corporate officer will not be held personally liable for the acts of the corporation by mere virtue of his status as a corporate officer . . . . a complaint against a corporate officer must allege facts or circumstances which compel departure from the common-law rule against corporate-officer liability for the corporation's acts in order to survive a . . . motion to dismiss." *State ex rel. Fisher v Am. Cts., Inc.*, 644 N.E.2d 1112, 1114 (Ohio 1994). To hold otherwise would mean that "any corporate officer who fails to maintain an almost total ignorance of the products the corporation produces may be personally liable" for the corporation's allegedly wrongful conduct. *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 174 (5th Cir. 1985).

### 2.    Plaintiff Must Allege Mr. Shazeer Actively Participated In or Specifically Directed C.AI's Allegedly Unlawful Conduct.

To hold a corporate officer personally liable for the unlawful acts of the corporation, a plaintiff must allege the corporate officer ***specifically participated in*** or ***directed*** the corporation's unlawful conduct.  *See, e.g., Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. Dist. Ct. App. 1981) ("A director or officer of a corporation . . . is not liable for torts committed by or for the corporation unless he has ***participated in*** the wrong.") (emphasis added; citation and quotations omitted); *Jones v. Vasilias*, 359 So.3d 10, 13 (Fla. Dist. Ct. App. 2023) (quoting *Orlovsky*); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2018 WL 11251156, at *4 (S.D. Fla. Aug. 13, 2018) ("to impose personal liability against a corporate officer or agent for a tort by the corporation, the agent must have ***specifically directed*** or ***sanctioned*** the particular act to be done, or ***knowingly participated or cooperated*** in accomplishing the

wrongful act") (emphasis added). "Generalized allegations, even if compelling, are insufficient." *In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 2024 WL 4719068, at *3 (N.D. Cal. Nov. 7, 2024); *see In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.,* 497 F. Supp. 3d 552, 636 (N.D. Cal. 2020) ("generalized allegations are insufficient to connect" a corporate officer "to the direction or control of any" wrongful acts of the corporation).

Courts across the country, including in Florida, routinely dismiss claims of corporate officer liability where plaintiffs do not sufficiently allege that the corporate officer specifically participated in or directed the corporation's alleged tortious conduct. *See, e.g., SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1194, 1200 (S.D. Fla. 2013) (dismissing claims against corporate officers where "the Complaint contains no factual allegations regarding the personal participation of [the corporate officers] in any action"); *In re Chiquita Brands Int'l*, 2018 WL 11251156, at *4 (dismissing claims against corporate officers where "the allegations of [the corporate officers'] involvement . . . [were] insufficient to demonstrate any relevant participation, knowing cooperation or discretionary decision-making activity"); *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1177 (D. Colo. 2019) (dismissing claims against corporate officers where allegations the corporate officers "knew [the corporation] would attempt to compete for [plaintiff's] business" and were "physically present" at meetings were insufficient to show that the corporate officers were "involve[d] in the alleged theft of trade secrets"); *Brodsky v. Palmer Admin. Servs., Inc.*, 2019 WL

13421444, at *3 (D.N.J. May 29, 2019) (dismissing claims against corporate officer because allegations that the officer "authorized" certain conduct or "had the ability to supervise, monitor, and control" agents are "general and conclusory" and "can not be accepted under a Rule 12(b)(6) standard"); *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 396-98 (E.D.N.Y. 2021) (dismissing claims against corporate officer where allegations regarding corporate officer's "position at [the corporation] and his inclusion on [an] email" about the wrongful conduct did not sufficiently show his "participat[ion] in the commission of" the alleged fraud).

A recent decision from *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2024 WL 4719068 (N.D. Cal. Nov. 7, 2024), is particularly instructive. There, a federal court dismissed claims seeking to hold Mark Zuckerberg personally liable for Meta Platforms' alleged tortious concealment. Plaintiffs posited that "Zuckerberg's involvement in developing and promoting Meta's social media products to teens support[ed] the reasonable inference that he was directly involved with and knowledgeable of the products' negative impact and Meta's concealment of that information." *Id.* at *5. The court rejected Plaintiffs' theory, finding the allegations of Mr. Zuckerberg's "control over platform development," "awareness of safety risks," "reject[ions] [of] proposed resource allocations to child safety and well-being," and "public representations relating to platform safety" insufficient to show Mr. Zuckerberg participated in or directed Meta's alleged concealment. *Id.* at *3.

The court also distinguished *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales*

*Practices and Products Liability Litigation*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) and *In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) because, in both those cases, "plaintiffs were able to identify *specific* conduct from the corporate officers that constituted 'direct participation in the deceptive scheme at issue.'" *In re Soc. Media*, 2024 WL 4719068, at *5 (emphasis in original).  In *In re Chrysler-Dodge-Jeep Ecodiesel*, for example, the court held that allegations about the CEO's involvement in an underlying RICO conspiracy to cheat on vehicle emissions tests by "designing, implementing, and concealing software that was used in [specific] vehicles" supported the "reasonable inference that [the CEO] was directly involved with [the] . . . [corporation's] concealment of the [emissions cheating] devices" and was a "knowing participant in the scheme."  295 F. Supp. 3d at 952, 953, 976, 988-89.  Similarly, in *In re JUUL Labs*, the court found allegations two corporate officers "provided 'specific direction on the content of the website,'" "engineered test results consistent with the deceptive messaging," and "had input and control over specific advertising" sufficient to hold the corporate officers personally liable.  497 F. Supp. 3d at 671.

### 3. Plaintiff Has Not Alleged Facts that Would Support Holding Mr. Shazeer Liable as a Corporate Officer.

Plaintiff endeavors to hold Mr. Shazeer personally liable by focusing on five aspects of Mr. Shazeer's relationship to Character Technologies: (1) Mr. Shazeer's history with C.AI, as both a co-founder and former CEO; (2) Mr. Shazeer's position as a technical lead and designer of a portion of C.AI's Large Language Model

15

("LLM"); (3) Mr. Shazeer's position as a majority shareholder; (4) Mr. Shazeer's public statements; and (5) Mr. Shazeer's fundraising efforts. *See* FAC ¶ 24.

Under Plaintiff's theory, virtually any founder or senior engineer could be sued for harms allegedly caused by their company regardless of their role in the company's alleged wrongful conduct. Founders are frequently designers of their company products, hold stock, make public statements, and fundraise. But a founder's history and engagement with the corporation does not establish liability under the corporate officer liability theory. To hold otherwise would conflict with the wealth of cases requiring specific allegations of a corporate officer's personal participation in or direction of a corporation's wrongful conduct. *See supra* Part IV.B.2.

Plaintiff has failed to allege facts sufficient to show Mr. Shazeer specifically participated in or directed C.AI's alleged wrongful conduct underlying each of the nine claims asserted against him.

### a)    Defective Design - Negligence (Count V)

Plaintiff contends Mr. Shazeer should be liable for negligent defective design because of his control of C.AI as a co-founder and technical lead. *See* FAC ¶ 24. But conclusory allegations of "control" are "insufficient to establish a corporate officer's participation" because, to hold otherwise, "would dissolve the distinction between a chief executive and the corporation given the executive's ultimate authority over the company's decisions." *In re Soc. Media*, 2024 WL 4719068, at *4; *see id.* at *5 ("Zuckerberg's general control of his company[] [and] product development [were]

16

insufficient to show that Zuckerberg specifically directed, authorized, or sanctioned Meta's alleged tortious [conduct]."); *In re JUUL*, 497 F. Supp. 3d at 671 (corporate officer liability requires "more than mere knowledge or control").

Here, Plaintiff's conclusory allegations that Mr. Shazeer "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of C.AI described in this Complaint," FAC ¶ 24, "directed the other Defendants and C.AI's employees with regards to the conduct alleged," *id.* ¶ 24, "specifically directed and controlled the design of C.AI," *id.* ¶ 79, "directly participated in the decision to design C.AI to prioritize engagement over user safety," *id.*, and, along with the other Defendants, "designed their product with dark patterns and deployed a powerful LLM to manipulate Sewell—and millions of other young customers—into conflating reality and fiction," *id.* ¶ 97, fail to show Mr. Shazeer specifically participated in or directed the alleged negligent design. *See supra* Part IV.B.2.

### b) Failure to Warn – Negligence and Strict Liability (Counts II and VI)

Plaintiff bases her failure to warn claims on allegations of Defendants' alleged "kn[owledge] of the inherent dangers associated with C.AI[.]" FAC ¶ 337. Plaintiff alleges "Defendants Character.AI, Shazeer, De Freitas, and Google knew that C.AI came with inherent . . . risks and marketed it to children under age 13," *id.* ¶ 93, that the "C.AI's founders knew that their product was defective and not reasonably safe yet made the decision to launch and distribute it to minors anyway," *id.* ¶ 237, and that "[t]hese risks were known and knowable in light of Defendant's knowledge

regarding its product," *id.* ¶ 378.  But corporate officer liability requires "more than mere knowledge" to show Mr. Shazeer participated in or directed C.AI's alleged failure to warn.  *See In re JUUL*, 497 F. Supp. 3d at 671; *In re Soc. Media*, 2024 WL 4719068, at *5 (alleged knowledge of "products' negative impact" is insufficient).

Plaintiff also alleges that Defendants "intentionally allowed minors to use C.AI, advertised C.AI as appropriate for children, and advertised its product in app stores as safe for children under age 13," FAC ¶ 339, and "fail[ed] to provide adequate and sufficient warnings," *id.* ¶ 384.  The Complaint is devoid of facts showing Mr. Shazeer participated in or directed such conduct.  It contains no allegations that Mr. Shazeer allowed minors to use C.AI or played any role in advertising C.AI as appropriate for children.  Nor does it allege any facts showing Mr. Shazeer participated in or directed anyone at C.AI to fail to provide sufficient warnings.  *See In re Soc. Media*, 2024 WL 4719068, at *3 (allegations "do not plausibly support the inference that Zuckerberg participated in a scheme or directed any employee" to engage in the corporation's alleged wrongful conduct).

### c)    FDUTPA (Count X)

Plaintiff bases her FDUTPA claim on allegations of C.AI's "advertising, marketing, promotion, offering for sale, [and] sale of [C.AI] subscriptions[.]"  FAC ¶ 417.  Plaintiff alleges that Mr. Shazeer, along with the other defendants, "falsely represented the safety of the C.AI product," *id.* ¶ 97, "knowingly misrepresented to customers and the general public that C.AI was safe for minor users." *id.* ¶ 79, and

18

"deceptive[ly]" "represented . . . that the AI chatbot operates like a human being" and "that certain popular AI chatbot character(s) labeled 'Psychologist,' 'Therapist,' or other related, license mental health professions . . . operate like a human psychologist or therapist," *id.* ¶ 417(a)-(b). Plaintiff further alleges Mr. Shazeer violated FDUTPA because his "actions of co-inventing the dangerous product and actively promoting the product, and placing the product into the stream of commerce" and was "aware of the violations of consumer protection laws and the likelihood of harm to children consumers." *Id.* ¶ 24. None of these generalized and conclusory allegations show that Mr. Shazeer was a direct participant in C.AI's alleged violation of FDUTPA. *See SIG, Inc.*, 971 F. Supp. 2d at 1195 (FDUTPA claims require "alleg[ations] that the individual was a direct participant in the improper dealings") (citation and quotations omitted); *Bechor v. Simcenter, Inc.*, 394 So.3d 666, 669 (Fla. Dist. Ct. App. 2024) (similar); *In re JUUL*, 497 F. Supp. 3d at 636 ("generalized allegations are insufficient"). Nor are the allegations pled with sufficient particularity under Rule 9(b)'s heightened pleading standard. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (Rule 9(b) applies to FDUTPA claims) (collecting cases).

The Complaint alleges a handful of public statements by Mr. Shazeer, but none of those statements are alleged to be deceptive. *See* FAC ¶ 69 ("I love that we're presenting language models in a very raw form" and "giving customers 'a chance to really play with the core of the technology.'"); *id.* ¶ 107 ("the most important thing for the product is the quality of the AI so we can be completely focused on making our

products great and completely focused on pushing AI forward and those two things align"); *id.* ¶ 269 ("what we hear a lot more from customers is like I am talking to a video game character who is now my new therapist"); *id.* ¶ 264 ("'If you are training a therapist, then you do want a bot that acts suicidal,' he said. 'Or if you're a hostage negotiator, you want a bot that's acting like a terrorist.'"); *id.* ¶ 319 ("[W]e are convinced that the real value is to consumers and end customers so we will continue to . . . as things get better . . . monetize to customers.").

These public statements "do not plausibly support the inference that [Mr. Shazeer] participated in a scheme or directed any employee to" engage in deceptive acts. *See In re Soc. Media*, 2024 WL 4719068, at *3; *cf. Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So.2d 941, 944 (Fla. Dist. Ct. App. 2001) (reversing judgment against corporate officers where "[t]here was no evidence . . . that the statement attributed to [the officer] . . . was false or misleading at the time it was made"). Nor do such allegations rise to the requisite level of affirmative conduct necessary to hold a corporate officer liable based, in part, on his or her public statements. *See In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 988 (finding sufficient participation where corporate officer not only "made misrepresentations" but also "'signed off' on . . . statements" and "approved of, or ratified, the use of the logo . . . with knowledge of the emissions problem"); *In re JUUL*, 497 F. Supp. 3d at 635 (finding sufficient participation where corporate officer "expressed . . . intent to 'disrupt'. . . traditional tobacco addicts, but courted the investment and expertise of

20

'big tobacco,'" and made "fraudulent . . . statement to the *New York Times* that selling JUUL products to youth was 'antithetical to the company's mission.'").

### d)    IIED (Count VI)

Plaintiff bases her IIED claim on "Defendants' . . . intentional and reckless" conduct, including "failing to implement adequate safety guardrails . . . and specifically targeting children." FAC ¶ 389. Such allegations are a far cry from the "outrageous," "atrocious," or "utterly intolerable" conduct required to state a claim for IIED under Florida law. *U.S. ex rel. Crenshaw v. Degayner*, 622 F. Supp. 2d 1258, 1281-82 (M.D. Fla. 2008); *see also McGinity v. Tracfone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1341 (M.D. Fla. 2014) (Conway, J.) (noting that IIED claims "typically require[] offensive physical contact").[4] Plaintiff has not alleged any facts showing Mr. Shazeer engaged in outrageous conduct, let alone specifically participated in or directed C.AI's alleged outrageous conduct. *See supra* Part IV.B.2.

### e)    Unjust Enrichment (Count IX)

The Complaint contains no allegations that Mr. Shazeer specifically participated in or directed C.AI's alleged unjust retention of two benefits from S.S. *See* FAC ¶¶ 402-411. To the extent Plaintiff seeks to hold Mr. Shazeer liable because of his position as a majority shareholder in C.AI, *see* FAC ¶ 24, such attempts are

---

[4] Plaintiff's claim for IIED also fails for the separate reason that Plaintiff cannot state a claim for IIED in Florida for her own emotional distress. *See T.V. v. Grindr, LLC*, 2024 WL 4128796, at *42 (M.D. Fla. Aug. 13, 2024) (collecting cases) ("A claim for intentional infliction of emotional distress is generally available only to the person at whom the outrageous conduct is directed.").

expressly prohibited.  *See Fulton*, 189 So.3d at 969-70 ("The main body of corporate law is to the effect that . . . stockholders are not liable for corporate acts simply by reason of their official [capacity] to the corporation") (citation and quotation omitted).

**f)    Wrongful Death, Survivor Action, and Loss of Consortium (Counts VII, VIII, and XI)**

The claims for wrongful death, survivor action, and loss of consortium fail because the Complaint contains no allegations of Mr. Shazeer's specific participation or direction.  Mr. Shazeer cannot be held liable for these claims merely because of his former status at C.AI.  *See E & A Produce Corp.*, 864 So.2d at 448 ("Officers of a corporation are not liable for corporate acts simply by reason of the officer's relation to the corporation.").

## V.    CONCLUSION

For the foregoing reasons, Mr. Shazeer respectfully requests that the claims asserted against him in the Amended Complaint be dismissed with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that, on January 9, 2025, counsel for Noam Shazeer conferred with counsel for Plaintiff by video in a good-faith effort to resolve the motion and Plaintiff opposes the relief requested.

Respectfully submitted this 24th day of January, 2025.


Paul W. Schmidt* (Lead Counsel)
COVINGTON & BURLING LLP
New York Times Building
620 Eighth Avenue,
New York, New York 10018-1405
Telephone: + 1 (212) 841-1171
Email:  pschmidt@cov.com
*Admitted Pro Hac Vice

/s/ Isaac D. Chaput
Isaac D. Chaput*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-7020
Email:  ichaput@cov.com