UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA, individually and as the Personal Representative of the Estate of S.R.S. III,<br><br>Plaintiff,<br><br>v.<br><br>CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; and ALPHABET INC.,<br><br>Defendants. | Case No. 6:24-cv-01903-ACC-UAM |

### DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

While the claims against all Defendants should be dismissed for the reasons explained in the Motion to Dismiss of Character.AI ("C.AI"), Plaintiff's Opposition (ECF No. 86) ("Opp.") confirms that Plaintiff lacks any legally cognizable basis for her claims against Google, given Google's peripheral-at-best connection to the C.AI service at issue in this case. Plaintiff offers no reasoned response to many of the issues raised in Google's Motion to Dismiss (ECF No. 61) ("Mot."), relegating, for example, the substantial shotgun pleading problems with the FAC to a conclusory footnote, Opp. at 2 n.1. Instead, Plaintiff gestures to various legal doctrines, without articulating the precise basis upon which she seeks to impose liability on Google or explaining how Google's alleged conduct plausibly maps onto a standard of liability. While these deficiencies are pervasive, Google

1

limits this reply to three issues, consistent with its request for leave to file a reply (ECF No. 89) and Local Rule 3.01(d):

(1) Plaintiff's new attempt to position Google as a "component parts manufacturer" for purposes of her product liability claim fails as a matter of law because she does not allege that Google designed or manufactured any component of C.AI, that any component was defective, or that Google participated in the integration of any component into C.AI;

(2) Plaintiff's expansive aiding-and-abetting theory—which is based on the "prov[ision of] ordinary business services," Opp. at 18—is legally unsupported and would vastly expand aiding-and-abetting liability far beyond what common law supports; and

(3) Plaintiff's claim that Google has been unjustly enriched by access to user data is not supported by the FAC, and in any event, would fail as a matter of law.

I. **PLAINTIFF'S COMPONENT PART MANUFACTURER THEORY FAILS**

Despite Plaintiff's repeated efforts in the FAC to collapse the lines between C.AI's and Google's alleged conduct, Plaintiff now argues for the first time in her Opposition that Google should be liable as the manufacturer of a "component part" integrated into the C.AI chatbot service. Even under that doctrine, Plaintiff's claim against Google fails for at least three reasons (in addition to those raised in C.AI and Google's opening briefs, *see* Mot. at 2, 18).

*First*, Plaintiff fails to allege that Google designed or manufactured any "component" of C.AI's chatbot service. She argues that Meena and LaMDA—two prototype chatbots that Shazeer and De Freitas worked on developing during their prior employment at Google —"served as the defective component parts used to develop the

2

C.AI LLM infrastructure." Opp. at 9-10. But as discussed in Google's Motion, the FAC does not allege that Google ever introduced those prototypes into the stream of commerce, Mot. at 18, or that the software for those prototypes was actually integrated into C.AI's service, Mot. at 4, 11-12. Indeed, far from identifying any allegations plausibly tying Google technology to C.AI's service, the Opposition doubles down on Plaintiff's theory that "Character.AI developed a fully integrated app and built an AI model *from scratch*." Opp. at 3 (emphasis added).

At most, Plaintiff alleges that C.AI's founders built their chatbot service using technology that was "similar," FAC ¶ 60, to AI frameworks developed at Google—frameworks that have been publicly disclosed, Mot. at 11-12. That is not enough to impose strict liability on Google as a component part manufacturer. Indeed, the court rejected a similar theory in *Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338 (M.D. Fla. 2010). There, the plaintiff attempted to hold the defendant manufacturer of a name-brand drug strictly liable for harm allegedly caused by a generic drug on the theory that the defendant "supplied a component part to the generic manufacturers in the form of package insert/labeling information, simply because a generic manufacturer chose to use a label identical to" the public-facing label that the defendant used for its own name-brand drug. *Id.* at 1346-47. The court held that the plaintiff's component manufacturer theory "goes too far," "is not supported by the case law," and "would unfairly render every manufacturer a virtual insurer of all like products on the market." *Id.* at 1347. For the same reason, holding Google liable for every AI chatbot service developed by any other

3

company that uses "similar technology" to Google's, FAC ¶ 60, would "go[] too far," and radically expand the bounds of products liability law, Wyeth, 684 F. Supp. 2d at 1346-47.

*Second*, Plaintiff does not even attempt to explain how Meena, LaMDA, or any other alleged component parts developed by Google were "defective," or how those defects caused her harm. It is black-letter law that a complaint alleging design defect "must contain factual allegations about what was in fact defective about the product." *Witt v. Howmedica Osteonics Corp.*, 2013 WL 6858395, at *2 (S.D. Fla. Dec. 30, 2013) (citing cases), *aff'd*, 648 F. App'x 867 (11th Cir. 2016). Here, the purported "defects" alleged in the FAC are all specific to how C.AI's chatbot was trained and presented to users. FAC ¶¶ 328, 337. Plaintiff does not allege that Google provided training data to C.AI or played a role in how its chatbots were presented to users, and Google's prototype chatbots themselves were never presented to the public at all. Plaintiff's failure to identify a defect in any component allegedly designed or manufactured by Google defeats her claim under the "defective component" prong of the component parts doctrine. *See Shapiro v. NuVasive, Inc.*, 2019 WL 5742159, *2 (S.D. Fla. Nov. 5, 2019).

*Third*, Google did not "substantially participate in the integration of the component into the design of" C.AI's service. *See* Opp. at 9 (quoting *Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1141 (Fla. 4th DCA 2002)). Plaintiff relies on speculative allegations in FAC ¶ 68—that "Google contributed … intellectual property, and AI technology to the design and development of C.AI" and that "C.AI was designed and developed on Google's architecture," Opp. at 9—in an effort to support this proposition. But Google's Motion explains why those allegations are both conclusory and incoherent,

Mot. at 11-14, and the Opposition offers no response. Plaintiff also states that C.AI and Google had an "integrative design partnership" because Google provided cloud services to C.AI. Opp. at 10. But that argument shifts topics entirely: Rather than illustrating how Google supposedly "participate[d] in the integration of" the Meena or LaMDA models to C.AI's service, that allegation merely confirms that Google's involvement was limited to that of a vendor providing entirely separate cloud services, not a co-designer. And Plaintiff does not claim harm arising from a defect in the processing units or servers that C.AI rented in the cloud—a theory that would raise a host of separate issues.

## II. PLAINTIFF'S EXPANSIVE AIDING-AND-ABETTING ARGUMENTS MISSTATE THE LAW

With no cognizable claim based upon Google's role as a cloud service provider, Plaintiff resorts to a sweeping and novel theory of aiding-and-abetting liability. As Plaintiff would have it, a company that merely "provide[s] ordinary business services" to a company that, in turn, distributes an allegedly unsafe product may be held liable as an aider and abettor in tort. Opp. at 13, 18. That theory would not only flout settled tort limitations, but also undermine the sound policies grounding strict product liability law. [1]

For one, Plaintiff cites no authority applying aiding-and-abetting liability to a products liability claim. The absence of such caselaw is understandable given the mismatch between products liability—which, particularly in Florida, focuses not on "the conduct of the manufacturer" but on "the design of the product," *Aubin v. Union Carbide*

---

[1] The Opposition also repeats numerous conclusory allegations about non-specific support from Google to C.AI. *E.g.*, Opp. at 16-17. Given the limited scope of this reply, Google refers the Court to its prior briefing on why these sorts of claims cannot survive a motion to dismiss. *See* Mot. at 8-14.

*Corp.*, 177 So. 3d 489, 506 (Fla. 2015)—and the demanding "actual knowledge" standard for aiding and abetting, *see Twitter, Inc. v. Taamneh*, 598 U.S. 471, 503 (2023) (merely "knowing that … wrongdoers were using [a company's] services and failing to stop them" does not suffice for aiding-and-abetting liability).

Instead of citing any on-point caselaw, Plaintiff asks this Court to ignore *Taamneh* in favor of the Seventh Circuit's decision in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023). But that case, contrary to Plaintiff's characterization, did not involve aiding-and-abetting liability at all. Rather, the plaintiffs in *Salesforce* brought a *statutory* claim for sex trafficking against Salesforce based on its provision of customer support software to an allegedly well-known sex trafficker (Backpage.com). *Id.* at 549–50. The court found the imposition of such liability appropriate there because the statute at issue did *not* "require[] mens rea 'akin to that required for aiding and abetting.'" *Id.* at 564. The case also involved completely inapposite facts, including Salesforce helping Backpage to move its business overseas for the specific purpose of escaping seizure by the U.S. government. *Id.* at 550. The closest Plaintiff can muster here is that the CEO of Google Cloud mentioned C.AI, along with more than a dozen other customers, as an example of a "partner" company that has used Google's commercially-available Cloud's services.[2] Opp. at 10, 13-14. And while relying on inapposite Seventh Circuit caselaw, the Opposition fails to engage with the relevant authority Google cites from the Seventh Circuit, which, like the Supreme

---

[2] Plaintiff also makes a conclusory allegation about "infrastructural investments," Opp. at 14, but does not explain what those investments allegedly were. That reference cites FAC ¶ 75, which merely describes C.AI's use of Google Cloud infrastructure. Indeed, as explained in Google's Motion, the well-pleaded factual allegations show only that Google provided general cloud services to C.AI.

Court's decision in *Taamneh*, recognizes that aiding-and-abetting liability does not apply to the general provision of business services. Mot. at 13 (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).

Nor do any of the other authorities Plaintiff cites—all of which involve banks accused of facilitating fraud—support her position. Only one, *Lesti v. Wells Fargo Bank, N.A.*, actually imposed liability, and it did so based on allegations that Wells Fargo knowingly processed fraudulent transfers as part of a Ponzi scheme, directly aiding the intentional tort of converting those funds. 960 F. Supp. 2d 1311, 1325 (M.D. Fla. 2013). Meanwhile, the court in *Lamm v. State Street Bank & Trust Co.* dismissed the aiding-and-abetting claims, concluding that even allegations of a bank disregarding "obvious red flags" was insufficient to establish aiding-and-abetting liability. 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012); *see also Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2014) (same). And in *FW Distributing, LLC v. J.P. Morgan Chase, N.A.*, the court concluded both that conclusory allegations of knowledge could not support an aiding-and-abetting claim, and that merely continuing to provide banking services, such as processing transfers and offering a line of credit, was *not* "substantial assistance" under Florida law. 2024 WL 4665255, at *12 (S.D. Fla. Nov. 4, 2024).

Plaintiff's own cases thus make clear that Plaintiff's aiding-and-abetting theory, if accepted, would cause a massive expansion of tort liability in the business world. A lessor of manufacturing equipment to an automobile company accused of safety issues might be said to have "actual knowledge" about the dangers of its cars from "reports and investigations," *see* Opp. at 13, and the car company might "not [be] able to launch its …

7

product to market" without the equipment, *see* Opp. at 16. But merely providing such services has never been a basis for tort liability and Plaintiff's allegations against Google offer no basis to disrupt those first principles.

### III. PLAINTIFF'S DATA-BASED UNJUST ENRICHMENT THEORY FAILS

The Opposition fails to engage with any of the multiple reasons her unjust enrichment claim fails, including that the claim is derivative and that she has not alleged that any *direct* benefit was conferred upon Google as opposed to C.AI. Mot. at 23.

Plaintiff's only response is to claim, for the first time, that there is "a question of fact as to whether Google has direct access to C.AI user data." Opp. at 19. That theory is not alleged in the FAC: There is not even a conclusory allegation that Google received user data from C.AI, nor facts suggesting it did. Plaintiff's own allegations accuse only C.AI of allegedly retaining any benefits from users. *See* FAC ¶410 ("Character.AI voluntarily accepted and retained the benefit from collecting Sewell's personal data"). Nor would Plaintiff have any reasonable basis, consistent with Rule 11, to allege Google received C.AI's user data: She relies on reports that Google "licensed Character.AI's AI models." FAC ¶ 84. Those offer no similar reason to claim Google has individual users' data. Bereft of factually-supported allegations that Google received any direct benefit from Setzer, Plaintiff attempts to disguise her pleading failure with a lengthy string cite to inapposite allegations about Google's relationship with C.AI generally. *See* Opp. at 19–20. These allegations are a prime example of impermissible shotgun pleading and, again, amount to the mere provision of routine business services to C.AI, which does not and cannot make Google liable for any of C.AI's alleged tortious conduct.

Even if Google had received user data from C.AI via its licensed models, that would be an indirect benefit insufficient to support a claim, because the benefit was not conferred by Plaintiff on Google. In *Marrache v. Bacardi U.S.A., Inc.*, the Eleventh Circuit found that the plaintiff failed to state an unjust enrichment claim under Florida law because "[a]t most," the plaintiff alleged that he "conferred an indirect benefit to [Defendant]" when he purchased Defendant's liquor at a third-party grocery store. 17 F.4th 1084, 1102 (11th Cir. 2021). There, any monetary benefit was directly received by the store and indirectly passed onto the defendant liquor producer. Similarly, under Plaintiff's own allegations, any user data here was directly received by C.AI and at most, only indirectly passed onto Google. Additionally, as in *Marrache*, here Plaintiff "has not included any allegations as to how it would be 'inequitable'" for Google to retain any alleged benefit. *See id*. This Court must dismiss Plaintiff's unjust enrichment claim.

Trying a different tack, Plaintiff argues that "Google was conferred a benefit, even if indirectly, by accessing the models which were built and trained on C.AI user data." *See* Opp. at 20. But established precedent makes clear that an indirect benefit is insufficient. Courts in Florida have dismissed unjust enrichment claims where the complaint "indicates that Plaintiff has absolutely no relationship with [Defendant] and has not conferred a direct benefit upon [Defendant]." *See Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. DCA 2009) (affirming dismissal of unjust enrichment claim against a parent company where the plaintiff had only paid the subsidiary company and thus had not conferred a direct benefit to the parent).

9

## CONCLUSION

For these reasons and those set forth in the Motion, the FAC should be dismissed.

Dated: April 4, 2025

Respectfully submitted,

Jay B. Shapiro
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 W. Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
jshapiro@stearnsweaver.com

/s/ Lauren Gallo White
Lauren Gallo White (PHV) (Lead Counsel)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Suite 3300
San Francisco, CA 94105
(415) 947-2000
lwhite@wsgr.com

Fred A. Rowley, Jr. (PHV)
Matthew K. Donohue (PHV)
WILSON SONSINI GOODRICH & ROSATI
953 E. Third Street, Suite 100
Los Angeles, CA 90013
(323) 210-2900
fred.rowley@wsgr.com
mdonohue@wsgr.com

*Counsel for Google LLC and Alphabet Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 4, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have registered to receive notifications.

/s/ Jay B. Shapiro
Jay B. Shapiro