UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA, individually and as
the Personal Representative of the
Estate of S.R.S. III,

      Plaintiff,

v.

CHARACTER TECHNOLOGIES,
INC.; NOAM SHAZEER; DANIEL
DE FRIETAS ADIWARSANA;
GOOGLE LLC; and ALPHABET
INC.,

      Defendants.

Case No. 6:24-cv-01903-ACC-NWH

## DEFENDANT GOOGLE LLC'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) AND TO STAY PROCEEDINGS; MEMORANDUM OF LAW IN SUPPORT

Defendant Google LLC ("Google"), through its undersigned attorneys, hereby moves for an order certifying an interlocutory appeal under 28 U.S.C. § 1292(b) from the Court's May 21, 2025 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Dkt. 115) ("Order") and for an order staying proceedings pending resolution of any interlocutory appeal.

## INTRODUCTION

On May 21, 2025, this Court issued its Order granting in part and denying in part defendants' motions to dismiss. The Court should certify that Order for

1

immediate appeal under 28 U.S.C. § 1292(b), because it raises important and potentially far-reaching issues of law that reasonable jurists may disagree about.

Among other things, the Court's Order declined to dismiss Plaintiff's claim that Google aided and abetted Defendant Character Technologies, Inc. ("C.AI") in distributing an allegedly unsafe chatbot service. The aiding-and-abetting claim is based on the theory that Google "substantially assisted" C.AI's allegedly tortious conduct by providing it with commercially available cloud computing services. The upshot of the Court's reasoning is that a service provider may face aiding-and-abetting liability in tort based upon its provision of ordinary business services, if the provider has reason to know that the business customer is selling a dangerous product or service. Given the significance of this novel holding, early appellate guidance is critical not only to the parties and the resolution of this case, but to any company that provides business-to-business services.

All three requirements for § 1292(b) certification of the Court's Order are met. First, the Order involves at least one "controlling question of law," § 1292(b):

> Whether providing commercially available business services to a company that distributes an allegedly unsafe product can constitute "substantial assistance" creating aiding-and-abetting liability in tort.

This is a "pure question of law," resolution of which could dispose of the aiding-and-abetting claim altogether. *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1275 n. 4 (11th Cir. 2020) (citation omitted).

Second, there is "substantial ground for difference of opinion" concerning the question. § 1292(b). This Court concluded that Plaintiff plausibly alleged that Google aided and abetted C.AI by providing cloud computing services to C.AI along with its many other Google Cloud customers. Right or wrong, the implications of that holding are sweeping. The scope of common law aiding and abetting is an area of active and ongoing appellate litigation. Indeed, the U.S. Supreme Court has addressed the issue twice in the last three years, in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), and more recently in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 2025 WL 1583281 (June 5, 2025), decided after this Court's Order. In both cases, the Supreme Court emphasized the historically narrow scope of aiding-and-abetting liability, particularly as it applies to third-party businesses. In contrast, this Court's decision expands the scope of aiding and abetting to service providers, creating potential tension with recent Supreme Court precedent. Even if the Court's Order is ultimately affirmed, it raises an issue that is "difficult and of first impression," *Australian Therapeutic Supplies Pty Ltd v. Naked TM, LLC*, 2024 WL 756212, at *2 (S.D. Fla. Feb. 23, 2024) (citation omitted), and involves a "novel application[]" of aiding-and-abetting law to the strict products liability context, *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2012 WL 13214854, at *2 (S.D. Fla. Mar. 27, 2012). It is important that the issue be addressed definitively, correctly, and promptly.

Third, an immediate appeal is likely to "materially advance the ultimate termination of the litigation" by avoiding time-consuming discovery, motion practice, and a potential trial on an issue that the Eleventh Circuit reasonably could conclude warrants dismissal at the pleading stage. § 1292(b). Indeed, a ruling in Google's favor on the substantial-assistance question should dispose of Plaintiff's aiding-and-abetting claim against Google—the only claim that is asserted against Google and no other defendant—narrowing the case. Even an affirmance would materially advance the litigation by clarifying the scope of Plaintiff's claims and ultimate burden, helping focus potentially wide-ranging and expensive discovery, summary judgment motion practice, and potentially trial arguments. All of this would "shorten the time, effort and expense of the litigation," conserving judicial and party resources. *Cardoso v. Carnival Corp.*, 2012 WL 12949983, at *4 (S.D. Fla. Apr. 20, 2012).

To secure the benefits of immediate review, the proceedings should be stayed during appeal. There is no reason to move forward with costly and complicated discovery until the Eleventh Circuit has a chance to confirm whether Plaintiff's aiding-and-abetting claim against Google is even viable.

Google respectfully asks the Court to certify its Order for immediate appeal to the Eleventh Circuit, and to stay all proceedings in this case in the meantime.

## BACKGROUND

Plaintiff Megan Garcia ("Plaintiff") filed suit against C.AI, its founders, and Google,[1] individually and in her capacity as Personal Representative of the Estate of the decedent Sewell Setzer III. FAC at 1. The thrust of Plaintiff's complaint is her theory that her son's tragic death was caused by the allegedly defective nature of C.AI's chatbot. *See* FAC ¶ 2.

Google moved to dismiss Plaintiff's eight claims against Google, including Plaintiff's claim that Google aided and abetted C.AI's alleged strict product liability violations. *See* Defendants Google LLC's and Alphabet Inc.'s Motion to Dismiss First Amended Complaint and Memorandum of Law in Support ("Mot.") at 1, 6 (Dkt. 61).[2] Google argued that Plaintiff failed to plausibly allege that Google had "knowledge of [any] underlying violation" by C.AI or that Google provided "substantial assistance" to C.AI—two elements of an aiding-and-abetting claim. Mot. at 19. Among other things, Google explained that its "provision of ordinary business services" to C.AI in the form of cloud computing services did not constitute "substantial assistance" for purposes of aiding-and-abetting liability. *Id.* at 22. And Google further explained that the Supreme Court recently rejected an aiding-and-

---

[1] The First Amended Complaint ("FAC") also names Google's parent company Alphabet Inc. as a defendant, FAC at 1 (Dkt. 11), but it has since been dismissed from the case, Order at 47.

[2] The FAC also asserted three additional claims against Google. FAC ¶¶ 372–387, 388–391, 422–427. On January 21, 2025, counsel for Plaintiff indicated that she would agree to dismiss those claims against Google; accordingly, Google did not address those claims in its motion to dismiss. *See* Mot. at 6 n.4.

abetting theory similar to Plaintiff's in *Twitter, Inc. v. Taamneh*, declining to hold social media companies liable for their provision of "generally available" social media services to ISIS, even though the companies "allegedly knew that ISIS was using their platforms" for wrongdoing. *Id.* at 21–22 (quoting *Taamneh*, 598 U.S. 471, 503, 505 (2023)). Google also pointed out that Plaintiff had provided "no authority applying aiding-and-abetting liability to a products liability claim," and that Plaintiff's theory "would cause a massive expansion of tort liability in the business world." Defendants Google LLC's and Alphabet Inc.'s Reply in Support of its Motion to Dismiss ("Reply") at 5, 7 (Dkt. 99).[3]

On May 21, 2025, the Court declined to dismiss Plaintiff's claims against Google. *See* Order at 48.[4] With respect to the aiding-and-abetting claim, the Court concluded that Plaintiff's allegations plausibly showed that "Google possessed actual knowledge that [C.AI] was distributing a defective product to the public" based on "Google internal reports" about the defective nature of C.AI's chatbot. Order at 23. The Court also concluded that Plaintiff sufficiently alleged that Google substantially assisted C.AI in C.AI's allegedly tortious distribution of its chatbot. *See id.* at 23–24. According to the Court, Google's provision of cloud computing services to C.AI constituted "substantial assistance" based on allegations that the services "w[ere]

---

[3] Google also explained that its role as a prior employer and an investor are inadequate to support a claim for aiding and abetting. *See* Mot. at 19.

[4] The Court did, however, grant defendants' motions to dismiss Plaintiff's claim for intentional infliction of emotional distress, together with all of Plaintiff's claims against Alphabet Inc. *See* Order at 47–48.

necessary to building and maintaining" C.AI's chatbot services, and that "without Google's provision of" cloud services, C.AI's chatbot service "wouldn't be a product." *Id.* at 23–24 (quoting FAC ¶¶ 75, 77).

The Court recognized that under *Taamneh* and other precedents, "a defendant that provides generic, routine business services does not render substantial assistance." *Id.* at 21–22. Yet the Court distinguished Google's cloud services from the social media services at issue in *Taamneh* on the ground that those services "were available to the general public and not customized for the wrongdoers," while Google's cloud services were supposedly "only available to highly sophisticated parties and [are] catered to fit [C.AI's] specific needs." *Id.* at 24 (citing *Taamneh*, 598 U.S. at 498; FAC ¶¶ 40, 75–77).[5]

## ARGUMENT

## I.    The Court Should Certify The Order For Appeal.

The Court should certify its Order for appeal. All three requirements for certification of a non-final order for immediate appeal are present here. The Order (1) involves a "controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

---

[5] The Court also pointed to generalized allegations regarding the "amount and duration of Google's assistance, as well as the close relationship between Google and [C.AI]." *Id.*

## A.    The Order Involves At Least One Controlling Question Of Law.

The Order involves controlling questions of law. The decision ruled on defendants' motions to dismiss under Rule 12(b)(6), and "whether the complaint fails 'to state a claim upon which relief can be granted' is a question of law." *Whitten v. Clarke*, 41 F.4th 1340, 1347 (11th Cir. 2022) (citation omitted); *see also Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1290 (11th Cir. 2012) (taking appeal from order on motion to dismiss). Beyond that, whether providing commercially available business services to a company that distributes an allegedly unsafe product constitutes "substantial assistance" for purposes of aiding-and-abetting liability is exactly the kind of "pure question of law" that the Eleventh Circuit has explained satisfies this criterion. *Barrientos*, 951 F.3d 1269, 1275 n. 4 (citation omitted). It is a question that the Eleventh Circuit can rule on "without having to delve beyond the surface of the record in order to determine the facts." *Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007) (per curiam) (citation omitted). And it is "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of [this] particular case and give it general relevance to other cases in the same area of law." *Barrientos*, 951 F.3d at 1275 (citation omitted).

The aiding-and-abetting question is also "controlling." § 1292(b). It "controls at least a substantial part of the case" because appellate resolution of the issue in Google's favor should lead to the outright dismissal of Plaintiff's aiding-and-abetting claim against Google. *Barrientos*, 951 F.3d at 1275 n. 4. That is so even though other claims

in the case would remain. *See, e.g., id.* (finding this criterion satisfied where a "ruling in favor of" the party seeking immediate review would eliminate one, though not all, of the claims in the case); *see also In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n. 8 (6th Cir. 1992) ("[T]he resolution of an issue need not necessarily terminate an action" "to be 'controlling'") (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds,* 937 F.2d 44 (1991)).

## B.   There Is Substantial Ground For Difference Of Opinion.

There is also "substantial ground for difference of opinion" regarding the Court's conclusion that Plaintiff may proceed with its aiding-and-abetting claim against Google. § 1292(b). This requirement is met if a legal issue is "difficult and of first impression." *Australian Therapeutic Supplies Pty Ltd*, 2024 WL 756212, at *2 (citation omitted). Even when courts in this circuit "believe[] that the[ir] Order represents an accurate application of established legal principles," they may find this criterion satisfied where "the legal questions tackled in the Order are novel applications of those principles in which substantial ground for difference of opinion exists." *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2012 WL 13214854, at *2. That is precisely the case here. The Order distinguishes *Taamneh* but identifies no authority affirmatively supporting its holding. Under the Court's decision, providing commercially available business services to a company that distributes an allegedly unsafe product can create aiding-and-abetting

liability in tort. That is a "novel application[]" of aiding-and-abetting law that dramatically expands tort liability in the business world. *Id.*

The novel implications of the Order show why the issue is "difficult and of first impression," as does the tension the Order creates with Supreme Court precedent, including the recent decision in *Smith & Wesson Brands, Inc. See Australian Therapeutic Supplies Pty Ltd*, 2024 WL 756212, at *2. In addition, the fact that Plaintiff and the Court have cited no authority applying aiding-and-abetting law in the strict products liability context underscores the novel and difficult nature of the issue. *See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2012 WL 13214854, at *2 ("[T]he lack of any decisional authority on this point justifies a finding that substantial ground for difference of opinion exists on this question").

The implications of the Court's "novel application[]" of aiding-and-abetting law to Google are sweeping, *see id.*, which alone illustrates the substantial ground for difference of opinion over the Court's conclusion. The Court grounded its conclusion that Google's provision of cloud computing services constituted "substantial assistance," in allegations that Google's cloud computing services "w[ere] necessary to building and maintaining" C.AI's chatbot, and "without Google's" cloud services, the chatbot "wouldn't be a product." Order at 23–24 (quoting FAC ¶¶ 75, 77). But ordinary business services like Google Cloud will almost *always* be "necessary to building and maintaining" other products and services. *Id.* It is a feature of our

economic system that companies are able to create *new* products and services in large part by relying on the broad array of business services already available on the market.

In the internet economy, specifically, many companies are able to have an online presence only because of vendors like Google who offer cloud services to the public. Yet, under the reasoning of this Court's decision, internet providers, data storage companies, and even electric companies could potentially become liable in tort for the online operations of their business customers. Service providers would face this potential liability despite both the general and contractual nature of their services. That sort of broad and indeterminate tort liability could upend activities long understood to be lawful and vital to our economic ecosystem. Indeed, the mere threat of aiding-and-abetting liability in such circumstances may chill the development and availability of ordinary business services.[6]

These sweeping consequences are in considerable tension with Supreme Court and other precedent that repeatedly cabin the sweep of aiding-and-abetting liability, confirming the difficult and novel nature of the question. In *Taamneh*, for example, the Supreme Court cautioned that "if aiding-and-abetting liability were taken too far, then ordinary merchants could become liable for any misuse of their goods and services." 598 U.S. at 489; *accord Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir.

---

[6] Even setting aside the implications of the Order's reasoning, there is substantial room for disagreement with the Court's conclusion that Plaintiff has plausibly alleged that Google's cloud services were "necessary" for creating C.AI's chatbot. Order at 23. After all, Plaintiff's own allegations make clear that C.AI did not "partner[] with Google for Google Cloud services" until "almost one year" *after* C.AI launched its chatbot. *Id.* at 3 (citing FAC ¶¶ 69, 75).

2003) (Easterbrook, J.) ("Just as the telephone company is not liable as an aider and abettor for tapes or narcotics sold by phone, and the Postal Service is not liable for tapes sold (and delivered) by mail, so a web host cannot be classified as an aider and abettor of criminal activities conducted through access to the Internet."). The Supreme Court in *Taamneh* accordingly went on to reject the theory that the provision of social media services to ISIS created aiding-and-abetting liability on the part of the social media companies. *See* 589 U.S. at 500, 505.

Just this month, the Supreme Court again rejected an expansive theory of aiding-and-abetting tort liability, holding that gun manufacturers did not plausibly aid and abet the firearms offenses of gun dealers merely by selling guns to the dealers in the ordinary course. *See Smith & Wesson Brands, Inc.*, 2025 WL 1583281, at *7–8. Once again, the Supreme Court explained that there was no aiding-and-abetting liability where the "manufacturers treat[ed] rogue dealers just the same as they d[id] law-abiding ones—selling to everyone, and on equivalent terms." *Id.* at *7. On the contrary, the Supreme Court emphasized that finding liability in such circumstances "would stretch the bounds of our caselaw." *Id.* This is so even if the aider and abettor "knows that in some fraction of cases misuse will occur," because tort liability attaches only where a party "takes steps to 'promote'" the underlying misconduct "and 'make it his own.'" *Id.* at *6 (quoting *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir. 1940)). As the Supreme Court explained, gun manufacturers merely allowing "'bad actors' to make illegal use of their wares," constitutes "'indifference' rather than

12

assistance" for purposes of aiding and abetting. *Id.* at *8 (citing *Taamneh*, 598 U.S. at 489, 503) (cleaned up).

This Court's Order acknowledged that under *Taamneh* and other authorities, "a defendant that provides generic, routine business services does not render substantial assistance." Order at 21–22. The Court, however, found these cases inapplicable because Google's services were supposedly "only available to highly sophisticated parties and were catered to fit [C.AI's] specific needs." *Id.* at 24. According to the Court, that distinguishes Google's cloud services from the social media services at issue in *Taamneh*, "which were available to the general public and not customized for the wrongdoers." *Id.*

Google respectfully submits that there is substantial ground to disagree with that distinction. The reasoning of *Taamneh*, *Smith & Wesson*, and similar cases does not hinge on those customers being "the general public." *Id.* Rather, it hinges on the fact that companies are not liable merely for having customers who are tortfeasors or treating them "just the same as they do law-abiding ones." *Smith & Wesson Brands, Inc.*, 2025 WL 1583281, at *7. After all, the customers of the defendant gun manufacturers in *Smith & Wesson Brands, Inc.* were *gun dealers*, not the general public. *See, e.g., id.* at *7. Here, too, what matters is not whether the customer base for Google's cloud computing services is made up of "highly sophisticated parties," Order at 24, but rather the fact that Google's supposed misconduct arises from "merely allowing" C.AI to purchase the same services Google would offer to a non-tortfeasor

13

cloud computing customer. *See Smith & Wesson Brands, Inc.*, 2025 WL 1583281, at *8.

The Court's conclusion that Google's cloud computing services "were catered to fit [C.AI's] specific needs" does not narrow the novelty or difficulty of its ruling. Order at 24. At the threshold, the allegations the Court cites for the proposition do not actually indicate that the cloud services Google provided to C.AI were any different from those Google provided to its other cloud computing customers (or, for that matter, that these services were *not* offered to the public broadly). *See id.* (citing FAC ¶¶ 40, 75–77).[7] Even assuming the cloud services Google provided to C.AI were in some sense "catered to fit [C.AI's] specific needs," that should not be enough for aiding-and-abetting liability to attach. *Id.* At minimum, that question is novel and difficult, with expansive implications. After all, many generic business-to-business services are tailored or customized. To take a familiar example, internet users have "specific needs" regarding internet speed that internet providers cater to—a video editing company that regularly downloads and uploads large files may need faster internet speed than a cafe using the internet for customers' casual web browsing. Yet

---

[7] In fact, Plaintiff did not and could not allege that Google Cloud's services are only offered to highly sophisticated parties. The paragraphs of the Complaint the Court cites for its claim rely on materials that show the opposite. These include a public presentation in which Google Cloud's CEO discussed the services C.AI purchased as one example of Google's offerings "whether you're an individual developer or a full-scale enterprise" and one of "thousands of companies using our generative AI platform"; adding, "and yes, each and every one of you can too." See Google, Google Keynote (Google I/O '23), YouTube (May 10, 2023), https://www.youtube.com/watch?v=cNfINi5CNbY&t=3239s (starting at 53:59) (cited at FAC ¶ 76 n.41).

an internet provider is classically not "an aider and abettor" of activities "conducted through access to the Internet." *GTE Corp.*, 347 F.3d at 659. That should not change just because the company caters to the varying needs of its customers by providing some with high-speed internet and others with lower-speed internet. The same applies to myriad other commonplace services: An office business may negotiate with its phone provider for customer service lines, a shipping company may enter into customized vehicle rental agreements to meet its seasonal needs, and a factory may have a bespoke arrangement with its electric company. So too with Google. Even if Google provided a package of cloud services catered to C.AI's specific needs, that does not change the nature of cloud services, which are a generic business service available broadly to Google's customer base.

The expansive scope of secondary liability outlined in the Order is not meaningfully limited by the fact that aiding-and-abetting liability will attach to a general service provider only if it has "knowledge" of a customer-tortfeasor's wrongdoing. Under the Court's theory, a general service provider could face aiding-and-abetting liability any time it becomes aware of potential dangers associated with a customer's product or service and does not immediately stop providing its services to that customer. That would mean, for example, that any time the existence of an allegedly defective online service came to light, internet providers could face aiding-and-abetting liability for continuing to provide internet services to the company

responsible for the online service. After all, internet access is "necessary" for the creation and function of any online service.[8]

That result is particularly far-reaching given that Plaintiff's claim is that Google aided and abetted C.AI's alleged strict product liability offense. As Google has previously explained, there is a fundamental "mismatch between products liability—which, particularly in Florida, focuses not on 'the conduct of the manufacturer' but on the 'design of the product,'" "and the demanding 'actual knowledge' standard for aiding and abetting," Reply at 5–6 (citations omitted), under which merely "knowing that . . . wrongdoers were using [a company's] services and failing to stop them" does not suffice for aiding-and-abetting liability, *Taamneh*, 598 U.S. at 503. *See also Smith & Wesson Brands, Inc.*, 2025 WL 1583281, at *6 (explaining that secondary liability is available only when a party "takes steps to 'promote'" the underlying misconduct "and 'make it his own.'") (quoting *Falcone*, 109 F.2d at 581). Plaintiff's failure to cite "any decisional authority" finding aiding-and-abetting liability in the strict products liability context underscores that mismatch and "justifies a finding that substantial ground for difference of opinion exists" regarding this novel and difficult issue. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2012 WL 13214854, at *4.

---

[8] *See also* Reply at 7–8 (explaining that under Plaintiff's theory, adopted by the Court in its Order, "[a] lessor of manufacturing equipment to an automobile company accused of safety issues might be said to have 'actual knowledge' about the dangers of its cars from 'reports and investigations,' and the car company might 'not be able to launch its . . . product to market' without the equipment") (citations omitted).

In sum, the implications of the Court's Order are that companies are not shielded from aiding-and-abetting liability for providing ordinary business services if (1) their customer base is any narrower than "the general public" and/or (2) the ordinary business services they provide involve a degree of customization. That constitutes a significant broadening of liability beyond the bounds defined in *Taamneh* and *Smith & Wesson Brands, Inc.* Even if the Court is correct in both narrowing the aiding-and-abetting protections laid out in those cases and applying them to the strict liability context, its view on this issue pushes the outer bounds of tort liability. At a minimum, the Court's "novel application[]" of aiding-and-abetting liability, *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2012 WL 13214854, at *2, implicates a "difficult" question of "first impression," *Australian Therapeutic Supplies Pty Ltd*, 2024 WL 756212, at *2, particularly in the wake of *Smith & Wesson Brands, Inc.* The "strength of the arguments in opposition to the challenged ruling," as laid out above, show that "the issue for appeal is truly one on which there is a *substantial* ground for dispute." *United States ex rel. Armfield v. Gills*, 2011 WL 2084072, at *2 (M.D. Fla. May 24, 2011).

## C.    An Immediate Appeal May Materially Advance The Ultimate Termination of the Litigation.

Finally, immediate review of the aiding-and-abetting question "may materially advance the ultimate termination of the litigation" for at least two related reasons. § 1292(b).

First, immediate resolution of this threshold issue could dictate whether Plaintiff's aiding-and-abetting claim against Google remains in the case. That would "materially advance" the litigation both because it "would serve to avoid a trial" on the aiding-and-abetting claim and because it would "otherwise substantially shorten the litigation" by narrowing the case against Google. *In re Cruz*, 2019 WL 2084525, at \*2 (M.D. Fla. May 12, 2019) (citation omitted). Dismissing the aiding-and-abetting claim at the pleading stage would eliminate an entire factual theory regarding Google's conduct in the case, streamlining discovery and clarifying the nature and scope of the remaining claims—both outcomes that would focus the litigation and "substantially shorten" it. *Id.* at \*2. That is so even if "numerous other issues" remain in the case, given that "an immediate appeal would [still] hasten the *ultimate* disposition of this case." *In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 924 (S.D. Fla. 2005); *see also Armor Screen Corp. v. Storm Catcher, Inc.*, 2010 WL 11505239, at \*3 (S.D. Fla. June 21, 2010) ("While the interlocutory appeal need not have the potential to resolve the entire case, at least one of the plaintiff's substantive claims should stand to be affected") (citation omitted).

Indeed, "without intervention at this point, resolution of the appellate issue[] raised herein would be extremely prolonged" given that Google "retain[s] the right to assert th[is] and any other appellate grounds at a full plenary appeal following a trial on the merits." *In re Pac. Forest Prods. Corp.*, 335 B.R. at 924–25. In other words, the Eleventh Circuit "will be forced to consider the merits of these appeals at some point,"

"[b]ut consideration now bears the benefit of crystallizing the issues at trial, and, importantly, staving off a potential re-trial" should the Eleventh Circuit "reverse the . . . Order later." *Id.* at 925. Simply put, "[t]he ultimate litigation between the parties will be hastened by this Court's grant of interlocutory appeal." *Id.*

Second, and relatedly, "an interlocutory appeal materially advances the termination of the litigation where[, as here,] it could shorten the time, effort and expense of the litigation." *Cardoso*, 2012 WL 12949983, at *4 (citation omitted); *see also, e.g.*, *Doe 2 v. Red Roof Inns, Inc.*, 2020 WL 6334801, at *3 (N.D. Ga. Apr. 29, 2020) (explaining that "one of the factors to consider" when determining if an immediate appeal would "materially advance" litigation is "the extent to which additional time and expense may be saved by the appeal") (citation omitted). If Plaintiff is permitted to continue litigating her case against Google based on alleged aiding and abetting that the Eleventh Circuit ultimately holds is not applicable to the provision of ordinary business services (particularly in the strict product liability law context), then the Court and the parties will undergo massive wasted effort—in the form of fact and expert discovery, summary judgment motions, as well as any trial on the issue. *See also, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 3326850, at *4 (N.D. Ala. June 12, 2018) ("If the Eleventh Circuit were to disagree with the court's ruling, finding out sooner (rather than later) would save millions more dollars and, potentially, years of full-scale litigation, not to mention the potential for avoiding the need for re-trial"). By contrast, an immediate appeal would "give[] all

stakeholders—the Court, litigants, and counsel, as well as would-be [aiding and abetting] plaintiffs and defendants—quicker clarity on the pleading standards for asserting [aiding-and-abetting] claims and the potential scope of liability for such claims, where, as here, the claims are based on" the provision of ordinary business services in the strict products liability context. *Red Roof Inns, Inc.*, 2020 WL 6334801, at *3.

Because all three requirements for certification under Rule 1292(b) are satisfied, the Court should certify its Order.

## II.    The Court Should Stay Proceedings Pending Appeal.

If the Court grants Google's motion for certification, it should also stay all proceedings in this case, including discovery, pending the completion of proceedings on appeal. A district court may enter a stay both under § 1292(b) itself and the Court's inherent authority to control its docket. *See* 28 U.S.C. § 1292(b) (granting the district judge authority to stay proceedings in connection with a request for immediate appeal); *CMR Constr. & Roofing LLC v. The Orchards Condo. Ass'n, Inc.*, 2024 WL 4501535, at *1 (M.D. Fla. Oct. 16, 2024) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.") (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

As explained above, appellate guidance on the validity and scope of Plaintiff's aiding-and-abetting claim will materially advance the resolution of this matter. Even short of disposing of the claim, the Eleventh Circuit's views will have a material

20

impact on the scope of discovery. To fully secure the benefits of immediate appellate
review, the case should not proceed with discovery until that guidance is received.
*See Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *4 (N.D. Cal.
Sept. 16, 2008) (finding that "the most efficient course is to stay proceedings pending
resolution of interlocutory appeal" because "[a] stay could promote economy of time
and effort for the Court, counsel, and litigants"); *see also, e.g.*, *Dial v. Healthspring
of Ala., Inc.*, 612 F. Supp. 2d 1205, 1208 (S.D. Ala. 2007) (granting stay in
conjunction with § 1292(b) certification for immediate appeal).

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court certify its
Order of May 21, 2025 Granting in Part and Denying in Part Motions to Dismiss (Dkt.
115) for immediate appeal pursuant to 28 U.S.C. § 1292(b), and stay proceedings in
this case pending that appeal.

Respectfully submitted,

Dated: June 18, 2025                      */s/ Lauren Gallo White*

Jay B. Shapiro
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 W. Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
jshapiro@stearnsweaver.com

Lauren Gallo White (PHV) (Lead Counsel)
WILSON SONSINI GOODRICH & ROSATI

21

One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105-1126
(415) 947-2000
lwhite@wsgr.com

Fred A. Rowley, Jr. (PHV)
Matthew K. Donohue (PHV)
WILSON SONSINI GOODRICH & ROSATI
953 E. Third Street, Suite 100
Los Angeles, CA 90013
(323) 210-2900
fred.rowley@wsgr.com
mdonohue@wsgr.com

*Counsel for Google LLC and Alphabet Inc*

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that, pursuant to Local Rule 3.01(g), counsel for Google LLC conferred with counsel for Plaintiff about this motion via email, after counsel for Plaintiff declined to speak by phone. Counsel for Plaintiff confirmed Plaintiff's opposition to the requested relief.

Dated: June 18, 2025

*/s/ Lauren Gallo White*
Lauren Gallo White

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 18, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have registered to receive notifications.

*/s/ Jay B. Shapiro*
Jay B. Shapiro

23