# EXHIBIT "A"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA, individually and as the Personal Representative of the Estate of S.R.S. III,<br><br>Plaintiff,<br><br>v.<br><br>CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FRIETAS ADIWARSANA; GOOGLE LLC; ALPHABET INC.,<br><br>Defendants. | Case No.: 6:24-cv-01903-ACC-DCI |

**Brief of *Amici Curiae* NetChoice and Chamber of Progress in Support of Character Technologies Inc.'s Motion for Certification of Immediate Appeal Pursuant to 28 U.S.C. §1292(b) and for Stay Pending Appellate Review**

**Introduction**

This case raises a novel and consequential question of law – whether the First Amendment protects generative AI outputs. The answer to that question has broad implications beyond the parties to this case; this Court's May 21, 2025 ruling (Order, Dkt. 115) that the First Amendment does not protect generative AI output could plunge a nascent and innovative industry into uncertainty, increasing litigation risk, deterring investment and development, and jeopardizing future technological

breakthroughs. This Court should grant certification for interlocutory appeal to enable the Eleventh Circuit Court of Appeals to provide critically important guidance to the generative AI industry, regulators, and courts alike.

## Statement of Interest of *Amici Curiae*

NetChoice is a national trade association of online businesses that share the goal of promoting free enterprise and free expression on the Internet. For over two decades, NetChoice has worked to ensure the Internet remains innovative and free. NetChoice advocates on behalf of its membership by, among other things, participating in litigation involving issues of vital concern to the online community and by filing amicus curiae briefs in cases that, like this one, could shape the way important technological innovations develop. Several of NetChoice's members develop and provide generative AI applications and services. A list of NetChoice's members is available at: https://tinyurl.com/yuwv2eat.

Chamber of Progress is a tech-industry association devoted to a progressive society, economy, workforce, and consumer climate. Chamber of Progress backs public policies that will build a fairer, more inclusive country in which all people benefit from technological leaps. Chamber of Progress seeks to protect Internet freedom and free speech, to promote innovation and economic growth, and to empower consumers. A list of Chamber of Progress' corporate partners is available at: https//progresschamber.org/partners.

*Amici* advocate for prompt interlocutory review of this court's May 21, 2025 order, which will provide necessary guidance on a critically important legal issue,

whether generative AI outputs are protected under the First Amendment. This Court should grant Character Technologies Inc.'s motion for certification of immediate appeal pursuant to 28 U.S.C. §1292(b) and for stay pending appellate review.

## Argument

I. **Certification is Appropriate Under 28 U.S.C. §1292(b).**

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal when: (1) the order involves a controlling question of law, (2) there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See McFarlin v. Conseco Servs.*, LLC, 381 F.3d 1251, 1262 (11th Cir. 2004). This Court has discretion to certify such an appeal and should do so when the legal question presented is novel or of broad legal significance.

Courts in this Circuit have found certification justified when the question posed has effects far beyond the parties to the case—clarifying the law, promoting consistency, and conserving judicial resources where the answer will guide other courts in resolving similar cases. In *Baxter v. Miscavige*, the district court for the Middle District of Florida held that interlocutory appeal was appropriate where "guidance from the Eleventh Circuit will aid district courts in a large number of cases." *Baxter v. Miscavige*, No. 8:22-cv-986-TPB-JSS, 2023 U.S. Dist. LEXIS 99401, at *7, *8–9 (M.D. Fla. June 7, 2023). Similarly, in *McFarlin* v. *Conseco Servs.*, the Eleventh Circuit Court of Appeals emphasized that "[t]he legal question must be stated at a high enough level

3

of abstraction to lift the question out of the details of the evidence or facts of a particular case and *give it general relevance to other cases in the same area of law.*" *McFarlin*, 381 F.3d at 1259 (emphasis added). Questions regarding the constitutional status of AI-generated content will inevitably recur in future litigation. Prompt guidance from the Eleventh Circuit will significantly aid this and other courts in deciding cases involving generative AI.

In addition, district courts "should not hesitate to certify an interlocutory appeal" when the "ruling involves a new legal question or is of special consequence." *Benson v. Enter. Leasing Co. of Orlando, LLC,* No. 6:20-cv-891-RBD-LRH, 2021 U.S. Dist. LEXIS 55137, at *21 (M.D. Fla. Feb. 4, 2021) (quoting *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110–11 (2009)). The question proposed for certification here—whether output generated by generative AI constitutes "speech" protected by the First Amendment—meets that threshold. It is a matter of first impression not just in this Circuit but nationwide. Its resolution will determine the scope of constitutional protections afforded to one of the most consequential and rapidly evolving technologies of our time. The Eleventh Circuit and other jurisdictions have recognized that courts must resolve questions implicating the reach of the First Amendment's protections as quickly as possible, due to the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *see also Karaduman v Newsday, Inc.*, 51 N.Y.2d 531, 545 (N.Y. 1980); *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966). So long as the constitutional status

of generative AI output remains pending before a court, potentially protected speech is unconstitutionally stifled, for the "'[t]he threat of being put to the defense of a lawsuit…may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself.'" *Karaduman,* 51 N.Y.2d at 545 (quoting *Keogh*, 365 F.2d at 968). Given these far-reaching implications for users, courts, industry, and policymakers, the issue of whether generative AI output is "speech" must be quickly resolved.

## II. Whether and to what extent the First Amendment protects generative AI output will have broad and consequential implications for industry, consumers, and policymakers.

Generative AI has emerged as a powerful technological force, already transforming business, scientific research, education, creativity, and daily life. According to a study published by McKinsey and Company, approximately 71% of global companies report using generative AI.[1] Moreover, experts estimate its total annual economic benefits could range from $6.1 to $7.9 trillion.[2] Investments have likewise surged, with U.S. private investment in generative AI reaching $33.9 billion

---

[1] Alex Singla et al., McKinsey & Co*., The State of AI: How Organizations Are Rewiring to Capture Value*, 16, (2025). https://www.mckinsey.com/~/media/mckinsey/business%20functions/quantumblack/our%20insights/the%20state%20of%20ai/2025/the-state-of-ai-how-organizations-are-rewiring-to-capture-value_final.pdf?shouldIndex=false.

[2] Cameron Miller et al., Data Catalyst Inst., The Economic Importance of Fair Use for the Development of Generative Artificial Intelligence, 5 (2025), https://datacatalyst.org/wp-content/uploads/2025/06/The-Economic-Importance-of-Fair-Use-for-Development-of-Generative-Artificial-Intelligence.pdf

in 2024.[3] Governments around the world are also making significant investments in generative AI.[4]

Generative AI is driving innovation across diverse sectors. In science and medicine, it accelerates protein sequencing[5] and drug discovery.[6] In education, it is expanding access to personalized learning.[7] In the creative economy, it co-authors content and assists in design. In the digital economy, it can write and test software code and develop new product ideas. And, millions of people around the world[8] are using AI tools in professional and personal contexts for everything from writing software code and analyzing data to making videos, learning languages, preparing for job interviews, guiding home repairs, explaining technical and medical documents, creating marketing materials for small businesses, and generating personalized bedtime stories with their children.[9] Generative AI is also helping people with

---

[3] Stanford Inst. for Human-Centered Artificial Intelligence, Artificial Intelligence Index Report 2025, 3 (2025), https://hai.stanford.edu/assets/files/hai_ai_index_report_2025.pdf.

[4] *Id.* at 4.

[5] *Id.* at 286; *See also* Josh Abramson et al., *Accurate Structure Prediction of Biomolecular Interactions with AlphaFold 3*, 630 Nature 493 (2024), available at https://www.nature.com/articles/s41586-024-07487-w. Two researchers won the Nobel Prize in Chemistry for their work with AlphaFold in 2024. Stanford Inst. *supra* n. 3 at 20.

[6] *Id.* at 313.

[7] *Id.* at 367.

[8] Earlier this year, OpenAI CEO Sam Altman stated that ChatGPT alone is used by more than 500 million people per week. *See* Angela Palumbo, Sam Altman, *Tech Execs Push Congress for Backing in AI Race Against China*, Barron's (May 8, 2025), available at https://www.barrons.com/articles/ai-race-china-altman-chatgpt-61c1593a?mod=barronsgooglenews&utm_source=chatgpt.com.

[9] *See* Marc Zao-Sanders, How People are Really Using Generative AI Now (March 2025), available at https://learn.filtered.com/hubfs/The%202025%20Top-100%20Gen%20AI%20Use%20Case%20Report.pdf.

disabilities in innovative ways – providing real time audio descriptions of the world for people with visual disabilities, generative voice models for people with difficulty speaking, and adapting content for individual needs.[10]

Existing generative AI tools can produce sophisticated content across multiple modalities—including video, real-time translation, virtual environments, and interactive dialogue. These capabilities hold promise for further transforming technology, education, scientific research, accessibility, and productivity. Yet legal uncertainty risks chilling investment, deterring innovation, and encouraging a patchwork of inconsistent court decisions and regulations. Already in 2025, all 50 U.S. states have introduced legislation related to AI, with 28 states and the Virgin Islands enacting over 75 of those bills.[11] According to legal scholar Eric Goldman, this flood of regulatory initiatives could "severely stunt the innovative trajectory of [generative AI] and possibly wipe it out entirely."[12] Without constitutional protection for generative AI, Goldman explains, this "regulatory tsunami will eliminate" generative AI applications "outright or render them useless. We also lose the potential benefits that would emerge over time, as new applications and innovations build on

---

[10] Krista Chavez, NetChoice, AI's Transformative Power: Revolutionizing Accessibility for People With Disabilities, NetChoice (July 16, 2024), available at https://netchoice.org/ais-transformative-power-revolutionizing-accessibility-for-people-with-disabilities/.

[11] National Conference of State Legislatures, Artificial Intelligence 2025 Legislation Summary (June 09, 2025), available at https://www.ncsl.org/technology-and-communication/artificial-intelligence-2025-legislation.

[12] Eric Goldman, Generative AI is Doomed, Santa Clara Univ. Legal Studies Research Paper No. 4802313 (April 16, 2024) at 17, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4802313.

7

each other…we'll never know what could have been."[13] With such high stakes, prompt interlocutory appellate review is needed to provide certainty to courts, regulators and industry.

## Conclusion

For these reasons, this Court should grant Character Technologies Inc.'s Motion for Certification of Immediate Appeal Pursuant to 28 U.S.C. §1292(b) and for Stay Pending Appellate Review.

Dated: June 25, 2025

Respectfully submitted,

*/s/ Marisa R. Dorough*
Marisa R. Dorough (Lead Counsel)
Florida Bar No.: 73152
*mdorough@bakerdonelson.com*
Hal K. Litchford
Florida Bar No. 272485
*hlitchford@bakerdonelson.com*
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 S. Orange Ave., Ste. 2050
Orlando, FL 32801
Tel: 407-422-6600
*Counsel for Amici Curiae NetChoice and Chamber of Progress*

---

[13] *Id.*