# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA and SEWELL SETZER JR., individually and as the Personal Representatives of the Estate of S.R.S III, <br><br> Plaintiffs, <br><br> v. <br><br> CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FRIETAS ADIWARSANA; GOOGLE LLC <br><br> Defendants. | Civil No. 6:24-cv-01903-ACC-DCI <br><br> OPPOSITION TO DEFENDANT CHARACTER TECHNOLOGIES, INC.'S MOTION FOR CERTIFICATION OF IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND FOR STAY PENDING APPELLATE REVIEW |

### OPPOSITION TO DEFENDANT CHARACTER TECHNOLOGIES, INC.'S MOTION FOR CERTIFICATION OF IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND FOR STAY PENDING APPELLATE REVIEW

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL HISTORY ....................................................................... 1

III.  ARGUMENT ............................................................................................ 2

   A.  Certification Should Only Be Granted In Rare Circumstances. .................... 2

   B.  Character Fails to Identify a Controlling Question of Law ............................ 4

      1.  Character's Certified Question is Not Outcome Determinative ................ 5

      2.  The Constitutional Status of LLM Outputs is Not an Issue of Pure Law .. 7

   C.  Character Fails to Identify Substantial Ground for Difference of Opinion. ...................................................................................... 10

   D.  Early Resolution Would Not Materially Advance the Overall Determination of this Case. ................................................................ 12

   E.  A Stay Would Needlessly Delay This Case. .................................................. 16

IV.  CONCLUSION ....................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alley v. Farmers Bank*,
  No. 3:13-CV-146 (CAR), 2015 WL 13449662 (M.D. Ga. Mar. 23, 2015) ........................................................................................ 16

*U.S. ex rel. Armfield v. Gills*,
  No. 8:07-CV-2374-T-27TBM, 2011 WL 2084072 (M.D. Fla. May 24, 2011) .......................................................................... 17, 19, 20

*Aurelius Capital Master, Ltd. v. Tousa Inc.*,
  No. 08–61317–CIV, 2009 WL 6453077 (S.D. Fla. Feb. 6, 2009) ........................... 5

*Baxter v. Miscavige*,
  No. 8:22-cv-986, 2023 WL 3863287 (M.D. Fla. June 7, 2023) .............................. 18

*Bear v Escambia Cty Bd Cty Comm'rs.*,
  No. 3:19cv4424-MCR-HTC, 2021 WL 12169650 (N.D. Fla. May 17, 2021) ........................................................................................... 9

*Beckwith v. City of Daytona Beach Shores, Fla.*,
  58 F.3d 1554 (11th Cir. 1995) ................................................................... 11

*Benson v. Ent. Leasing Co. Orlando, LLC*,
  No. 6:20-cv-891-RBD-LRH, 2021 WL 1078410 (M.D. Fla. Feb. 4, 2021) ..................................................................................... 13, 19

*Consumer Fin. Prot. Bureau v Frederick J. Hanna & Assocs., P.C.*,
  165 F. Supp. 3d 1330 (N.D. Ga. 2015) ................................................ 12

*Fabricant v. Sears Roebuck & Co.*,
  No. 98-1281-CIV-NESBITT, 2001 WL 883303 (S.D. Fla. Jan. 29, 2001) ................................................................................. 15, 18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................... 19

*Grajales v. Genesco, Inc.*,
  No. 8:23-CV-420-SCB-TGW, 2023 WL 7135899 (M.D. Fla. Oct. 31, 2023) ..................................................................................... 16

*Grand Lodge of Pennsylvania v. Peters*,
No. 8:07-CV-479-T-26EAJ, 2008 WL 2790237 (M.D. Fla. July 18, 2008) .......................................................................................... 10

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
No. 19-CV-23591, 2020 WL 3433147 (S.D. Fla. June 23, 2020) ........................ 4, 12

*Lindke v Freed*,
601 U.S. 187 (2024) ......................................................................................... 9

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) ................................................................. *passim*

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) (Alito, J., Concurring) ........................................... 1, 9, 10

*Nat'l Ass'n of Afr.-Am. Owned v. Charter Commc'ns, Inc.*,
No. CV 16-609-GW(FFMX), 2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) .......................................................................................... 18

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
549 F.3d 1344 (11th Cir. 2008) ............................................................... 3, 4

*Petersen v. Am. Gen. Life Ins. Co.*,
No. 3:14-CV-100-J-39JBT, 2016 WL 11806893 (M.D. Fla. Dec. 16, 2016) .......................................................................................... 16

*In re Poe Fin. Grp., Inc.*,
No. 06-bk-04288-CPM, 2010 WL 2431919 (M.D. Fla. June 16, 2010) ................. 13

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) ...................................................................................... 14

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ........................................................................ 13

*Reyes v. BCA Fin. Servs., Inc.*,
No. 16-24077-CIV-GOODMAN, 2018 WL 2849768 (S.D. Fla. June 8, 2018) ............................................................................................. 4

*Rodriguez v. Procter & Gamble Co.*,
499 F. Supp. 3d 1202 (S.D. Fla. 2020) ..................................................... 6, 14

*S.R. v. United States*,
555 F. Supp. 2d 1350 (S.D. Fla. 2008) .......................................................... 8

*Samsung Semiconductor, Inc. v. AASI Liquidating Trust ex rel. Welt*,
No. 12-23707-CIV, 2013 WL 704775 (S.D. Fla. Feb. 26, 2013) ............................... 5

*SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*,
No. 1:18-CV-01991-SDG, 2020 WL 6782049 (N.D. Ga. Nov. 18,
2020) ....................................................................................................... 12, 13

*Scoggins v. Floyd Healthcare Mgmt.*,
No. 4:14-CV-0274-HLM-WEJ, 2016 WL 11544903 (N.D. Ga. Apr. 4,
2016) ............................................................................................................... 7

*Snyder v. Phelps*,
562 U.S. 443 (2011) ...................................................................................... 9

*Thomson Reuters Ent. Centre GMBH v. Ross Intelligence, Inc.*,
Dkt. 84, No. 1:20-CV-613-SB (D. Del. May 23, 2025) ............................... 14

*United States v. One Parcel of Real Prop. With Bldgs., Appurtenances &
Improvements*,
767 F.2d 1495 (11th Cir. 1985) ................................................................. 4, 8

In re *Wiand*,
No. 8:10-CV-71-T-17MAP, 2012 WL 611896 (M.D. Fla. Jan. 4,
2012) .......................................................................................................... 5, 13

**Statutes**

28 U.S.C. § 1292 ................................................................................... *passim*

**Other Authorities**

First Amendment .................................................................................. *passim*

# I.    INTRODUCTION

When confronted with the application of a constitutional requirement to new technology, we should proceed with caution. While the meaning of the Constitution remains constant, the application of enduring principles to new technology requires an understanding of that technology and its effects. Premature resolution of such questions creates the risk of decisions that will quickly turn into embarrassments.

*Moody v. NetChoice, LLC*, 603 U.S. 707, 796 (2024) (Alito, J., Concurring).

This Court should deny the request by Defendant Character Technologies ("Character") to certify for immediate appeal the denial of Character's motion to dismiss. Character's motion fails to satisfy any of the requirements of 28 U.S.C. § 1292(b), much less all three.

While the First Amendment issues raised in this matter are both timely and profound, they cannot "be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of [this] particular case." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). Premature resolution of weighty First Amendment issues through interlocutory review would deprive the Eleventh Circuit of a fulsome record from which to decide the case, create piecemeal litigation, waste judicial resources, and needlessly delay the efficient resolution of this important case. Character's motion for § 1292(b) certification should therefore be denied.

## II.    PROCEDURAL HISTORY

On January 24, 2025, Defendants Google and Character each filed independent pre-answer motions to dismiss all of Plaintiffs' claims. *See* Character Technologies, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Dkt.

59) and Google LLC's and Alphabet Inc.'s Motion to Dismiss First Amended Complaint and Memorandum of Law in Support (Dkt. 61). On May 21, 2025, the Court issued an order granting in part and denying in part Defendants' Motions to Dismiss. Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Dkt. 115) (hereinafter "Order"). The Court's 48-page Order meticulously detailed the reasoning behind the Court's decision for each defendant and each claim at issue. The Court rejected Character's argument that Plaintiffs' tort claims are barred in their entirety by the First Amendment, ruling that it was "not prepared to hold that the Character A.I. LLM's output is speech at this stage." Order at 27.

Character now seeks to certify the Order based on the Court's First Amendment ruling. Character Technologies, Inc.'s Motion for Certification of Immediate Appeal Pursuant to 28 U.S.C. § 1292(B) and for Stay Pending Appellate Review (Dkt. 130) (hereinafter "Motion to Certify"). Specifically, Character crafts the following question for certification: "Do users lack First Amendment rights as *listeners* to receive information and ideas communicated by generative AI technologies absent a separate showing of 'expressive choice' by a human *speaker*?" *Id.* at 1 (emphasis in original).

### III.    ARGUMENT

### A.    Certification Should Only Be Granted In Rare Circumstances.

Generally, litigants in federal court are required to wait until after a final judgment to appeal. *McFarlin*, 381 F.3d at 1264 ("the great bulk of [appellate] review must be conducted after final judgment[.]"). Section 1292(b) therefore "sets

2

a high threshold for certification to prevent piecemeal appeals." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1358–59 (11th Cir. 2008). In the Eleventh Circuit, interlocutory review under § 1292(b) is available "only in exceptional cases where decision of the appeal may avoid protracted and expensive litigation ... where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *McFarlin* 381 F.3d at 1256 (quoting Report of the Committee on Appeals from Interlocutory Orders of the Courts, Sept. 23, 1953, reprinted in 1958 U.S.C.C.A.N. 5258, 5260–61).  Interlocutory appeal under 28 U.S.C. § 1292(b) serves as a "rare exception" to the general rule that final judgment must precede appellate review, *id*, and is not to be used merely a vehicle for "early appellate review of hard cases[.]" *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-GOODMAN, 2018 WL 2849768, at *3 (S.D. Fla. June 8, 2018).

Within the Eleventh Circuit, there is a "strong presumption against interlocutory appeals." *United States v. One Parcel of Real Prop. With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985). Liberal use of § 1292(b) is considered "bad policy," *McFarlin*, 381 F.3d at 1259, and district courts in Florida have "acknowledge[ed] the profound hurdles that parties face in seeking interlocutory appeal[.]" *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-CV-23591, 2020 WL 3433147, at *2 (S.D. Fla. June 23, 2020). Recognizing this uphill battle, the Eleventh Circuit has observed that § 1292(b) certification is a "high threshold" and "[m]ost interlocutory orders do not meet this test." *OFS Fitel, LLC*, 549 F.3d at 1359 (11th Cir. 2008).

3

To justify a departure from the well-established rule, the movant must demonstrate that there is "(1) a controlling question of law; (2) over which there is a substantial ground for difference of opinion among courts; and (3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation." *Havana Docks*, 2020 WL 3433147, at *2 (citing 28 U.S.C. § 1292(b)). The movant "bears the 'burden of persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Samsung Semiconductor, Inc. v. AASI Liquidating Trust ex rel. Welt*, No. 12-23707-CIV, 2013 WL 704775, at *4 (S.D. Fla. Feb. 26, 2013) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). Failure to satisfy *any* element is fatal to § 1292(b) certification. Further, even if the movant can satisfy all three requirements, the determination of whether to grant or deny interlocutory review is "committed 'wholly' to the discretion of the district court and the court of appeals." *In re Wiand*, No. 8:10-CV-71-T-17MAP, 2012 WL 611896, at *3 (M.D. Fla. Jan. 4, 2012).

## B.    Character Fails to Identify a Controlling Question of Law.

Under the first prong of § 1292(b), "the movant must demonstrate that there is a question of law, and it is controlling." *Aurelius Capital Master, Ltd. v. Tousa Inc.*, No. 08–61317–CIV, 2009 WL 6453077, at *14 (S.D. Fla. Feb. 6, 2009).  To warrant certification, the question must be one of "pure law" that can be decided "quickly and cleanly without having to study the record." *McFarlin*, 381 F. 3d. at 1258. The question must "be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general

4

relevance to other cases in the same area of law." *Id*. at 1259. By contrast, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Id*.

In its Motion, Character conflates a pure question of law with a novel question of law. The question Character poses for certification—whether users' ancillary First Amendment rights as listeners hinge on a human's predicate expressive intent—may be intellectually beguiling and historically significant, but that alone does not push Character's showing over § 1292(b)'s high threshold.

### 1.   *Character's Certified Question is Not Outcome Determinative*

First, courts in this Circuit recognize that a pure question of law must be outcome determinative. *Rodriguez v. Procter & Gamble Co.*, 499 F. Supp. 3d 1202, 1207 (S.D. Fla. 2020) ("A question is controlling when it is 'outcome determinative.'") (citing *Javier Rivera v. Sellers*, 2019 WL 2583634, at *3 (S.D. Ga. June 21, 2019)). That is not the case here.  Character Technologies sought dismissal on the ground that "the First Amendment bars all Plaintiff's claims." Character Technologies, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint at 6 (Dkt. 59). Plaintiffs argued in opposition that (1) Character.AI's LLM driven output is not "speech" under the First Amendment; (2) even if speech, it is unprotected by the First Amendment; and (3) even if protected speech, the tort law claims at issue are content-neutral warranting only intermediate scrutiny. Plaintiff's Response in Opposition to Character Technologies, Inc's Motion to Dismiss at 6–14 (Dkt. 85). Even if the Eleventh Circuit answers Character's

question in the negative and finds that expressive intent is not tied to humanness, this Court will still need to determine whether such speech was protected and/or fell within one of the well-recognized exceptions to First Amendment protection.

Further, if the Court were to determine that none of the exceptions to protected speech apply here, it would still have to identify the adequate level of First Amendment review to apply to each of Plaintiffs' claims in determining whether or not those claims are barred. Several claims, including the FDUTPA and unjust enrichment claims for example, are based solely on Defendants' alleged product design and user data business practices that have no bearing on whether or not users have some unqualified First Amendment right to receive outputs produced by a large language model.

Even if the Eleventh Circuit both accepts interlocutory review and answers the certified question in Character's favor, the question of whether Character is entitled to dismissal based on its First Amendment affirmative defense would remain unresolved. Because Character's certified question is not outcome determinative, interlocutory review under § 1292(b) is unwarranted. *Compare Scoggins v. Floyd Healthcare Mgmt.*, No. 4:14-CV-0274-HLM-WEJ, 2016 WL 11544903, at *3 (N.D. Ga. Apr. 4, 2016) (discovery-related issue not controlling because it was "certainly not dispositive"), *with S.R. v. United States*, 555 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008) (controlling because the availability of equitable tolling "is wholly dispositive as to the viability of [plaintiff's] claims").

2. *The Constitutional Status of LLM Outputs is Not an Issue of Pure Law*

Character's certified question is imbued with significant factual determinations concerning how Character developed and deploys its product. At the outset, Character misconstrues the Court's order as a definitive holding that "words communicated to users by AI technologies must satisfy a separate human 'expressive choice' requirement to implicate the First Amendment[.]" Motion to Certify at 7. In fact, the Court simply held that it was "not prepared to hold that the Character A.I. LLM's output is speech *at this stage*." Order at 27 (emphasis supplied). The Court emphasized the fact-laden focus of its constitutional inquiry, explaining that the "decision as to the First Amendment protections Character A.I. receives, if any, does not turn on *whether* Character A.I. is similar to other mediums that have received First Amendment protections; rather, the decision turns on *how* Character A.I. is similar to other mediums." *Id.* at 28–29 (emphasis in original). Far from issuing a categorical ruling on the protected status of model-generated content, the Court simply held that "at this stage of the litigation" Character's output "appears" more akin to algorithmic LLM-mediated content discussed by Justice Barrett in *Moody v. NetChoice, LLC,* 603 U.S. 707, 746, 144 S. Ct. 2383, 2410 (2024) (Barrett, J., concurring). *See* Order at 31.

Complex First Amendment issues often turn on fact-specific inquiries. *See, e.g., Snyder v. Phelps,* 562 U.S. 443, 448–50 (2011) (defendants' funeral protest protected by First Amendment where they stayed well away from the memorial service, plaintiff could see no more than the tops of the signs when driving to the funeral, and there was no indication that the picketing in any way interfered with

7

the funeral service itself); *Lindke v Freed*, 601 U.S. 187 (2024) (vacating lower court rulings and remanding the case to consider the fact-intensive inquiry regarding when a public official's social media activity constitutes state action subject to the First Amendment); *Bear v Escambia Cty Bd Cty Comm'rs.*, No. 3:19cv4424-MCR-HTC, 2021 WL 12169650, at *2 (N.D. Fla. May 17, 2021) ("Whether First Amendment concerns are triggered when a public official uses his account in ways that differ from those presented on this appeal will in most instances be a fact-specific inquiry.").

Here, the fact-based inquiry necessitated by Character's First Amendment affirmative defense are amplified by the nature of the online world, which, as the Supreme Court observed, "is variegated and complex, encompassing an ever-growing number of apps, services, functionalities, and methods for communication and connection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 725 (2024). There is no controlling question of law in this case that can be determined without reference to how Character operates and how users interact with the product.

For example, the question of expressive intent is not a pure question of law but is tied to the way in which Character.AI's technology functions and was designed. The Court held that discovery was required in order to determine whether Character.AI's outputs are analogous to "video games and interactions with other persons on social media sites both of which have received First Amendment protection." Order at 28. Resolution of this issue is not a blanket determination but rather requires a court to "consider and apply the allegations and facts to the law" and thus "is not a controlling question of law for purposes of

§ 1292(b)." *Grand Lodge of Pennsylvania v. Peters*, No. 8:07-CV-479-T-26EAJ, 2008

WL 2790237, at *1 (M.D. Fla. July 18, 2008).

Underlying Character's posed question is an argument that, through

Character's allowing users to create characters and through exchanges within

Character's product, users imbue the product with their expressive intent. For the

first time, Character thus suggests that their products' outputs are controlled or

materially influenced by third-party users. Motion to Certify at 11 n.6. This is

distinct from the First Amendment argument raised at the motion to dismiss stage,

and it departs from the question Character seeks to certify for appeal. Fortunately

for all parties, it will either be confirmed or refuted through discovery. Without

further facts illuminating how Character designed, developed, and deploys its

product—including how the company facilitates or limits users' ability to

influence LLM outputs when creating characters—the Eleventh Circuit will

struggle to explain how Character's technology is similar to more traditional First

Amendment-protected mediums "quickly and cleanly without having to study

the record." *McFarlin*, 381 F.3d at 1258.

Character cites *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554

(11th Cir. 1995) to support its contention that its First Amendment argument

presents a question of pure law warranting interlocutory review. However,

Defendant conveniently omits the fact that *Beckwith* went to the Eleventh Circuit

following a motion for judgment as a matter of law after a seven-day jury trial. *Id*.

at 1559–60. The Eleventh Circuit thoroughly reviewed the testimonial evidence,

documents, and circumstantial evidence and determined that the district court

erred in dismissing the plaintiff's claim that he was discharged in retaliation for exercise of his First Amendment rights. Character's reliance on *Beckwith* to support interlocutory review of the Court's denial of its motion to dismiss is entirely misplaced.

### C.    Character Fails to Identify Substantial Ground for Difference of Opinion.

Even if Character could identify a controlling question of pure law, there is no substantial ground for difference of opinion on the same. While the application of First Amendment to generative AI and large language models is an important and developing area of the law, questions of first impression or the absence of binding authority on an issue, without more, are insufficient to demonstrate a substantial ground for difference of opinion. *Havana Docks Corp.*, 2020 WL 3433147, at *2 (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Nor does the fact that certain "legal commentators" describe the Order as a "watershed moment" satisfy the second prong for interlocutory review under § 1292(b). *See* Motion to Certify at 2–3.

Character faces a "high bar" to show there is a substantial ground for difference of opinion. *Consumer Fin. Prot. Bureau v Frederick J. Hanna & Assocs., P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015). It is not sufficient to show that "an issue is one of first impression" or that the moving party disagrees with the Court's decision. *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, No. 1:18-CV-01991-SDG, 2020 WL 6782049, at *4 (N.D. Ga. Nov. 18, 2020). District courts in the Eleventh Circuit have explained that "to demonstrate the existence of a substantial ground for difference of opinion, the appellant 'must show that at least two courts

interpret the legal principle differently.'" *Id.* at *3; *See also In re Poe Fin. Grp., Inc.,* No. 06-bk-04288-CPM, 2010 WL 2431919, at *2 (M.D. Fla. June 16, 2010) ("For there to be a substantial difference [of opinion] the [movant] must show that at least two courts interpreted the legal principle differently.").[1] This is not a case where district courts have issued conflicting decisions on-point, nor is it one where the issue solely concerns statutory interpretation. *Compare Benson v. Ent. Leasing Co. Orlando, LLC*, No. 6:20-cv-891-RBD-LRH, 2021 WL 1078410 (M.D. Fla. Feb. 4, 2021) (granting interlocutory review on an issue of first impression concerning pure statutory interpretation of the scope of the "natural disaster" exception to the WARN Act); *see also In re Wiand*, 2012 WL 611896, at *2 ("[C]ourts should be divided on the question"). Character has not pointed to any other authority specifically interpreting that the First Amendment conflicts with the Court's holding. This is also not a case where the same judge issued opposite opinions on a full factual record due to ambiguity in applying legal precedents to novel technologies. *See Thomson Reuters Ent. Centre GMBH v. Ross Intelligence, Inc.*, Dkt. 84, No. 1:20-CV-613-SB (D. Del. May 23, 2025) (concerning issues of fair use and transformation in copyright law as applied to a non-generative AI model).

Character devotes substantial effort articulating a parade of horribles that it believes may result from the Court's order. *See* Motion to Certify at 16–17. They raise hypothetical scenarios of government censorship that have no bearing on or

---

[1] The actual conflict standard applied in the Eleventh Circuit is more stringent than the Ninth Circuit standard on which Character relies. *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.").

relevance to the posture of the immediate case.[2] That the underlying First Amendment issue may be controversial, important, or potentially influential for courts deciding future cases is not part of the inquiry.

This underscores the principle that § 1292(b) is not satisfied simply because the movant may disagree with the Court's ruling. *Rodriguez v. Procter & Gamble Co.*, 499 F. Supp. 3d 1202, 1208 (S.D. Fla. 2020) ("Neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion.") (citing *Flint Riverkeeper, Inc. v. S. Mills, Inc.*, 261 F. Supp. 3d 1345, 1347 (M.D. Ga. 2017)). Character's disagreement with the Court's application of law to the facts does not alone establish the substantial grounds for difference of opinion necessary to certify issues for interlocutory appeal.  Because Character Technologies has not made any showing of substantial grounds for difference of opinion under the second prong, certification must be denied.

## D.   Early Resolution Would Not Materially Advance the Overall Determination of this Case.

The requirement in § 1292(b) that resolution of the "controlling question of law. . .  may materially advance the ultimate termination of the litigation" is a straightforward one. "It means that resolution of a controlling legal question

---

[2] These arguments are nothing but a straw man, fearmongering around hypothetical scenarios that would not be constitutionally defensible. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (finding that the government cannot engage in viewpoint-based restrictions even within unprotected categories of speech). In that case, the Supreme Court considered the constitutionality of a city ordinance that prohibited the display of a symbol which one knows or has reason to know "arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender."  The Court held the ordinance to be facially invalid under the First Amendment. Notably, the Court reasoned that even though "fighting words" could be regulated because it was not protected speech, the formulation of the ordinance was drafted in a manner that discriminated based on viewpoint. *Id.* at 381.

would serve to avoid a trial or otherwise substantially shorten the litigation."
*McFarlin*, 381 F.3d at 1259 (citing 16 Charles Alan Wright, et al., Federal Practice &
Procedure § 3930 at 432 (2d ed. 1996)). District courts in this circuit have explained
that "interlocutory appeals of denials of a motion to dismiss are less likely to
advance the ultimate termination of the litigation because the Court must assume
that all the facts alleged in the complaint are true." *Fabricant v. Sears Roebuck & Co.*,
No. 98-1281-CIV-NESBITT, 2001 WL 883303, at *2 (S.D. Fla. Jan. 29, 2001) (citations
omitted). This makes sense, as denying a pre-answer motion to dismiss means
only that a court "merely held that accepting the facts alleged in the Complaint as
true, Plaintiff has stated a [] claim." *Alley v. Farmers Bank*, No. 3:13-CV-146 (CAR),
2015 WL 13449662, at *2 (M.D. Ga. Mar. 23, 2015) (denying motion to file
interlocutory appeal where "discovery [was] likely necessary before an ultimate
decision [could] be made regarding whether Plaintiff [could] maintain his FCRA
claim–either on summary judgment or by trial."). Courts have reasoned that rather
than prematurely granting appeal that is not yet ripe, it would be prudent to allow
further discovery on the issue. Indeed, "[w]ith the benefit of fact discovery,
Defendants can re-raise these arguments on summary judgment[.]" *Id.* at *2.

District courts in this circuit have denied § 1292(b) certification where claims
would remain no matter the outcome of appellate review. *See, e.g. Grajales v.
Genesco, Inc.*, No. 8:23-CV-420-SCB-TGW, 2023 WL 7135899, at *3 (M.D. Fla. Oct.
31, 2023) (finding the § 1292(b) motion must be denied because "[n]o matter the
outcome of Plaintiff's claim under Section 501.059(8)(b), this case will go forward
on Plaintiff's claim under Section 501.059(8)(a)"); *Petersen v. Am. Gen. Life Ins. Co.*,

No. 3:14-CV-100-J-39JBT, 2016 WL 11806893, at *2 (M.D. Fla. Dec. 16, 2016) (denying motion for interlocutory appeal under 28 U.S.C. § 1292 "because the parties still must litigate Plaintiff's unjust enrichment count even if the Eleventh Circuit's answers to the proposed questions led to the granting of summary judgment on the EFTA claim."). This is especially true where the same parties would remain regardless of the appellate outcome. *See McFarlin*, 381 F.3d at 1259 (citing *Ashmore v. Northeast Petrol. Div.*, 855 F.Supp. 438, 440 (D. Me. 1994) (noting that the § 1292(b) appeal was "inappropriate where the same parties and issues would remain in district court regardless of resolution of issues on appeal[.]").

Character only seeks interlocutory review of the Court's preliminary determination over its users' First Amendment rights. Even if the Eleventh Circuit determines that Character.AI's output is speech, Plaintiffs argument that such speech falls within an exception needs to be adjudicated before Character's First Amendment defense would preempt Plaintiffs' claims. This fact alone undermines Character's argument that interlocutory appeal would avoid a trial, let alone shorten the litigation. Character cannot argue that the need for a trial will be vitiated if the Court's holding is reversed by the Eleventh Circuit and cannot "contend that a reversal will eliminate many issues for trial or otherwise shorten the trial." *U.S. ex rel. Armfield v. Gills*, No. 8:07-CV-2374-T-27TBM, 2011 WL 2084072, at *3 (M.D. Fla. May 24, 2011).

Any theoretical success on interlocutory appeal would not meaningfully alter the discovery that will be needed and thus would not shorten or streamline the case as a whole. Courts have found this to be particularly true where, as here,

14

"the basis for the claim is interrelated with those charged in the other counts."
*Fabricant*, 2001 WL 883303, at *2. Even if Character's LLM outputs received some
First Amendment protection, the Court will still need to consider whether such
speech falls within an exception. *Compare Nat'l Ass'n of Afr.-Am. Owned v. Charter
Commc'ns, Inc.*, No. CV 16-609-GW(FFMX), 2016 WL 10647193, at *6 (C.D. Cal. Dec.
12, 2016) ("If Defendant is correct in its First Amendment argument, this case
would seemingly end."); *Baxter v. Miscavige*, No. 8:22-cv-986, 2023 WL 3863287, at
*2 (M.D. Fla. June 7, 2023) (granting motion to certify order compelling arbitration
and finding that reversal by the Eleventh Circuit "will save the parties the expense
and burden of arbitration – which may potentially take years – and allow the case
to proceed to resolution in the district court."). Regardless of how the Eleventh
Circuit were to rule on the question Character seeks to certify, discovery will still
focus on the same facts alleged in the Complaint: the design and operation of
Character's LLM and the defective nature of the Character.AI product. In other
words, "the litigation [would] continue to advance in substantially the same
manner as if the interlocutory appeal had never occurred," with the appeal
consuming the time and resources of the parties and the Court. *In re Facebook, Inc.,
IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 532 (S.D.N.Y. 2014). Instead of
cultivating an efficient resolution, "an interlocutory appeal would substantially
delay these proceedings, as an appeal would bring the case to a standstill." *U.S. ex
rel. Armfield*, 2011 WL 2084072, at *3. Where, as here, discovery would proceed in
largely the same fashion, the third prong cannot be satisfied based on shortening
the litigation.

Resolving a single element of Character's First Amendment defense on interlocutory review would needlessly delay this litigation. Unlike in *Benson*, 2021 WL 1078410 at *6, on which Character relies, motions for summary judgment and trial in this case are not "specks on the horizon." Summary judgment motions will occur no later than May 2026. *See* Amended Case Management and Scheduling Order (Dkt. 77). If the Court ultimately accepts Character's First Amendment arguments and grants summary judgment, the parties will be able to present the Eleventh Circuit a fulsome factual record in ten months, the same time it would most likely take the Eleventh Circuit to conduct interlocutory review of the Court's motion to dismiss on a bare record.[3] And if summary judgment is denied, a complete trial record will be available just six months later.

Character cannot establish that resolution of the certified question will "substantially reduce the amount of litigation left in the case." *McFarlin*, 381 F.3d at 1259. Therefore, "[c]ertification under Section 1292(b) will not materially advance the termination of [this] litigation." *Armfield*, 2011 WL 2084072, at *3.

## E.    A Stay Would Needlessly Delay This Case.

Character Technologies requests a stay of all proceedings should the Court grant the motion for certification. No stay is necessary here. As detailed previously, even if appellate review is granted and resolved in Defendant's favor,

---

[3] *See* Table B-4A, U.S. Court of Appeals—Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits, by Circuit, During the 12-Month Period ending September 30, 2024, available at https://www.uscourts.gov/sites/default/files/2025-01/jb_b4a_0930.2024.pdf (median time from filing of notice of appeal to last opinion or final order in the Eleventh Circuit is 10.8 months) (last visited July 2, 2025).

the case would still proceed. There is no efficiency to be had by halting proceedings altogether to await the resolution of a non-dispositive issue.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Character Technologies' motion for interlocutory appeal and decline to stay proceedings.

DATED: July 9, 2025.

SOCIAL MEDIA VICTIMS LAW CENTER

By: _/s/ Matthew P. Bergman_____
        Matthew Bergman

matt@socialmediavictims.org
LauraMarquez-Garrett
laura@socialmediavictims.org
Glenn Draper
glenn@socialmediavictims.org
600 1st Avenue, Suite 102-PMB 2383
Seattle, WA 98104
Telephone: (206) 741-4862

TECH JUSTICE LAW PROJECT

By: _/s/ Meetali Jain_____
        Meetali Jain

Meetali Jain
meetali@techjusticelaw.org
Melodi Dincer
melodi@techjusticelaw.org
611 Pennsylvania Avenue Southeast #337
Washington, DC 20003

NORMAND PLLC

By: _/s/ Amy L. Judkins_____
        Amy L. Judkins

Florida Bar No.: 125046
Telephone: (407) 603-6031
3165 McCrory Place, Ste 175
Orlando, FL 3280
alj@normandpllc.com

*Attorneys for Plaintiffs*

17