UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA and SEWELL SETZER JR., individually and as the Personal Representatives of the Estate of S.R.S. III,<br><br>    Plaintiffs,<br><br>    v.<br><br>CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; and ALPHABET INC.,<br><br>    Defendants. | Civil Case No. 6:24-cv-01903-ACC-EJK<br><br><br>**DEFENDANT NOAM SHAZEER'S RENEWED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

**I.     INTRODUCTION**

Mr. Shazeer hereby renews his motion to dismiss for lack of personal jurisdiction and respectfully asks the Court to dismiss him from this lawsuit. Unable to show any relationship between Mr. Shazeer and Florida or the underlying allegations in this case, Plaintiffs ask this Court to pierce C.AI's corporate veil and hold that C.AI is a mere "alter ego" of Mr. Shazeer for the purpose of personal jurisdiction. But it is black letter law in Florida that courts will pierce the corporate veil "in only the most extraordinary cases." *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla.), *aff'd* 176 B.R. 223 (M.D. Fla. 1994). And Plaintiffs—

1

having now conducted jurisdictional discovery—cannot demonstrate that this is one of those "extraordinary cases." Mr. Shazeer reiterates his sympathies for Plaintiffs for the tragic death of their son, but Plaintiffs cannot hold Mr. Shazeer liable for harms alleged to have been caused by C.AI's services.

For the reasons set forth below and in Mr. Shazeer's prior motion to dismiss, Mr. Shazeer's renewed motion to dismiss should be granted.[1]

## II.    BACKGROUND

Mr. Shazeer co-founded C.AI with co-Defendant Daniel De Freitas (collectively, the "Individual Defendants"). SAC ¶ 64. C.AI offers an online platform for users to engage in interactive conversations with virtual generative AI chatbots, called "Characters." Characters may be historical or fictional figures, functional chatbots (such as an "Interviewer" that provides interview practice), or text-based games (such as "Space Adventure Game"). *Id.* ¶¶ 110-111. Plaintiffs, S.S.'s mother and father, allege S.S. was harmed by the content of his conversations with Characters on C.AI. *Id.* ¶¶ 2, 193-198, 201-202, 204. They bring 10 claims against Defendants on behalf of themselves and S.S.'s estate, *id.* ¶¶ 1-9, and assert 7 of those claims against Mr. Shazeer. *Id.* ¶¶ 331-342, 359-415.

---

[1] Plaintiffs filed the SAC on July 1, 2025, adding Plaintiff Sewell Setzer Jr. as a party, removing Alphabet as a defendant, and removing certain claims that were dismissed by the Court or withdrawn by agreement of the parties. *See generally* SAC. Plaintiffs did not amend the allegations against Mr. Shazeer, including the jurisdictional allegations.

On January 24, 2025, Mr. Shazeer moved to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim. *See* Shazeer Mot. (Dkt. No. 65). Mr. Shazeer also provided an affidavit establishing that he has no contacts with Florida, including that he has never resided in Florida and has never conducted any business in Florida, including any business on behalf of C.AI. *See* Dkt. No. 68.1.

Plaintiffs opposed Mr. Shazeer's motion to dismiss, but did not contest that Mr. Shazeer lacked contacts with Florida. *See generally* Pl.'s Opp'n (Dkt. No. 84).[2] Instead, Plaintiffs argued that the Individual Defendants should be subject to jurisdiction under an "alter ego" theory of personal jurisdiction. *Id.* at 3-7. On May 21, 2025, the Court denied Mr. Shazeer's and Mr. De Freitas's motions to dismiss without prejudice, stating that the 12(b)(2) motions could be renewed after a period of 90 days of jurisdictional discovery. *See* Order at 17 (Dkt. No. 115).

On May 28, 2025, Plaintiffs served written discovery on Mr. Shazeer. Declaration of Isaac D. Chaput ("Chaput Decl."), ¶ 3. In response, on June 27, 2025, Mr. Shazeer served written responses to Plaintiffs' requests and subsequently began document productions. Chaput Decl., ¶ 4. As of the date of this filing, Mr. Shazeer has produced approximately 430 documents. Chaput Decl., ¶ 5. Plaintiffs have also noticed Mr. Shazeer for a deposition. Chaput Decl., ¶ 6.

---

[2] Although Mr. Shazeer and Mr. De Freitas separately moved to dismiss, Plaintiffs filed a consolidated response. Dkt. No. 84. As such, the Individual Defendants filed a joint Reply. Dkt. No. 100.

Mr. Shazeer now renews his motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. The jurisdictional discovery record shows that Plaintiffs cannot establish that the alter ego exception to personal jurisdiction applies.

## III.   LEGAL STANDARD

Under the alter ego theory of personal jurisdiction, Plaintiffs must allege facts sufficient to pierce the corporate veil. *Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998). Specifically, Plaintiffs must show:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; *and* (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (emphasis added) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)); *see also Merkin v. PCA Health Plans of Fla., Inc.*, 855 So. 2d 137, 141 (Fla. 3d DCA 2003) ("The corporate veil may be pierced if the plaintiff can prove *both* that the corporation is a 'mere instrumentality' or alter ego of the defendant, *and* that the defendant engaged in 'improper conduct' in the formation or use of the corporation.") (emphasis in original; cleaned up).

"Those who seek to pierce the corporate veil [in Florida] carry a very heavy burden." *In re Hillsborough*, 166 B.R. at 468. Plaintiffs' burden is even higher after they have taken jurisdictional discovery. *Rogers v. Coloplast Corp.*, 2022 WL 252420, at *2 (M.D. Fla. Jan. 27, 2022). "[P]laintiff must allege facts that establish personal

jurisdiction by a preponderance of the evidence" and "affidavits based on personal knowledge are to be credited over contradictory allegations based merely on information and belief." *Rogers*, 2022 WL 252420, at *2 (citations omitted); *see also Frontline Int'l, Inc. v. Edelcar, Inc.*, 2011 WL 13209612, at *6 (M.D. Fla. Apr. 6, 2011), *report and recommendation adopted in part*, 2011 WL 13209592 (M.D. Fla. June 15, 2011) ("In this case, because jurisdictional discovery was conducted, the burden is on [the plaintiff] to show by competent proof that jurisdiction exists.").

Plaintiffs bear a "very heavy burden," *Gov't of Aruba v. Sanchez*, 216 F.Supp.2d 1320, 1362 (S.D. Fla. 2002), because the "purpose" of the corporation—this "fictional person"—"is to limit the liability of the corporation's owners," *Molinos Valle* 633 F.3d at 1349. As emphasized by the Florida Supreme Court, "[t]he corporate entity is an accepted, well used and highly regarded form of organization in the economic life of our state and nation" and, "[f]inding this arrangement useful to commerce, the Florida courts will not easily disregard this fiction." *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So. 2d 1114, 1120 (Fla. 1984) (internal quotation marks and citation omitted); *see also Molinos Valle*, 633 F.3d at 1350 ("courts will not ignore this separate entity so long as the stockholders make 'proper use' of this fiction"); *In re Hillsborough*, 166 B.R. at 468 (Florida courts will pierce the corporate veil "in only the most extraordinary cases").

## IV. ARGUMENT

For the reasons Mr. Shazeer has previously set forth and as explained below, Plaintiffs cannot meet their burden of establishing personal jurisdiction over Mr.

5

Shazeer under the alter ego theory. As an initial matter, Plaintiffs' alter ego theory must fail because C.AI is a non-resident defendant and the alter ego exception to personal jurisdiction is only available to pierce the corporate veil of a resident corporation. Further, Plaintiffs have not shown—and cannot show—that C.AI is the alter ego of Mr. Shazeer, that Mr. Shazeer used C.AI for an improper purpose, *or* that the alleged harm was caused by abuse of the corporate form. Accordingly, the claims against Mr. Shazeer should be dismissed.

### A. The Alter Ego Theory of Personal Jurisdiction Is Unavailable Because C.AI Is a Non-Resident Defendant.

The alter ego exception to personal jurisdiction is available where the complaint "allege[s] facts sufficient to pierce the corporate veil of the ***resident*** corporation." *Medlink Legal Sys., LLC v. QIMA Ltd.*, 2025 WL 2155099, at *5 (S.D. Fla. July 29, 2025) (emphasis added); *see also Veritas Legal Plan, Inc. v. Freedom Legal Plans, LLC*, 2023 WL 11802483, at *4 (S.D. Fla. Dec. 6, 2023) ("[F]or the alter-ego theory to apply, the entity upon which the extension of jurisdiction is based must be a resident of Florida"); *K3 Enters., Inc. v. Sasowski*, 2021 WL 8363506, at *5 (S.D. Fla. Nov. 22, 2021) ("[T]he alter ego theory applies when a ***non-resident*** defendant controls a ***resident*** defendant." (emphasis in original)). Without a "resident entity," the "alter ego theory of personal jurisdiction fails." *Medlink*, 2025 WL 2155099, at *1, *5 (dismissing claims for lack of

personal jurisdiction where alter ego theory of jurisdiction was based on a New York LLC registered to do business in Florida and with an office in Florida).[3]

Here, Plaintiffs allege that C.AI "is a Delaware corporation with its principal place of business in Menlo Park, California." SAC ¶ 16. Because C.AI is a nonresident defendant, the alter ego exception to personal jurisdiction is unavailable.

### B. Plaintiffs Cannot Prove that C.AI is the Alter Ego of Mr. Shazeer.

As an initial matter, Mr. Shazeer has not been involved with C.AI in any respect since he left the company in approximately September 2024. *See* Declaration of Noam Shazeer ("Shazeer Decl."), ¶¶ 24, 30. Accordingly, as set forth below, the alter ego theory must focus on the period in which both Mr. Shazeer was involved with C.AI *and* Plaintiffs allege to have been harmed: April 2023 to August 2024. *See* SAC ¶ 170 (Sewell began using C.AI in April 2023); Shazeer Decl. ¶ 24 (Mr. Shazeer left C.AI in August 2024); *see, e.g., Molinos Valle*, 633 F.3d at 1349 (piercing the corporate veil requires proof of dominance and control of the corporation, improper use of the corporate form, *and* that improper use of the corporate form caused the alleged harm).

---

[3] *See also, e.g., Veritas*, 2023 WL 11802483, at *4 (allegations that a nonresident defendant does business in Florida do not "convert [the non-resident entity] into a resident of Florida, such that it can be a defendant from which the alter ego theory of jurisdiction can flow"); *Eran Fin. Servs., LLC v. Eran Indus. Ltd.*, 2023 WL 3025347, at *2 (S.D. Fla. Feb. 24, 2023) (rejecting alter ego theory of personal jurisdiction "because all of the Defendants in this case are non-residents"); *Frybarger v. Salemme*, 2022 WL 18530012, at *6 (S.D. Fla. Dec. 28, 2022) (declining to "apply the alter ego theory of jurisdiction to a non-resident corporation via application of Florida's long-arm statute to another non-resident corporation" and noting that "the Court is unaware of[] any cases supporting such a theory of jurisdiction").

To pierce the corporate veil, Plaintiffs must first prove that "the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholder[] w[as] in fact [the] alter ego[] of the corporation[.]" *Molinos Valle*, 633 F.3d at 1349. Courts use a variety of factors to determine whether an individual so dominates and controls a corporation as to render it nonexistent, including whether (1) the corporation observes the basic corporate formalities (such as keeping separate records and holding shareholder meetings), (2) the shareholder and corporation file consolidated financial statements and tax returns, (3) the shareholder finances the corporation, (4) the shareholder pays the salaries and other expenses of the corporation, (5) the corporation has no business except that given to it by the shareholder, and (6) the shareholder uses the corporation's property as its own. *See Damian v. Yellow Brick Cap. Advisers (UK) Ltd.*, 2019 WL 5887360, at *8 (S.D. Fla. Nov. 12, 2019).

The SAC contains no factual allegations that could show domination and control sufficient to justify the alter ego theory. *See* Defs.' Reply at 7-8. Further, following jurisdictional discovery, Plaintiffs cannot point to *any* new information to support their theory of personal jurisdiction. Indeed, jurisdictional discovery has proven that Mr. Shazeer and C.AI rigorously adhered to corporate formalities. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000) ("the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained"); *Abdo v. Abdo*, 263 So. 3d 141, 150 (Fla. 2d DCA 2018) (no personal jurisdiction under

alter ego theory where there were no "factual allegations establishing how the identities" of either corporate entity "were not lawfully maintained"); *Virtus Pharms., LLC v. Woodfield Distribution, LLC*, 2024 WL 4235895, at *9 (M.D. Fla. Sept. 19, 2024) (first factor not satisfied where corporation was "lawfully maintained").

C.AI observed basic corporate formalities. *See* Shazeer Decl., ¶¶ 5, 17. C.AI maintained a Board of Directors (the "Board"). *See* Shazeer Decl., ¶¶ 6, 15. The Board engaged in regular meetings and activities, such as appointing the CEO, designating a depository, adopting resolutions, and keeping separate records. *See* Shazeer Decl. ¶ 6.

C.AI was financed by outside funding. *See* Shazeer Decl., ¶¶ 12-14. C.AI raised nearly $50 million in a seed round around the time of its formation in 2021 and raised an additional $150 million in its Series A round in March 2023. Shazeer Decl., ¶¶ 13-14. Mr. Shazeer did not comingle his personal assets with those belonging to C.AI. Shazeer Decl. ¶ 23. Although Mr. Shazeer provided a small amount of funding by personally investing in the company, he did so only once through a formal Founder Stock Purchase Agreement. *See* Shazeer Decl., ¶¶ 15, 21, 23. After Mr. Shazeer's departure, C.AI continued to have adequate operating capital. Shazeer Decl., ¶¶ 20, 25-26; Chaput Decl., Ex. A (C.AI press release announcing Google licensing agreement and noting that the "agreement will provide increased funding for Character.AI to continue growing and to focus on building personalized AI products for users around the world"). Further, C.AI has continued operating as an

9

independent company, recently naming a new CEO who previously held executive roles at Brex, Microsoft, and Meta. *See* Chaput Decl., Ex. B.

C.AI used the services of an outside accounting firm to maintain its finances, including its own financial statements and tax returns. Shazeer Decl., ¶ 19. C.AI maintained its own administrative processes for matters such as payroll, employee benefits, and taxes. *See* Shazeer Decl., ¶ 18. C.AI, not Mr. Shazeer, paid the salaries and expenses of the corporation. Shazeer Decl., ¶¶ 11, 18-19, 22. C.AI grew from approximately 10 employees in Summer 2022 to approximately 150 employees by the time of Mr. Shazeer's departure. Shazeer Decl., ¶ 10. C.AI leased offices under its own name and using its own funds in both Palo Alto and New York. Shazeer Decl., ¶ 11. The only compensation Mr. Shazeer received from C.AI was his salary and his equity, which was issued pursuant to a share purchase agreement. Shazeer Decl. ¶ 22.

There is simply no evidence that C.AI and Mr. Shazeer "operated as a single economic entity." *In re Hillsborough*, 166 B.R. at 469. Plaintiffs wish to hold Mr. Shazeer liable under the alter ego theory simply by virtue of his position at C.AI. But the "conclusory allegation" that C.AI was "the alter ego of" Mr. Shazeer is "insufficient to support the exercise of personal jurisdiction under an alter ego theory." *Abdo*, 263 So. 3d at 150. Moreover, as Mr. Shazeer already explained, *see* Defs.' Reply at 7, to permit such an argument would unravel the whole concept of a corporation— an entity whose "purpose . . . is to limit the liability of the corporation's owners."

*Molinos Valle*, 633 F.3d at 1349; *see Dania,* 450 So. 2d at 1120 ("Florida courts will not easily disregard" the corporate entity).

### C. Mr. Shazeer Did Not Use C.AI to Engage in Improper Conduct.

Plaintiffs also fail to satisfy the second element necessary to pierce the corporate veil: that "the corporate form [] ha[s] been used fraudulently or for an improper purpose[.]" *Molinos Valle*, 633 F.3d at 1349. "Improper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (cleaned up) (quoting *Dania*, 450 So. 2d at 1117). "[T]he improper conduct must be deliberate misconduct." *In re Hillsborough*, 166 B.R. at 469.

Plaintiffs cannot demonstrate that C.AI was formed or used for a wrongful purpose. Plaintiffs allege that C.AI was used to "develop [] dangerous and untested technology," SAC ¶ 65, "obtain access to [children's] data," *id.* ¶ 92, and "target[ed] . . . at children [] so [the Individual Defendants] could profit," *id.* ¶ 94. These allegations are inadequate as a matter of law to support the alter ego theory. They are also unsupported by the jurisdictional discovery Plaintiffs have conducted. Nor has discovery produced a scintilla of evidence that Mr. Shazeer formed or used C.AI "to mislead or defraud creditors, to hide assets, [or] to evade the requirements of a statute[.]" *Lipsig*, 760 So. 2d at 187; *see In re Evergreen Sec., Ltd.*, 319 B.R. 245, 256 (M.D. Fla. 2003) (finding "the high standard for piercing the corporate veil in Florida

[wa]s not met" because the company was "not set up to perpetrate fraud and was not operated or used as [the president's] alter ego").

Plaintiffs' sole basis for claiming an improper purpose is that Mr. Shazeer and Mr. De Freitas allegedly formed C.AI "to bypass Google's safety and fairness policies." SAC ¶ 65; *see also id.* ¶ 54 (alleging LaMDA "contraven[ed] [Google's] safety and fairness policies"); *id.* ¶ 60 (alleging generative AI created "brand safety risks [Google] was unwilling to take"). Plaintiffs' position is both legally and factually deficient.

First, the evidence shows that Mr. Shazeer left Google because he saw an opportunity to push the AI industry forward by showcasing the technology's potential popularity and utility through an entertainment application. Shazeer Decl., ¶ 3. Safety concerns and Google's policies simply had nothing to do with Mr. Shazeer's decision. Shazeer Decl., ¶ 4. Further, Mr. Shazeer did not consider the possibility of returning to Google for nearly two years after his departure. Shazeer Decl. ¶¶ 27-s29.

Second, even if Plaintiffs could prove that the Individual Defendants founded C.AI to avoid Google's safety protocols (they cannot), forming a company to develop an allegedly unsafe product or to bypass another company's safety protocols is not "improper conduct" sufficient to support piercing the corporate veil. *See Whiddon v. Serv. Corp. Int'l*, 2022 WL 18932767, at *2 (N.D. Fla. Apr. 6, 2022) ("creating an entity for the well-recognized general purpose of limiting liability does not constitute improper conduct."); *Johnson Enters.*, 162 F.3d at 1321 (arguments of "generalized

12

improper conduct" are not sufficient to pierce the corporate veil). Moreover, Florida courts routinely hold that "negligence or even reckless conduct . . . are not sufficient[.]" *In re Hillsborough*, 166 B.R. at 470; *cf. WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 583 (Fla. 3d DCA 2010) (finding no "improper conduct" "even if it is true that [one entity] instructed [the other entity] to breach"); *Priskie v. Missry*, 958 So. 2d 613, 615 (Fla. 4th DCA 2007) (explaining that "[i]t is not improper for a shareholder or officer of a corporation, with the corporation's knowledge and consent, to loan his personal funds to the corporation for payment of corporate debts").

> D. **There Is No Evidence that the Harms Were Caused by the Alleged Abuse of C.AI's Corporate Form.**

Finally, Plaintiffs fail to satisfy the third element necessary to make an alter ego finding: that their "injuries were caused by a fraudulent or improper use of [C.AI's] corporate forms, as opposed to [] [C.AI] simply" breaching an obligation. *BEO Mgmt. Corp. v. Horta*, 314 So. 3d 434, 438 (Fla. 3d DCA 2020); *see also Segal v. Forastero, Inc.*, 322 So. 3d 159, 165 (Fla. 3d DCA 2021) ("evidence fails to establish, as a matter of law, that [the] alleged improper use of LLC's corporate form caused injury to [plaintiff]" as opposed to whether the plaintiffs' injury "was caused simply by the LLC's failure to pay the agreed-upon initial deposit"). Plaintiffs allege their harm stems from C.AI's development of a "dangerous and untested technology" that lacked adequate consumer warnings. *See, e.g.,* SAC ¶¶ 3-6, 65. But such allegations cannot support the alter ego theory because they do not invoke the "fraudulent or improper use of the corporate form." *In re Hillsborough*, 166 B.R. at 469.

13

\* \* \*

There is simply no "proof of fraud or ulterior motive" by Mr. Shazeer to justify piercing the corporate veil. *Id*. The evidence produced during jurisdictional discovery fails to "establish[] that [C.AI] was operated as a shell game and the corporate shield between [Mr. Shazeer] and [C.AI] was nothing more than a sham." *In re Hillsborough*, 166 B.R. at 470-71; *compare In re Multimedia Commc'ns Grp. Wireless Assoc.*, 212 B.R. 1006, 1009-10 (M.D. Fla. 1997) (finding the entities were not alter egos "even with the evidence of common management, common business location, common personnel, common computer network, office equipment, and receptionist, and the absence of corporate formality" because each entity "was engaged in its own distinct business practice"), *with BPI Sports, LLC v. ThermoLife Int'l LLC*, 2020 WL 10180910, at \*11 (S.D. Fla. Jan. 9, 2020) (finding allegations sufficient to support alter ego theory where "the sole founder, owner, President, Chief Executive Officer and Managing Member" "uses the corporate form for personal attacks and vendettas" and "operates" the corporate entity "as a closely held, sham corporation, with few employees or activities, designed to act primarily as a 'patent troll'").

Accordingly, Plaintiffs have not met the "heavy burden" necessary to show that Mr. De Freitas is subject to alter ego jurisdiction under Florida law. *See In re Hillsborough*, 166 B.R. at 468.

## V. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Shazeer's first Motion to Dismiss, Mr. Shazeer respectfully requests that the claims asserted against him in the Second Amended Complaint be dismissed with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that, on January 9, 2025, counsel for Noam Shazeer conferred with counsel for Plaintiffs by video in a good-faith effort to resolve the initial motion to dismiss and Plaintiffs opposed the relief requested. On July 29, 2025, counsel for Noam Shazeer conferred with counsel for Plaintiffs by video regarding Plaintiffs' requests for discovery and Plaintiffs continued to oppose the requested relief.

Respectfully submitted this 19th day of August, 2025.

/s/ *Isaac D. Chaput*

Paul W. Schmidt* (Lead Counsel)
COVINGTON & BURLING LLP
New York Times Building
620 Eighth Avenue,
New York, New York 10018-1405
Telephone: + 1 (212) 841-1171
Email: pschmidt@cov.com

Isaac D. Chaput*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-7020
Email: ichaput@cov.com
**Admitted Pro Hac Vice*

*Counsel for Defendant Noam Shazeer*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF, causing a copy to be served to all attorneys of record.

/s/ *Isaac D. Chaput*
Isaac D. Chaput