UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MEGAN GARCIA and SEWELL SETZER JR., individually and as the Personal Representatives of the Estate of S.R.S. III,<br><br>Plaintiff,<br><br>v.<br><br>CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; ALPHABET INC.,<br><br>Defendants. | CASE NO.: 6:24-cv-01903-ACC-EJK |

**PLAINTIFFS' MOTION TO SEAL EXHIBITS IN SUPPORT OF OPPOSITION TO DEFENDANT DANIEL DE FREITAS'S RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICITON**

Under Local Rule 1.11, Plaintiff seeks leave to file the following documents under seal:

| Docket Number | Exhibit | Description | Beginning Bates Number |
|---|---|---|---|
| 194-1 | 1 | Transcript from Mr. Daniel De Freitas's August 29, 2025, Deposition | |
| 194-2 | 2 | Transcript from Mr. Noam Shazeer August 28, 2025, Deposition | |
| 194-5 | 5 | Email from Jared Kaplan to Noam Shazeer and Forwarded to Daniel De Freitas ("Kaplan Email") | GARCIA-NS-0001047 |

1

| 194-6 | 6 | Letter from Keith Wolfe on Behalf of Google LLC to Daniel De Freitas dated August 1, 2025 ("Offer Letter") | DeFreitas_000494 |
| 194-7 | 7 | The License and Release Agreement by and Between Google LLC and Character Technologies, dated August 1, 2025 ("License Agreement") | 103CAI0000081 |
| 194-8 | 8 | Pitch Deck for Character.AI, Dated December 8, 2021 ("Pitch Deck") | DeFreitas_000087 |
| 194-22 | 22 | The Employment Agreement Between Google LLC and Noam Shazeer, dated June 18, 2012 | GARCIA-NS-0002413 |
| 194-23 | 23 | The Employment Agreement Between Google LLC and Noam Shazeer, dated October 21, 2016 | DeFreitas_000033 |
| 194-24 | 24 | Spreadsheet data | 103CAI00000145 |
| 194-25 | 25 | Select Rows of Spreadsheet data | 103CAI00000145 |

## BACKGROUND

On May 21, 2025, the Court denied Defendants' Noam Shazeer and Daniel De Freitas (hereinafter, the "Individual Defendants"), Motion to Dismiss for Lack of Personal Jurisdiction, holding that "the Amended Complaint contains allegations that conceivably could support an alter-ego theory [for personal jurisdiction]." (Doc. 115, p. 17). Because the Individual Defendants had not addressed the alter-ego theory in their motions to dismiss, the Court granted the Individual Defendants leave to refile their Rule 12(b)(2) motions in 90 days "to allow Plaintiff to take jurisdictional discovery." (*Id.*). Currently pending before the Court are the Individual Defendants' renewed motions. (Docs. 182, 183).

On September 8, 2025, Plaintiffs filed responses to each Motion, and a Declaration of Amy L. Judkins in support thereof, with 22 exhibits attached. Of these exhibits, nine documents have been marked by Defendants as containing confidential information of one or more of the Defendants, including the deposition transcripts of the Individual Defendants.

It is Plaintiffs' position that the vast majority of documents defendants designated as confidential do not meet the Eleventh Circuit's or this District's standards for overcoming the presumption of public access to judicial documents. However, until a permanent confidentiality agreement can be concluded between the parties or the Court determines that Defendants' confidentiality designations are unwarranted, Plaintiffs remain bound by their interim agreement to treat each and every documents the defendants designate as confidential as "attorneys eyes only." Plaintiffs therefore address their position to specific documents in more detail below.

Plaintiffs have made great efforts to avoid sealing documents and have attempted to support their responses with documents that are not marked as confidential, where possible. However, even with such efforts, certain documents produced by Defendants are critical to Plaintiffs' arguments in support of personal jurisdiction, as detailed below. Plaintiffs have filed placeholders for these documents on the docket pending resolution of this Motion to Seal, and have redacted statements in Plaintiffs' Responses that specifically reference the information designated confidential. Concurrently with the filing of this Motion to

Seal, Plaintiffs will serve the Court and Defendants with unredacted copies of the Responses, filed at Doc. 192 and 193.

## MEMORANDUM OF LAW

There is a presumptive common law right to inspect and copy judicial records. *United States v. Rosenthal*, 763 F.2d 1291, 1293 (11th Cir. 1985); *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001) (noting that this constitutional right to access to judicial records extends to civil cases). "Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access" to judicial proceedings. *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (citations omitted). This common law right "is instrumental in securing the integrity of the [judicial] process." *See Chicago Trib. Co.*, 263 F.3d at 1311 (citation omitted). "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). Accordingly, a document may be filed under seal only where *the party seeking protection* shows good cause and a compelling justification. *Chi. Tribune Co.*, 263 F.3d at 1310 (emphasis added).

In the Middle District, filing a document under seal in a civil action requires the sealing party to identify, among other things: (A) the reason filing the item is necessary, (B) the reason sealing the item is necessary, and (C) the reason redaction or means other than sealing is unavailable or unsatisfactory. M.D. Fla. Local Rule 1.11(b)(3).

In addition, for any "non-party the movant knows or reasonably should know has an interest in establishing or maintaining the seal," the moving party must "certify the name, mailing address, email address, and telephone number" of the non-party as well as the "the means by which . . . the movant served or otherwise delivered the motion to the non-party." M.D. Fla. Local Rule 1.11(b)(7).

Lastly, under M.D. Fla. Local Rule 1.11(c), within 14 days of service of a motion to seal, any party with an interest in maintaining the seal may file a memorandum in support of maintaining the seal. Within 21 days after filing the motion to seal, any party or non-party opposing the motion may respond.

Plaintiffs address each document proposed for sealing in turn:

**A. Exhibit 1 – Deposition transcript of Defendant Noam Shazeer**

Plaintiffs deposed Defendant Noam Shazeer on August 28, 2025. By agreement of the parties, the deposition was bifurcated: the first session focused on issues relevant to personal jurisdiction, with a second deposition to occur later in discovery on merits-based topics. Exhibit 1 is the transcript of the jurisdictional deposition.

The transcript covers topics that are directly relevant to the jurisdictional analysis, including:

- Mr. Shazeer's role in the development and evaluation of Large Language Models at Google;
- The use of user interaction data in training Character.AI's models;
- Mr. Shazeer's resignation from Google and his recruitment of former Google personnel;
- Safety concerns associated with LLMs and his knowledge of risks in releasing the product to minors;

5

- The formation and early operations of Character Technologies, Inc. ("CTI"), including Shazeer's role as CEO, shareholder, board member, and chairman;
- His oversight of Character.AI's platform and marketing efforts;
- Access by S.R.S. III of inappropriate and unsafe material from the Character.AI platform; and
- Mr. Shazeer's personal financial interests in the licensing deal between CTI and Google and the subsequent DOJ investigation.

These topics bear directly on whether Mr. Shazeer (i) personally participated in the marketing, sale, and distribution of an unsafe product in Florida (*Office of Attorney Gen. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)); (ii) created or used CTI for an improper purpose (*W.P. Prods., Inc. v. Tramontina U.S.A., Inc.*, 101 F.4th 787, 791 (11th Cir. 2024)); and (iii) dominated and controlled CTI (*Bellairs v. Mohrmann*, 716 So. 2d 320, 323 (Fla. 2d DCA 1998)). Each topic is thus central to Plaintiffs' response to Mr. Shazeer's Renewed Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiffs cite the transcript more than forty times, referencing significant portions of the transcript throughout their response briefs. Filing the transcript is therefore "necessary" because it provides the evidentiary basis for the arguments made in Plaintiffs' response. Without access to the transcript, the Court would be deprived of the full record underlying Plaintiffs' opposition. *See Chi. Tribune Co.*, 263 F.3d at 1310 (recognizing the presumption of public access to judicial documents and the need for courts and the public to evaluate judicial decisions in light of the evidence presented).

Because the deposition transcript is essential to adjudicating the pending jurisdictional motion, filing it is necessary. Nonetheless, the transcript was marked "Highly Confidential" by Defendants under the parties' interim agreement, and

6

Plaintiffs seek leave to file the transcript under seal at this time. Plaintiffs have avoided filing exhibits to the deposition that contain corporate information of CTI to avoid filing information that is potentially confidential but not critical to Plaintiffs' positions. However, Mr. Shazeer's testimony is directly relevant to this Court's exercise of personal jurisdiction over Mr. Shazeer. Plaintiffs submit that the presumption of public access outweighs Defendants' confidentiality designation, and that the transcript should ultimately be available on the public docket.

To the extent that certain statements in the deposition contain sensitive information that outweighs the public's right to access, such information can and should be redacted from the transcript. However, Defendants have designated the entire transcript "Highly Confidential," making redactions unavailable to Plaintiffs at this time.

### B. Exhibit 2—Deposition Transcript of Defendant Daniel De Freitas

On August 30, 2025, Plaintiffs deposed Defendant Daniel De Freitas. Like Mr. Shazeer, Mr. De Freitas sat for a jurisdiction-focused deposition session, with merits issues to be addressed in later discovery. Exhibit 2 is the transcript of that jurisdictional deposition.

Plaintiffs rely extensively on Mr. De Freitas's testimony in their opposition to his Renewed Motion to Dismiss for Lack of Personal Jurisdiction. The transcript is cited and quoted throughout the responses—again over 40 citations—providing critical evidentiary support for Plaintiffs' arguments. The De Freitas deposition

7

addresses matters uniquely relevant to personal jurisdiction and veil-piercing issues, including:

- His participation in the development of LLMs at Google;
- Safety measures implemented (and not implemented) in connection with AI models;
- His resignation from Google and subsequent founding of CTI;
- CTI's stated goals in advancing LLM technology;
- User "swipe" optimization on the Character.AI platform and the ability to sidestep platform terms of service;
- Development of Character.AI and related safety concerns, including protocols for minors;
- His direct participation in coding, safety research, and technical design at CTI;
- Access by S.R.S. III of inappropriate and unsafe material from the Character.AI platform; and
- Mr. De Freitas's personal financial stake in the Google licensing deal and the DOJ's subsequent investigation.

Each of these subjects bears directly on whether Mr. De Freitas purposefully directed conduct toward Florida and personally participated in the development and distribution of the Character.AI platform (*Wyndham Int'l*, 869 So. 2d at 598), whether CTI was formed or operated for an improper purpose (*W.P. Prods.*, 101 F.4th at 791), and whether Mr. De Freitas dominated and controlled CTI (*Bellairs*, 716 So. 2d at 323). The filing of this transcript is therefore "necessary" because it forms part of the record the Court must evaluate in resolving the pending jurisdictional motion. *See Chi. Tribune Co.*, 263 F.3d at 1310 (emphasizing the importance of public access to judicial documents that underlie judicial decision-making).

As with the Shazeer transcript, Plaintiffs do not believe this testimony warrants permanent sealing. Nevertheless, because Defendants designated the

8

transcript "Highly Confidential" under the parties' interim agreement, Plaintiffs seek leave to file it under seal in order to preserve the record for the Court. Plaintiffs submit that once the Court has reviewed the transcript, the presumption of public access should prevail.

To the extent that certain statements in the deposition contain sensitive information that outweighs the public's right to access, such information can and should be redacted from the transcript. However, Defendants have designated the entire transcript "Highly Confidential," making redactions unavailable to Plaintiffs at this time.

### C. Exhibit 5—Email to Defendant Shazeer

Exhibit 5 is an email sent by an AI technician to Defendant Noam Shazeer, in which the sender references his understanding of Mr. Shazeer's reasons for departing Google to form CTI. The email directly corroborates allegations made in the Second Amended Complaint concerning the circumstances of Mr. Shazeer's resignation and his role in founding CTI.

This communication is highly probative of Plaintiffs' jurisdictional arguments. It provides contemporaneous, third-party evidence regarding Mr. Shazeer's motivations for creating CTI and tends to support Plaintiffs' position that CTI was established for the purpose of commercializing LLM technologies outside of Google's safety protocols. Such evidence is directly relevant to whether CTI was formed for an improper purpose (*W.P. Prods., Inc. v. Tramontina U.S.A., Inc.*, 101 F.4th 787, 791 (11th Cir. 2024)) and to whether Mr. Shazeer's personal involvement justifies the exercise of jurisdiction over him (*Wyndham Int'l*, 869 So. 2d at 598).

9

Because the email is cited in Plaintiffs' opposition brief and provides direct evidentiary support for core jurisdictional allegations, filing the exhibit is necessary. Although Defendants have marked this document "Highly Confidential," Plaintiffs submit that no basis exists for permanent sealing and that the presumption of public access should control. Because the document has been designated as "Highly Confidential," redactions are not available to Plaintiff at this time.

### D. Exhibit 6—De Freitas Offer Letter

Exhibit 6 is the offer letter extended to Defendant Daniel De Freitas by Google in conjunction with the licensing agreement between Google and CTI. This document directly bears on Plaintiffs' allegations regarding the Individual Defendants' motivations in creating CTI and the manner in which they personally profited from the licensing deal.

The letter supports Plaintiffs' position that Mr. De Freitas, along with Mr. Shazeer, intentionally established CTI as a vehicle to develop and distribute large language models outside of Google's brand and safety constraints, with the aim of later licensing the technology back to Google for substantial personal gain. The document therefore provides evidence relevant to whether CTI was formed for an improper purpose (*W.P. Prods., Inc. v. Tramontina U.S.A., Inc.*, 101 F.4th 787, 791 (11th Cir. 2024)), and whether the Individual Defendants dominated and used CTI as an alter ego to accomplish personal objectives (*Bellairs v. Mohrmann*, 716 So. 2d 320, 323 (Fla. 2d DCA 1998)).

Because this letter is directly cited in Plaintiffs' response and supports central factual allegations concerning both personal jurisdiction and improper purpose, filing the exhibit is necessary. Defendants designated the offer letter as "Highly Confidential," making redactions unavailable to Plaintiffs. Plaintiffs take no position as to whether the offer letter should be maintained under seal.

### E. Exhibit 7—Google License Agreement

Exhibit 7 is the License and Release Agreement executed between Google LLC and Character Technologies, Inc. ("CTI") on August 1, 2025. This agreement is central to Plaintiffs' jurisdictional arguments because it memorializes the licensing transaction by which Google acquired rights to CTI's technology while simultaneously providing substantial personal financial benefits to Defendants Shazeer and De Freitas.

The License Agreement directly supports Plaintiffs' allegations that CTI was established to advance large language models outside of Google's oversight and brand restrictions, only to later license those technologies back to Google once they had been widely distributed to users. This evidence bears on whether CTI was formed or used for an improper purpose, whether the Individual Defendants dominated and controlled CTI for personal gain, and whether the Defendants personally participated in conduct directed toward Florida.

Because the License Agreement is cited in Plaintiffs' response and provides direct evidentiary support for Plaintiffs' theory of jurisdiction, filing the exhibit is necessary. Defendants designated the License Agreement as "Highly Confidential,"

making redactions unavailable to Plaintiffs. Plaintiffs take no position as to whether the License Agreement should be maintained under seal.

### F. Exhibit 8—Pitch Deck

Exhibit 8 is a pitch deck prepared by Defendants in connection with the founding and early fundraising of Character Technologies, Inc. ("CTI"). The pitch deck is highly probative of Plaintiffs' allegations concerning the Individual Defendants' motivations and personal involvement in the creation and operation of CTI. Specifically, it supports Plaintiffs' contention that CTI was established to capitalize on innovations developed at Google but to do so outside of Google's safety and brand constraints. The document also evidences that Shazeer and De Freitas directly pitched themselves—not merely CTI—as the drivers of the company's success, thereby reinforcing Plaintiffs' position that the Individual Defendants personally dominated and controlled CTI for their own benefit.

Because Plaintiffs cite the pitch deck in their opposition to Defendants' Renewed Motions to Dismiss, filing the document is necessary to provide the Court with the full evidentiary record. While Defendants have marked the pitch deck as "Confidential," Plaintiffs maintain that no legitimate basis exists for permanent sealing and that the strong presumption of public access should ultimately govern.

### G. Exhibits 22 and 23—Employment Agreements of Shazeer with Google and De Freitas and Google

Exhibits 22 and 23 are the employment agreements executed between Defendant Noam Shazeer and Google (Exhibit 22) and Defendant Daniel De Freitas and Google (Exhibit 23) during their tenures. Plaintiffs cite this evidence

12

as support for Plaintiffs' allegation that Mr. Shazeer left Google to accelerate the commercialization of Character.AI without Google's brand or safety constraints, while still relying on Google-trained personnel to build the platform. This evidence also tends to support Plaintiffs' contention that CTI was created with Google's knowledge and tacit approval, with the expectation that the technology would ultimately be licensed back to Google.

The employment agreement is thus directly relevant to whether CTI was formed for an improper purpose, and to whether Mr. Shazeer dominated and used CTI as an alter ego for his own benefit. Because Plaintiffs rely on the agreement in their opposition brief, filing it is necessary. However, Plaintiffs cite only one provision in the Employment Agreements. Accordingly, the rest of the documents could be redacted to avoid public disclosure of sensitive information, allowing public access to the provision relevant to the Court's determination on jurisdiction. Currently, however, Defendants designated the License Agreements as "Highly Confidential," making redactions unavailable to Plaintiffs at this time.

### H. Exhibit 24 and 25—Spreadsheet Data

Exhibits 24 and 25 are copies of spreadsheet data produced by Character Technologies. The data was produced in response to the following Request for Production:

> 10. Produce all documents and/or correspondence indicating whether the conversations between Sewell Setzer III and Daenerys Targaryen bot triggered any internal red flags or monitors at Character.AI, and any subsequent responses.

13

In response to that Request, Character Technologies produced spreadsheet 103CAI0000145, and stated that:

> Subject to and without waiving the foregoing objections, CTI agrees to produce messages sent by Sewell Setzer III that triggered automated content filters that can be located through a reasonable search.

Because this response indicates that the spreadsheet data consists, at least in part, of "messages sent by Sewell Setzer III," Plaintiffs' position is that such data cannot be confidential information of Character Technologies. Regardless, Defendants have designated the entire spreadsheet as "Highly Confidential" and Plaintiffs thus request to file the data under seal. Plaintiffs maintain that no legitimate basis exists for permanent sealing and that the strong presumption of public access should ultimately govern.

## I. Certification of Serving Motion on Non-Party

Local Rule 1.11(c)(7) requires that the moving party "must certify the name, mailing address, email address, and telephone number of any non-party the movant knows or reasonably should know has an interest in establishing or maintaining the seal and the day on which, and the means by which, the movant served or otherwise delivered the motion to the non-party."

> Jared Kaplan may have an interest in establishing or maintaining a seal of Exhibit 5 and his contact information is the following: Email: jared@anthropic.com. On September 8, 2025, the undersigned delivered to via email to Mr. Kaplan, this motion along with Exhibit 5.

Defendants will be served via email with all unredacted exhibits to this motion, immediately after this motion is filed.

14

# CONCLUSION

For the foregoing reasons, the Court should permit Plaintiffs to file under seal the following documents:

| Docket Number | Exhibit | Description | Beginning Bates Number |
|---|---|---|---|
| 194-1 | 1 | Transcript from Mr. Daniel De Freitas's August 29, 2025, Deposition | |
| 194-2 | 2 | Transcript from Mr. Noam Shazeer August 28, 2025, Deposition | |
| 194-5 | 5 | Email from Jared Kaplan to Noam Shazeer and Forwarded to Daniel De Freitas ("Kaplan Email") | GARCIA-NS-0001047 |
| 194-6 | 6 | Letter from Keith Wolfe on Behalf of Google LLC to Daniel De Freitas dated August 1, 2025 ("Offer Letter") | De Freitas_0000494 |
| 194-7 | 7 | The License and Release Agreement by and Between Google LLC and Character Technologies, dated August 1, 2025 ("License Agreement") | 103CAI0000081 |
| 194-8 | 8 | Pitch Deck for Character.AI, Dated December 8, 2021 ("Pitch Deck") | DeFreitas_0000087 |
| 194-22 | 22 | The Employment Agreement Between Google LLC and Noam Shazeer, dated June 18, 2012 | GARCIA-NS-0002413 |
| 194-23 | 23 | The Employment Agreement Between Google LLC and Noam Shazeer, dated October 21, 2016 | DeFreitas_0000033 |
| 194-24 | 24 | Spreadsheet data | 103CAI00000145 |
| 194-25 | 25 | Select rows of Spreadsheet data | 103CAI00000145 |

## **LOCAL RULE 3.01(g) CERTIFICATION**

On September 4, 2025, counsel for Plaintiffs emailed a list of potential exhibits Plaintiffs intended to rely upon in opposing the Individual Defendants' Motions to Dismiss. Defendants withdrew confidential designations for some documents but maintained the confidentiality designations for the documents referenced in this Motion to Seal.

Dated: September 8, 2025                              Respectfully Submitted,

*/s/ Amy L. Judkins*
**Amy L. Judkins, Esq.**
Florida Bar No.: 125046
Normand PLLC
Telephone: (407) 603-6031
3165 McCrory Place, Ste 175
Orlando, FL 3280
alj@normandpllc.com