# EXHIBIT C

**ACTION BY WRITTEN CONSENT
BY THE SOLE MEMBER OF THE BOARD OF DIRECTORS OF
CHARACTER TECHNOLOGIES, INC.,
a Delaware corporation**

**November 29, 2021**

Under and in accordance with Section 141(f) and Section 242 of the Delaware General Corporation Law, the undersigned, constituting the sole member of the Board of Directors (the "Board") of Character Technologies, Inc., a Delaware corporation (the "Company"), executes this instrument to evidence his consent to the taking of the actions set forth herein, and the adoption of the following preambles and resolutions without the holding of a meeting:

**I.   CERTIFICATE OF AMENDMENT TO THE AMENDED AND RESTATED CERTIFICATE OF INCORPORATION**

**WHEREAS**, the Board hereby determines that it is advisable and in the best interests of the Company and its stockholders to amend a provision of the Company's Amended and Restated Certificate of Incorporation as currently in effect (the "**Certificate of Incorporation**") to increase the total number of shares of Class F Stock which the Company shall have the authority to issue from 2,200,000 shares to 2,550,000 shares, as set forth in the Certificate of Amendment to the Certificate of Incorporation, in substantially the form attached hereto as <u>Exhibit A</u> (the "**Certificate of Amendment**").

**NOW, THEREFORE, BE IT RESOLVED**, that the Certificate of Amendment be, and it hereby is, approved and adopted in all respects;

**RESOLVED FURTHER**, that the officers of the Company are authorized, empowered and directed to solicit the approval of the Certificate of Amendment by the Company's stockholders;

**RESOLVED FURTHER**, that upon receipt of the requisite stockholder approval of the Certificate of Amendment, the officers of the Company are authorized, empowered and directed to execute, acknowledge and file the Certificate of Amendment with the Secretary of State of the State of Delaware; and

**RESOLVED FURTHER**, that at any time prior to the effectiveness of the filing of the Certificate of Amendment with the Secretary of State of the State of Delaware, notwithstanding the authorization of the Certificate of Amendment by the stockholders of the Company, the Board may abandon such proposed amendment without further action by the stockholders.

**II.   SALE OF CLASS A COMMON STOCK AND CLASS F STOCK**

**RESOLVED**, that the Board hereby determines, after consideration of all relevant factors, that the fair market value of the Company's Class A Common Stock and Class F Stock as of the date hereof is $0.00001 (with respect to the Class A Common Stock) and $0.0001 per share (with respect to the Class F Stock);

**RESOLVED FURTHER**, that subject to prior compliance with Federal and state securities laws (the "Securities Laws") and subject to filing of the Certificate of Amendment with the Delaware Secretary of State, the appropriate officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to sell the shares of the

OMM_US:80309057.1

Highly Confidential - Attorneys' Eyes Only

103CAI00000708

Company's Class A Common Stock listed below at a purchase price of ▮ per share, and the shares of the Company's Class F Stock listed below at a purchase price of ▮ per share to the persons set forth below pursuant to the form of Founder Stock Purchase Agreement in substantially the form attached hereto as Exhibit B:

| Name | Number of Shares of Class F Stock | Number of Shares of Class A Common Stock |
|---|---|---|
| Romal Thoppilan | ▮ | ▮ |
| Prajit Ramachandran | ▮ | ▮ |
| Irwan Bello | ▮ | ▮ |

**RESOLVED FURTHER**, that the shares of Class A Common Stock and Class F Stock authorized to be sold and issued by the Company shall be offered and sold in accordance with the terms of the exemption from qualification provided by Section 4(a)(2) of the Securities Act of 1933, as amended, and the state "Blue Sky" laws as shall be applicable, and that the officers of the Company be, and they hereby are, authorized and directed to execute and file with the appropriate state officers, for and on behalf of the Company, any forms or notices as required pursuant to Federal and state securities laws;

**RESOLVED FURTHER**, that upon the issuance and sale in accordance with the foregoing resolutions, such shares of Class A Common Stock and Class F Stock shall be fully paid and non-assessable shares of the Company;

**RESOLVED FURTHER**, that the Company hereby reserves an aggregate of 700,000 shares of Class A Common Stock of the Company (plus such additional shares of Class A Common Stock as may be required for adjustments of the conversion ratio of the Class F Stock) for issuance upon conversion of the Class F Stock issued pursuant to these resolutions, and that upon such issuance, such shares of Class A Common Stock shall be validly issued, fully paid and non-assessable; and

**RESOLVED FURTHER**, that the appropriate officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, (a) to take all actions necessary to comply with the Securities Laws with respect to the above-described issuance of shares, (b) thereafter to issue on behalf of this Company, pursuant to the authorization above, the shares of common stock described above, and (c) to take such other action as they may deem necessary or appropriate to carry out the issuance of the shares and the intent of these resolutions.

### III. OMNIBUS

**RESOLVED FINALLY**, that the officers of the Company be, and they hereby are, authorized, directed and empowered to execute any applications, certificates, agreements or any other instruments or documents, or amendments or supplements to such documents, or to do or to cause to be done any and all other acts and things as such officers, in their sole discretion, may deem necessary or advisable and appropriate to carry out the purposes of the foregoing resolutions (hereby ratifying and confirming all actions heretofore and hereafter taken to accomplish the purposes of these resolutions).

2

OMM_US:80309057.1

Highly Confidential - Attorneys' Eyes Only

103CAI00000709

**IN WITNESS WHEREOF**, the undersigned sole director of Character Technologies, Inc. has hereby executed this Written Consent and directed that it be filed with the minutes of the proceedings of the Board of Directors. This consent has been executed effective as of the date first set forth above.

**DIRECTOR:**

Date: 11/29/2021

*Noam Shazeer* (DocuSigned by: CE939D237A2A46F...)

Noam Shazeer

Highly Confidential - Attorneys' Eyes Only

103CAI00000710

## Exhibit A

**Certificate of Amendment of the Amended and Restated Certificate of Incorporation**

OMM_US:80309057.1

Highly Confidential - Attorneys' Eyes Only                                    103CAI00000711

# CERTIFICATE OF AMENDMENT TO THE AMENDED AND RESTATED CERTIFICATE OF INCORPORATION OF CHARACTER TECHNOLOGIES, INC.

The undersigned, Noam Shazeer, hereby certifies that:

1. He is the duly elected and acting Chief Executive Officer of Character Technologies, Inc., a Delaware corporation (the "Corporation").

2. The original Certificate of Incorporation of the Corporation was filed with the Delaware Secretary of State on November 3, 2021. The Amended and Restated Certificate of Incorporation of the Corporation was filed with the Delaware Secretary of State on November 10, 2021 (the "Restated Certificate").

4. Section A of ARTICLE IV of the Restated Certificate is hereby amended and restated in its entirety to read as follows:

"A. This Corporation is authorized to issue two classes of shares to be designated respectively Class F Stock ("**Class F Stock**") and Common Stock ("**Common Stock**"). The total number of shares of Class F Stock this Corporation shall have authority to issue is two million five hundred fifty thousand (2,550,000). The total number of shares of Common Stock this Corporation shall have authority to issue is twenty-seven million nine hundred thousand (27,900,000). The Common Stock shall be divided into two series, twenty million (20,000,000) shares of Common Stock shall be designated Class A Common Stock ("**Class A Common Stock**") and seven million nine hundred thousand (7,900,000) shares of Common Stock shall be designated Class B Common Stock ("**Class B Common Stock**"). The Class F Stock and Common Stock shall each have a par value of $0.00001 per share."

5. Except as modified hereby, the Restated Certificate shall remain in full force and effect.

6. The foregoing amendment was duly adopted by this Corporation's Board of Directors and stockholders in accordance with Sections 228 and 242 of the Delaware General Corporation Law.

* * *

Highly Confidential - Attorneys' Eyes Only                                                       103CAI00000712

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Amendment to the Amended and Restated Certificate of Incorporation on this _____ day of November , 2021.

            **CHARACTER TECHNOLOGIES, INC.**


          By: _____
            Noam Shazeer
            *Chief Executive Officer*

Highly Confidential - Attorneys' Eyes Only    103CAI00000713

# Exhibit B

## Form of Founder Stock Purchase Agreement

OMM_US:80309057.1

Highly Confidential - Attorneys' Eyes Only          103CAI00000714

FOUNDER STOCK PURCHASE AGREEMENT

THIS FOUNDER STOCK PURCHASE AGREEMENT (the "*Agreement*") is made as of _____, 2021, by and between Character Technologies, Inc., a Delaware corporation (the "*Company*"), and _____("*Purchaser*").  In consideration of the premises and the mutual promises set forth in this Agreement, the parties hereby agree as follows:

> **Shares of Class A Common Stock:** _____   **Class A Common Purchase Price per Share**: $0.00001
>
> **Shares of Class F Stock**: _____   **Class F Purchase Price per Share**: $0.0001
>
> **Aggregate Purchase Price**: $
>
> **Vesting Schedule:** If Purchaser becomes a full-time employee of the Company on or prior to _____, then Purchaser shall acquire a vested interest in, and the Repurchase Right shall lapse in a series of forty eight (48) substantially equal and continuous monthly installments for each full month of Service following the date of Purchaser's commencement of full-time employment with the Company. If Purchaser does not become a full-time employee of the Company on or before such date, the Shares shall immediately cease vesting and shall be subject to the Repurchase Right.
>
> **Double Trigger Acceleration**: If, within three (3) months prior to, on or at any time following the consummation of a Corporate Transaction, Purchaser's Service is terminated by the Company without Cause, then, subject to the Release Condition, Purchaser shall immediately vest in, and the Repurchase Right will lapse with respect to, all of the then Unvested Shares.

1. **Purchase**.  Purchaser hereby purchases, and the Company hereby sells to Purchaser, the Shares set forth above (the "*Shares*") at the purchase prices per share set forth above (each, the "*Purchase Price*").  Purchaser hereby delivers to the Company the aggregate Purchase Price in cash and a duly executed blank Assignment Separate from Certificate in the form attached hereto as <u>Exhibit A</u>.

2. **Vesting; Repurchase Right**. The Company is hereby granted the right (the "*Repurchase Right*"), exercisable at any time during the 90-day period following the date that Purchaser ceases for any reason to remain in Service to the Company (the "*Repurchase Period*") to repurchase at the Purchase Price all or (at the Company's discretion) any portion of the Shares in which Purchaser has not acquired a vested interest in accordance with the vesting provisions of this Agreement ("*Unvested Shares*"). Nothing contained in this Agreement shall confer upon Purchaser any right to continue in Service for any period or restrict the right of the Company or Purchaser to terminate Purchaser's Service at any time for any reason.

   a. *Exercise*.  Unless the Company notifies Purchaser during the Repurchase Period that it does not intend to exercise the Repurchase Right with respect to some or all of the Unvested Shares, the Repurchase Right shall be deemed automatically exercised by the Company as of the end of the Repurchase Period; provided that the Company may notify Purchaser that it is exercising its Repurchase Right prior thereto.  Absent such notice, execution of this Agreement by Purchaser constitutes written notice to Purchaser of the Company's intention to exercise the Repurchase Right with respect to all Unvested Shares.  Prior to the date of repurchase, Purchaser shall deliver to the Company the certificate(s), if any, representing the Unvested Shares to be repurchased, properly endorsed for transfer. On the repurchase date, the Company shall pay to Purchaser in cash, by cancellation of any indebtedness or by a combination thereof, the Purchase Price for the Unvested Shares being repurchased. In the event of any deemed automatic exercise of the Repurchase Option pursuant to this Section 2(a) in which

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only                                      103CAI00000715

Purchaser is indebted to the Company, such indebtedness equal to the Purchase Price of the Unvested Shares being repurchased shall be deemed automatically canceled as of the end of the Repurchase Period unless the Company otherwise satisfies its payment obligations.

b. *Vesting*. Subject to Purchaser's continuous Service through each applicable vesting date, Purchaser shall acquire a vested interest in the Shares in accordance with the Vesting Schedule set forth on the first page of this Agreement. The Shares shall vest first (if at all) with respect to shares of Class F Stock and only thereafter with respect to shares of Class A Common Stock, so that all Shares of Class F Stock are fully vested prior to (or at least simultaneously with) the vesting of any Shares of Class A Common Stock. Any fractionally vested Shares shall be rounded down to the nearest whole share. In the event of any stock dividend, stock split, recapitalization or similar event, any new, substituted or additional securities or other property which is by reason of any such transaction distributed with respect to any Unvested Shares shall be immediately subject to the Repurchase Right and released therefrom in accordance with the vesting of the underlying Unvested Shares. Appropriate adjustments to reflect the distribution of such securities or property, or as otherwise appropriate to reflect the effect of the transaction on the Class A Common Stock, shall be made to the number of Shares at the time subject to the Repurchase Right hereunder and to the price per share to be paid upon the exercise of the Repurchase Right in order to reflect the effect of any such transaction upon the Company's capital structure (with the aggregate Purchase Price remaining the same).

c. *Certain Definitions*. In this Agreement, the following definitions shall apply:

i. *"Cause"* means (A) conviction of or plea of no contest by Purchaser to a felony involving a crime of moral turpitude; (B) Purchaser's fraud, embezzlement or material misappropriation of property of the Company; or (C) Purchaser's willful or deliberate violation of Purchaser's fiduciary obligations to the Company if (in the case of clause (C) only) such conduct continues after written notice thereof from the Company and a reasonable opportunity of at least thirty (30) days to cure the same;

ii. *"Corporate Transaction"* means (A) a merger or consolidation of the Company, in which the stockholders of the Company do not control 50% or more of the total voting power of the surviving entity (other than a mere reincorporation merger); (B) the sale, transfer or other disposition of all or substantially all of the Company's assets in a liquidation or dissolution of the Company or otherwise; or (C) the sale or transfer of more than 50% of the outstanding voting stock of the Company (excluding a transaction effected primarily for capital raising purposes);

iii. *"Release Condition"* means Purchaser's delivering to the Company within 21 days following the last day of Purchaser's Service a general release of claims in favor of the Company and its affiliates provided by the Company (the "*Release*") and not revoking such Release within any revocation period provided under applicable law;

iv. *"Service"* means Purchaser's service to the Company, any parent or subsidiary of the Company or any successor entity as an employee, consultant, advisor or member of the Company's Board of Directors.

3. **Taxes**.

a. *83(b) Election*. Purchaser understands that under Section 83 of the Internal Revenue Code of 1986, as amended (the "*Code*"), the excess of the fair market value of the Shares on the date any forfeiture restrictions applicable to such shares (including the Repurchase Right) lapse over the Purchase Price for such Shares will be reportable as ordinary income on such lapse date. Purchaser

2

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only

103CAI00000716

understands that Purchaser may elect under Section 83(b) of the Code to be taxed at the time the Shares are initially purchased, rather than when and as such Shares cease to be subject to such forfeiture restrictions. Such election must be filed with the Internal Revenue Service within thirty (30) days after the date the Shares are initially issued to Purchaser (typically, the date of Board approval of such issuance). Even if the fair market value of the Shares on the date of such issuance equals the Purchase Price paid (and thus no tax is payable), the election must be made to avoid adverse tax consequences in the future. Sample forms for making this election are attached as Exhibits B and C hereto. ***Purchaser understands that failure to make this filing within the thirty (30) day period will result in the recognition of ordinary income by Purchaser as and each time the Repurchase Right lapses and the Shares vest.***

**PURCHASER ACKNOWLEDGES THAT IT IS PURCHASER'S SOLE RESPONSIBILITY (NOT THE COMPANY'S) TO FILE A TIMELY ELECTION UNDER SECTION 83(b), EVEN IF PURCHASER REQUESTS THE COMPANY OR ITS REPRESENTATIVES TO MAKE THIS FILING ON HIS BEHALF**.

b. *Valuation of Shares*. Purchaser understands that (i) the Purchase Price represents the fair market value of the Shares at the time of purchase, as determined in good faith by the Board, but that neither the Company nor the Board can give any assurance that the Purchase Price is in fact the fair market value of the Shares and (ii) it is possible that the Internal Revenue Service would successfully assert that the value of the Shares on the date of purchase is substantially greater than so determined. In such event, the value exceeding the Purchase Price would constitute ordinary income to Purchaser as of the date of purchase, resulting in taxes (and interest) payable by Purchaser. The Company has no obligation to reimburse Purchaser for any such tax (or interest) liability, and Purchaser assumes all responsibility for such potential liability.

c. *No Tax Advice*. Purchaser is hereby advised to consult with his or her own tax, legal and/or investment advisors with respect to any advice Purchaser may determine is appropriate with respect to the Shares (including, without limitation, to determine the foreign, state, local, estate and/or gift tax consequences with respect to the purchase of the Shares, the advisability, process and requirements of making an election under Section 83(b) of the Code. Neither the Company nor any of its officers, directors, affiliates or advisors makes any representation (except for the terms and conditions expressly set forth in this Agreement) or recommendation with respect to the Shares or the making an election under Section 83(b) of the Code.

4. **Transfer Restrictions; Securities Laws**.

a. *No Transfers without Board Approval*. Purchaser may not transfer, assign, encumber or otherwise dispose of (any such transaction, a "***Transfer***") any Shares or any interest therein other than in accordance with the bylaws of the Company (which require approval of the Company's Board of Directors (the "***Board***") or its designee, except for certain limited exceptions), which bylaws are available to Purchaser upon request. Without limiting the foregoing or any other provision of this Agreement, as a condition precedent to any otherwise permitted Transfer of any Shares, (i) any person (other than the Company) to whom the Shares are Transferred must agree to be bound by this Agreement as the "Purchaser" hereunder and (ii) Purchaser shall have provided the Company with written assurances satisfactory to the Company, that the Transfer complies with applicable securities laws and that the proposed disposition will not result in the contravention of any transfer restrictions applicable to the Shares. The Company shall not be required to transfer on its books any Shares which have been Transferred in violation of this Agreement.

3

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only

103CAI00000717

b. *Market Stand-Off.* In connection with any underwritten public offering by the Company of its equity securities pursuant to an effective registration statement filed under the Securities Act of 1933, as amended (the "*Act*"), Purchaser shall not sell, make any short sale of, loan, hypothecate, pledge, grant any option for the purchase of, or otherwise dispose or transfer for value or otherwise agree to engage in any of the foregoing transactions with respect to, any Shares (including any hereafter acquired shares or any substituted or additional securities distributed with respect thereto or to the Shares) without the prior written consent of the Company or its underwriters. Such limitations shall be in effect for such period of time from and after the effective date of such registration statement as may be requested by the Company or such underwriters; *provided, however*, that in no event shall such period exceed one hundred-eighty (180) days. In order to enforce the limitations of this Section 5(b), the Company may impose stop-transfer instructions with respect to any securities restricted hereby until the end of the applicable stand-off period.

c. *Securities Law Compliance.* Purchaser confirms and understands that (i) Purchaser is aware of the Company's business affairs and financial condition and has acquired sufficient information about the Company to reach an informed and knowledgeable decision to acquire the Shares (which are acquired for investment for Purchaser's own account without a view to resell them), (ii) the Shares have not been registered under the Act in reliance upon a specific exemption therefrom, which exemption depends upon, among other things, Purchaser's investment intent as expressed herein and (iii) the Shares must be held indefinitely unless they are registered under the Act or an exemption from such registration is available; and that the Company is under no obligation to register the Shares.

5. **Escrow**. The certificates for any Shares purchased hereunder shall (at the sole discretion of the Company) be deposited in escrow with the Company to be held in accordance with the provisions of this Section 5 (which shall accompanied by a duly executed Assignment Separate from Certificate in the Form of <u>Exhibit A</u>). Any regular cash dividends on any Shares shall be paid directly to Purchaser and shall not be held in escrow. However, in the event of any stock dividend, stock split, recapitalization or similar event, any new, substituted or additional securities or other property which is by reason of such transaction distributed with respect to any Shares then held in escrow shall (at the sole discretion of the Company) be immediately delivered to the Company to be held in escrow under this Section 5. If the Company elects to exercise the Repurchase Right or Special Purchase Right, the escrowed certificates for the repurchased Shares (together with any other assets or securities issued with respect thereto) shall be retained by the Company and released from escrow and Purchaser (or Spouse, if applicable) shall cease to have any further rights or claims with respect to such Shares (or other assets or securities attributable thereto). In the event of a Transfer that is permitted by, and compliant with this Agreement, the escrowed certificates for the Shares so Transferred (together with any other assets or securities attributable thereto) shall be surrendered to Purchaser (or its designee).

6. **Marital Dissolution or Legal Separation**. In connection with the dissolution of Purchaser's marriage or the legal separation of Purchaser and Purchaser's spouse ("***Spouse***"), the Company shall have the right (the "***Special Purchase Right***") to purchase from Spouse, at the then current fair market value of the Shares, as determined by the Board (the "***Repurchase Price***"), all or any portion of the Shares which would otherwise be awarded to Spouse in settlement of any community property or other marital property rights Spouse may have in such Shares. Purchaser shall promptly provide the Company with written notice (the "***Dissolution Notice***") of the entry of any judicial decree or order resolving the property rights of Purchaser and Spouse in connection with their marital dissolution or legal separation or the execution of any agreement relating to the distribution or division of such property rights (which shall be accompanied by a copy of such decree, order or agreement) providing for the award to Spouse of any Shares. The Company may exercise the Special Purchase Right by delivery of written notice (the "***Purchase Notice***") to Purchaser and Spouse within 45 days after the Company's receipt of

4

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only

103CAI00000718

the Dissolution Notice, which Purchase Notice shall indicate the class and number of Shares to be purchased by the Company, the date such purchase is to be effected (which shall not be more than 30 days after the date of the Purchase Notice) and the Repurchase Price. Purchaser (or Spouse, to the extent Spouse has physical possession of the Shares) shall, prior to the date specified for the purchase, deliver to the Company the certificates representing the Shares to be purchased. On the date of purchase under this Section 7, the Company shall pay to Spouse in cash or cash equivalents the Repurchase Price.

Spouse shall, within 10 days of receipt of the Purchase Notice, notify the Company in writing of Spouse's disagreement (if any) with the Board's determination of the Repurchase Price, in which case the Repurchase Price shall thereupon be determined by an appraiser of recognized standing mutually selected by the Company and Spouse, whose appraisal shall be determinative of such value. If they cannot agree on an appraiser within 15 days after such notice, each shall select an appraiser of recognized standing, and the two (2) appraisers shall designate a third appraiser of recognized standing. The cost of the appraisal shall be shared equally by the Company and Spouse. The closing shall then be held on the 15th business day following the completion of such appraisal; *provided, however*, that the Company shall have the right, exercisable prior to the expiration of such 15 business day period, to rescind the exercise of the Special Purchase Right and thereby revoke its election to purchase the Shares awarded to Spouse.

7. **Legends**. In order to reflect the restrictions on Transfer and other provisions of this Agreement, the stock certificates for the Shares will be endorsed with restrictive legends, including one or more of the following legends:

*"The shares represented by this certificate have been acquired for investment and not with a view to, or in connection with, the sale or distribution thereof. These securities have not been registered under the Securities Act of 1933. They may not be sold, offered for sale, pledged or hypothecated in the absence of an effective registration statement as to the securities under said Act or an opinion of counsel satisfactory to the Company that such registration is not required."*

*"The shares represented by this certificate are restricted by the terms of a stock purchase agreement between the Company and the named stockholder (which agreement contains, among other things, transfer restrictions and a voting and proxy agreement). The shares represented by this certificate may be transferred only in accordance with such agreement, a copy of which is on file with the Secretary of the Company."*

8. **Miscellaneous**.

   a. *Voting Agreement*.

      i. If, at any time, any action is presented for a vote of the stockholders of the Company, including, without limitation, a Corporate Transaction (a "**Stockholder Action**"), and the Purchaser receives a notice from Noam Shazeer (the "**Proxyholder**") instructing the Purchaser to either approve or reject such action (each such notice, a "**Proxy Notice**"), then (a) the Purchaser shall vote (either in person, at a meeting or by written consent) the Shares (and any other shares issued in respect thereof, collectively with the Shares, the "**Subject Shares**"), as directed by the Proxy Notice with respect to such Stockholder Action and any matter that could reasonably be expected to facilitate the Stockholder Action, and against any conflicting proposal; and (b) if the Proxy Notice directs the Purchaser to approve a Corporate Transaction, the Purchaser shall waive any dissenters' rights, appraisal rights or similar rights in connection with such Corporate Transaction and shall, if applicable, agree to sell all of the Subject

Highly Confidential - Attorneys' Eyes Only

Shares on the terms and conditions approved by the Board (in each case, for the same amount and type of per share consideration received by the other holders of Common Stock).

ii. Purchaser hereby grants Proxyholder an irrevocable proxy, coupled with an interest, to vote all of the Subject Shares and to take such other actions to the extent necessary to carry out the provisions of this Section 8(a) in the event of any breach or imminent breach of this Section 8(a) by Purchaser. Purchaser agrees and acknowledges that monetary damages would not adequately compensate Proxyholder for the breach of this Section 8(a) and it shall accordingly be specifically enforceable, and any breach or threatened breach of this Section 8(a) shall be the proper subject of a temporary or permanent injunction or restraining order. Further, each party hereto waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach. Proxyholder is an intended third party beneficiary of this Section 8(a) and nothing in this Section 8(a) may be amended or waived without the written consent of Proxyholder (in addition to the Purchaser and the Company pursuant to Section 8(i)).

b. *California Securities Laws*. THE SALE OF THE SECURITIES THAT ARE THE SUBJECT OF THIS AGREEMENT HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION FOR SUCH SECURITIES PRIOR TO SUCH QUALIFICATION IS UNLAWFUL, UNLESS THE SALE OF SECURITIES IS EXEMPT FROM QUALIFICATION BY SECTION 25100, 25102 OR 25105 OF THE CALIFORNIA CORPORATIONS CODE. THE RIGHTS OF ALL PARTIES TO THIS AGREEMENT ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED, UNLESS THE SALE IS SO EXEMPT.

c. *Assignment; Successors and Assigns*. The Company may assign any and all of its rights hereunder (including the Repurchase Right and the Special Purchase Right) to any person or entity selected by the Company. The provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and Purchaser and Purchaser's legal representatives, heirs, legatees, distributees, assigns and transferees by operation of law.

d. *Notices*. All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) when sent by electronic mail or facsimile if sent during normal business hours of the recipient, if not, then on the next business day; (iii) two days after being sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.

e. *No Waiver*. The failure of the Company (or its assignees) in any instance to exercise any right under this Agreement shall not constitute a waiver of any other repurchase or other right that may subsequently arise. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other or subsequent breach or condition, whether of like or different nature.

f. *No Rights Upon Repurchase*. If the Company shall effect the purchase or repurchase of any Shares under this Agreement, Purchaser (or Spouse, if applicable) shall no longer have any rights as a holder of such Shares (other than the right to receive payment of consideration therefor per this Agreement), and such shares shall be deemed immediately purchased by the Company whether or not the certificates therefor have been delivered as required by this Agreement.

g. *Purchaser Undertaking*. Purchaser and Spouse hereby agree to take whatever additional action and execute whatever additional documents the Company may in its judgment deem

6

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only

103CAI00000720

necessary or advisable in order to carry out or effect one or more of the obligations or restrictions imposed on Purchaser, Spouse and/or the Shares pursuant to the express provisions of this Agreement.

   h. *Agreement is Entire Contract*. This Agreement constitutes the entire contract between the parties hereto with regard to the subject matter hereof. Purchaser acknowledges that this Agreement supersedes all previous understandings, written or oral, with respect to the subject matter hereof.

   i. *Governing Law; Miscellaneous*. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, as such laws are applied to contracts entered into and performed in such State without resort to that State's conflict-of-laws rules. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. This Agreement shall not be amended nor any section hereof waived without the written consent of Purchaser and the Company.

   j. *Arbitration*. Any controversy between the parties hereto involving any claim arising out of or relating to this Agreement shall be finally settled by arbitration in Santa Clara County, California, in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

   k. *Waiver of Conflict*. Each party to this Agreement acknowledges that O'Melveny & Myers LLP, counsel for the Company, represented the Company in the transaction contemplated by this Agreement and has not represented Purchaser in connection with such transaction. Purchaser acknowledges that it has had the opportunity to consult with its own counsel.

*[Signature Page Follows]*

Highly Confidential - Attorneys' Eyes Only   103CAI00000721

**IN WITNESS WHEREOF**, the parties have executed this Founder Stock Purchase Agreement on the day and year first indicated above.

**THE COMPANY:**

**CHARACTER TECHNOLOGIES, INC.**

By:   Noam Shazeer
Title: Chief Executive Officer

Address: _____
           _____

**PURCHASER:**

By:_____

Address: _____
           _____

8

Highly Confidential - Attorneys' Eyes Only      103CAI00000722

## CONSENT OF SPOUSE

I acknowledge that I have read the foregoing Founder Stock Purchase Agreement of Character Technologies, Inc. and that I know its contents. I hereby agree that those shares and my interest in them, if any, are subject to the provisions of the Founder Stock Purchase Agreement and that I will take no action at any time to hinder operation of or violate the Founder Stock Purchase Agreement.

_____
(Signature of Spouse)

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only                                    103CAI00000723

# EXHIBIT A

## ASSIGNMENT SEPARATE FROM CERTIFICATE

FOR VALUE RECEIVED, _____ hereby sell(s), assign(s) and transfer(s) unto Character Technologies, Inc. (the "Company") _____ (_____) shares of the Class A Common Stock of the Company standing in _____ name on the books of the Company represented by Certificate No. _____ herewith and _____ (_____) shares of the Class F Stock of the Company standing in _____ name on the books of the Company represented by Certificate No. _____ herewith and does hereby irrevocably constitute and appoint _____ Attorney to transfer the said stock on the books of the Company with full power of substitution in the premises.

Dated:_____

By:_____

*Instruction: Please do not fill in any blanks other than the signature line. The purpose of this assignment is to enable the Company to exercise its rights as set forth in the Agreement without requiring additional signatures on the part of Purchaser.*

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only                                                                                                                    103CAI00000724

# EXHIBIT B

## SECTION 83(b) TAX ELECTION

This statement is being made under Section 83(b) of the Internal Revenue Code, pursuant to Treas. Reg. Section 1.83-2.

(1)  The taxpayer who performed the services is:

    Name:
    Address: _____

    Taxpayer Ident. No.: _____

(2)  The property with respect to which the election is being made is _____ shares of the Class A Common Stock of Character Technologies, Inc.

(3)  The property was issued on _____, 2021.

(4)  The taxable year in which the election is being made is the calendar year 2021.

(5)  The property is subject to repurchase rights pursuant to which the issuer has the right to acquire the property at the original purchase price if for any reason taxpayer's service relationship with the issuer is terminated. The issuer's repurchase right lapses in a series of installments over a period of approximately four (4) years.

(6)  The fair market value at the time of transfer (determined without regard to any restriction other than a restriction which by its terms will never lapse) is $0.00001 per share.

(7)  The amount paid for such property is $0.00001 per share.

(8)  A copy of this statement was furnished to Character Technologies, Inc. for whom taxpayer rendered the service underlying the transfer of property.

(9)  This statement is executed as of _____, 2021.

_____     _____
Spouse (if any)                                                     , Taxpayer

This Form must be filed with the Internal Revenue Service Center with which taxpayer files his Federal income tax returns. The filing must be made within 30 days after the execution date of the Founder Stock Purchase Agreement.

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only         103CAI00000725

# EXHIBIT C

## SECTION 83(b) TAX ELECTION

This statement is being made under Section 83(b) of the Internal Revenue Code, pursuant to Treas. Reg. Section 1.83-2.

(1) The taxpayer who performed the services is:

    Name:
    Address: _____
    Taxpayer Ident. No.: _____

(2) The property with respect to which the election is being made is _____ shares of the Class F Stock of Character Technologies, Inc.

(3) The property was issued on _____, 2021.

(4) The taxable year in which the election is being made is the calendar year 2021.

(5) The property is subject to repurchase rights pursuant to which the issuer has the right to acquire the property at the original purchase price if for any reason taxpayer's service relationship with the issuer is terminated. The issuer's repurchase right lapses in a series of installments over a period of approximately four (4) years.

(6) The fair market value at the time of transfer (determined without regard to any restriction other than a restriction which by its terms will never lapse) is $0.0001 per share.

(7) The amount paid for such property is $0.0001 per share.

(8) A copy of this statement was furnished to Character Technologies, Inc. for whom taxpayer rendered the service underlying the transfer of property.

(9) This statement is executed as of _____, 2021.

_____     _____
Spouse (if any)                                              , Taxpayer

This Form must be filed with the Internal Revenue Service Center with which taxpayer files his Federal income tax returns. The filing must be made within 30 days after the execution date of the Founder Stock Purchase Agreement.

OMM_US:80338343.1

Highly Confidential - Attorneys' Eyes Only     103CAI00000726