

Daniel De Freitas Adiwardana



August 1st, 2024

Hello  Daniel

As you may know,  Character Technologies, Inc (the "Company"), Google LLC ("Google") (or a Google subsidiary, as applicable) and certain other parties thereto are expected to sign a license and release agreement  (the "Transaction Agreement").

The closing of the transactions contemplated by the Transaction Agreement will be referred to as the "Closing" and the date of the Closing will be referred to as the "Closing Date".  On behalf of Google, I am pleased to set forth the terms and conditions of your offer of employment with Google as defined in the enclosed offer letter (the "Offer Letter") together with the Confidential Information and Invention Assignment Agreement (the "CIIAA", and together with the Offer Letter, collectively, the "**Employment Agreements**"), which will be effective following the Closing Date on your Google employment start date (as determined by Google).

You agree that you are entering into this letter and the Employment Agreements as a condition of the signing of a Transaction Agreement, your employment with Google (or a Google subsidiary, if applicable) is at all time contingent on the Closing occuring. You agree your execution and delivery to Google of this letter and the Employment Agreements is a condition precedent to Google's willingness to enter into the Transaction Agreement.  YOU ACKNOWLEDGE AND AGREE THAT THIS LETTER AND YOUR EMPLOYMENT AGREEMENTS WILL NOT COME INTO EFFECT AND WILL BE NULL AND VOID AND OF NO FORCE AND EFFECT IF THE CLOSING DOES NOT OCCUR.

By signing this letter and the enclosed documents, you acknowledge that this letter and the attached Employment Agreements constitutes the entire agreement between you and Google relating to your terms and conditions of employment and cancels and is in substitution for all previous letters of engagement, agreement and arrangements (whether oral or in writing) between you and Google (or its subsidiaries) subject to the terms below:

- It is understood that the terms of Employment Agreements is not intended to preclude your use during your Google employment for Google-related work of any any confidential, proprietary, or trade secret information of the Company (or any of its subsidiaries, as applicable) purchased, assumed or licensed by Google (or its subsidiary or affiliate) pursuant to the Transaction Agreement.

- Subject to your continued employment with Google on the Subject to your continued employment with Google on the applicable vesting dates, the GSUs (as defined in the Offer Letter) will vest over a four-year period as follows: 6/16th of the GSUs will vest in the eighteenth calendar month following your start date with Google and thereafter, 1/16th of the GSUs will vest quarterly until fully vested.  The number of GSUs granted and the vesting schedule details will be provided in the grant materials that you should receive shortly after the grant.

The foregoing arrangement does not constitute a contract of employment for any specific period of time, and your employment with Google remains an "employment at-will" relationship.  This means that the employment relationship may be terminated at any time, with or without reason and with or without notice by you or Google and such termination will not constitute a breach of this letter.

SIGNED by Keith Wolfe HR Director  for and on behalf of Google LLC.

K

...............................................

Date:  August 1st, 2024

SIGNED by You

DocuSigned by:

*Daniel De Freitas Adiwardana*

B0EF63877231461

Date:  01 August 2024

Highly Confidential

DeFreitas_0000494



Daniel De Freitas Adiwardar

████████████████

August 1st, 2024

## THIS OFFER SUPERSEDES AND REPLACES ANY PRIOR VERSIONS

Hello Daniel          ,

Thank you for your interest in Google LLC (hereinafter referred to as "Google")! We are delighted to offer you the exempt position of the title listed below in the location listed below.

**Title:** GDM Principal Scientist

**Location:** Mountain View, CA - Office

### Salary
You will receive an annual salary of the amount listed below which will be paid biweekly and subject to applicable payroll deductions and tax withholdings.

**Annual Base Salary:** ████████████

### Bonus Target
You are eligible to participate in the company discretionary bonus plan; your annual bonus target will be the percentage listed below of your base salary. If at any point in your employment, your position/level changes, your target bonus may change. The actual bonus amount could be larger or smaller than this amount, based on your performance, and the performance of the company. The exact bonus amount is at the sole discretion of Google. The components of your bonus are subject to periodic review.

**Annual Bonus Target:** ████

### Equity Compensation
You will receive a one-time grant of restricted stock units ("GSUs" or "Award"). At the time of vest, the vested number of GSUs will convert to shares of Alphabet Inc. ("Alphabet") Class C stock. If the US financial markets are closed on a vesting date, shares will vest on the next trading day. This Award will entitle you to that number of GSUs determined by dividing the amount listed below by the average closing price of Alphabet's Class C stock for the calendar month prior to the date of grant, rounded up to the nearest full GSU.

**GSU Grant Amount:** $████████████

This Award is subject to the terms and conditions of applicable plan documents and award agreements. Vesting in GSUs is contingent on continued employment on the applicable vesting dates. Further details on the GSUs will be available to you shortly after your start date. Please be aware that this program and subsequent processes could be changed at any time, at the discretion of the Board.

### Benefits
Google currently offers to eligible employees a wide array of benefits, including retirement, medical, dental, vision and other welfare benefits (please refer to the cover letter for a link to the current benefits). The eligibility requirements, entry dates and other information regarding these benefits are set forth in more detailed documents that are available after you join Google. These benefits may change, or even be discontinued, at any time to fit the needs of the business or for compliance reasons, as determined by Google in its sole discretion. In the event that this letter conflicts with the terms of the governing benefit program materials, the governing materials will prevail.

Highly Confidential

### Confidential and Proprietary Information

You are being offered employment at Google based on your personal skills and experience, and not due to your knowledge of any confidential, proprietary or trade secret information of a prior or current employer or an entity, such as a university or college. You represent that you are not subject to any contractual obligation that could restrict or otherwise limit your ability to accept this offer or carry out your employment duties with Google.

Should you accept this offer, we do not want you to–and you agree you will not–make use of or disclose any such information or to retain or disclose any materials from a prior or current employer or any third party. By accepting this offer, you confirm that you are able to accept this job without breaching any legal restrictions on your activities, such as restrictions imposed by a current or former employer. You also confirm that you will inform Google about any such restrictions and provide Google with any copies of any agreements between you and your current or former employer describing such restrictions on your activities. Likewise, as an employee of Google, it is likely that you will become knowledgeable about confidential, trade secret and/or proprietary information related to the operations, products and services of Google, Alphabet, and their clients. To protect the interests of Google, Alphabet and their clients, all employees are required to read and sign the enclosed At-Will Employment, Confidential Information and Invention Assignment Agreement as a condition of employment with Google. By accepting employment at Google, you agree to comply with all Google policies and procedures, including the Code of Conduct as they may be amended from time to time.

### Insider Trading

Google employees are subject to Alphabet's strict policy against insider trading, which prohibits, among other things, employees, contractors and temporary workers from trading Alphabet stock during certain time periods and engaging in any derivative transactions in Alphabet stock. It will be your responsibility to educate yourself regarding Alphabet's insider trading policies and to ensure you are in full compliance. If you have any questions about Alphabet's policy against insider trading, please contact Human Resources.

### Export Control

If an export control license is required in connection with your employment, this offer is further contingent upon Google's receipt of the appropriate export control license and/or any similar governmental approvals. Your employment with Google will commence following receipt of such export control license and/or governmental approvals; and is conditioned upon your (a) maintaining your employment with Google, and (b) continued compliance with all conditions and limitations contained in such a license and/or approvals. If for any reason such export control license and/or governmental approvals cannot be obtained within six (6) months from your date of signature, this offer may terminate and, in such case, will have no force and effect.

### At-Will Employment

Please understand that this letter does not constitute a contract of employment for any specific period of time, but will create an "employment at-will" relationship. This means that the employment relationship may be terminated with or without cause and with or without notice at any time by you or Google. No individual other than the Chief Executive Officer of Google has the authority to enter into any agreement for employment for a specified period of time or to make any agreement or representation contrary to Google's policy of employment at-will. Any such agreement or representation must be in writing and must be signed by the Chief Executive Officer. Your signature at the end of this letter confirms that no promises or agreements that are contrary to our at-will relationship have been committed to you during any of your pre-employment discussions with Google, and that this letter, along with the At-Will Employment, Confidential Information and Invention Assignment Agreement, contain our complete agreement regarding the terms and conditions of your employment.

### Next Steps

We look forward to an early acceptance of this offer. This offer will remain open until August 1, 2024 at 5:00 pm Pacific Time

This offer and your employment are contingent upon (1) your start date on August 2, 2024, unless otherwise approved by Google in writing (2) you having completed Google's export control questionnaire, (3) your continuing ability to lawfully work in the United States, (4) you providing documentation, satisfactory to Google, of your identity and eligibility for employment in the United States. Kindly review the above elements of our employment offer carefully. To confirm your understanding and acceptance of Google's offer, please electronically sign and date this offer letter and upon receipt review and sign Google's At-Will Employment, Confidential Information and Invention Assignment Agreement

We look forward to working with you.

Sincerely,

DeFreitas_0000496

Name: Keith Wolfe
Title:   HR Director
For and on behalf of Google LLC

I accept this offer of employment with Google and agree to the terms and conditions outlined in this letter.

DocuSigned by:

*Daniel De Freitas Adiwardana*  01 August 2024

B0EF63877231461...

Daniel De Freitas Adiwardana

DATE

Highly Confidential

DeFreitas_0000497

## GOOGLE LLC

### AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my employment with Google LLC, its parent, subsidiaries, successors or assigns (together "Google"), and in consideration of my Google employment and receiving from Google confidential information and compensation, I agree to the terms of this At-Will Employment, Confidential Information and Invention Assignment Agreement (this "Agreement"):

1.    **At-Will Employment.**  MY GOOGLE EMPLOYMENT IS FOR AN UNDEFINED PERIOD AND IS AT-WILL EMPLOYMENT, WHICH MEANS IT MAY END AT ANY TIME, WITH OR WITHOUT CAUSE OR NOTICE. NO AGREEMENT PROVIDING OTHERWISE IS PERMITTED OR VALID UNLESS IT IS IN WRITING AND APPROVED BY A VICE PRESIDENT OR SENIOR VICE PRESIDENT IN GOOGLE LLC'S LEGAL DEPARTMENT.

2.    **Confidential Information.**

*(a)    Definition of Google Confidential Information.*  "Google Confidential Information" means any information in any form that relates to Google's business (or the business of Alphabet Inc. or its subsidiaries other than Google (together, "Alphabet")) and is (i) a trade secret; (ii) proprietary information that does not legally constitute a "trade secret," but is made Google's property or Alphabet's property, by contract in the form of this Agreement; or (iii) information that is otherwise legally protectable. Examples include, but are not limited to, Google's or Alphabet's non-public information that relates to its actual or anticipated business, products or services, research, development, technical data, customers, customer lists, markets, software, hardware, finances, Inventions (as defined below), and user data (i.e., any information directly or indirectly collected by Google or Alphabet from users of its services). The foregoing are only examples of Google Confidential Information. If I am uncertain as to whether any particular information or materials constitute Google Confidential Information, I shall seek written clarification from Google LLC's legal department.

Notwithstanding the definition set forth above, Google Confidential Information does not include information that I can show by competent proof: (i) was generally known to the public at the time of disclosure, or became generally known after disclosure to me; (ii) was lawfully received by me from a third party without breach of any confidentiality obligation; (iii) was known to me prior to receipt from Google or Alphabet; or (iv) was independently developed by me or independent third parties without breach by me or any third party of any obligation of confidentiality, non-disclosure, or non-use.

*(b)    Nonuse and Nondisclosure.*  During and after my Google employment, I will hold all Google Confidential Information in strict confidence and trust. I will take all reasonable precautions to prevent any unauthorized use or disclosure of Google Confidential Information, and I will not (i) use Google Confidential Information or Google Property (as defined below) for any purpose other than for the benefit of Google in the scope of my employment, or (ii) disclose Google Confidential Information to any third party without the prior written authorization of Google. I agree that all Google Confidential Information that I use or generate in connection with my employment belongs to Google (or third parties identified by Google). I understand that my violation of this Section 2 may lead to disciplinary action, up to and including termination and/or legal action. Notwithstanding my confidentiality obligations, I am permitted to disclose Google Confidential Information that is required to be disclosed by me pursuant to judicial order or other legal mandate, provided that I have given Google prompt notice of the disclosure requirement and that I fully cooperate with any efforts by Google to obtain and comply with any protective order imposed on such disclosure. Additionally, I understand that nothing in this Agreement limits any right I may have to discuss terms, wages, hours, and working conditions of employment or labor disputes, as protected by applicable law.  I acknowledge that these confidentiality terms do not restrict my right to participate in collective action, to disclose the provisions of this Agreement in the exercise of any rights I may have under Section 7 of the National Labor Relations Act ("NLRA") or to assist others in doing so as protected by applicable law.

*(c)    Former Employer Information / Definition of Google Property.*  I will not use or disclose in connection with my Google employment or bring onto Google's or Alphabet's electronic or physical property, facilities, or systems (collectively, "Google Property") any proprietary information, trade secrets, or any non-public material belonging to any previous employer or other party unless consented to in writing by such employer or party and Google.

3.    **Inventions.**

*(a)    Definition of Inventions.*  "Inventions" includes inventions, designs, developments, ideas, concepts, techniques, devices, discoveries, formulae, processes, improvements, writings, records, original works of authorship, trademarks, trade secrets, all related know-how, and any other intellectual property, whether or not patentable, registrable, or protectable under patent, copyright, trade secret or similar laws.

*(b)    Assignment of Inventions.*  Except as provided in Section 3(e) below, Google LLC, or its designee, will have sole and exclusive ownership of all Inventions that I created, conceived, invented, developed, reduced to practice, or otherwise contributed to, solely or jointly with others, during my Google employment (including during my off-duty hours and whether or not in the course of my Google employment) that (i) are developed with the use of Google Property or Google Confidential Information, (ii) result from work performed by me for Google, or (iii) relate to Google's business or actual or demonstrably anticipated research and development, and any intellectual property rights in the Inventions (the "Assigned Inventions"). Without further compensation, I will promptly disclose in writing to Google any Assigned Inventions and assign to Google my rights in any Assigned Inventions. I hereby irrevocably assign, and agree to assign, to Google LLC, or its designee, my rights in all Assigned Inventions. I understand that this

*Effective: October 6, 2023*
*United States CIIAA*

Highly Confidential    DeFreitas_0000498

assignment is intended to, and does, extend to subject matters currently in existence, those in development, as well as those not yet in existence. All works of authorship made by me (solely or jointly with others) within the scope of and during my Google employment are "works for hire" as defined in the United States Copyright Act, and Google LLC will be considered the author and owner of such copyrightable works. The decision whether or not to commercialize or market any Assigned Inventions is within Google's sole discretion and for Google's sole benefit, and I will not claim any consideration as a result of Google's commercialization of any such Inventions. I agree to maintain for Google detailed and accurate written records of all Assigned Inventions that I make (solely or jointly with others) for Google.

*(c)*     *Prior Inventions.*   I list in Exhibit A all Inventions that I solely or jointly made before my Google employment, which belong to me and which are not assigned to Google (collectively, "Prior Inventions"). I agree that if I incorporate (or have incorporated) a Prior Invention into any Assigned Inventions, product, or service of Google, or use a Prior Invention in the scope of my employment, I hereby grant to Google a royalty-free, irrevocable, perpetual, transferable worldwide license (with the right to sublicense) to make, have made, use, import, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, to sublicense third parties with the same rights, and to otherwise exploit such Prior Invention.

*(d)*     *Securing Intellectual Property Rights.*   I agree to assist Google (or its designee) at Google's expense to assign, secure, and enforce all intellectual property rights in any Assigned Inventions in any and all countries, by disclosing to Google all pertinent information and data, and signing any document that Google reasonably deems necessary. If Google is unable for any reason to obtain my signature to any document required to assign, secure, and enforce any intellectual property rights in any Assigned Inventions, then I hereby irrevocably appoint Google, its officers and agents as my agents and attorneys-in-fact to execute any documents on my behalf for this purpose. This power of attorney will be considered coupled with an interest and will be irrevocable. My obligations under this Section 3(d) will continue after my Google employment ends.

*(e)*     *Exception to Assignments.*   I have been notified and understand that the terms of this Agreement requiring disclosure and assignment of Inventions to Google do not apply to any invention that I have developed entirely on my own time without using any of Google Property or Google Confidential Information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to Google's business, or actual or demonstrably anticipated research or development of Google or (ii) result from any work or services that I performed for Google. Notwithstanding the above, I have been notified and understand that the terms of this Agreement requiring disclosure and assignment of Inventions to Google do not apply to any invention that is subject to and qualifies fully for an exclusion at law operable in the jurisdiction in which Google employs me, such as those listed on Exhibit B attached hereto.

While employed, I will advise Google LLC's legal department promptly in writing of any inventions that I believe meet the foregoing criteria (including as listed on Exhibit B) and that I have not disclosed on Exhibit A for a confidential ownership determination.

**4.     Conflicting Employment.**

*(a)*     *Other Employment or Activities.*   During my Google employment, except where such limitation is prohibited by applicable law, I will not engage in any other employment or other business-related activity that (i) directly relates to the business in which Google is now involved, becomes involved, or has plans to become involved, or (ii) otherwise conflicts with Google's business interest and/or causes a disruption of its operations without seeking and receiving express written permission in advance from Google LLC's Ethics and Compliance team.

*(b)*     *Prior Agreements with Other Parties.*   My compliance with this Agreement and the performance of my duties as a Google employee will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party.

**5.     Return of Google Property and Information.**

*(a)*     *Return of Google Property and Information.*   Upon termination of my Google employment, I will not take with me or retain any documents or materials or copies thereof containing any Google Confidential Information. I agree to return all Google Property and Google Confidential Information (original, hard and electronic copies) in my possession on or before my last day of employment and will not keep, recreate, or deliver to any other party any Google Confidential Information or Google Property. If, at the time of termination, I have Google Confidential Information stored in my personal computer or any mobile, cloud or other storage medium, I shall so advise Google. I will then work with Google to ensure that the location of all such information is fully disclosed to Google, that the information is retrieved by Google in a forensically sound manner, and that the information is permanently deleted by Google or its designee. I agree, on Google's request, to sign a document confirming my agreement to honor my responsibilities contained in this Agreement after my departure.

*(b)*     *Compliance.*   I have no reasonable expectation of privacy in any Google Property or in any other property, including documents, software, technology, supplies, equipment, components, or systems, collectively with other property ("Other Property") used to conduct the business of Google. Google may audit and search any Google Property or such Other Property without further notice to me for any business-related purpose at Google's reasonable discretion. I will provide Google with access to any Other Property used to conduct the business of Google immediately upon request. I consent to Google taking reasonable steps to prevent unauthorized access to Google Property and Google information. I understand that I am not permitted to add or use any

*Effective: October 6, 2023*
*United States CIIAA*

Highly Confidential

DeFreitas_0000499

unauthorized websites, software, applications, or any applications that I do not have a license or authorization for use to or on any Google Property. It is my responsibility to comply with Google's policies governing use of Google Property.

**6.      Notification.**  I consent to Google notifying third parties, including without limitation actual or potential employers, about my obligations under this Agreement.

**7.      Non-Solicitation of Employees.**  Except as prohibited by applicable law, during my Google employment, I will not directly or indirectly solicit any of Google's employees to leave their employment.

**8.      Export Control and Statement of Assurance.**  If an export control license is required in connection with your employment, your employment will be conditional at all times on: (a) Google's receipt of the appropriate export control license and/or any similar governmental approvals required from time to time; and (b) your ongoing compliance with all conditions and limitations contained in such a license and/or approvals. In the scope of my Google employment, Google may release to me items (including software, technology, systems, equipment, and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR").  I certify that I will not export, re-export, or release these items in violation of the EAR or ITAR and I will not disclose, export, or re-export these items to any person other than as required in the scope of my Google employment. If I have any questions regarding this Section, I immediately will contact Google LLC's legal department before taking any actions.

**9.      Employee Handbook.**  I understand that Google's Employee Handbook consists of policies listed in a table of contents on Google's "employee handbook, guidelines and company policies" internal website, and that those policies incorporate by reference supplemental policies. I understand that as a Google employee, Google's Employee Handbook applies to me. I agree to read, understand, and comply with Google's Employee Handbook, including supplemental policies, as they may be revised from time to time.

**10.     Use of Images.**  During my employment, Google or its agents may obtain images of me for later use in materials. My name may or may not be included along with such images. I grant Google permission for such use of my images, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use.

**11.     Protected Activity / DTSA Notification.**  For purposes of this Agreement, "Protected Activity" means filing a claim, charge or complaint, or otherwise disclosing relevant information to or communicating, cooperating, or participating with, any state, federal, or other governmental administrative body or agency, including, but not limited to, the Securities and Exchange Commission, the Equal Employment Opportunity Commission, U.S. Department of Labor, the National Labor Relations Board ("NLRB"), the Office of Federal Contract Compliance Programs, and any other state or local fair employment practices agency, but does not include the disclosure of any Google attorney-client privileged communications. "Protected Activity" also includes making truthful disclosures regarding any allegedly unlawful workplace discrimination by Google, including but not limited to harassment or sexual assault.  I understand that nothing in this Agreement prohibits me from engaging in any Protected Activity.

I acknowledge that nothing in this Agreement restricts or impedes me from exercising protected rights, including any rights under the NLRA, to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation, and nothing in this Agreement prevents me from communicating with or assisting other employees or a union with matters that have been or may be brought before the NLRB to the extent authorized by the NLRA or other applicable law.  In addition, nothing in this Agreement limits my right to testify regarding sexual harassment or criminal conduct, either (a) in court pursuant to a subpoena or court order, or (b) before the state legislature at the legislature's written request. I understand that I am not required to obtain prior authorization from Google or to inform Google prior to engaging in any Protected Activity.

In addition, notwithstanding my confidentiality obligations set forth in Section 2 of this Agreement, I understand that, pursuant to the Defend Trade Secrets Act of 2016, I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (2) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, provided such filing is made under seal. I understand that in the event it is determined that the disclosure of Google trade secrets was not done in good faith pursuant to the above, I will be subject to substantial damages, including punitive damages and attorneys' fees.

**12.     General Provisions.**

*(a)      Governing Law; Consent to Personal Jurisdiction; Optional Arbitration.*  This Agreement will be governed by the laws of the state in which Google LLC employs me without regard to principles of conflicts of law. The exclusive venue for any action or dispute relating to or arising out of this Agreement, my employment or the termination of my employment will be the state and federal courts located in the state and county in which Google LLC employs me. I consent to the personal jurisdiction of these courts. I understand that I have the option of bringing in arbitration any individual employment dispute, instead of in court, subject to Google's consent. I further understand and agree that while I have the option of proceeding in court or in arbitration for individual employment disputes, I cannot do both. Once I have filed an action in court or in arbitration, my decision is binding, and will constitute a waiver of the right to a trial in court and the right to a trial by jury. Any arbitration will be administered by JAMS and heard by a single arbitrator pursuant to JAMS' Employment Arbitration Rules & Procedures, which are available on the "rules/clauses" page of JAMS' public website (http://www.jamsadr.com/rules-employment-arbitration).

*Effective: October 6, 2023*
*United States CIIAA*

Highly Confidential                                                                                                  DeFreitas_0000500

*(b)* <u>Entire Agreement.</u>  This Agreement, together with its Exhibits, and any executed written offer letter between Google and me, are the entire agreement between Google and me with respect to the subject matter in such documents and supersede all prior written and oral agreements or discussions. If there are conflicts between this Agreement and the offer letter, this Agreement will control. Except as provided in Section 1 of this Agreement, no change to this Agreement, other than amendments to Sections 3 and 4 relating to personal open source projects in a format prepared by Google, will be effective unless in writing signed by a Senior Vice President of Google LLC and me.

*(c)* <u>Severability/Modification.</u>  It is the desire and intent of the parties, and I agree, that the provisions of this Agreement will be enforced to the fullest extent permissible under applicable laws. Accordingly, if any term or provision of this Agreement or any portion thereof is declared invalid, illegal, or unenforceable by any arbitrator or court of competent jurisdiction, then (a) such term, provision or portion thereof will, with respect to such circumstances and in such jurisdiction, be deemed modified to conform with applicable laws so as to be valid, legal, and enforceable to the fullest possible extent, and (b) the invalidity, illegality or unenforceability of such term, provision or portion thereof under such circumstances and in such jurisdiction will not affect the validity, legality or enforceability of (i) such term, provision or portion thereof under any other circumstances or in any other jurisdiction or (ii) the remainder of such provision or the validity, legality or enforceability of any other provision of this Agreement. To the extent such term, provision or portion thereof cannot be rendered enforceable, this Agreement will be considered divisible as to such term, provision, or portion thereof which shall become null and void, leaving the remainder of this Agreement in full force and effect.

*(d)* <u>Successors and Assigns.</u>  This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives and will be for the benefit of Google. Google may assign this Agreement to anyone at any time without my consent. There are no intended third-party beneficiaries to this Agreement.

*(e)* <u>Waiver.</u>  Waiver by Google of a breach of any provision of this Agreement will not waive its right to take action based on any other breach.

*(f)* <u>Survivorship.</u>  The rights and obligations of the parties to this Agreement will survive the end of my Google employment.

*(g)* <u>Injunctive Relief.</u>  I understand that in the event of a breach or threatened breach of this Agreement by me, Google may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement. I also understand that, in the event of a breach of this Agreement by me, Google may pursue any and all available legal remedies, including monetary damages

Signature of Employee: _____ *Daniel De Freitas Adiwardana* _____
DocuSigned by:
BCEF63877231461...

Print Name of Employee: _____ Daniel De Freitas Adiwardana _____

Date: 01 August 2024

*Effective: October 6, 2023*
*United States CIIAA*

Highly Confidential                                                                                  DeFreitas_0000501

## Exhibit A

**GOOGLE LLC**
**LIST OF PRIOR INVENTIONS**
**AND ORIGINAL WORKS OF AUTHORSHIP**

I understand that listing a project or an invention here does not mean that Google is granting me permission to continue working on the project or invention. This is only a listing of inventions or original works of authorship done prior to employment.

| **Title** | **Date** | **Identifying Number or Brief Description** |
| --- | --- | --- |

X   No inventions or improvements

___ Yes they are listed above

___ Additional Sheets Attached

Signature of Employee: _____ *Daniel De Freitas Adiwardana*

Print Name of Employee: _____ Daniel De Freitas Adiwardana _____

Date: 01 August 2024

*Effective: October 6, 2023*
*United States CIIAA*

*Page 5 of 6*

Highly Confidential

DeFreitas_0000502

## Exhibit B

I have been notified and understand that the terms of this Agreement requiring disclosure and assignment of Inventions to Google do not apply to any invention that qualifies fully under the applicable state law in which Google LLC employs me as follows:

**(1) For employees employed by Google LLC in California, California Labor Code Section 2870 reads:**

(a)   Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)       Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)       Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**(2) For employees employed by Google LLC in Illinois, Chapter 765, Section 1060/2 of the Illinois Compiled Statutes reads:**

(1)   A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this State and is to that extent void and unenforceable. The employee shall bear the burden of proof in establishing that his invention qualifies under this subsection.

(2)   An employer shall not require a provision made void and unenforceable by subsection (1) of this Section as a condition of employment or continuing employment. This Act shall not preempt existing common law applicable to any shop rights of employers with respect to employees who have not signed an employment agreement.

(3)   If an employment agreement entered into after January 1, 1984, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

**(3) For employees employed by Google LLC in Minnesota, Minnesota Statutes Annotated Section 181.78 reads:**

Subdivision 1. Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer shall not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the employer or (b) to the employer's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

Subdivision 2. No employer shall require a provision made void and unenforceable by subdivision 1 as a condition of employment or continuing employment.

**(4) For employees employed by Google LLC in Washington, Revised Code of Washington Section 49.44.140 reads:**

A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

*Effective: October 6, 2023*
*United States CIIAA*

Highly Confidential

DeFreitas_0000503



## Acquisition Employment Application

Google is an equal opportunity, affirmative action employer. Qualified applicants are considered without regard to race, color, religion, veteran status, national origin, ancestry, pregnancy status, sex, gender identity or expression, age, marital status, mental or physical disability, medical condition, sexual orientation or any other characteristics protected by applicable law.

| | | | | |
|---|---|---|---|---|
| If hired, will you be 18 years of age or older upon your joining? | x | **YES** | | **NO** |
| Are you legally eligible to work in the US? | x | **YES** | | **NO** |
| Do you currently need, or will you someday require, Google to sponsor work authorization for you to be hired in the US? | | **YES** | X | **NO** |

## Personal Data

Daniel De Freitas Adiwardana
_____
Name

[redacted]
_____
Street Address

[redacted]                [redacted]    [redacted]
_____
City                          State          Zip

[redacted]                [redacted]
_____
Email Address                 Phone

## Authorization: Please read carefully and initial below

I understand that Google requires certain information about me to evaluate my qualifications for employment and to conduct its business if I become an employee. I authorize Google to research my past employment, educational credentials, and other employment related activities. I hereby release Google, its partners, employees, representatives, and agents and those parties supplying such information to Google from all liability in connection with obtaining or releasing such information.

If I am hired by Google, I understand that Google is an at-will employer. Accordingly, either Google or I may terminate the employment relationship, at will, at any time, for any reason, with or without cause or advance notice. I understand that the CEO or the President of Google has the sole authority to make an agreement contrary to at-will employment, and such an agreement must be in writing and signed by the CEO or President.

I understand that if I am hired I will be required to submit proof of my legal right to work in the U.S. prior to commencing employment with Google.

I understand that any misrepresentations, false statements or omissions of facts made by me in connection with this application will be sufficient grounds for cancellation of consideration of my application or immediate discharge if I am employed. I have read the above prior to signing this
Application.

I understand that this application is not a contract of employment, and that completion of this application does not in any way obligate Google to hire me or offer me a job.

_DDFA_      01 August 2024
_____     _____
Initial              Date

Google, LLC
1600 Amphitheater Parkway, Mountain View, CA 94043
TEL: (650) 253-000  FAX: (650) 253-0001

Rev. 11/21
1 of 2

Highly Confidential

Docusign Envelope ID: 8341A29D-F025-4697-8E1F-0CD982823EC6



## Acquisition Employment Application
### NON-DISCLOSURE AGREEMENT

In order to evaluate a potential employment opportunity with Google (the "Purpose"), Google LLC, for itself and its subsidiaries and affiliates, and the individual identified below hereby agree:

1. This agreement is effective as of the date signed below.

2. Google may disclose to the other party (the "Recipient") information pertaining to the Purpose that Google considers confidential ("Confidential Information").

3. Recipient may use Confidential Information only for the Purpose. Recipient must use a reasonable degree of care to protect Confidential Information and to prevent any unauthorized use or disclosure of Confidential Information. Recipient may share Confidential Information with his / her legal counsels who are engaged by Recipient in discussions concerning the Purpose. Further, Recipient may share the fact that he / she interviewed with Google and visited Google's facilities and the terms of any written offer of employment by Google, if such offer is extended.

4. Confidential Information does not include information that: (a) was known to Recipient without restriction before receipt from Google; (b) is publicly available through no fault of Recipient; (c) is rightfully received by Recipient from a third party without a duty of confidentiality; or (d) is independently developed by Recipient. Recipient may disclose Confidential Information when compelled to do so by law if it provides reasonable prior notice to Google, unless a court orders that Google not be given notice.

5. Either party may terminate this agreement with thirty days prior written notice, but this agreement's provisions will survive as to Confidential Information that is disclosed before termination.

6. Unless the parties otherwise agree in writing, Recipient's duty to protect Confidential Information expires five years from disclosure.

7. This agreement imposes no obligation to proceed with any business transaction.

8. Recipient acquires no intellectual property rights under this agreement except the limited rights necessary to use the Confidential Information for the Purpose.

9. This agreement does not create any agency or partnership relationship. This agreement is not assignable or transferable by either party without the prior written consent of the other party.

10. This agreement is the parties' entire agreement on this topic, superseding any prior or contemporaneous agreements. Any amendments must be in writing. The parties may execute this agreement in counterparts, which taken together will constitute one instrument. Failure to enforce any of the provisions of this agreement will not constitute a waiver.

11. This agreement is governed by the laws of the State of California, excluding its conflict-of-laws principles. The exclusive venue for any dispute relating to this agreement shall be Santa Clara County, California.

---

I consent to the use of electronic signature: _____ *Daniel De Freitas Adiwardana*

If no, please contact your recruiter to submit a hardcopy application. Please note, processing delays are possible in the event you do not use e-signature.

Electronic signature

*Daniel De Freitas Adiwardana*

---

Google, LLC
1600 Amphitheater Parkway, Mountain View, CA 94043
TEL: (650) 253-000  FAX: (650) 253-0001

Rev. 11/21
2 of 2

Highly Confidential

**The Labor Commissioner's Office**

## EMPLOYERS MUST PROVIDE THIS INFORMATION TO NEW WORKERS WHEN HIRED AND TO OTHER WORKERS WHO ASK FOR IT

# RIGHTS OF VICTIMS OF DOMESTIC VIOLENCE, SEXUAL ASSAULT, STALKING, CRIMES THAT CAUSE PHYSICAL INJURY OR MENTAL INJURY, AND CRIMES INVOLVING A THREAT OF PHYSICAL INJURY; AND OF PERSONS WHOSE IMMEDIATE FAMILY MEMBER IS DECEASED AS A DIRECT RESULT OF A CRIME

### *Your Right to Take Time Off:*

- You have the right to take time off from work to obtain relief from a court, including obtaining a restraining order, to protect you and your children's health, safety or welfare.

- If your company has 25 or more workers, you can take time off from work to get medical attention for injuries caused by crime or abuse, receive services from a domestic violence shelter, program, rape crisis center, or victim services organization or agency as a result of the crime or abuse, receive psychological counseling or mental health services related to an experience of crime or abuse, or participate in safety planning and take other actions to increase safety from future crime or abuse.

- You may use accrued paid sick leave or vacation, personal leave, or compensatory time off that is otherwise available for your leave unless you are covered by a union agreement that says something different. Even if you don't have paid leave, you still have the right to time off.

- In general, you don't have to give your employer proof to use leave for these reasons.

- If you can, you should tell your employer before you take time off. Even if you cannot tell your employer beforehand, your employer cannot discipline you if you give proof explaining the reason for your absence within a reasonable time. Proof can be a police report, a court order, a document from a licensed medical professional, a victim advocate, a licensed health care provider, or counselor showing that you were undergoing treatment for domestic violence related trauma, or a written statement signed by you, or an individual acting on your behalf, certifying that the absence is for an authorized purpose.

### *Your Right to Reasonable Accommodation:*

- You have the right to ask your employer for help or changes in your workplace to make sure you are safe at work. Your employer must work with you to see what changes can be made. Changes in the workplace may include putting in locks, changing your shift or phone number, transferring or reassigning you, or help with keeping a record of what happened to you. Your employer can ask you for a signed statement certifying that your request is for a proper purpose, and may also request proof showing your need for an accommodation. Your employer cannot tell your coworkers or anyone else about your request.

Highly Confidential

DeFreitas_0000506

## *Your Right to Be Free from Retaliation and Discrimination:*

Your employer cannot treat you differently or fire you because:

- You are a victim of domestic violence, sexual assault, stalking, a crime that caused physical injury or mental injury, or a crime involving threat of physical injury; or are someone whose immediate family member is deceased as a direct result of a crime.
- You asked for leave time to get help.
- You asked your employer for help or changes in the workplace to make sure you are safe at work.

### *You can file a complaint with the Labor Commissioner's Office against your employer if he/she retaliates or discriminates against you.*

For more information, contact the California Labor Commissioner's Office. We can help you by phone at 213-897-6595, or you can find a local office on our website: www.dir.ca.gov/dlse/DistrictOffices.htm. If you do not speak English, we will provide an interpreter in your language at no cost to you. This Notice explains rights contained in California Labor Code sections 230 and 230.1. Employers may use this Notice or one substantially similar in content and clarity.

**Labor Commissioner's Office Victims of Domestic Violence, Sexual Assault and Stalking Notice**            **3/2021**

Highly Confidential                                                                                                     DeFreitas_0000507