# EXHIBIT A



**Social Media Victims Law Center**

600 1st Ave, Ste 102 - PMB 2383  
Seattle, WA 98104  
(206) 741-4862

Matthew P. Bergman  
Attorney  
matt@socialmediavictims.org

November 4, 2025

**SENT BY ELECTRONIC MAIL AND US MAIL**

Lauren Gallo White  
Fred A. Rowley, Jr.  
Matthew K. Donohue  
**WILSON SONSINI GOODRICH & ROSATI**  
One Market Plaza, Spear Tower, Ste. 3300  
San Francisco, CA 94105

Jay B. Shapiro  
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**  
150 W. Flagler Street, Suite 2200  
Miami, FL 33130

**RE:**   *Megan Garcia v. Character Technologies, Inc., et al.*

Counsel:

We have now on several occasions conferred to discuss Google's deficient responses to Plaintiff's First Requests for Production. In some instances, Google unilaterally narrowed or modified the plain language of Plaintiff's requests without any agreement or leave of court. In other instances, Google took it upon itself to decide when (on a "rolling basis") and under what conditions (entry of a protective order) it would deign to comply with the federal rules. Although we have reached a compromise in some areas, including agreeing to limit discovery post-dating February 2024 to only those documents relating to Google's knowledge as to Character.AI, we remain at a complete impasse regarding a significant, recurring issue: Google's outright refusal to produce any documents in response to Request for Production Nos. 4, 5, 6, 7, 8, 9, 10, 15, 16, 18, 22, 26, 27, 28, 29, 30, 32, 38, 42, and 43.

The keen observer might recognize that this list encompasses nearly half of all Plaintiff's requests. Under FRCP 34(b)(2)(B), an objecting party must "state with specificity the grounds for objecting to the request, including the reasons." General, formulaic, and boilerplate objections are improper. Rather, the party resisting the discovery "has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D.Cal.1998). "The Federal Rules do not prohibit general objections, but if the general objection is interposed in an attempt to insulate from discovery a large quantity of material that includes otherwise discoverable material when only some of the material may be protectible, the objection is inconsistent with the aim of discovery and may well be the subject of sanction." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 139-40 (3d Cir. 2009).

November 4, 2025
Page 2 of 5

Certain of Google's objections are simply improper under the law. Specifically, Google objects to numerous requests as being "not proportional to the needs of the case." This is a determination to be made by the Court, not by the party resisting discovery, and is precisely the sort of "boilerplate objection" prohibited by the rules. *Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652, 656 (D. Mont. 2018). Similarly, Google insists that the burden of searching for and producing responsive documents "vastly outweighs any possible relevance," but again, relevance and proportionality are determinations to be made by the Court, not unilaterally by a responding party. Like in *Nei*, Google's "failure to clarify the existence of responsive materials also hamstrings the Court's ability to assess the relevancy and proportionality of the discovery request." *Id.* at 657.

As to the remaining objections, Plaintiffs require greater specificity and clarification, particularly because Google utilized a strategy of interposing blunderbuss, repetitive, blanket objections. To that end, please provide the following information:

**Request for Production Nos. 4, 5, 6, 7**: First, please explain why a request for documents and communications either received or created by specific current and former employees that refer to a specific topic (LaMDA) constitutes an "overly broad" universe of documents. Second, please explain why searching for these documents and communications would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents. Third, please explain what time limitation Google believes is required for this Request, including in your explanation how such limitation is reasonable and how imposing that limitation would materially affect the burden of searching for and producing responsive documents. Fourth, please identify specific responsive documents that in fact contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret. Fifth, please provide authority for your position that discovery cannot include "materials created after Plaintiff's harm had already occurred."

**Request for Production Nos. 8, 9, 10**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents. Second, please explain how Google—a sophisticated corporation—is unable to ascertain the ordinary meaning of such phrases as "safety and/or ethical concerns," "designing," "sycophantic," "sexualized outputs," and "anthropomorphic." *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022) ("Respondents should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in [the requests]."). Third, please identify specific responsive documents that in fact contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret. Fourth, please explain how this Request "seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or protection," particularly as Google did not provide a privilege log as promised at page 3 of its responses. Fifth, please provide authority for your position that discovery cannot include "materials created after Plaintiff's harm had already occurred."

As to Request No. 8, please explain why documents that refer or relate to safety and/or ethical concerns around designing AI to be anthropomorphic "have little to no connection to Plaintiff's

November 4, 2025
Page 3 of 5

allegations," particularly in light of the Amended Complaint ¶¶ 97, 142-168, 216, 236, 304, and 329.

As to Request No. 9, please explain why documents that refer or relate to safety and/or ethical concerns around designing AI to generate or to mitigate the generation of sexualized inputs have "have little to no connection to Plaintiff's allegations," particularly in light of the Amended Complaint ¶¶ 6, 49, 79, 97, 117, 123, 124, 192, 193, 195, 199, 208, 226, 253-55, 280, and 284-295.

As to Request No. 10, please explain why documents that refer or relate to safety and/or ethical concerns around designing AI to be sycophantic have "have little to no connection to Plaintiff's allegations," particularly in light of the Amended Complaint ¶¶ 236 and 256.

**Request for Production Nos. 15, 16, 18**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents.  Second, please explain how Google—a sophisticated corporation—is unable to ascertain the ordinary meaning of such terms as "use" and "application."  *L.A. Terminals, Inc*, 340 F.R.D. at 396.  Third, please explain how any such responsive "agreements, contracts or memoranda of understanding between Google and Character Technologies" in fact contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret.  Fourth, please explain how an agreement, contract, or memoranda of understanding between two corporations could contain privileged information and how such privilege could not have been waived by sharing it with Character Technologies.  Relatedly, please explain why no such document was identified in any privilege log.  Fifth, please provide authority for your position that discovery cannot include "materials created after Plaintiff's harm had already occurred."

**Request for Production No. 22**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents.  Second, please explain why Google believes any such communications are protected by any privilege when no such communications were identified in any privilege log.  Third, please identify the total volume of Mr. Walker's communications with Google's Advanced Technology Review Council in 2022 and 2023 such that any limitation with regard to subject matter would meaningfully affect any burden Google faces in searching for and producing these documents.

**Request for Production Nos. 26, 27, 28**: First, please describe how these requests are duplicative of Request for Production Nos. 18, 21, and/or 27.  Second, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents.  Third, please explain why Google believes any such responsive documents are protected by any privilege when no such documents were identified in any privilege log.  Fourth, please explain how any responsive documents in fact contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret.  Fifth, please provide authority for your position that discovery cannot include "materials created after Plaintiff's harm had already occurred."  Sixth, please explain how a request for "documents analyzing, addressing or discussing the integration

November 4, 2025
Page 4 of 5

of Character.AI's generative artificial intelligence products (e.g., LLM) into Google's technology" has "no connection to Plaintiff's alleged harm," particularly in light of the Amended Complaint ¶¶ 24, 25, 42, and 50-97.

**Request for Production Nos. 29, 30**: First, please describe how Request No. 29 is duplicative of Request Nos. 16 and 17. Second, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents. Third, please explain why Google believes any such communications are protected by any privilege when no such communications were identified in any privilege log. Fourth, please explain why communications between separate corporations and individuals would contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret. Fifth, please provide authority for your position that discovery cannot include "materials created after Plaintiff's harm had already occurred."

**Request for Production No. 32**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents. Second, please explain how Google—a sophisticated corporation—is unable to ascertain the ordinary meaning of such terms as "employee" and "stockholder" or the concept of having "governance or oversight rights or options." *L.A. Terminals, Inc*, 340 F.R.D. at 396. Third, please explain how this request is "overly broad." To that point, please explain how a search for documents depicting "governance or oversight rights or options" would require Google to "identify the relationships between all of its shareholders or employes and a separate company." Finally, please explain how documents depicting governance or oversight rights held by Google employees with respect to Character.AI "is not relevant to the claims or defenses," particularly in light of the Amended Complaint ¶¶ 24, 25, 42, and 50-97.

**Request for Production No. 38**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents. Second, please explain how documents depicting Google's knowledge, studies, and research into the potential harms of AI chatbots, Large Language Models, generative AI products, AI voice products, and other AI technology have "little or no connection to the parties' claims and defenses." Third, please explain how Google—a sophisticated corporation—is unable to ascertain the ordinary meaning of such terms as "design choice," "persuasion," "exploitation," "abuse," "manipulation," "trust," "rapport," and "experimentation data." *L.A. Terminals, Inc*, 340 F.R.D. at 396. Fourth, please identify which responsive documents, studies, and research contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret.

**Request for Production No. 42**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents. Second, please explain how this request for communications between specific individuals and Character.AI is overbroad. Third, please explain why any communications between Sundar Pichai, Larry Page, Sergey Brin, and Character.AI would contain any privileged or work-product information and how such privilege/protections were not waived by disclosing them to Character.AI, a third-party. Relatedly, please explain why Google believes any such communications are protected by any privilege when no such communications were identified in

November 4, 2025
Page 5 of 5

any privilege log.  Fourth, please identify which responsive communications contain "proprietary, confidential, or trade secret information" and why such information qualifies as proprietary, confidential, or a trade secret.  Fifth, please provide authority for your position that discovery cannot include "materials created after Plaintiff's harm had already occurred."

**Request for Production No. 43**: First, please explain why searching for these documents would be unduly burdensome, including in your explanation the precise steps that Google would take to locate these documents.  Second, please explain why a request for documents and communicates limited to the specific issue of access to Character.AI chat data is overbroad.  Third, please explain why Google believes any such documents are protected by any privilege when no such communications were identified in any privilege log.  Fourth, please explain why documents referring to Google's access to Character.AI chat data "is not relevant to the claims or defenses," particularly in light of the Amended Complaint ¶¶ 24, 25, 42, and 50-97.

Thank you in advance for your prompt attention to this matter.

Sincerely,

SOCIAL MEDIA VICTIMS LAW CENTER

*Matthew P. Bergman*

Matthew P. Bergman
Founding Attorney