UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal         Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

     Plaintiffs,

v.

CHARACTER
TECHNOLOGIES, INC., NOAM
SHAZEER, DANEL DE
FREITAS ADIWARSANA,
GOOGLE LLC,

     Defendants.

_____/

**NEWSOME LAW'S RESPONSE TO
JOINT MOTION TO STRIKE NOTICE OF CHARGING LIEN**

Newsome Law, P.A. ("Newsome Law"), hereby responds in opposition to the

Joint Motion to Strike Notice of Charging Lien (Doc. 250) ("Motion"), and states:

**INTRODUCTION**

1.    Newsome Law's Charging Lien is legally valid. Regardless of whether

there was a *signed* contract with the Plaintiffs in this matter, the undisputed evidence

shows Ms. Judkins, while an employee of Newsome Melton, P.A. ("Newsome

Melton") and then Newsome Law (collectively "the Newsome Firms") provided

1

valuable legal services resulting in benefit to the Plaintiffs, entitling Newsome to a portion of the fees.

2.      In compliance with the Court's February 23, 2026 Order (Doc. 251), Newsome Law provided this Court with a limited set of documents that constituted "agreements, corporate filings, tax forms, and other primary source documents" Id.; see Doc. 252. Attached to this Response is the Declaration and accompanying exhibits (collectively, **Exhibit A**) of Mr. C. Richard Newsome ("Mr. Newsome"), submitted in an effort to: (a) provide context to the primary source documents, (b) supply this Court with additional relevant documents, and (c) adequately respond to the assertions raised in the Motion to Strike (Doc. 250) which are inaccurate.[1]

3.      At the risk of oversimplifying this dispute – which, could easily spiral with unnecessary complications, as fee disputes often do – what we have here is fairly simple. An employee of Newsome Melton, P.A. ("Newsome Melton") and thereafter, Newsome Law appears to have intentionally hid her work on a case (this pending action, "the *Garcia* matter") from the principal of the Firms, Mr. Newsome. For instance, when Ms. Judkins was departing from Newsome Law and while Newsome

---

[1] Newsome Law filed a Motion to Seal (Doc. 253) identifying certain portions of the Newsome Declaration and 9 exhibits thereto that require sealing. The portions of the Newsome Declaration requiring sealing are redacted in this filing. Additionally, the exhibits requiring sealing have been substituted with a placeholder pending this Court's determination as to sealing.

Melton was transitioning to Newsome Law, Ms. Judkins repeatedly failed to identify the *Garcia* matter as a case she was actively litigating.[2]

4.    Regardless of that deceit, the evidence shows Ms. Judkins, while employed with the Newsome Firms, worked on the *Garcia* matter, utilized the Newsome Firms' resources, noticed her appearance as counsel of record for the Plaintiffs and identified her affiliation with Newsome Melton (Doc. 87). In sum, Ms. Judkins provided valuable legal services to the Plaintiffs while employed at Newsome Melton and Newsome Law.

5.    Moreover, the assertions raised in the Motion that Ms. Judkins "believed [she] was still employed with Newsome Melton" prior to her May 2, 2025 resignation (Doc. 250-2, p. 5), that she "unknowingly" received a paycheck from Newsome Law in April of 2025 (Doc. 250, ¶12), and that she "never consented to, or knowingly accepted, a W-2 employment position with Newsome Law" (Id.) are demonstrably inaccurate. As the Declaration and exhibits thereto (**Ex. A**) make clear, beginning April 1, 2025, Ms. Judkins was a full-time employee of Newsome Law, and Ms. Judkins' communications and actions during that time period undeniably prove she was explicitly aware of that change.

6.    The distinction, however, about which of the two Newsome Firms employed her and at what particular time in 2025 is inconsequential since Mr.

---

[2] Newsome Law has 5 email chains supporting this statement, which contain confidential and privileged information about other cases and clients of Newsome Law. Newsome Law is happy to provide those email chains to the Court for *in-camera* inspection.

Newsome has been the majority owner of both Firms at all material times. And after the dissolution of Newsome Melton, Mr. Newsome was designated to be the person responsible for collecting funds due to the dissolved Firm. However, if that distinction was deemed to be important, the facts establish Ms. Judkins was aware of the change in the Firm for which she worked, and the Firm that was entitled to be paid for services she provided.

7.    Newsome Law understands Ms. Judkins alleges she simply had the understanding that her work performed on behalf of the Plaintiffs while she was employed for either or both of the Newsome Firms was done as a "contract attorney" for Normand PLLC, as she "was in the process of forming [her] own professional association…". Doc. 250-2, p.2. However, as Mr. Newsome's Declaration indicates, while employed with *either* Firm, Ms. Judkins was not permitted to work on any "outside" cases. **Ex. A**, ¶ 49. Such conduct would be rife with ethical issues, as there would be no way to adequately perform conflict checks and simultaneously maintain the privileges and protections attorneys are required to afford their clients. Additionally, the evidence shows Ms. Judkins used the Firms' resources to effectuate the duties she owed as counsel to the Plaintiffs. See **Ex. A**.

8.    Thus, her work could not have possibly been limited to work performed as a "contract attorney" for Normand PLLC. The fact is, Ms. Judkins publicly disclosed her representation of Plaintiffs and identified her association with Newsome Melton, not her "own professional association." Doc. 87. She utilized the Firms' resources, resources that are identified, in part, in that public appearance (e.g., her

4

email address, the email address of the Newsome paralegal, the physical address of the Firm, and the phone and facsimile number for the Firm). Id. Moreover, Ms. Judkins used the Firms' OneDrive account to store documents related to the *Garcia* matter, including filings, drafts, and notes. See, **Ex. A**.

9.    In sum, there is no escape from the fact that Ms. Judkins: 1) performed work for the benefit of the Plaintiffs while employed at Newsome Melton and Newsome Law; and 2) utilized the Firms' resources to complete that work.

10.    While Ms. Judkins alleges she never signed "any contingency fee agreement" in this case (Doc. 250-2, p. 5), discovery may reveal there was in fact a contract signed by Ms. Judkins at that time pertaining to the *Garcia* matter. To that end, the day before she resigned, Ms. Judkins directed the removal of certain documents from the Newsome Law electronic case management system. **Exhibit B**, May 1, 2025 email.

11.    Regardless, whether there is or is not a contract signed by Ms. Judkins in this matter is not dispositive as to the issue of whether Newsome Law's Charging Lien is legally valid because the evidence shows the existence of an implied contract. See Daniel Mones, P.A. v. Smith, 486 So. 2d 559, 561 (Fla. 1986) (finding one of the required elements for a charging lien is "an express **or implied** contract between attorney and client.") (emphasis added).

## ARGUMENT

**I.    The Notice is legally sufficient and timely.**

In Florida, "a summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien." Daniel Mones, P.A., 486 So. 2d at 561 (citing Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1385 (Fla. 1983)). Consistent with this guidance, Newsome Law, P.A. filed its Notice of Charging Lien in this Action on February 12, 2025. Doc. 246. The Notice was filed in this action prior to final resolution and disbursement of settlement funds, satisfying the timeliness requirements. Further, the Motion does not challenge timeliness; instead, it challenges entitlement. Timeliness is therefore established.

## II. The Motion improperly seeks resolution of factual disputes without an evidentiary hearing.

"'[S]triking a pleading is an extreme measure that is disfavored,'" which is a principal that extends to motions to strike charging liens. Parrish & Yarnell, P.A. v. Spruce River Ventures, LLC, 180 So. 3d 1198, 1200 (Fla. Dist. Ct. App. 2015) (quoting Upland Dev. of Cent. Fla., Inc. v. Bridge, 910 So. 2d 942, 944 (Fla. Dist. Ct. App. 2005)). "[B]ecause a motion to strike only tests the legal sufficiency of a claim, it is reversible error for a court to grant a motion to strike where the pleading presents a bona fide issue of fact that may be supported by evidence." Id. In Parrish, because the lower court made "factual determinations based on the record before it . . . without giving the parties an opportunity to present evidence," the appellate court reversed and remanded with instructions that "a full evidentiary hearing [ ] be held." Id. at 1201. In other words, where entitlement to a charging lien turns on factual questions, those

6

issues must be resolved through an evidentiary hearing—not disposed of through a motion to strike.[3]

These principles govern here given the numerous factual disputes between the parties which are described in detail in the attached Declaration of C. Richard Newsome (**Ex. A**), who was, at all material times, a principal of Newsome Melton and Newsome Law.

### III.  The Newsome Declaration establishes a continuous employment relationship and Ms. Judkins' clear use of Firm resources to perform substantial work on the *Garcia* matter.

The Declaration establishes that attorney Amy Judkins was a full-time salaried W-2 employee from August 2023 until May 2, 2025—first at Newsome Melton, P.A., and then at Newsome Law, P.A. The Declaration attaches payroll records, W-2 forms, health insurance documentation, professional liability application, and resignation correspondence confirming this continuous employment.

The Declaration further establishes:

1.  While she was working as a full-time attorney for Newsome Melton, P.A. in January 2025, Ms. Judkins was solicited by Ed Normand to join the team

---

[3] See also Smith v. Smith, 232 So. 3d 509, 511 (Fla. Dist. Ct. App. 2017) ("[O]n a motion to strike a sham pleading the trial court applies the same standard applicable to motions for summary judgment – i.e., the court may grant the motion 'only if the material facts are not in dispute and only if the pleading is not supported by the facts.'") (quoting Philip J. Padovano, Florida Civil Practice, § 7:12 (2016–2017 ed.)). "Under Florida law, the 'preferred method' of enforcing an attorney's charging lien is through a summary proceeding." Benchmark Consulting, Inc. v. USAA Cas. Ins. Co., No. 8:18-CV-3134-T-24CPT, 2020 WL 5701750, at * 3 (M.D. Fla. Sept. 24, 2020) (citing Daniel Mones, P.A. v. Smith, 486 So. 2d 559, 561 (Fa. 1986)).

of co-counsel representing Plaintiffs in the *Garcia* matter. **Ex. A**, ¶ 36(a), Ex. 21.

2. Upon joining the *Garcia* Plaintiffs' legal team, Ms. Judkins used Newsome Melton and Newsome Law's infrastructure, specifically using the Firms' email system to engage in case-related emails including confidential and privileged conversations between co-counsel; storing draft filings, research, and notes on the Firms' document storage platform (i.e. OneDrive); and using the services of full-time Firm-paid personnel to work on the matter, **Ex. A**, ¶¶ 23(b); 37; 35; 41; 44(e); Ex. 19, 20.

3. At no time during her employment with Newsome Melton, P.A. or Newsome Law, P.A. was Ms. Judkins authorized to perform outside legal services through her own professional association, or to use Firm resources to perform such legal services. **Ex. A**, ¶¶ 15, 48.

4. Ms. Judkins performed substantial work in the *Garcia* matter apparently beginning in February 2025 by briefing the personal jurisdiction arguments in Plaintiffs' responses to Defendants' motions to dismiss, filing a Notice of Appearance in the *Garcia* matter on March 26, 2025, naming "Newsome Melton" in her signature block and providing her Newsome Melton, P.A. contact information and the email address for Newsome Melton's paralegal; and successfully arguing important personal jurisdiction issues at the hearing on Defendants' motions to dismiss on April 28, 2025, the transcript for

which identifies her as an attorney for Newsome Melton. **Ex. A** ¶¶ 33, 34; Doc.116, Hr'g Tr. (Apr. 28, 2025).

5. Ms. Judkins knowingly and voluntarily transitioned from her employment with Newsome Melton, P.A. to employment with Newsome Law, P.A. in April 2025, as evidenced by her asking questions about the timing of various changes due to transitioning to Newsome Law, P.A.; her filing of a class action complaint in the Southern District of Florida on April 4, 2025, identifying Newsome Law, P.A. as her Firm in the signature block; and changing her email signature block from Newsome Melton, P.A. to Newsome Law, P.A. in April 2025. **Ex. A**, ¶ 24. Consistent with these actions, on April 22, 2025, Ms. Judkins also changed the signature block she used in court filings in the *Garcia* matter from listing "Newsome Melton, P.A." to listing "Newsome Law P.A." Docs. 104, 106.

6. Ms. Judkins resigned in writing *from Newsome Law, P.A.* in May 2025 and immediately joined Normand PLLC, where she continued to work on the *Garcia* matter. **Ex. A**, ¶¶ 25, 31, 32.

7. Ms. Judkins affirmatively stated in writing in January 2026 that she "always" recognized the quantum meruit interest of Newsome Melton, P.A. and/or Newsome Law, P.A. in the *Garcia* matter. **Ex. A**, ¶ 43.

Movants claim Ms. Judkins was previously affiliated with Newsome Melton (not Newsome Law) (Doc. 250, p.2) and that when she tendered resignation to

9

Richard Newsome on May 2, 2025, she "believed [she] was still employed with Newsome Melton." Doc. 250-2, ¶ 17.

These representations are wrong. In addition to the actions described in the paragraphs numbered above, Ms. Judkins' W-2 forms from Newsome Law, P.A., Newsome Law's Lawyers Professional Liability policy application, her health benefits coverage documentation at the Firm, her pay stubs from Newsome Law, P.A., and her very own written communications paint a completely different picture. **Ex. A**, ¶ 23, Exs. 10-13.

The clear, objective facts support Newsome's good-faith belief that Ms. Judkins' representation of the *Garcia* Plaintiffs was work performed on behalf of the Newsome Firm(s), and that Newsome Melton, P.A. and Newsome Law, P.A. hold a valid charging lien in the *Garcia* matter. The Motion must be denied.

**IV.    The parties' course of performance established an implied fee agreement attributable to Newsome.**

**a.    The Parties' Conduct — Authorized Legal Services Rendered and Accepted — Gave Rise to an Implied Attorney–Client Relationship Attributable to the Newsome Firms.**

The undisputed record reflects that Ms. Judkins rendered valuable legal services in this action while employed as a W-2 attorney of the Newsome Firms and acting as the Firms' agent. Her implied contracts are therefore implied contracts of the Newsome Firms under agency law. Beekman v. Sonntag Inv. Co., 67 Fla. 293, 309 (1914) ("The acts of an agent, performed within the scope of his real or apparent authority, are binding upon his principal."). Moreover, "[t]he public have a right to

10

rely upon an agent's apparent authority, and are not bound to inquire as to his special powers, unless the circumstances are such as to put them upon inquiry." Id.

In January 2025, Ms. Judkins agreed to participate in the *Garcia* matter. **Ex. A**, Ex. 21. By February 2025, Ms. Judkins undertook responsibility for substantive litigation work. Doc. 250-2, ¶2. On March 26, 2025, she filed a Notice of Appearance identifying Newsome Melton as her Firm. (Doc. 87). On April 22, 2025, she filed two submissions on behalf of Plaintiffs (Docs. 104, 106), in both instances listing "Newsome Law, P.A." as her Firm and appearing as the sole attorney for Plaintiffs on those filings. On April 28, 2025, she argued personal jurisdiction at the Motion to Dismiss hearing which Plaintiff Megan Garcia confirms she attended. Doc. 250-7, ¶ 9. While Ms. Judkins claims she was working as "a contract attorney" for Ed Normand during this time, Normand did not enter an appearance in this Action until August 19, 2025 (Doc. 179), months after Ms. Judkins had appeared, filed pleadings, and argued before the Court.

Indeed, any suggestion that Ms. Judkins was acting independently of the Newsome Firms would contravene Florida Bar Ethics Opinion 76-7, which explains that a full-time Firm attorney "may not practice under his own name to the exclusion of his Firm name" because doing so would mislead as to responsibility and control over the lawyer's work. Her representation was undertaken as an attorney of the

11

Newsome Firms, and the resulting implied agreement is therefore attributable to those Firms.[4]

**b. Plaintiffs ratified Ms. Judkins' participation through the May 30 agreement.**

Ms. Judkins' substantive contributions to the *Garcia* matter described herein were well underway before the May 30, 2025 Representation Agreement. The May 30 document therefore did not create Ms. Judkins' role in the case; it formalized and ratified a working relationship that had already been publicly and substantively ongoing for months, as Ms. Judkins was worked on the *Garcia* action since at least February 2025.

Moreover, relying on redacted language purportedly in the Representation Agreement (Doc. 250-6), Movants argue there is no evidence that Plaintiffs agreed to share a portion of settlement funds with Ms. Judkins and that associated counsel would be paid by SMVLC.[5]  Doc. 250, ¶ 13; Doc. 250-7; Doc. 250-8. But, in fact, that is incorrect. Doc. 250-6, p. 7 ("I understand and consent that the law firm of SOCIAL MEDIA VICTIMS LAW CENTER, PLLC is associated as counsel with the TECH JUSTIC LAW PROJECT and NORMAND PLLC along with **Amy Judkins** and that **a division of the applicable fees in this Agreement shall be made between these**

---

[4]   Fla.  Bar  Ethics  Opinion  No.  76-7  May  12,  (1977)  (accessible  at
https://www.floridabar.org/etopinions/etopinion-76-7/).
[5] Movants claim that the representation agreement states that associated attorneys will be paid by SMVLC but if this language is in the agreement, it has been redacted.

**attorneys** in proportion to the legal services to be performed and responsibility assumed by each.") (emphasis added).[6]

### c. The record reflects an enforceable contingency-based fee structure even without Ms. Judkins' signature.

The "Associating Attorney Clause" reflects a contingency-based structure in which compensation entitlement and amount are dependent on client recovery. Ms. Judkins claims, "my understanding was that any compensation I received would be based on hourly work performed and would be paid by Normand PLLC." Doc. 250-2, ¶ 11. The statement is ambiguous, at best. It does not state she would be compensated at a fixed hourly rate multiplied by the number of hours worked, nor does it state that she has actually been paid for her services in this matter. Indeed, compensation calculated as a percentage of lodestar – commonly used between counsel in contingency matters – could also be described as compensation "based on hourly work performed."[7]

Contrary to arguments made in the Motion, under Florida law, a contingency-based agreement is not rendered unenforceable merely because a participating attorney did not personally sign the written agreement. Instead, where the parties' course of

---

[6] As an aside, it is intriguing that Ms. Judkins is listed separately from Normand PLLC, who apparently was her employer at the time. It is also intriguing that Ms. Judkins apparently did not sign this Agreement, however, every other attorney/firm identified in the Agreement did.
[7] Notably, no attorney who purportedly has an express contract with Plaintiffs submitted a declaration clarifying how, if at all, the outcome of this case affects Ms. Judkins' compensation. The absence of clarity weighs in favor of permitting an evidentiary hearing so the lien may be adjudicated on a complete record.

conduct reflects assent and performance, the agreement is still enforceable. State Contracting & Eng'g Corp. v. Condotte Am., Inc., No. 97-7014-CV, 2004 WL 5500705 (S.D. Fla. Oct. 26, 2004), report and recommendation adopted, 368 F. Supp. 2d 1296 (S.D. Fla. 2005), amended on reconsideration in part, No. 97-7014-CIV, 2005 WL 5643877 (S.D. Fla. May 31, 2005), and aff'd, 197 F. App'x 915 (Fed. Cir. 2006) (holding the failure of co-counsel to sign contingency agreement did not void agreement where client signed and parties performed under it).

## V.    In the alternative, Newsome is entitled to a *modified* quantum meruit analysis.

The Motion emphasizes the absence of a signed agreement; however, that is not dispositive. Florida law independently permits recovery under quantum meruit. "'Quantum meruit is a legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services . . . where . . . a reasonable person receiving such benefit would ordinarily expect to pay for it.'" WB's Septic & Sitework, Inc. v. Tucker, 365 So. 3d 1242, 1246 (Fla. Dist. Ct. App. 2023) (quoting Daake v. Decks N Such Marine, Inc., 201 So. 3d 179, 180-81 (Fla. Dist. Ct. App. 2016)).

As recognized in Benchmark Consulting, Inc. v. USAA Casualty Insurance Co., even where a contingent fee agreement is unenforceable or noncompliant, an attorney may recover the reasonable value of services. Benchmark Consulting, No. 8:18-CV-3134-T-24CPT, 2020 WL 5701750, at *3-6 (M.D. Fla. Sept. 24, 2020). Likewise, the Eleventh Circuit has held that "the value of [the] charging lien should

14

be the firm's quantum meruit." <u>Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP</u>, 519 Fed. Appx. 657 (11th Cir. 2013). Florida appellate decisions consistently recognize quantum meruit as an independent basis for recovery.

Here, the Declaration establishes that legal services were performed while Ms. Judkins was employed by Newsome and using Firm resources while meaningfully contributing to the prosecution of the case. At minimum, those undisputed facts support compensation under a modified quantum meruit analysis. <u>See</u> <u>Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz</u>, 652 So. 2d 366, 369 (1995) (holding the "court must consider *all relevant factors* surrounding the professional relationship to ensure the award is both the attorney and client") (emphasis added). A written contingency agreement is not a prerequisite to such recovery.

The Motion's reliance on <u>Chapman v. Fla. Dep't of Corr</u>. is misplaced. No. 14-23323-CIV, 2018 WL 10705353, at *1 (S.D. Fla. Apr. 13, 2018). First, in <u>Chapman,</u> the court refrained from adjudicating the charging lien until *after* holding an evidentiary hearing, which was followed by additional briefing. <u>Id.</u> at * 1. Second, in <u>Chapman</u>, the attorney asserting the charging lien functioned as outside associate counsel to the retained law firm and claimed that she entered a contingency-fee agreement with the client because the firm promised her a specified percentage of the contingency fee in exchange for her services. The court ultimately concluded no enforceable contingency agreement existed. <u>Id</u>. at *3.

That is not Newsome Law's quantum meruit claim in this Action. Instead, it seeks the reasonable value of services rendered by the Firm through its salaried

15

employee acting within the scope of her employment and utilizing Firm resources. The claim rests on equitable compensation for work performed on the client's behalf, taking into account the value of the services, the results obtained, and other relevant circumstances. See Buckley Towers Condo., Inc., 519 F. App'x at 665; see also Jenkins v. St. Petersburg Coll. Bd. of Trs., No. 8:18-CV-2718-MSS-SPF, 2022 WL 1094821 (M.D. Fla. Jan. 4, 2022), report and recommendation adopted in part, rejected in part, No. 8:18-CV-2718-MSS-SPF, 2022 WL 633378 (M.D. Fla. Mar. 4, 2022) (internal citations omitted) (holding a court errs as a matter of law if it fails to consider factors beyond lodestar when determining a law firm's quantum meruit award).

## VI. Ms. Judkins' own communications support an implied contractual expectation.

The Declaration further reflects that, after counsel for Newsome raised the issue of compensation, Ms. Judkins acknowledged in writing that Newsome had a quantum meruit interest in the *Garcia* matter for work performed during her employment. **Ex. A**, ¶ 43. That admission is probative evidence of an implied understanding that compensation is owed for services rendered. And, as explained above, an implied contractual relationship is sufficient to support a charging lien under Florida law.

The only disagreement, at that point, was how to go about calculating the appropriate amount of the fees owed to Newsome – the outdated lodestar method, or the *modified* quantum meruit approach (i.e., analyzing the "totality of the circumstances"). See Searcy, 652 So. 2d 366 (1995).

## VII. The dissolution of Newsome Melton does not extinguish the claim.

16

To the extent Movants argue the work was performed while Ms. Judkins was employed by *Newsome Melton* rather than *Newsome Law*, the Declaration establishes that Mr. Newsome was appointed Liquidator under the Newsome Melton Separation Agreement with authority to wind up and collect corporate assets, including commencement of proceedings in a Corporation's name, pursuant to Section 607.1405(2)(e), Florida Statutes. Therefore, Mr. Newsome is authorized to pursue any charging lien and/or quantum meruit claim arising from work performed during with Newsome Melton. To the extent the Court determines amendment of the Charging Lien is necessary to ensure accuracy or completeness, Newsome will of course do so.

## VIII.  Federal courts must apply Florida appellate law.

As recognized in State Contracting & Engineering Corp. v. Condotte America, Inc., federal courts applying Florida law are bound to follow Florida appellate decisions absent contrary authority from the Florida Supreme Court. No. 97-7014-CV, 2004 WL 5500705 (S.D. Fla. Oct. 26, 2004), n.14 (S.D. Fla. Oct. 25, 2004) (citing Media Servs. Group, Inc. v. Bay Cities Comms, Inc*., 237 F.3d 1326, 1329 n.5 (11th Cir. 2001)) (cleaned up).

As to the present issues before the Court, Florida appellate precedent makes clear that: (a) an implied contract can support a charging lien (See Sec. IV supra.); (b) absent a written agreement, a charging lien may be resolved via a modified quantum meruit analysis (See Sec. V supra.); and (c) striking a notice of charging lien is an extreme and disfavored measure which is legally improper if the parties present factual

17

disputes and are not permitted an evidentiary hearing at which they may present evidence on their factual disputes. See Sec. II supra.).  This Court is bound to apply these principles.

### IX.   Newsome Law does not seek to delay disbursement of settlement funds to the Plaintiffs.

Finally, in an effort to narrow the issues presented before the Court, Newsome Law states it has never intended to delay the distribution of settlement proceeds to Plaintiffs and remains committed to ensuring that Plaintiffs receive their funds promptly and without prejudice. Indeed, in communications between counsel for Newsome Law and counsel for Normand PLLC, Newsome Law has expressed the desire to resolve this fee dispute cordially and without delaying disbursement of the portions of the settlement to the Plaintiffs in this matter. Newsome Law offered to file a motion with this Court seeking such relief in an effort to narrow the effects of this unfortunate fee dispute. However, that offer was not accepted.

To that end, pending resolution of the charging lien, Newsome Law would welcome an Order from this Court requiring the following upon finalization of the settlement: (1) the immediate disbursement to Plaintiffs of their portion of the settlement funds, and (2) segregation into a trust account or the court registry, of the fee portion of the settlement funds. This approach preserves the disputed funds, protects the Plaintiffs, prevents unnecessary delay, and confines the dispute to the attorneys. See Kamel v. Prisco, No. 23-CV-00033 (JLR), 2025 WL 315890, at *1 (S.D.N.Y. Jan. 28, 2025) (permitting the deposit of the disputed amount pending

18

resolution of charging lien because it "'provides a place of safekeeping for disputed funds'") (quoting <u>LTV Corp. v. Gulf States Steel, Inc. of Ala.</u>, 969 F.2d 1050, 1063 (D.C. Cir. 1992)).

## CONCLUSION

The Notice was timely filed. The Declaration (**Ex. A**) establishes Ms. Judkins' continuous W-2 employment relationship, use of Firm resources, and a factual basis for a charging lien and/or quantum meruit recovery. Florida law does not require a signed contingency agreement as a prerequisite to a charging lien based on implied contract and quantum meruit principles. At a minimum, disputed factual issues require an evidentiary hearing. The Joint Motion to Strike should therefore be denied.

## CERTIFCATE OF SERVICE

I HEREBY CERTIFY that on **March 2, 2026,** I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/Dale M. Swope*
DALE M. SWOPE
Florida Bar No.: 261270
NATALIE I. SHOEMAKER
Florida Bar No.: 1025707
Swope, Rodante P.A
1234 E. Fifth Avenue
Tampa, Florida 33605
T: (813)273-0017 /
Fax: (813) 223-3678
Team1eservice@swopelaw.com
eservice@swopelaw.com
**Counsel for Newsome**

19