UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal                Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER
TECHNOLOGIES, INC., NOAM
SHAZEER, DANEL DE
FREITAS ADIWARSANA,
GOOGLE LLC,

      Defendants.

_____/

### DECLARATION OF C. RICHARD NEWSOME

I, C. Richard Newsome, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am over the age of eighteen and competent to make this Declaration. I have personal knowledge of the facts stated herein.

**Formation and Structure of My Firm**

2. My name is C. Richard Newsome and I am a member of the Florida Bar, a former Federal Prosecutor in the Northern and Middle Districts of Florida, was the Founding Partner and majority shareholder of the Newsome Melton, P.A., and am currently the principal and owner of Newsome Law, P.A. In 2001, I opened my law

1

Firm, C. Richard Newsome, P.A., in Orlando, Florida. **Exhibit 1**, C. Richard Newsome P.A., Articles of Incorporation (Feb. 1, 2001).

3.     On or around November 28, 2017, Frank Melton joined my Firm as Vice President and acquired a minority ownership interest, while I retained a majority ownership interest. Thereafter, the Firm operated as Newsome Melton, P.A. **Exhibit 2,** Newsome Melton, P.A., Annual Filing (Nov. 28, 2017).

4.     On July 18, 2023, Amy Judkins signed a written employment offer with Newsome Melton, P.A., thereby accepting a full-time attorney position with a fixed salary and year-end bonuses, independent of case outcomes. **Exhibit 3**, Judkins Signed Employment Offer (Jul. 18, 2023).

5.     Ms. Judkins began her employment as an associate with Newsome Melton, P.A. on or about August 23, 2023.

6.     I understand that, prior to joining Newsome Melton, P.A., Ms. Judkins worked for Edmund Normand at Normand PLLC.

7.     During her employment with Newsome Melton, P.A., Ms. Judkins worked on approved and assigned contingent fee matters. She was given independence to litigate those matters on behalf of the Firm and, consistent with Firm practice, at times, signed agreements and pleadings on behalf of the Firm. However, she was never authorized to work on cases without my knowledge. Moreover, all cases she worked on were required to be put into the Firm's case management system.

2

8.      During her employment, Ms. Judkins was assigned a full-time paralegal, paid for by Newsome Melton, and later by Newsome Law, P.A.

9.      At all relevant times during her employment with Newsome Melton, P.A., Ms. Judkins was a salaried W-2 employee of the Firm. Evidence of her W-2 employment status includes:

    a.  Her pay stubs from Newsome Melton, P.A. for the years ending 2023, 2024, and biweekly through the period ending March 29, 2025 (**Composite Exhibit 4**);

    b. United Healthcare invoices reflecting health insurance coverage for Ms. Judkins from January through March of 2025 (**Composite Exhibit 5**)[1];

    c. Her W-2 forms for tax years 2023, 2024, and a portion of 2025 issued by Newsome Melton, P.A. **Composite Exhibit 6**.

**Dissolution of Newsome Melton, P.A. and Transition**

10.     In early 2025, Mr. Melton and I decided to part ways and open separate law firms.

11.     The separation of Newsome Melton, P.A. was openly discussed among Firm staff and was not a secret.

12.     On December 22, 2025, a Notice of Corporate Dissolution for Newsome Melton, P.A. was executed and filed. A true and correct copy is attached as **Exhibit 7**.

---

[1] The application is redacted to protect the privacy of other Newsome Melton, P.A. former employees and financial information irrelevant to the issue before the Court.

3

13.     Ms. Judkins was fully aware Newsome Melton, P.A., was being restructured, and that she would be employed by Newsome Law, P.A. beginning on April 1st, 2025.

14.     While Mr. Melton and I were working out our separation arrangements, Ms. Judkins and I discussed creating a partnership of professional associations where she could have her own P.A. and perhaps share expenses, fees, and cases. However, we never reached terms on this concept and no agreement was finalized or implemented.

15.     At no time did Ms. Judkins inform me she intended to perform legal services independently or "moonlight" through her own professional association while remaining a full-time employee of Newsome Law (or Newsome Melton, for that matter). Had she done so, I would not have permitted it, as such conduct presents serious operational and ethical risks, including, among other issues, the risk that Firm attorneys would be unaware of matters being handled in the Firm's name or with Firm resources.

16.     During February and March of 2025, emails were exchanged among firm members, including Ms. Judkins, regarding the separation of Newsome Melton, P.A. and the formation of Newsome Law, P.A.

17.     On March 24, 2025, Ms. Judkins enrolled in the employment benefits plan for Newsome Law, P.A., an email confirming same is attached as **Exhibit 8**.

4

18.     On March 28, 2025, Newsome Melton, P.A. formally separated. Section 11 of the Separation Agreement, attached in relevant part as **Exhibit 9**,[2] appointed me as Liquidator of Newsome Melton, P.A., granting me authority to wind up the entity's affairs; authority consistent with Florida Statute § 607.1405(2)(e) (permitting a dissolved corporation to collect its assets and perform acts necessary to wind up its affairs, including commencement of proceedings in the corporation's name).

**Ms. Judkins' Employment with Newsome Law, P.A.**

22.     Effective April 1, 2025, Ms. Judkins became a full-time W-2 employee of Newsome Law, P.A.

23.     Evidence of her W-2 employment with Newsome Law, P.A. includes:

a.  A 2025 W-2 issued by Newsome Law, P.A. to Ms. Judkins (**Exhibit 10**);

b.  Newsome Law, P.A.'s March 24, 2025 Renewal Application for Lawyers Professional Liability Insurance, identifying Ms. Judkins as a Firm attorney under the "Lawyer Roster" (**Exhibit 11**, p.5);[3]

c.  Blue Cross invoices reflecting health coverage for Ms. Judkins from April 1, 2025 through May 31, 2025 (**Composite Exhibit 12**);[4] and

---

[2] The Separation Agreement attached as Exhibit 9 contains redactions for confidential terms, irrelevant to the issue before the Court and excludes confidential exhibits enclosed therewith.
[3] The application is redacted to protect the privacy of other Newsome Law, P.A. employees and financial information irrelevant to the issue before the Court.
[4] The invoices are redacted to protect the privacy of other Newsome Law, P.A. employees and financial information.

d. Her pay stubs from Newsome Law, P.A. for the continuous/uninterrupted pay periods from March 30, 2025 – May 10, 2025 (**Composite Exhibit 13**).

24. Ms. Judkins' own written communications reflect her understanding she was working for Newsome Law, P.A. Specifically,

a. On March 28, 2025, Ms. Judkins emailed me asking: "Rich, when will we need to update our cases with the new firm name/address/phone number? I've heard that Newsome Melton dissolves April 1. Does that mean we need to update all existing cases by April 1?" (**Exhibit 14**);

b. On April 4, 2025, she emailed another attorney at Newsome Law, P.A. asking whether there was a new signature block for Newsome Law, P.A. (**Exhibit 15**);

c. On April 4, 2025, she filed a class action complaint in the Southern District of Florida, Palm Beach Division, identifying Newsome Law, P.A. as her Firm in the signature block (**Exhibit 16**, p. 39); and

d. On April 17, 2025, when I noticed she had not updated her signature block in an email reply, I reminded her to do so. She responded that she had already updated her outgoing emails and had simply forgotten to update the reply. (**Exhibit 17**).[5]

---

[5] Attorney-client privileged communications and protected work product are redacted from **Ex. 17**.

6

25.     On May 2, 2025, Ms. Judkins emailed me her written resignation, which stated, in part:

> Please accept this letter as my formal **resignation from Newsome Law**. I want to express my deepest gratitude for the opportunity to work alongside you and the exceptional team at Newsome Melton and more recently at Newsome Law.

A true and correct copy is attached, in relevant part, as **Exhibit 18** (emphasis added).

**Post-Resignation Conduct**

31.     After her resignation, Ms. Judkins informed me she would be returning to her prior employer, Normand PLLC.

32.     On August 20, 2025, I received a Law360 email regarding the Garcia matter stating that Megan Garcia was represented by Matthew P. Bergman, Amy L. Judkins of Newsome Melton, P.A., and Meetali Jain. Before receiving this email, I was not aware that Amy Judkins or my Firm were involved in this case.

33.     I was shocked to see this case in the news, having never heard about this case before, despite the docket showing the case was filed under my Firm's name, Newsome Melton, and that she argued critical personal jurisdiction issues as to the Motion to Dismiss while a full-time employee of Newsome Law. I never approved her working on this case and until I read about it in the news, was unaware of either of my Firms' or Ms. Judkins' involvement.

34.     As with all other cases she appeared on while working for either of my Firms (Newsome Melton, P.A. and/or Newsome Law, P.A.), the signature block on

7

Ms. Judkins' March 26, 2025, Notice of Appearance in the *Garcia* action listed my Firm's name, our address, phone number, facsimile number, Ms. Judkins' Firm email address, as well as the email address of another Firm employee. **Exhibit 19**, pp. 1-2.

35.   Additionally, Ms. Judkins maintained a *Garcia* file on my Firm's OneDrive system that contained case filings, draft documents, and a folder for attorney notes. Further, all communications regarding the *Garcia* case were done through my Firm's email system, including protected work product between counsel. In addition, I was also able to determine the full-time paralegal employed by my Firm substantially assisted Ms. Judkins with this matter while the two were employed by my Firm. See, **Exhibit 20**.

36.   A review of Ms. Judkins' emails on this matter revealed:

a. In January 2025, Edmund Normand asked Ms. Judkins to work on the *Garcia* case and introduced her to other counsel of record on the *Garcia* matter in a January 29, 2025, email (**Exhibit 21**), stating in part,



b. On February 16, 2025, co-counsel in the *Garcia* matter sent an email to another co-counsel that attached a draft representation agreement,

stating, ████████████████████████████████████████████

████████████████████████████████ **Exhibit 22**.

    c. In a February 18, 2025, response email, a draft representation agreement was attached which contained a signature line for Amy Judkins as an associated attorney along with Normand PLLC. **Exhibit 23**, Feb. 18, 2025, email and draft redlined representation agreement attached thereto.

    d. Prior to April 17, 2025, Ms. Judkins' signature block on emails between counsel reflected her law firm as "Newsome Melton." **Exhibit 24**. However, as of April 22, 2025, Ms. Judkins' emails on the *Garcia* matter contained her new "Newsome Law" signature block. **Exhibit 25**.

37. Based on the circumstances and everything I reviewed, it was my impression that Ms. Judkins was working on this matter secretly, without my knowledge. This explains why Ms. Judkins did not mention this matter to me, did not get approval to use Firm resources or staff, and kept it out of our Firm's case management system. Although, despite those efforts, it was revealed Ms. Judkins *did* use Firm resources and *did* use the Firm's OneDrive account to store some documents as well as the Firm's email address to send and receive correspondence related to the *Garcia* matter.

38. Moreover, given the review of the emails, I formed a good faith belief Ms. Judkins did sign a representation agreement with the *Garcia* plaintiffs, indeed Ms.

9

Judkins filed a Notice of Appearance indicating her representation of the plaintiffs while still an employee of my Firm and after a draft representation agreement was circulated amongst co-counsel for the plaintiffs, which included a signature line for Ms. Judkins.

39.    As stated above, Ms. Judkins wrote to me on May 2, 2025, advising she was resigning from Newsome Law, P.A.

40.    In subsequent email correspondence, there was an exchange of emails between Ms. Judkins, my Firm Administrator, and me, regarding which cases Ms. Judkins would be taking with her as she departed the Firm, and which of the cases she had been working on that would stay with Newsome Law, P.A. Ms. Judkins failed to identify the *Garcia* case in any of those emails.

41.    Despite the *Garcia* case having never been entered into our Firm's case management system, we found emails and files on our Firm's servers including emails with the other lawyers representing the *Garcia* plaintiffs about the *Garcia* case and evidencing: Ms. Judkins' work on the case, her successful argument on the critical personal jurisdiction issues presented in the Motions to Dismiss while a full-time employee of my Firm, her use of Firm staff to assist with the hearing, and the draft representation agreement with an associating attorney clause for Ms. Judkins to sign, as mentioned above. Moreover, my Firm's OneDrive system had a *Garcia* folder containing case filings, draft documents, and a folder for attorney notes.

**Failed Attempt at Informal Resolution**

42. In January 2026, I retained Swope, Rodante P.A. to explore an amicable resolution as to my Firm's entitlement to *modified* quantum meruit fees for the work Judkins did on Firm cases, including the *Garcia* case, while employed at Newsome Melton, P.A. and Newsome Law, P.A.

43. On January 15, 2026, Ms. Judkins wrote to Mr. Swope stating the following with respect to the *Garcia* matter:

> I have **consistently agreed that Newsome is entitled to quantum meruit compensation for any work I performed** on cases while employed with either Newsome Melton or Newsome Law . . . From the outset, **it has always been my intention to ensure that Newsome is fairly compensated for my limited work on this case [*Garcia*] prior to my departure**. Both Ed and Alex will confirm that I disclosed this obligation to them well before the case reached a preliminary settlement posture. As you note, settlement has not yet been finalized. If and when settlement is finalized, **we intend to resolve any quantum meruit obligation promptly**.

**Exhibit 26** (emphasis added).

44. In sum, prior to filing the Notice of Charging Lien, I formed a good faith belief that Newsome Melton, P.A. and Newsome Law, P.A. had a valid charging lien in the Garcia matter for the following reasons:

    a. Case-related emails, including confidential and privileged communications, were all sent through my Firms' email system;

    b. My Firms' document storage systems (i.e., OneDrive) contained case-related filings, draft documents, and a folder for attorney notes;

11

c. The February 16 and February 18, 2025 emails between the *Garcia* counsel discussing the need to finalize the representation agreement and the inclusion of a signature line for Ms. Judkins in the associating attorney clause of that representation agreement, which led to me to believe she had in fact signed the agreement;

d. Ms. Judkins' subsequent Notice of Appearance in the *Garcia* matter which identified Newsome Melton, P.A. as her associated law firm, along with a listing of other Firm resources (e.g., phone number, email address, physical address, etc.);

e. The work performed on the case by a full-time Firm-paid paralegal; and

f. January 15, 2026, Ms. Judkins stated in writing that it was her understanding that my Firms had a quantum meruit interest in the *Garcia* matter.

45.     Thus, based on Ms. Judkins' work on the case while a full-time employee of my Firms, the draft of the representation agreement with an associating attorney clause for Ms. Judkins to sign and hiring her to work on the case referenced above, and her admission my Firms were entitled to a quantum meruit fee, I believed in good faith Ms. Judkins must have executed a contract.

46.     Swope Rodante attempted to informally resolve the lien issue with Ms. Judkins and Normand PLLC's counsel, but no resolution could be reached. Therefore, a Lien was filed for this Court's intervention.

47.     It was never my intention to have this lien hold up distribution of the *Garcia* plaintiffs' settlement proceeds. This lien was always, and still is, intended to be limited to the attorneys' fees collected.

**Clarification Regarding Employment Status**

48.     At no time was Ms. Judkins' employment status "in flux" in the sense of her being unaffiliated or free to conduct independent legal work while using Firm resources. She was continuously a full-time, salaried W-2 employee — first of Newsome Melton, P.A., and then of Newsome Law, P.A. — from August of 2023 until her resignation in May of 2025.

49.     At no time did I authorize Ms. Judkins to perform outside legal services while she was an attorney for Newsome Melton, P.A. or Newsome Law, P.A.

**I declare under penalty of perjury that the foregoing is true and correct.**

Respectfully Submitted,

By: *Curtis Richard Newsome*

C. Richard Newsome

(Print Name)

Date: 26/02/2026

13

Sent by: DEAN MEAD  ORLANDO                407 4231831;           02/01/01 10:35AM; JetFax #154; Page 1/5

'Division of Corporations                                                    Page 1 of 1



P0100000 12107

## Florida Department of State
### Division of Corporations
Public Access System
Katherine Harris, Secretary of State

### Electronic Filing Cover Sheet

Note: Please print this page and use it as a cover sheet. Type the fax audit number (shown below) on the top and bottom of all pages of the document.

(((H01000013091 3)))

Note: DO NOT hit the REFRESH/RELOAD button on your browser from this page. Doing so will generate another cover sheet.

```
To:
       Division of Corporations
       Fax Number     : (850)922-4001

From:
       Account Name    : DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A.
       Account Number : 076077001702
       Phone           : (407)841-1200
       Fax Number      : (407)423-1831
```

## FLORIDA PROFIT CORPORATION OR P.A.

### C. Richard Newsome, P.A.

| Certificate of Status | 0 |
| --- | --- |
| Certified Copy | 1 |
| Page Count | 04 |
| Estimated Charge | $78.75 |

FILED
SECRETARY OF STATE
TALLAHASSEE, FLORIDA
01 FEB -1 PM 2: 37

Our reference number 19739/34853

Electronic Filing Menu.        Corporate Filing.        Public Access Help.

B. McKnight  FEB 0 1 2001

Sent by: DEAN MEAD ORLANDO          407 4231831;          02/01/01 10:35AM; *JetFax* #154;Page 2/5

H01000013091 3

# ARTICLES OF INCORPORATION

## OF

## C. RICHARD NEWSOME, P.A.

The undersigned incorporator, a natural person competent to contract and an attorney at law duly licensed to render services as such under the laws of the State of Florida, hereby forms a corporation for profit under the Professional Service Corporation Act and other laws of the State of Florida.

### ARTICLE I - NAME

The name of this corporation shall be C. Richard Newsome, P.A.

### ARTICLE II - PRINCIPAL OFFICE AND MAILING ADDRESS

The principal office for this corporation shall be located at 90 E. Livingston Street, Suite 100, Orlando, Florida 32801, which shall also be the mailing address for the corporation.

### ARTICLE III - GENERAL NATURE OF BUSINESS

The general nature of the business to be transacted by this corporation shall be:

A.     To engage in every phase and aspect of the business of rendering the same professional services to the public that an attorney at law duly licensed under the laws of the State of Florida is authorized to render, but such professional services shall be rendered only through officers, employees and agents of the corporation who are duly licensed under the laws of the State of Florida to practice law.

B.     To invest the funds of this corporation in real estate, mortgages, stocks, bonds or any other type of investment, and to own real and personal property necessary for the rendering of such professional services.

C.     To do anything necessary and proper for the accomplishment or furtherance of any of the purposes or objectives of the corporation enumerated in these Articles of Incorporation or any amendment thereof, and to do any act necessary or incidental to the protection and benefit of the corporation; and in general, either alone or in association with other corporations, firms or individuals, to carry on any lawful pursuit necessary or incidental to the accomplishment or furtherance of such purposes or objectives of the corporation.

H01000013091 3

Sent by: DEAN MEAD  ORLANDO              407 4231831;          02/01/01 10:36AM;JetFax #154;Page 3/5

H01000013091 3

D.    It is intended that this corporation may conduct and transact any business lawfully authorized and not prohibited by Chapter 607 and Chapter 621, Florida Statutes, as the same may be from time to time amended.

## ARTICLE IV - CAPITAL STOCK

A.    The maximum number of shares of capital stock that this corporation is authorized to issue and have outstanding at any one time is one hundred thousand (100,000) shares of common stock having a par value of One Cent ($.01) per share.

B.    All or any portion of the capital stock may be issued in payment for real or personal property, services, or any other right or thing having a value, in the judgment of the Board of Directors, at least equivalent to the full value of the stock so to be issued as hereinabove set forth, and when so issued, shall become and be fully paid and nonassessable, the same as though paid for in cash, and the Board of Directors shall be the sole judges of the value of any property, right or thing acquired in exchange for capital stock, and their judgment of such value shall be conclusive.

## ARTICLE V - TERM OF EXISTENCE

The corporation's existence shall commence on the date of execution of these Articles of Incorporation, and shall exist perpetually thereafter unless dissolved according to law.

## ARTICLE VI - REGISTERED AGENT AND REGISTERED OFFICE

The street address of the initial registered office of this corporation is 800 N. Magnolia Avenue, Suite 1500, Orlando, Florida 32803, and the name of the initial registered agent of this corporation at that address is Steven C. Lee.

## ARTICLE VII - BOARD OF DIRECTORS

A.    The initial number of directors of this corporation shall be one (1).

B.    The number of directors may be increased or diminished from time to time by Bylaws adopted by the shareholders or the Board of Directors, but shall never be less than one (1).

C.    The name and street address of the initial member of the Board of Directors, to hold office for the first year of existence of this corporation or until his successor is elected or appointed and has qualified, are:

-2-

H01000013091 3

Sent by: DEAN MEAD  ORLANDO                407 4231831;          02/01/01 10:36AM;*JetFax* #154;Page 4/5

H01000013091 3

C. Richard Newsome
90 E. Livingston Street, Suite 100
Orlando, Florida 32801

D.    Any director may be removed from office for any cause deemed sufficient by the shareholders of the corporation. Such removal shall be by a majority of the stock entitled to vote thereon at any annual or special meeting of the shareholders.

E.    Each director shall be an attorney at law duly licensed to render services as such under the laws of the State of Florida.

## ARTICLE VIII - BYLAWS

The power to adopt, amend or repeal Bylaws for the management of this corporation shall be vested in the Board of Directors and the shareholders.

## ARTICLE IX - AMENDMENT

The corporation reserves the right to amend these Articles of Incorporation in the manner provided by law. Every amendment shall be approved by the Board of Directors, proposed by them to the shareholders, and approved at a shareholders' meeting by a majority of the shares of stock entitled to vote thereon, unless all the directors and all the shareholders sign a written statement manifesting their intention that a certain amendment of these Articles of Incorporation be made.

## ARTICLE X - INCORPORATOR

The following is the name and street address of the person signing these Articles of Incorporation, an attorney at law duly licensed to render services as such under the laws of the State of Florida:

Steven C. Lee
Dean, Mead, Egerton, Bloodworth,
Capouano & Bozarth, P.A.
800 N. Magnolia Avenue, Suite 1500
Orlando, Florida 32803

## ARTICLE XI - SHAREHOLDERS

Shares of this corporation's capital stock shall be issued only to individuals who are duly licensed to render services as an attorney at law under the laws of the State of Florida. No shareholder of this corporation may sell or transfer his shares of stock therein except to another individual who is eligible to be a shareholder hereunder. No shareholder of this

- 3 -

H01000013091 3

H01000013091 3

corporation shall enter into a voting trust agreement or any other type of agreement vesting in another person the authority to exercise the voting power of any or all of his shares.

<u>ARTICLE XII - INDEMNIFICATION</u>

The corporation shall indemnify any officer or director to the full extent permitted by law.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 1st day of February, 2001.

_____
                Steven C. Lee


Having been named Registered Agent for the above stated Corporation, at the place designated in these Articles of Incorporation, I hereby agree to act in this capacity, and I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I accept the duties and obligations of Section 607.0505 Florida Statutes.

Signature:_____
                Steven C. Lee

Date: _____ 2-1 _____, 2001

G:\TAX\SCL\34\34853mft-16b.wpd

SECRETARY OF STATE
TALLAHASSEE, FLORIDA
01 FEB -1 PM 2:37
FILED

H01000013091 3

**Exhibit 2**

# 2017 FLORIDA PROFIT CORPORATION AMENDED ANNUAL REPORT

DOCUMENT# P01000012107

**FILED**
**Nov 28, 2017**
**Secretary of State**
**CC2599216373**

**Entity Name:** NEWSOME MELTON, P.A.

**Current Principal  Place of Business:**

201 S. ORANGE AVENUE, SUITE 1500
ORLANDO,  FL  32801

**Current Mailing Address:**

201 S. ORANGE AVENUE, SUITE 1500
ORLANDO,  FL  32801  US

**FEI Number: 59-3538564**

**Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

A.G.C. CO.
200 S. ORANGE AVENUE
SUITE 2300
ORLANDO, FL  32801  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   JEFFREY E. DECKER, VICE PRESIDENT                                      11/28/2017

Electronic Signature of Registered Agent                                                                Date

**Officer/Director Detail :**

| Title | PD | Title | VP |
|---|---|---|---|
| Name | NEWSOME, C. RICHARD | Name | MELTON, R. FRANK II |
| Address | 201 SOUTH ORANGE AVENUE SUITE 1500 | Address | 201 S. ORANGE AVENUE, SUITE 1500 |
| City-State-Zip: | ORLANDO  FL  32801 | City-State-Zip: | ORLANDO  FL  32801 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: C. RICHARD NEWSOME                          OWNER                          11/28/2017

Electronic Signature of Signing Officer/Director Detail                                                  Date

# NEWSOME | MELTON

*Justice Through Compassion & Strength*

July 14, 2023

**Via email: amyjudkins707@gmail.com**
Amy L. Judkins
118 Lamplighter Road
Altamonte Springs, Florida 32714

      RE:    Offer of Employment

Dear Amy:

Thank you for approaching Frank this week with your renewed interest in Newsome Melton. We are all very excited at the prospect of welcoming you to the firm. To memorialize your conversation with Frank, the components of our offer include the following and are subject to the terms set forth below:

- This is a full-time attorney position. The position is an exempt position, and you will not be eligible for overtime pay.

- Starting salary of ▮▮▮▮ per pay period (approximately ▮▮▮▮ annually), paid on a biweekly basis.

- You will be guaranteed a year-end bonus this year in the amount ▮▮▮▮ You will also be guaranteed a bonus at 2024 year-end in the amount of ▮▮▮▮

- Following the 90-day probationary period, full-time employees are eligible for company benefits, including:
  - Health, dental and vision benefits partially paid by the firm, as well as firm-paid group life insurance and long-term disability policies. Additional group life insurance coverage is available as well as short-term disability coverage.
  - Participation in the firm's 401(k) Plan following one year and at least 1,000 hours of employment.
  - A summary of company benefits is enclosed with this letter and further details may be provided upon hire.

- Tentative start date of Monday, August 21, 2023. [subject to change]

- Employment with Newsome Melton is at-will, which means that either you or the company may terminate the relationship at any time.

This offer is contingent upon successful completion of a background check and satisfactory proof of your identity and legal authorization to work. If you fail to provide proof, federal law

Amy L. Judkins
July 14, 2023
Page 2

prohibits us from hiring you. Your proof should be presented upon your first day of work, but no later than your third day of work.

Although you have already informally accepted our offer, please acknowledge your acceptance of the offer below and return it to me as soon as possible, along with your completed Authorization for Background Check, so I may initiate your background check. I have attached a blank copy of the authorization along with this offer. I am headed out on vacation in the morning but promise to provide you with a more formal Employment Agreement to formalize everything as soon as possible.

Again, we are so looking forward to welcoming you to our team!

Very truly yours,

Lisa M. Marcum
Chief Operating Officer

**Acceptance:**

I, Amy L. Judkins, accept the offer of employment as set forth above and consent to initiate my background check prior to my employment.

Signature: _____        Date: 7/18/2023
           Amy L. Judkins

**Exhibit 4**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal                    Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.

_____/

**PLACEHOLDER FOR COMPOSITE EXHIBIT 4 TO NEWSOME
DECLARATION (EXHIBIT A TO RESPONSE TO JOINT
MOTION TO STRIKE CHARGING LIEN)**

Newsome Law P.A. ("Newsome Law") hereby files this placeholder

**Composite Exhibit 4 – 2025 direct deposit advices for Ms. Judkins** to Mr.

Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint

Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed

a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253).

Composite Exhibit 5



**UnitedHealthcare®**

Atlanta, GA 30374-0376

| Manage your Account: |
| **uhceservices.com** |
| Invoice No: |
| Invoice Date:  12/10/2024 |
| Customer No: |
| Bill Group No: |
| Coverage Period:  01/01/2025 - 01/31/2025 |
| Due Date:  01/01/2025 |

DPS$$$PKG
NEWSOME MELTON P A
LISA MARCUM
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

## Account Summary

Previous Balance

Payments (-)

Account Adjustments (+/-)

Current Charges (+)

Current Adjustments (+/-)

**Total Balance Due¹**

## Thank you for your business.

### About Your Payment

We offer several payment options to help you manage your account.

**Pay Online.**  Go to **uhceservices.com** to make a one-time payment or schedule monthly payments directly from your bank account.

**Pay By Phone.**  Call **1-877-797-8816**, TTY 711, 8 a.m. - 5 p.m. ET, Monday – Friday, to make a payment directly from your bank account.

**Pay By Check.**  Send a check to the address listed below. Checks returned for lack of funds or checks that can't be cashed for any reason are not considered payment.

**Payment is due in full on or before the due date above. If full payment is not received by the end of your 31 day grace period, your coverage may be terminated as stated in your contract(s). If a payment is deposited late, it does not automatically mean we will accept the payment.**

---

Please detach and return with your payment.

---

| Customer Name | Customer Number | Payment Due Date | Invoice # |
|---|---|---|---|
| NEWSOME MELTON P A | | 01/01/2025 | |

**Send payment to:**

**Do not mail/submit payment.  A request for fund withdrawal will be initiated from your bank account on the 7ᵗʰ of the month.**

**Minimum Amount Due¹:**

**Amount Enclosed**

$

3691265965001000000302751436912092555541



# Expanding digital solutions – choose paperless invoicing

We appreciate this opportunity to help streamline administrative efficiencies and reduce paper mailings. Our records show that you are still receiving a paper invoice from us. Did you know that you can view your monthly invoice online and further reduce the amount of paper mail that you receive and handle?

## Advantages of using the benefits administration website

In addition to being a resource for your specific plan information and covered employee population, **uhceservices.com** offers easy access to your premium invoices and payments. In the Billing and Payment Center of the website, you can:
- View invoices, payments, balances and statements
- Request "Bill vs. Paid" report
- Manage banking information

To go paperless and turn off delivery of your monthly premium invoice by U.S. Mail, please call the customer service phone number on this invoice to have **Electronic Invoice Delivery Only** selected.

## Not registered yet?

Visit us at **uhceservices.com** and register using your Customer ID.
Once registered, you can:
- Sign up for paperless billing
- View, manage and pay your bill
- Make eligibility changes
- Request health plan ID cards and more

### Easy access to your invoices and payments

- Sign in to **uhceservices.com** to view or print your company's monthly premium invoice

- For help signing in or registering on the website, call **1-866-908-5940**, TTY **711**, 8 a.m. to 8 p.m. ET, Monday – Friday



2/23 MRAEI29855BG © 2023 United HealthCare Services, Inc. All Rights Reserved

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ████████████
Invoice Date: 12/10/2024
Bill Group: ████████
Coverage Period: 01/01/2025 - 01/31/2025
Due Date: 01/01/2025

## Summary

| Description | Employee Count | Total Volume (000's) | Net Amount |
|---|---|---|---|
| 1131654-Default Bill Group HPVV25002575i8022B | | | |
| Employee | 10 | | |
| Employee & Family | 2 | | |
| **Subtotal, HPVV25002575i8022B** | 12 | | ████████ |
| | | | |
| 1131654-Default Bill Group HPVV40002575i8021B | | | |
| Employee | 7 | | |
| Employee & Family | 2 | | |
| Employee & Child(ren) | 1 | | |
| **Subtotal, HPVV40002575i8021B** | 10 | | ████████ |
| | | | |
| 1131654-Default Bill Group P15003060ei80 | | | |
| Employee | 12 | | |
| Employee & Spouse | 1 | | |
| **Subtotal, P15003060ei80** | 13 | | ████████ |
| | | | |
| **Subtotal 1131654-Default Bill Group** | | | ████████ |
| | | | |
| 1131654-Default Bill Group | | | |
| **Adjustments** | | | |
| Account Adjustments | | | ████ |
| Current Adjustments | | | ████████ |
| **Subtotal, Adjustments** | | | ████████ |
| **TOTAL** | 35 | | ████████ |

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ███████
Invoice Date: 12/10/2024

Bill Group: ███████
Coverage Period: 01/01/2025 – 01/31/2025
Due Date: 01/01/2025

## Details

| | Current Detail - 1/01-1/31/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ ███ | ███████ ███████ | ███████ | ███ ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | ███████ | ███ | ▮ | | | | | | | |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | ███████ | ███ | ▮ | ▮ | | ███ | | | | |

| Coverage Type | | | | Status | | Code | |
|---|---|---|---|---|---|---|---|
| E | Employee Only | E4D | Employee and Four Dependents | A | Active | ADD | Retroactive Addition |
| ES | Employee and Spouse | E5D | Employee & One or More Dependent | C | Cobra | TRM | Retroactive Termination |
| ESC | Employee and Family | E6D | Employee & Two or More Dependents | P | Pre 65 Retiree | CHG | Retroactive Change |
| EC | Employee and Child(ren) | E7D | Employee & Three or More Dependents | R | Post 65 Retiree | | |
| E1D | Employee and One Dependent | E8D | Employee & Four or More Dependents | S | Surviving Insured | | |
| E2D | Employee and Two Dependents | E9D | Employee & Five or More Dependents | | | | |
| E3D | Employee and Three Dependents | | | | | | |

Questions? We're here to help.

 Toll free 1-877-797-8816    uhceservices.com

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ████████████
Invoice Date: 12/10/2024
Bill Group: ████████
Coverage Period: 01/01/2025 – 01/31/2025
Due Date: 01/01/2025

## Details

| Current Detail - 1/01-1/31/2025 | | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | ███ |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | |
| ███ | █████ | ██████ | ████ | ██ | █ | | ███ | | | | ███ |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | |
| ███ | █████ | ██████ | ████ | | | | ███ | | | | ███ |
| ███ | █████ | ██████ | ████ | | | | ███ | | | | |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | ███ |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | |
| 1131654 | Judkins, Amy L | ██████ | ████ | ██ | █ | | ███ | | | | ███ |
| 1131654 | Judkins, Amy L | ██████ | ████ | █ | █ | | ███ | | | | |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | ███ |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | |
| ███ | █████ | ██████ | ████ | █ | █ | | | ██████████ | ███ | ███ | ███ |
| ███ | █████ | ██████ | ████ | █ | █ | | | ██████████ | | ███ | |
| ███ | █████ | ██████ | ████ | █ | █ | | ███ | | | | ███ |

 

NEWSOME MELTON P A
Customer No: ▉▉▉▉▉

Invoice No: ▉▉▉▉▉▉▉
Invoice Date: 12/10/2024

Bill Group: ▉▉▉▉▉
Coverage Period: 01/01/2025 - 01/31/2025
Due Date: 01/01/2025

## Details

| Current Detail - 1/01-1/31/2025 | | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | ▉ |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | ▉ |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | ▉ |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | ▉ |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | ▉ |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | ▉ |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | | ▉ | | | | |

  

NEWSOME MELTON P A
Customer No: ██████

Invoice No: ████████████
Invoice Date: 12/10/2024

Bill Group: ██████
Coverage Period: 01/01/2025 – 01/31/2025
Due Date: 01/01/2025

## Details

| | Current Detail - 1/01-1/31/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ██ | ████████ | ██████ | ████ | ██ | ▌ | ▌ | ███ | | | | ███ |
| ██ | ██████ | ██████ | ████ | ██ | ▌ | ▌ | ███ | | | | |
| ██ | ████████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | ███ |
| ██ | ██████ | █████ | ████ | ▌ | ▌ | | ███ | | | | |
| ██ | █████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | ███ |
| ██ | █████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | |
| ██ | ██████ | ██████ | ████ | ██ | ▌ | | ███ | | | | ███ |
| ██ | ██████ | ██████ | ████ | ██ | ▌ | | ███ | | | | |
| ██ | ██████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | ███ |
| ██ | ██████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | |
| ██ | █████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | ███ |
| ██ | ██████ | █████ | ████ | ▌ | ▌ | | ███ | | | | |
| ██ | █████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | ███ |
| ██ | █████ | ██████ | ████ | ▌ | ▌ | | ███ | | | | |
| ██ | ███████ | ██████ | ████ | ▌ | █ | | ███ | | | | ███ |

Questions? We're here to help

 Toll free 1-877-797-8816     uhcservices.com

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ████████████
Invoice Date: 12/10/2024

Bill Group ███████
Coverage Period: 01/01/2025 - 01/31/2025
Due Date: 01/01/2025

## Details

| | Current Detail - 1/01-1/31/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ | ███████ | █████ | ████ | ▮ | ▮ | | ███ | | | | |
| ███ | ███████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | █████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ██████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | █████ | █████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | █████ | █████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ████████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ████████ | █████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ██████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███████ | █████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | █████ | █████ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | █████ | █████ | ███ | ▮ | ▮ | | ███ | | | | ███ |

 

NEWSOME MELTON P A
Customer No: ▮▮▮▮

Invoice No: ▮▮▮▮▮▮▮▮▮
Invoice Date: 12/10/2024
Bill Group: ▮▮▮▮
Coverage Period: 01/01/2025 - 01/31/2025
Due Date: 01/01/2025

## Details

| | Current Detail - 1/01-1/31/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ▮▮▮ | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮▮ | ▮▮▮▮ | | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| Total | | | | | | | ▮▮ | | | ▮▮ | ▮▮ |

NEWSOME MELTON P A
Customer No ▮▮▮▮▮

Invoice No: ▮▮▮▮▮▮▮
Invoice Date: 12/10/2024
Bill Group: ▮▮▮▮
Coverage Period: 01/01/2025 – 01/31/2025
Due Date: 01/01/2025

# About Your Bill

Employee and dependent information contained on this invoice is based on the most current information provided by you in your capacity as Plan Administrator to United HealthCare Services, Inc., UnitedHealthcare Insurance Company.

By submitting payment you are acknowledging that those listed meet the eligibility requirement of the contract(s).

**Payment is due in full on or before 01/01/2025. If full payment is not received by the end of your 31 day grace period, your coverage may be terminated as stated in your contract(s).**

Your payment can take up to 10 days to post to your account. If we receive it after the Invoice Date, you'll see it in your next bill.

[1]"Total Balance Due" and "Minimum Amount Due" includes both medical and non-medical expenses and any applicable services expenses. Services expenses are for services payable by you or your group policyholder to a third party (e.g. service fees, management fees, consulting fees, etc.).

# Eligibility Changes

Please send all employee and dependent changes right away so they can be included on your next invoice.

We are not able to process eligibility changes sent with your payment. Please visit **uhceservices.com** to update eligibility information.

## Questions about your bill?

If you have any questions, please call us toll-free at 1-877-797-8816, TTY **711**, 8 a.m. - 5 p.m. ET, Monday – Friday. Please have your group  number available when you call.

Please visit **uhceservices.com** to make eligibility changes, view and pay your bill, request paperless billing, request health plan ID cards, and more.

Administrative services provided by United HealthCare Services, Inc. or their affiliates, and UnitedHealthcare Service LLC in NY. Stop-loss insurance is underwritten by UnitedHealthcare Insurance Company or their affiliates, including UnitedHealthcare Life Insurance Company in NJ, and UnitedHealthcare Insurance Company of New York in NY.

Questions? We're here to help.

 Toll free 1-877-797-8816    uhceservices.com

**UnitedHealthcare®**

Atlanta, GA 30374-0376

| Manage your Account: |
| --- |
| **uhceservices.com** |
| Invoice No: ▮▮▮▮▮ |
| Invoice Date: 01/10/2025 |
| Customer No: ▮▮▮▮ |
| Bill Group No: ▮▮▮ |
| Coverage Period: 02/01/2025 - 02/28/2025 |
| Due Date: 02/01/2025 |

DPS$$$PKG
NEWSOME MELTON P A
LISA MARCUM
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

## Account Summary

| | |
| --- | --- |
| Previous Balance | ▮▮▮ |
| Payments (-) | ▮▮▮ |
| Account Adjustments (+/-) |  |
| Current Charges (+) | ▮▮▮ |
| Current Adjustments (+/-) |  |
| **Total Balance Due¹** | ▮▮▮ |

## Thank you for your business.

### About Your Payment

We offer several payment options to help you manage your account.

**Pay Online.** Go to **uhceservices.com** to make a one-time payment or schedule monthly payments directly from your bank account.

**Pay By Phone.** Call **1-877-797-8816**, TTY 711, 8 a.m. - 5 p.m. ET, Monday – Friday, to make a payment directly from your bank account.

**Pay By Check.** Send a check to the address listed below. Checks returned for lack of funds or checks that can't be cashed for any reason are not considered payment.

**Payment is due in full on or before the due date above. If full payment is not received by the end of your 31 day grace period, your coverage may be terminated as stated in your contract(s). If a payment is deposited late, it does not automatically mean we will accept the payment.**

---

Please detach and return with your payment.

---

| Customer Name | Customer Number | Payment Due Date | Invoice # |
| --- | --- | --- | --- |
| NEWSOME MELTON P A | ▮▮▮ | 02/01/2025 | ▮▮▮ |

*Send payment to:*

**Do not mail/submit payment. A request for fund withdrawal will be initiated from your bank account on the 5ᵗʰ of the month.**

**Minimum Amount Due¹:** ▮▮▮

**Amount Enclosed**

| $ | | | | | | | | | | | , | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

3691265965001000000220150036912626946601



# Expanding digital solutions – choose paperless invoicing

We appreciate this opportunity to help streamline administrative efficiencies and reduce paper mailings. Our records show that you are still receiving a paper invoice from us. Did you know that you can view your monthly invoice online and further reduce the amount of paper mail that you receive and handle?

## Advantages of using the benefits administration website

In addition to being a resource for your specific plan information and covered employee population, **uhceservices.com** offers easy access to your premium invoices and payments. In the Billing and Payment Center of the website, you can:
- View invoices, payments, balances and statements
- Request "Bill vs. Paid" report
- Manage banking information

To go paperless and turn off delivery of your monthly premium invoice by U.S. Mail, please call the customer service phone number on this invoice to have **Electronic Invoice Delivery Only** selected.

## Not registered yet?

Visit us at **uhceservices.com** and register using your Customer ID.
Once registered, you can:
- Sign up for paperless billing
- View, manage and pay your bill
- Make eligibility changes
- Request health plan ID cards and more

Easy access to your invoices and payments

- Sign in to **uhceservices.com** to view or print your company's monthly premium invoice

- For help signing in or registering on the website, call **1-866-908-5940**, TTY **711**, 8 a.m. to 8 p.m. ET, Monday – Friday



2/23 MRAEI29855BG © 2023 United HealthCare Services, Inc. All Rights Reserved

NEWSOME MELTON P A
Customer No: ▮▮▮▮▮

Invoice No: ▮▮▮▮▮▮▮
Invoice Date: 01/10/2025
Bill Group: ▮▮▮▮
Coverage Period: 02/01/2025 - 02/28/2025
Due Date: 02/01/2025

## Summary

| Description | Employee Count | Total Volume (000's) | Net Amount |
|---|---|---|---|
| 1131654-Default Bill Group HPVV25002575i8022B | | | |
| Employee | 8 | | |
| Employee & Family | 2 | | |
| **Subtotal, HPVV25002575i8022B** | 10 | | ▮▮▮ |
| | | | |
| 1131654-Default Bill Group HPVV40002575i8021B | | | |
| Employee | 5 | | |
| Employee & Family | 2 | | |
| Employee & Child(ren) | 1 | | |
| **Subtotal, HPVV40002575i8021B** | 8 | | ▮▮▮ |
| | | | |
| 1131654-Default Bill Group P15003060ei80 | | | |
| Employee | 10 | | |
| Employee & Spouse | 1 | | |
| **Subtotal, P15003060ei80** | 11 | | ▮▮▮ |
| **Subtotal 1131654-Default Bill Group** | | | ▮▮▮ |
| 1131654-Default Bill Group | | | |
| **Adjustments** | | | |
| Account Adjustments | | | ▮▮ |
| Current Adjustments | | | ▮▮ |
| **Subtotal, Adjustments** | | | ▮▮ |
| **TOTAL** | **29** | | ▮▮▮ |

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ███████████
Invoice Date: 01/10/2025

Bill Group: ███████
Coverage Period: 02/01/2025 - 02/28/2025
Due Date: 02/01/2025

# Details

| | Current Detail - 2/01-2/28/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ | ███████ | ███████ | █████ | █ | █ | | ████ | | | | ████ |
| ███ | ███████ | ███████ | █████ | █ | █ | | ████ | | | | |
| ███ | ████████ | ███████ | █████ | █ | █ | | ████ | | | | ████ |
| ███ | ████████ | ███████ | █████ | █ | █ | | ████ | | | | |
| ███ | ██████ | ███████ | █████ | █ | █ | | ████ | | | | ████ |
| ███ | ██████ | ███████ | █████ | █ | █ | | ████ | | | | |
| ███ | ██████ | ███████ | █████ | █ | █ | | ████ | | | | ████ |
| ███ | ██████ | ███████ | █████ | █ | █ | | ████ | | | | |
| ███ | ███████ | ██████ | █████ | █ | █ | | ████ | | | | ████ |
| ███ | ███████ | ██████ | █████ | █ | █ | | ████ | | | | |

| Coverage Type | | | | Status | | Code | |
|---|---|---|---|---|---|---|---|
| E | Employee Only | E4D | Employee and Four Dependents | A | Active | ADD | Retroactive Addition |
| ES | Employee and Spouse | E5D | Employee & One or More Dependent | C | Cobra | TRM | Retroactive Termination |
| ESC | Employee and Family | E6D | Employee & Two or More Dependents | P | Pre 65 Retiree | CHG | Retroactive Change |
| EC | Employee and Child(ren) | E7D | Employee & Three or More Dependents | R | Post 65 Retiree | | |
| E1D | Employee and One Dependent | E8D | Employee & Four or More Dependents | S | Surviving Insured | | |
| E2D | Employee and Two Dependents | E9D | Employee & Five or More Dependents | | | | |
| E3D | Employee and Three Dependents | | | | | | |

 

NEWSOME MELTON P A
Customer No: ██████

Invoice No ████████████
Invoice Date: 01/10/2025
Bill Group: ███████
Coverage Period: 02/01/2025 - 02/28/2025
Due Date: 02/01/2025

## Details

| | Current Detail - 2/01-2/28/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ████ | ███████████ | ███████ | █████ | ▮ | ▮ | | ████ | | | | ███ |
| ████ | ███████████ | ███████ | █████ | ▮ | ▮ | | ████ | | | | |
| ████ | ██████ | ███████ | █████ | ▮ | ▮ | | ████ | | | | ███ |
| ████ | ██████ | ███████ | █████ | ▮ | ▮ | | ████ | | | | |
| ████ | █████████ | █████████ | █████ | ███ | ▮ | | ████ | | | | ███ |
| ████ | █████████ | █████████ | █████ | ███ | ▮ | | ████ | | | | |
| ████ | ████████ | ████████ | ██████ | ▮ | ▮ | | ████ | | | | ███ |
| ████ | ████████ | ████████ | █████ | ▮ | ▮ | | ████ | | | | |
| ████ | ███████ | ████████ | █████ | ▮ | ▮ | | ████ | | | | ███ |
| ████ | ███████ | ████████ | █████ | ▮ | ▮ | | ████ | | | | |
| 1131654 | Judkins, Amy L | ████████ | █████ | ███ | ▮ | | ████ | | | | ███ |
| 1131654 | Judkins, Amy L | ████████ | █████ | ███ | ▮ | | ████ | | | | |
| ████ | ████████ | ████████ | █████ | ▮ | ▮ | | ████ | | | | ███ |
| ████ | ████████ | ████████ | █████ | ▮ | ▮ | | ████ | | | | |
| ████ | ██████ | █████████ | █████ | ▮ | ▮ | | | ████ | ███ | ████ | ███ |

 

NEWSOME MELTON P A
Customer No: ▮▮▮▮

Invoice No: ▮▮▮▮▮▮▮
Invoice Date: 01/10/2025

Bill Group: ▮▮▮▮
Coverage Period: 02/01/2025 – 02/28/2025
Due Date: 02/01/2025

## Details

| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮ | ▮▮ | |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮▮ | ▮▮ | ▮▮ |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮▮ | ▮▮ | |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮▮ | ▮▮ | ▮▮ |
| ▮▮ | ▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮▮ | ▮▮ | |
| ▮▮ | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |

Questions? We're here to help

 Toll free 1-877-797-8816   uhceservices.com

NEWSOME MELTON P A
Customer No: ██████

Invoice No: ████████████
Invoice Date: 01/10/2025

Bill Group: ████████
Coverage Period: 02/01/2025 – 02/28/2025
Due Date: 02/01/2025

## Details

| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | ██ |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | ██ |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | |
| ██ | ██ | ████ | ██ | █ | █ | | | ████ | █ | ██ | ██ |
| ██ | ██ | ████ | █ | █ | █ | | | ████ | █ | ██ | |
| ██ | ████ | ████ | ██ █ | █ | █ | | ██ | | | | ██ |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | |
| ██ | ████ | ████ | ██ | █ | █ | | | ████ | █ | ██ | ██ |
| ██ | ████ | ████ | ██ | █ | █ | | | ████ | █ | ██ | |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | ██ |
| ██ | ████ | ███ | ██ | █ | █ | | ██ | | | | |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | ██ |
| ██ | ████ | ████ | ██ | █ | █ | | ██ | | | | |
| ██ | ████ | ████ | ██ | █ | █ | | | ████ | █ | ██ | ██ |

Questions? We're here to help

　Toll free 1-877-797-8816　　uhceservices.com

NEWSOME MELTON P A
Customer No: █████

Invoice No: ████████
Invoice Date: 01/10/2025

Bill Group: ██████
Coverage Period: 02/01/2025 – 02/28/2025
Due Date: 02/01/2025

## Details

| | Current Detail - 2/01-2/28/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | | ████ | ▊ | ██ | |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | | ████ | ▊ | ██ | ██ |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | | ████ | ▊ | ██ | |
| ██ | ███ | ████ | ██ | ▊ | ▊ | | ██ | | | | ██ |
| ██ | ███ | ████ | ██ | ▊ | ▊ | | ██ | | | | |
| ██ | ███ | ████ | ██ | ▊ | ▊ | | ██ | | | | ██ |
| ██ | ███ | ████ | ██ | ▊ | ▊ | | ██ | | | | |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | ██ | | | | ██ |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | ██ | | | | |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | ██ | | | | ██ |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | ██ | | | | |
| ██ | ████ | ████ | ██ | ▊ | ▊ | | ██ | | | | ██ |
| ██ | ███ | ████ | ██ | ▊ | ▊ | | ██ | | | | |
| ██ | ███ | ████ ty | ██ | ▊ | ▊ | | ██ | | | | ██ |

  

NEWSOME MELTON P A
Customer No: █████

Invoice No: ███████████
Invoice Date: 01/10/2025

Bill Group: ████████
Coverage Period: 02/01/2025 – 02/28/2025
Due Date: 02/01/2025

## Details

| Current Detail - 2/01-2/28/2025 | | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ | ██████ | ███████ | ████ | █ | █ | | ████ | | | | ███ |
| ███ | ██████ | ███████ | ████ | █ | █ | | ████ | | | | |
| Total | | | | | | | ████ | | | ████ | ████ |



NEWSOME MELTON P A
Customer No

Invoice No:
Invoice Date: 01/10/2025
Bill Group:
Coverage Period: 02/01/2025 – 02/28/2025
Due Date: 02/01/2025

# About Your Bill

Employee and dependent information contained on this invoice is based on the most current information provided by you in your capacity as Plan Administrator to United HealthCare Services, Inc., UnitedHealthcare Insurance Company.

By submitting payment you are acknowledging that those listed meet the eligibility requirement of the contract(s).

**Payment is due in full on or before 02/01/2025. If full payment is not received by the end of your 31 day grace period, your coverage may be terminated as stated in your contract(s).**

Your payment can take up to 10 days to post to your account. If we receive it after the Invoice Date, you'll see it in your next bill.

[1]"Total Balance Due" and "Minimum Amount Due" includes both medical and non-medical expenses and any applicable services expenses. Services expenses are for services payable by you or your group policyholder to a third party (e.g. service fees, management fees, consulting fees, etc.).

# Eligibility Changes

Please send all employee and dependent changes right away so they can be included on your next invoice.

We are not able to process eligibility changes sent with your payment. Please visit **uhceservices.com** to update eligibility information.

## Questions about your bill?

If you have any questions, please call us toll-free at 1-877-797-8816, TTY **711**, 8 a.m. - 5 p.m. ET, Monday – Friday. Please have your group  number available when you call.

Please visit **uhceservices.com** to make eligibility changes, view and pay your bill, request paperless billing, request health plan ID cards, and more.

Administrative services provided by United HealthCare Services, Inc. or their affiliates, and UnitedHealthcare Service LLC in NY. Stop-loss insurance is underwritten by UnitedHealthcare Insurance Company or their affiliates, including UnitedHealthcare Life Insurance Company in NJ, and UnitedHealthcare Insurance Company of New York in NY.

Questions? We're here to help

 Toll free 1-877-797-8816     uhceservices.com

**UnitedHealthcare**
Atlanta, GA 30374-0376

| | Manage your Account: **uhceservices.com** |
|---|---|
| Invoice No | ▇▇▇▇ |
| Invoice Date: | 02/10/2025 |
| Customer No: | |
| Bill Group No: | ▇▇▇ |
| Coverage Period: | 03/01/2025 - 03/31/2025 |
| Due Date: | 03/01/2025 |

DPS$$$PKG
NEWSOME MELTON P A
LISA MARCUM
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

## Account Summary

| | |
|---|---|
| Previous Balance |  |
| Payments (-) | |
| Account Adjustments (+/-) | |
| Current Charges (+) | |
| Current Adjustments (+/-) | |
| **Total Balance Due¹** |  |

## Thank you for your business.

### About Your Payment

We offer several payment options to help you manage your account.

**Pay Online.** Go to **uhceservices.com** to make a one-time payment or schedule monthly payments directly from your bank account.

**Pay By Phone.** Call **1-877-797-8816**, TTY 711, 8 a.m. - 5 p.m. ET, Monday – Friday, to make a payment directly from your bank account.

**Pay By Check.** Send a check to the address listed below. Checks returned for lack of funds or checks that can't be cashed for any reason are not considered payment.

**Payment is due in full on or before the due date above. If full payment is not received by the end of your 31 day grace period, your coverage may be terminated as stated in your contract(s). If a payment is deposited late, it does not automatically mean we will accept the payment.**

---

Please detach and return with your payment.

| Customer Name | Customer Number | Payment Due Date | Invoice # |
|---|---|---|---|
| NEWSOME MELTON P A | ▇▇▇ | 03/01/2025 | ▇▇▇▇ |

**Send payment to:**

Do not mail/submit payment. A request for fund withdrawal will be initiated from your bank account on the 5th of the month.

Minimum Amount Due¹ ▇▇▇▇

**Amount Enclosed**

$ | | | | | | | | | | , | |

3691265965001000000252902636912662456 99



# Expanding digital solutions – choose paperless invoicing

We appreciate this opportunity to help streamline administrative efficiencies and reduce paper mailings. Our records show that you are still receiving a paper invoice from us. Did you know that you can view your monthly invoice online and further reduce the amount of paper mail that you receive and handle?

## Advantages of using the benefits administration website

In addition to being a resource for your specific plan information and covered employee population, **uhceservices.com** offers easy access to your premium invoices and payments. In the Billing and Payment Center of the website, you can:

- View invoices, payments, balances and statements
- Request "Bill vs. Paid" report
- Manage banking information

To go paperless and turn off delivery of your monthly premium invoice by U.S. Mail, please call the customer service phone number on this invoice to have **Electronic Invoice Delivery Only** selected.

## Not registered yet?

Visit us at **uhceservices.com** and register using your Customer ID.
Once registered, you can:

- Sign up for paperless billing
- View, manage and pay your bill
- Make eligibility changes
- Request health plan ID cards and more

### Easy access to your invoices and payments

- Sign in to **uhceservices.com** to view or print your company's monthly premium invoice

- For help signing in or registering on the website, call **1-866-908-5940**, TTY **711**, 8 a.m. to 8 p.m. ET, Monday – Friday



2/23 MRAEI29855BG © 2023 United HealthCare Services, Inc. All Rights Reserved

NEWSOME MELTON P A
Customer No: ▮▮▮▮▮

Invoice No: ▮▮▮▮▮▮▮▮
Invoice Date: 02/10/2025
Bill Group: ▮▮▮▮
Coverage Period: 03/01/2025 - 03/31/2025
Due Date: 03/01/2025

## Summary

| Description | Employee Count | Total Volume (000's) | Net Amount |
|---|---|---|---|
| 1131654-Default Bill Group | | | |
| HPVV25002575i8022B | | | |
| Employee | 8 | | |
| Employee & Family | 2 | | ▮▮▮ |
| **Subtotal, HPVV25002575i8022B** | 10 | | |
| | | | |
| 1131654-Default Bill Group | | | |
| HPVV40002575i8021B | | | |
| Employee | 5 | | |
| Employee & Family | 2 | | ▮▮▮ |
| Employee & Child(ren) | 1 | | |
| **Subtotal, HPVV40002575i8021B** | 8 | | |
| | | | |
| 1131654-Default Bill Group | | | |
| P15003060ei80 | | | |
| Employee | 9 | | |
| Employee & Spouse | 1 | | ▮▮▮ |
| **Subtotal, P15003060ei80** | 10 | | |
| **Subtotal 1131654-Default Bill Group** | | | ▮▮▮ |
| | | | |
| 1131654-Default Bill Group | | | |
| **Adjustments** | | | |
| Account Adjustments | | | ▮▮ |
| Current Adjustments | | | ▮▮ |
| **Subtotal, Adjustments** | | | ▮▮ |
| **TOTAL** | **28** | | ▮▮▮ |

NEWSOME MELTON P A
Customer No: ███

Invoice No: ███████
Invoice Date: 02/10/2025
Bill Group: ████
Coverage Period: 03/01/2025 – 03/31/2025
Due Date: 03/01/2025

## Details

| Current Detail - 3/01-3/31/2025 | | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | ███ |
| ███ | ███ | ███ | ███ | ▮ | ▮ | | ███ | | | | |

| Coverage Type | | | | Status | | Code | |
|---|---|---|---|---|---|---|---|
| E | Employee Only | E4D | Employee and Four Dependents | A | Active | ADD | Retroactive Addition |
| ES | Employee and Spouse | E5D | Employee & One or More Dependent | C | Cobra | TRM | Retroactive Termination |
| ESC | Employee and Family | E6D | Employee & Two or More Dependents | P | Pre 65 Retiree | CHG | Retroactive Change |
| EC | Employee and Child(ren) | E7D | Employee & Three or More Dependents | R | Post 65 Retiree | | |
| E1D | Employee and One Dependent | E8D | Employee & Four or More Dependents | S | Surviving Insured | | |
| E2D | Employee and Two Dependents | E9D | Employee & Five or More Dependents | | | | |
| E3D | Employee and Three Dependents | | | | | | |

Questions? We're here to help

 Toll free 1-877-797-8816    uhceservices.com

NEWSOME MELTON P A
Customer No ▮▮▮▮

Invoice No: ▮▮▮▮▮▮▮
Invoice Date: 02/10/2025
Bill Group: ▮▮▮
Coverage Period: 03/01/2025 – 03/31/2025
Due Date: 03/01/2025

## Details

| Current Detail - 3/01-3/31/2025 | | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ▮▮ | ▮▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮ | ▮▮ | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | | ▮▮▮ | ▮ | ▮▮ | |
| 1131654 | Judkins, Amy L | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| 1131654 | Judkins, Amy L | | ▮▮ | ▮ | ▮ | | | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |

 

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ██████████
Invoice Date: 02/10/2025
Bill Group ████████
Coverage Period: 03/01/2025 – 03/31/2025
Due Date: 03/01/2025

## Details

| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ████ | ████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | |
| ████ | ████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | ████ |
| ████ | ████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | |
| ████ | ████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | ████ |
| ████ | ████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | |
| ████ | ████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | ████ |
| ████ | ████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | |
| ████ | ██████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | ████ |
| ████ | ██████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | |
| ████ | ████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | ████ |
| ████ | ████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | |
| ████ | ██████████ | ████████ | ████ | ▮ | ▮ | | ████ | | | | ████ |
| ████ | ██████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | |
| ████ | ██████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | ████ |
| ████ | ████████ | ████████ | ████ | ██ | ▮ | | ████ | | | | |



NEWSOME MELTON P A
Customer No: ▮▮▮▮▮

Invoice No: ▮▮▮▮▮▮
Invoice Date: 02/10/2025

Bill Group: ▮▮▮
Coverage Period: 03/01/2025 - 03/31/2025
Due Date: 03/01/2025

# Details

| | Current Detail - 3/01-3/31/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |
| ▮▮ | ▮▮▮ | ▮ ▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | |
| ▮▮ | ▮▮ | ▮▮▮ | ▮▮ | ▮ | ▮ | | ▮▮ | | | | ▮▮ |

Case 6:24-cv-01903-ACC-DCI    Document 254-1    Filed 03/02/26    Page 49 of 158 PageID 6971

NEWSOME MELTON P A
Customer No: ██████

Invoice No: ████████
Invoice Date: 02/10/2025

Bill Group: ██████
Coverage Period: 03/01/2025 – 03/31/2025
Due Date: 03/01/2025

## Details

| | Current Detail - 3/01-3/31/2025 | | | | | | | Adjustment Detail | | | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Policy No. | Name | Plan | ID | Coverage | Status | Vol (000's) | Charge Amount | Period | Code | Amount | Total |
| ███ | ███ | ██████ | ███ | █ | █ | | ███ | | | | |
| ███ | █████ | ██████ | ███ | █ | █ | | ███ | | | | ██ |
| ███ | █████ | ██████ | ███ | █ | █ | | ███ | | | | |
| Total | | | | | | | ███ | | | ███ | ███ |

NEWSOME MELTON P A
Customer No: ███████

Invoice No: ████████████
Invoice Date: 02/10/2025
Bill Group ██████
Coverage Period: 03/01/2025 - 03/31/2025
Due Date: 03/01/2025

# About Your Bill

Employee and dependent information contained on this invoice is based on the most current information provided by you in your capacity as Plan Administrator to United HealthCare Services, Inc., UnitedHealthcare Insurance Company.

By submitting payment you are acknowledging that those listed meet the eligibility requirement of the contract(s).

**Payment is due in full on or before 03/01/2025. If full payment is not received by the end of your 31 day grace period, your coverage may be terminated as stated in your contract(s).**

Your payment can take up to 10 days to post to your account. If we receive it after the Invoice Date, you'll see it in your next bill.

[1]"Total Balance Due" and "Minimum Amount Due" includes both medical and non-medical expenses and any applicable services expenses. Services expenses are for services payable by you or your group policyholder to a third party (e.g. service fees, management fees, consulting fees, etc.).

# Eligibility Changes

Please send all employee and dependent changes right away so they can be included on your next invoice.

We are not able to process eligibility changes sent with your payment. Please visit **uhceservices.com** to update eligibility information.

## Questions about your bill?

If you have any questions, please call us toll-free at 1-877-797-8816, TTY **711**, 8 a.m. - 5 p.m. ET, Monday – Friday. Please have your group number available when you call.

Please visit **uhceservices.com** to make eligibility changes, view and pay your bill, request paperless billing, request health plan ID cards, and more.

Administrative services provided by United HealthCare Services, Inc. or their affiliates, and UnitedHealthcare Service LLC in NY. Stop-loss insurance is underwritten by UnitedHealthcare Insurance Company or their affiliates, including UnitedHealthcare Life Insurance Company in NJ, and UnitedHealthcare Insurance Company of New York in NY.

Composite Exhibit 6

| Copy B - For Employee's Federal Income Tax Return | **2023** OMB No. 1545-0008 |
|---|---|

| a Employee's social security number ███ | 1 Wages, tips, other comp. | 2 Federal income tax withheld ███ |
|---|---|---|
| | 3 Social security wages ███ | 4 Social security tax withheld ███ |
| b Employer ID number ███ | 5 Medicare wages and tips ███ | 6 Medicare tax withheld ███ |

c Employer's name, address, and ZIP code
Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383 229

e Employee's name, address, and ZIP code
Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a DD ███ | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|
| 12b W ███ | 14 Other |
| 12c | |
| 12d | |

| | N/A | N/A | N/A |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A |

**Form W-2 Wage and Tax Statement**                    Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service.

| Copy 2 - For Employee's State Income Tax Return | [FL] **2023** OMB No. 1545-0008 |
|---|---|

| a Employee's social security number ███ | 1 Wages, tips, other comp. | 2 Federal income tax withheld ███ |
|---|---|---|
| | 3 Social security wages ███ | 4 Social security tax withheld ███ |
| b Employer ID number ███ | 5 Medicare wages and tips ███ | 6 Medicare tax withheld ███ |

c Employer's name, address, and ZIP code
Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383 229

e Employee's name, address, and ZIP code
Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a DD ███ | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|
| 12b W ███ | 14 Other |
| 12c | |
| 12d | |

| FL | NOT NEEDED | ███ | |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A |

**Form W-2 Wage and Tax Statement**                    Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 1 of 2

**Copy C - FOR EMPLOYEE'S RECORDS ONLY** | **2023** | OMB No. 1545-0008

| a Employee's social security number | 1 Wages, tips, other comp. ■ | 2 Federal income tax withheld ■ |
|---|---|---|
| b Employer ID number ■ | 3 Social security wages ■ | 4 Social security tax withheld ■ |
| | 5 Medicare wages and tips ■ | 6 Medicare tax withheld ■ |

c Employer's name, address, and ZIP code

Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383 229

e Employee's name, address, and ZIP code

Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a DD ■ | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|
| 12b W ■ | 14 Other |
| 12c | |
| 12d | |

| FL | NOT NEEDED | ■ | |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax |

| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|
| N/A | N/A | N/A |

**Form W-2 Wage and Tax Statement**                Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 2 of 2



This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

| Copy C - FOR EMPLOYEE'S RECORDS ONLY | **2024** | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number ▮ | 1 Wages, tips, other comp. ▮ | 2 Federal income tax withheld ▮ |
|---|---|---|
| b Employer ID number ▮ | 3 Social security wages ▮ | 4 Social security tax withheld ▮ |
| | 5 Medicare wages and tips ▮ | 6 Medicare tax withheld ▮ |

c Employer's name, address, and ZIP code

Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383 229

e Employee's name, address, and ZIP code

Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a D ▮ | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|
| 12b DD ▮ | X |
| 12c W ▮ | 14 Other |
| 12d | |

| FL | NOT NEEDED | ▮ | |
|---|---|---|---|
| 15 State Employer's State ID# | | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                          Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 2 of 2

| Copy B - For Employee's Federal Income Tax Return | **2025** | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number | 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|---|
| | 3 Social security wages | 4 Social security tax withheld |
| b Employer ID number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address, and ZIP code
Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383 229

e Employee's name, address, and ZIP code
Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a D | | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|---|
| 12b DD | | X |
| 12c W | | 14 Other |
| 12d | | |

| | N/A | N/A | N/A |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                    Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service.

| Copy 2 - For Employee's State Income Tax Return | [FL] | **2025** | OMB No. 1545-0008 |
|---|---|---|---|

| a Employee's social security number | 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|---|
| | 3 Social security wages | 4 Social security tax withheld |
| b Employer ID number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address, and ZIP code
Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383 229

e Employee's name, address, and ZIP code
Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a D | | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|---|
| 12b DD | | X |
| 12c W | | 14 Other |
| 12d | | |

| FL | NOT NEEDED | | |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                    Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 1 of 2

| Copy C - FOR EMPLOYEE'S RECORDS ONLY | **2025** | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number ███████ | 1 Wages, tips, other comp. ███████ | 2 Federal income tax withheld ███████ |
|---|---|---|
| b Employer ID number ███████ | 3 Social security wages ███████ | 4 Social security tax withheld ███████ |
| | 5 Medicare wages and tips ███████ | 6 Medicare tax withheld ███████ |

c Employer's name, address, and ZIP code

Newsome Melton PA
201 S Orange Ave
Ste 1500
Orlando, FL 32801

d Control number
95383  229

e Employee's name, address, and ZIP code

Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a  D  ███████ | 13 Statutory employee     Retirement plan     3rd-party sick pay |
|---|---|
| 12b  DD  ███████ | X |
| 12c  W  ███████ | 14 Other |
| 12d | |

| FL | NOT NEEDED | ███████ | |
|---|---|---|---|
| 15 State Employer's State ID# | | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                                   Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 2 of 2

# PO1000012107

(Requestor's Name)

(Address)

(Address)

(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

(Business Entity Name)

(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



000462629370

2025 DEC 22 PM 1:57
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

FILED
2025 DEC 22 PM 11:11
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

# CT CORP

**(850) 656- 4724**
**3458 lakesore Drive**
**Tallahassee, FL 32312**

**Date:** _12/22/2025_

Acc#I20160000072

| Name: | Newsome Melson, P.A. |
|---|---|
| Document #: | |
| Order #: | 16694839 |

| | | | |
|---|---|---|---|
| Certified Copy of Arts & Amend: | ☐ | | |
| Plain Copy: | ☐ | | |
| Certificate of Good Standing: | ☐ | | |
| Certified Copy of | ☐ | | |
| Apostille/Notarial Certification: | ☐ | Country of Destination: | |
| | | Number of Certs: | |

| Filing: ☑ | Certified: ☑ | Email Address for Annual Report Notifications: |
|---|---|---|
| | Plain: ☐ | |
| | COGS: ☐ | |

Availability _____

Document ___
Examiner _____
Updater _____
Verifier _____
W.P. Verifier _____
Ref# _____

Amount: $  43.75

Thank you!

## Notice of Corporate Dissolution

This notice is submitted by the dissolved corporation named below for resolution of payment of unknown claims against this corporation as provided in s. 607.1407, Florida Statutes.

This "Notice of Corporate Dissolution" is optional and is not required when filing a voluntary dissolution.

Name of the Corporation: Newsome Melton, P.A.

The above-named corporation is the subject of dissolution and the effective date of the dissolution is: the date the articles of dissolution were filed with the Florida Department of State.

Description of information that must be included in a claim:

Information sufficient to bring a claim in the State of Florida.

The mailing address where written claims can be sent: (Claims cannot be sent to the Division of Corporations):

c/o Newsome Law, P.A.
315 East Robinson Street
Suite 675
Orlando, Florida 32801

A claim against the above-named corporation will be barred unless a proceeding to enforce the claim is commenced within four (4) years after the filing of this notice.

Name of Person Filing: C. Richard Newsome

Signature of the Person Filing

4912-1875-7251 1

| **From:** | noreply@employeenavigator.com |
|---|---|
| **To:** | ajudkins@newsomelaw.com |
| **Subject:** | Enrollment Complete |
| **Date:** | Monday, March 24, 2025 11:23:40 AM |

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Amy Judkins,

Your benefit enrollment is complete. If you would like to view your confidential elections or benefit information at any time you may log onto your account at **Login**.

Please review your account to see if you have any supplemental enrollment requirements such as designating beneficiaries for your life insurance, completing health questions for life insurance amounts in excess of the guarantee issue limits or designation of a Primary Care Physician (PCP)

If you have any questions regarding your benefits, please contact your HR department.


Newsome Law Firm PA


Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the destination. If suspicious content is detected, you will see a warning.

## SEPARATION AGREEMENT

This SEPARATION AGREEMENT (the "Agreement") is made and entered into on March 28, 2025, by and among Newsome Melton, P.A., a Florida professional service corporation (the "Corporation"), C. Richard Newsome ("Newsome"), Newsome Law, P.A., a Florida professional services corporation (the "Newsome Affiliate"), Robert Frank Melton, II ("Melton"), and Frank Melton, P.A., a Florida professional services corporation (the "Melton Affiliate"). Newsome and Melton may sometimes be referred to herein collectively as the "Shareholders" and each as a "Shareholder." This Agreement shall be effective on the later of (i) March 31, 2025, and (ii) the date of the last to occur of (a) each of Newsome Affiliate and Melton Affiliate having professional liability insurance coverage acceptable to Newsome (with respect to Newsome Affiliate) and Melton (with respect to Melton Affiliate) in place and (b) the Corporation having "tail" coverage as provided in Section 9 in place (such date being the "Effective Date").

### RECITALS

**WHEREAS,** Newsome and Melton are each licensed to practice law in the State of Florida, and are practicing law together as the sole Shareholders of the Corporation, together with non-shareholder attorneys employed by the Corporation;

**WHEREAS,** the Shareholders and the Corporation are parties to that certain First Amended and Restated Shareholders' Agreement of the Corporation dated effective as of January 1, 2014 (the "Shareholders' Agreement");

**WHEREAS,** the Shareholders and the Corporation deem that it is in their respective best interests and in the best interests of the Corporation's clients to separate Newsome and Melton's respective practices and the practices of the non-shareholder attorneys employed by the Corporation, and for the Corporation to dissolve, liquidate and wind-up its business;

**WHEREAS,** the Shareholders and the Corporation desire to provide for the orderly separation of such law practices and the orderly dissolution, liquidation and winding up of the Corporation's business and affairs, all pursuant to and in accordance with the provisions of this Agreement, the "Plan of Dissolution and Liquidation" (as such term is defined in this Agreement), the Rules Regulating the Florida Bar, and applicable law; and

**WHEREAS,** the Parties are entering into this Agreement in order to resolve certain disputes and claims among them and to avoid litigation, and expressly intend for provisions of this Agreement concerning, among others, the distribution of client matters and the allocation of fees, costs and expenses, to supersede and control over any inconsistent or conflicting provisions of the Shareholders' Agreement, other governing documents of the Corporation, or otherwise.

**NOW THEREFORE**, in consideration of the covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereto covenant and agree as follows.

### AGREEMENT

1.    Recitals.    The recitals provisions set forth above are true and correct and are incorporated by this reference as if fully stated herein.

2.    Certain Definitions.    As used in this Agreement:

(a)    "Affiliate" means (i) with respect to Melton, the Melton Affiliate and any other entity owned or controlled by Melton which receives, or to which Melton transfers, any of the Corporation's assets or liabilities to be distributed to Melton pursuant to the terms of this Agreement, the Plan of Dissolution and Liquidation, or otherwise; and (ii) with respect to Newsome, the Newsome Affiliate and any other entity owned or controlled by Newsome which receives, or to which Newsome transfers, any of the Corporation's assets or liabilities to be distributed to Newsome pursuant to the terms of this Agreement, the Plan of Dissolution and Liquidation, or otherwise.  As used in this definition of "Affiliate", the term "control" means possessing, directly or indirectly, the power for any reason whatsoever to direct or cause the direction of the management and policies of an entity.

(b)    "Cases" means any and all matters (whether or not suit has been filed with respect to such matter) for which the Corporation has been engaged as legal counsel.

(c)    "Closed Cases" means any Case which has been fully and finally adjudicated or settled (as evidenced by a non-appealable final judgment or fully executed written settlement agreement), and for which recovery has been ultimately collected by the Corporation, legal fees, costs and other expenses with respect to such Case have been paid in full, and all amounts remaining from such recovery have been paid to the client.

(d)    "Open Cases" means Cases other than Closed Cases.

(e)    "Unresolved Open Cases" means Open Cases which have not been fully and finally adjudicated or settled (as evidenced by a non-appealable final judgment or fully executed written settlement agreement).

(f)    "Resolved Open Cases" means Open Cases which have been fully and finally adjudicated or settled (as evidenced by a non-appealable final judgment or fully executed written settlement agreement), but for which recovery has not been fully received by the Corporation or any legal fees, costs or expenses have not been paid in full.

(g)    "Case Files" means all files, records, work product, discovery, client information, e-mails, letters, communications, analyses, and other data or information associated with a Case.

(h)    "Associated Trust Funds" means funds held in the Corporation's trust account that are associated with an Open Case, as evidenced by the Corporation's trust account records.

(i)    "Litigation Expenses" means any and all fees, costs and expenses (other than legal fees payable to the Corporation) incurred with respect to an Open Case.

- 2 -

4923-6629-6878.15

(j)    "Net Recovery" means the amount by which (1) the recovery ultimately received with respect to a Resolved Open Case, exceeds (2) the sum of the amount of Litigation Expenses, plus the amounts paid to the client, with respect to such Resolved Open Case.

(k)    "Taxes" means any and all taxes, however denominated, including any interest, penalties or other additions to tax that may become payable in respect thereof, imposed by any federal, territorial, state, local or foreign government or any agency or political subdivision of any such government, which taxes shall include, for the avoidance of doubt, all income or profits taxes (including, but not limited to, federal income taxes and state income taxes) and other obligations of the same or of a similar nature to any of the foregoing, which a Shareholder (or his Affiliate) is required to pay, with respect to the amounts received by such Shareholder hereunder.

(l)    "Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

Capitalized terms used but not otherwise defined in this Agreement, if any, shall have the meanings ascribed to them in the Shareholders' Agreement.



- 3 -

4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15

4923-6629-6878.15



4923-6629-6878.15



11.    Liquidation, Winding Up & Dissolution.

(a)    Liquidator. Melton and Newsome, in their capacity as the Corporation's sole Shareholders and directors, hereby appoint and cause the Corporation to appoint Newsome as the liquidator (the "Liquidator") of the Corporation and grant Newsome the right to designate a substitute or successor Liquidator in his discretion. The Liquidator shall have the authority to wind up the affairs of the Corporation in accordance with the provisions of this Agreement, the Plan of Dissolution and Liquidation, the Rules Regulating the Florida Bar, and applicable law. Upon the dissolution of the Corporation the Liquidator may, in the name of, and for and on behalf of, the Corporation, prosecute and defend suits, whether civil, criminal or administrative, gradually settle and close the Corporation's business, dispose of and convey the Corporation's property, discharge or make reasonable provision for the Corporation's liabilities, and distribute to the Shareholders, notwithstanding anything to the contrary contained in the Shareholders' Agreement, the Retained Corporate Assets and any other remaining assets of the Corporation (to the extent not otherwise distributed pursuant to the terms of his Agreement). Such distributions shall be made pro rata in proportion to their respective share ownership in the Corporation on the Effective Date in accordance with this Agreement, the Plan of Dissolution and Liquidation, the Rules Regulating the Florida Bar, and applicable law, all without affecting the liability of the Shareholders, including the Shareholder(s) participating in the winding up of the Corporation's affairs, and without imposing liability on the Liquidator (except in the event of the Liquidator's gross negligence, fraud, embezzlement or willful misconduct). The Corporation shall be permitted to retain, from each of the final liquidating distributions which would otherwise be payable to Newsome and Melton, respectively that amount of cash (which amount may be based on the Corporation's good faith, reasonable estimates, to the extent actual amounts are not known) as needed to pay or provide for the payment of the remaining liabilities of the Corporation in accordance with applicable law and the Rules Regulating the Florida Bar.

- 11 -

4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15



4923-6629-6878.15



(This space intentionally left blank; Signature page follows)

4923-6629-6878.15

IN WITNESS WHEREOF, each of the Parties hereto has duly executed and delivered this Separation Agreement as of the date first above written.

**"CORPORATION"**

NEWSOME MELTON, P.A.

By: _C. Richard Newsome_
    C. Richard Newsome, President

**"NEWSOME"**

_C. Richard Newsome_
C. Richard Newsome

**"NEWSOME AFFILIATE"**

NEWSOME LAW, P.A.

By: _C. Richard Newsome_
    C. Richard Newsome, President

**"MELTON"**

_____
Robert Frank Melton, II

**"MELTON AFFILIATE"**

FRANK MELTON, P.A.

By: _____
    Robert Frank Melton, II, President

[Signature Page to Separation Agreement]

4923-6629-6878.15

IN WITNESS WHEREOF, each of the Parties hereto has duly executed and delivered this Separation Agreement as of the date first above written.

**"CORPORATION"**

NEWSOME MELTON, P.A.

By: _____
     C. Richard Newsome, President

**"NEWSOME"**

_____

C. Richard Newsome

**"NEWSOME AFFILIATE"**

NEWSOME LAW, P.A.

By: _____
     C. Richard Newsome, President

**"MELTON"**

Signed by:

3/28/2025 | 7:07 PM EDT

823183B0278149D...

Robert Frank Melton, II

**"MELTON AFFILIATE"**

FRANK MELTON, P.A.

Signed by:

3/28/2025 | 7:07 PM EDT

By: _____
    823183B0278149D...
    Robert Frank Melton, II, President

[Signature Page to Separation Agreement]

4923-6629-6878.15

| Copy B - For Employee's Federal Income Tax Return | 2025 | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number | 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|---|
| | 3 Social security wages | 4 Social security tax withheld |
| b Employer ID number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address, and ZIP code

NEWSOME LAW PA
315 E. Robinson Street
Suite 675
Orlando, FL 32801

d Control number
338217229

e Employee's name, address, and ZIP code

Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a D | | 13 Statutory employee   Retirement plan X   3rd-party sick pay |
|---|---|---|
| 12b DD | | 14 Other |
| 12c W | | |
| 12d | | |

| | N/A | N/A | N/A |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                          Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service.

---

| Copy 2 - For Employee's State Income Tax Return | [FL] | 2025 | OMB No. 1545-0008 |
|---|---|---|---|

| a Employee's social security number | 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|---|
| | 3 Social security wages | 4 Social security tax withheld |
| b Employer ID number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address, and ZIP code

NEWSOME LAW PA
315 E. Robinson Street
Suite 675
Orlando, FL 32801

d Control number
338217229

e Employee's name, address, and ZIP code

Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a D | | 13 Statutory employee   Retirement plan X   3rd-party sick pay |
|---|---|---|
| 12b DD | | 14 Other |
| 12c W | | |
| 12d | | |

| FL | NOT NEEDED | | |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                          Dept. of the Treasury - IRS

---

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 1 of 2

| Copy C - FOR EMPLOYEE'S RECORDS ONLY | **2025** | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number | 1 Wages, tips, other comp. ▮ | 2 Federal income tax withheld ▮ |
|---|---|---|
| ▮ | 3 Social security wages ▮ | 4 Social security tax withheld ▮ |
| b Employer ID number ▮ | 5 Medicare wages and tips ▮ | 6 Medicare tax withheld ▮ |

c Employer's name, address, and ZIP code

NEWSOME LAW PA
315 E. Robinson Street
Suite 675
Orlando, FL 32801

d Control number
338217229

e Employee's name, address, and ZIP code

Amy L. Judkins
118 Lamplighter Rd
Altamonte Springs, FL 32714-2071

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a | D | ▮ | 13 Statutory employee    Retirement plan    3rd-party sick pay |
|---|---|---|---|
| 12b | DD | ▮ | X |
| 12c | W | ▮ | 14 Other |
| 12d | | | |

| FL | NOT NEEDED | ▮ | |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax | |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A | |

**Form W-2 Wage and Tax Statement**                              Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

**Exhibit 11**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal               Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.

_____/

### PLACEHOLDER FOR EXHIBIT 11 TO NEWSOME DECLARATION (EXHIBIT A TO RESPONSE TO JOINT MOTION TO STRIKE CHARGING LIEN)

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit 11– Lawyers' Professional Liability Insurance Application** to Mr. Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253)

**Composite Exhibit 12**



NEWSOME LAW PA
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

| Invoice Due Date<br>**04/01/2025** | Invoice # <br>███ | Invoiced Amount<br>███ | Invoice Date<br>**03/31/2025** | Billing Period<br>**04/01/2025-05/01/2025** |
|---|---|---|---|---|
| Org Id<br>███ | Group<br>███ | Division<br>█ | | |

## BILLING SUMMARY

| Original Totals | |
|---|---|
| TOTAL BILLED AMOUNT | ███ |
| ON-BILL ADJUSTMENTS | ██ |
| AMOUNT DUE | ███ |
| **Cash Balance** | |
| Non-System Payment | ███ |
| Outstanding Balance | ██ |

For questions about your invoice, please contact your Florida Blue Service Advocate.

Health insurance is offered by Blue Cross and Blue Shield of Florida, Inc., D/B/A Florida Blue. HMO coverage is offered by Health Options Inc., D/B/A Florida Blue HMO, an HMO subsidiary of Blue Cross and Blue Shield of Florida. Dental, Life and Disability are offered by Florida Combined Life, an affiliate of Blue Cross and Blue Shield of Florida, Inc. These companies are Independent Licensees of the Blue Cross and Blue Shield Association.

## ADMIN SUMMARY

| Type | Coverage | Number of Contracts | Stop Loss/Admin* | Claims | Total |
|---|---|---|---|---|---|
| CURRENT | SINGLE | 4 | ██████ | ██████ | ██████ |
| Subtotal for CURRENT | | 4 | ██████ | ██████ | ██████ |
| Grand Total | | 4 | ██████ | ██████ | ██████ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## INVOICE DETAIL

| Last Name | First Name | MI | SSN | Subscriber ID | Coverage | Product | Stop Loss/Admin* | Claims | Total |
|---|---|---|---|---|---|---|---|---|---|
| ████ | ███ | | ████ | ████ | ███ | ████ | ████ | ████ | ████ |
| ██████ | ████ | | ████ | ████ | ███ | ████ | ███ | ███ | ████ |
| ████████ | ███ | | ████ | ████ | ███ | ████ | ███ | ███ | ████ |
| ███ | ████ | | ████ | ████ | ███ | ████ | ███ | ███ | ████ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ON-BILL ADJUSTMENTS

| Last Name | First Name | SSN | Subscriber ID | Coverage Level | Action Code | Total | Posted Date | Eff/Cancel Date | Post Bill Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ON-BILL ADJUSTMENTS | | | | | | | | | |

* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ROSTER ADJUSTMENTS

| Last Name | First Name | MI | SSN | Subscriber ID | Rel | Age | Product | Reason | Effective Date | Old Premium | Prorated Premium | Login ID | Adjustment Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ROSTER ADJUSTMENTS | | | | | | | | | | | | | |



NEWSOME LAW PA
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

| Invoice Due Date **04/01/2025** | Invoice # ▇ | Invoiced Amount ▇ | Invoice Date **03/31/2025** | Billing Period **04/01/2025-05/01/2025** |
|---|---|---|---|---|
| Org Id ▇ | Group ▇ | Division ▇ | | |

## BILLING SUMMARY

| Original Totals | |
|---|---|
| TOTAL BILLED AMOUNT | ▇ |
| ON-BILL ADJUSTMENTS | ▇ |
| AMOUNT DUE | ▇ |
| Cash Balance | |
| Non-System Payment | ▇ |
| Outstanding Balance | ▇ |

For questions about your invoice, please contact your Florida Blue Service Advocate.

Health insurance is offered by Blue Cross and Blue Shield of Florida, Inc., D/B/A Florida Blue. HMO coverage is offered by Health Options Inc., D/B/A Florida Blue HMO, an HMO subsidiary of Blue Cross and Blue Shield of Florida. Dental, Life and Disability are offered by Florida Combined Life, an affiliate of Blue Cross and Blue Shield of Florida, Inc. These companies are Independent Licensees of the Blue Cross and Blue Shield Association.

## ADMIN SUMMARY

| Type | Coverage | Number of Contracts | Stop Loss/Admin* | Claims | Total |
|------|----------|--------------------:|-----------------:|-------:|------:|
| CURRENT | SINGLE | 5 | ██ | ██ | ██ |
| Subtotal for CURRENT | | 5 | ██ | ██ | ██ |
| Grand Total | | 5 | ██ | ██ | ██ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## INVOICE DETAIL

| Last Name | First Name | MI | SSN | Subscriber ID | Coverage | Product | Stop Loss/Admin* | Claims | Total |
|-----------|-----------|----|-----|---------------|----------|---------|------------------|--------|------:|
| ██ | ██ | | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | | ██ | ██ | ██ | ██ | ██ | ██ | ██ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ON-BILL ADJUSTMENTS

| Last Name | First Name | SSN | Subscriber ID | Coverage Level | Action Code | Total | Posted Date | Eff/Cancel Date | Post Bill Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ON-BILL ADJUSTMENTS | | | | | | | | | |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ROSTER ADJUSTMENTS

| Last Name | First Name | MI | SSN | Subscriber ID | Rel | Age | Product | Reason | Effective Date | Old Premium | Prorated Premium | Login ID | Adjustment Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ROSTER ADJUSTMENTS | | | | | | | | | | | | | |



NEWSOME LAW PA
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

| Invoice Due Date **04/01/2025** | Invoice # ▉ | Invoiced Amount ▉ | Invoice Date **03/31/2025** | Billing Period **04/01/2025-05/01/2025** |
|---|---|---|---|---|
| Org Id ▉ | Group ▉ | Division ▉ | | |

## BILLING SUMMARY

| Original Totals | |
|---|---|
| TOTAL BILLED AMOUNT | ▉ |
| ON-BILL ADJUSTMENTS | ▉ |
| AMOUNT DUE | ▉ |
| Cash Balance | |
| Non-System Payment | ▉ |
| Outstanding Balance | ▉ |

For questions about your invoice, please contact your Florida Blue Service Advocate.

Health insurance is offered by Blue Cross and Blue Shield of Florida, Inc., D/B/A Florida Blue. HMO coverage is offered by Health Options Inc., D/B/A Florida Blue HMO, an HMO subsidiary of Blue Cross and Blue Shield of Florida. Dental, Life and Disability are offered by Florida Combined Life, an affiliate of Blue Cross and Blue Shield of Florida, Inc. These companies are Independent Licensees of the Blue Cross and Blue Shield Association.

## ADMIN SUMMARY

| Type | Coverage | Number of Contracts | Stop Loss/Admin* | Claims | Total |
|---|---|---|---|---|---|
| CURRENT | SINGLE | 1 | ▉ | ▉ | ▉ |
| | FAMILY | 3 | ▉ | ▉ | ▉ |
| Subtotal for CURRENT | | 4 | ▉ | ▉ | ▉ |
| Grand Total | | 4 | ▉ | ▉ | ▉ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## INVOICE DETAIL

| Last Name | First Name | MI | SSN | Subscriber ID | Coverage | Product | Stop Loss/Admin* | Claims | Total |
|---|---|---|---|---|---|---|---|---|---|
| ▉ | ▉ | | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| JUDKINS | AMY | | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| ▉ | ▉ | | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| ▉ | ▉ | | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ON-BILL ADJUSTMENTS

| Last Name | First Name | SSN | Subscriber ID | Coverage Level | Action Code | Total | Posted Date | Eff/Cancel Date | Post Bill Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ON-BILL ADJUSTMENTS | | | | | | | | | |

* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ROSTER ADJUSTMENTS

| Last Name | First Name | MI | SSN | Subscriber ID | Rel | Age | Product | Reason | Effective Date | Old Premium | Prorated Premium | Login ID | Adjustment Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ROSTER ADJUSTMENTS | | | | | | | | | | | | | |

Org Id: ⬛⬛⬛    Group: ⬛⬛    Division: ⬛⬛    Invoice #: ⬛⬛⬛    Billing Period: 04/01/2025-05/01/2025    Invoice Due Date: 04/01/2025    Page 9 of 9



NEWSOME LAW PA
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

| Invoice Due Date<br>**05/01/2025** | Invoice # <br>██████ | Invoiced Amount<br>██████ | Invoice Date<br>**04/18/2025** | Billing Period<br>**05/01/2025-06/01/2025** |
|---|---|---|---|---|
| Org Id<br>██████ | Group<br>██████ | Division<br>██ | | |

## BILLING SUMMARY

| Original Totals | |
|---|---|
| TOTAL BILLED AMOUNT | ██████ |
| REFUND | ██████ |
| ON-BILL ADJUSTMENTS | ███ |
| AMOUNT DUE | █████ |
| **Cash Balance** | |
| Web | █████ |
| Outstanding Balance | ███ |

For questions about your invoice, please contact your Florida Blue Service Advocate.

Health insurance is offered by Blue Cross and Blue Shield of Florida, Inc., D/B/A Florida Blue. HMO coverage is offered by Health Options Inc., D/B/A Florida Blue HMO, an HMO subsidiary of Blue Cross and Blue Shield of Florida. Dental, Life and Disability are offered by Florida Combined Life, an affiliate of Blue Cross and Blue Shield of Florida, Inc. These companies are Independent Licensees of the Blue Cross and Blue Shield Association.

## ADMIN SUMMARY

| Type | Coverage | Number of Contracts | Stop Loss/Admin* | Claims | Total |
|------|----------|--------------------:|------------------|--------|-------|
| CURRENT | SINGLE | 3 | ███ | ███ | ███ |
| Subtotal for CURRENT | | 3 | ███ | ███ | ███ |
| Grand Total | | 3 | ███ | ███ | ███ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## INVOICE DETAIL

| Last Name | First Name | MI | SSN | Subscriber ID | Coverage | Product | Stop Loss/Admin* | Claims | Total |
|-----------|------------|----|-----|---------------|----------|---------|------------------|--------|-------|
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ON-BILL ADJUSTMENTS

| Last Name | First Name | SSN | Subscriber ID | Coverage Level | Action Code | Total | Posted Date | Eff/Cancel Date | Post Bill Adjustments |
|-----------|------------|-----|---------------|----------------|-------------|-------|-------------|-----------------|-----------------------|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ON-BILL ADJUSTMENTS | | | | | | | | | |

* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ROSTER ADJUSTMENTS

| Last Name | First Name | MI | SSN | Subscriber ID | Rel | Age | Product | Reason | Effective Date | Old Premium | Prorated Premium | Login ID | Adjustment Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ROSTER ADJUSTMENTS | | | | | | | | | | | | | |



NEWSOME LAW PA
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

| Invoice Due Date **05/01/2025** | Invoice # ██████ | Invoiced Amount ██████ | Invoice Date **04/18/2025** | Billing Period **05/01/2025-06/01/2025** |
|---|---|---|---|---|
| Org Id ██████ | Group ██████ | ██ | | |

## BILLING SUMMARY

| | |
|---|---|
| **Original Totals** | |
| TOTAL BILLED AMOUNT | ████ |
| ON-BILL ADJUSTMENTS | ██ |
| AMOUNT DUE | ████ |
| **Cash Balance** | |
| Web | ████ |
| Outstanding Balance | ██ |

For questions about your invoice, please contact your Florida Blue Service Advocate.

Health insurance is offered by Blue Cross and Blue Shield of Florida, Inc., D/B/A Florida Blue. HMO coverage is offered by Health Options Inc., D/B/A Florida Blue HMO, an HMO subsidiary of Blue Cross and Blue Shield of Florida. Dental, Life and Disability are offered by Florida Combined Life, an affiliate of Blue Cross and Blue Shield of Florida, Inc. These companies are Independent Licensees of the Blue Cross and Blue Shield Association.

## ADMIN SUMMARY

| Type | Coverage | Number of Contracts | Stop Loss/Admin* | Claims | Total |
|------|----------|--------------------|------------------|--------|-------|
| CURRENT | SINGLE | 5 | ███ | ███ | ███ |
| Subtotal for CURRENT | | 5 | ███ | ███ | ███ |
| Grand Total | | 5 | ███ | ███ | ███ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## INVOICE DETAIL

| Last Name | First Name | MI | SSN | Subscriber ID | Coverage | Product | Stop Loss/Admin* | Claims | Total |
|-----------|-----------|----|----|--------------|----------|---------|------------------|--------|-------|
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ON-BILL ADJUSTMENTS

| Last Name | First Name | SSN | Subscriber ID | Coverage Level | Action Code | Total | Posted Date | Eff/Cancel Date | Post Bill Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ON-BILL ADJUSTMENTS | | | | | | | | | |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ROSTER ADJUSTMENTS

| Last Name | First Name | MI | SSN | Subscriber ID | Rel | Age | Product | Reason | Effective Date | Old Premium | Prorated Premium | Login ID | Adjustment Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ROSTER ADJUSTMENTS | | | | | | | | | | | | | |



NEWSOME LAW PA
201 S ORANGE AVE STE 1500
ORLANDO FL 32801-3482

| Invoice Due Date **05/01/2025** | Invoice # ▮ | Invoiced Amount ▮ | Invoice Date **04/18/2025** | Billing Period **05/01/2025-06/01/2025** |
|---|---|---|---|---|
| Org Id ▮ | Group ▮ | Division ▮ | | |

## BILLING SUMMARY

| Original Totals | |
|---|---|
| TOTAL BILLED AMOUNT | ▮ |
| ON-BILL ADJUSTMENTS | ▮ |
| AMOUNT DUE | ▮ |
| **Cash Balance** | |
| Web | ▮ |
| Outstanding Balance | ▮ |

For questions about your invoice, please contact your Florida Blue Service Advocate.

Health insurance is offered by Blue Cross and Blue Shield of Florida, Inc., D/B/A Florida Blue. HMO coverage is offered by Health Options Inc., D/B/A Florida Blue HMO, an HMO subsidiary of Blue Cross and Blue Shield of Florida. Dental, Life and Disability are offered by Florida Combined Life, an affiliate of Blue Cross and Blue Shield of Florida, Inc. These companies are Independent Licensees of the Blue Cross and Blue Shield Association.

## ADMIN SUMMARY

| Type | Coverage | Number of Contracts | Stop Loss/Admin* | Claims | Total |
|---|---|---|---|---|---|
| CURRENT | SINGLE | 2 | ▮ | ▮ | ▮ |
| | FAMILY | 3 | ▮ | ▮ | ▮ |
| Subtotal for CURRENT | | 5 | ▮ | ▮ | ▮ |
| Grand Total | | 5 | ▮ | ▮ | ▮ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## INVOICE DETAIL

| Last Name | First Name | MI | SSN | Subscriber ID | Coverage | Product | Stop Loss/Admin* | Claims | Total |
|---|---|---|---|---|---|---|---|---|---|
| ▮ | ▮ | | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| JUDKINS | AMY | | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ON-BILL ADJUSTMENTS

| Last Name | First Name | SSN | Subscriber ID | Coverage Level | Action Code | Total | Posted Date | Eff/Cancel Date | Post Bill Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ON-BILL ADJUSTMENTS | | | | | | | | | |

\* This column represents a total of the Administrative, Specific Stop Loss, and Aggregate Stop Loss fees. To review the uncombined total, refer to the Administrative Services Agreement or Final Pricing Summary.

## ROSTER ADJUSTMENTS

| Last Name | First Name | MI | SSN | Subscriber ID | Rel | Age | Product | Reason | Effective Date | Old Premium | Prorated Premium | Login ID | Adjustment Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| THIS INVOICE DOES NOT CONTAIN ANY DATA FOR ROSTER ADJUSTMENTS | | | | | | | | | | | | | |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal          Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.

_____/

**PLACEHOLDER FOR COMPOSITE EXHIBIT 13 TO NEWSOME
DECLARATION (EXHIBIT A TO RESPONSE TO JOINT
MOTION TO STRIKE CHARGING LIEN)**

Newsome Law P.A. ("Newsome Law") hereby files this placeholder

**Composite Exhibit 13 – 2025 direct deposit advices for Judkins** to Mr. Newsome's

Declaration which is Exhibit A to Newsome Law's Response to Joint Motion to Strike

Notice of Charging Lien on Newsome Law. Newsome Law has filed a Motion to Seal

the unredacted Declaration and 9 exhibits thereto (Doc. 253).

Exhibit 14

| | |
|---|---|
| From: | Amy Judkins |
| To: | Rich Newsome; Alex Gillen; Caroline Newsome |
| Subject: | RE: Updated Exhibits A-1/B-2 |
| Date: | Friday, March 28, 2025 10:28:52 AM |
| Attachments: | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Rich, when will we need to update our cases with the new firm name/address/phone number? I've heard that Newsome Melton dissolves April 1. Does that mean we need to update all existing cases by April 1?

**Amy L. Judkins**
Attorney at Newsome Melton
(407) 648-5977

**From:** Rich Newsome <newsome@newsomelaw.com>
**Sent:** Friday, March 28, 2025 10:03 AM
**To:** Amy Judkins <ajudkins@newsomelaw.com>; Alex Gillen <gillen@newsomelaw.com>; Caroline Newsome <cnewsome@newsomelaw.com>
**Subject:** RE: Updated Exhibits A-1/B-2

Yepper! Just please make sure your cases are all on this list. Many thanks!

| From: | Caroline Newsome |
|---|---|
| To: | Amy Judkins |
| c: | Greg Sayre; Rich Newsome; Olivia Nowakowski |
| Subject: | Re: Newsome Law signature blocks |
| Date: | Friday, April 4, 2025 10:14:16 AM |
| Attachments: | image002.png |
| | image003.png |
| | image004.png |
| | Outlook-rnhcm51w |
| | Outlook-Facebook.png |
| | Outlook-linkedin.png |
| | Outlook-twitter.png |

I think Olivia and Rich were working on some? I have cc'd Olivia!

 **Caroline Newsome**
Attorney at Newsome Melton

**Address** 201 S. Orange Ave., Ste. 1500, Orlando, FL 32801
**Phone** (407) 648-5977   **Fax** (407) 648-5282
**Email** Cnewsome@newsomelaw.com
**Website** https://link.edgepilot.com/s/77947b7d/uV7yWupnZE_WTGNo2fHv_w?u=http://www.newsomelaw.com/

  

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Amy Judkins <ajudkins@newsomelaw.com>
**Sent:** Friday, April 4, 2025 10:11 AM
**To:** Caroline Newsome <cnewsome@newsomelaw.com>
**Cc:** Greg Sayre <greg@newsomelaw.com>; Rich Newsome <newsome@newsomelaw.com>
**Subject:** Newsome Law signature blocks

Do we have a new signature block for the new firm? Should we make our own?

 **Amy L. Judkins**
Attorney at Newsome Melton

Address 201 S. Orange Ave., Ste. 1500, Orlando, FL 32801

Phone (407) 648-5977

Fax (407) 648-5282

Email ajudkins@newsomelaw.com

Website www.NewsomeLaw.com



IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**Exhibit 16**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

JONATHAN D. HUTCHINS AND
SARAH P. HUTCHINS, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

SERVICE FINANCE COMPANY, LLC,

Defendant.

Case No.:

CLASS REPRESENTATION

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiffs, Jonathan D. Hutchins and Sarah P. Hutchins ("the Hutchins"), individually and on behalf of the other members of the Classes defined below, file this class action complaint against Defendant Service Finance Company, LLC ("Service Finance"), and allege:

### I.    Introduction.

1.      This is an action for violations of the Truth in Lending Act, 15 U.S.C. § 1640; deceptive and unfair trade practices laws; fraudulent inducement; and civil conspiracy in connection with misrepresentations and fraudulent omissions in the solicitation of consumer loans for the purchase of residential solar energy systems.

2.      Defendant Service Finance is a finance company that regularly extends or offers to extend consumer credit to consumers.

3.      Service Finance orchestrated a scheme with solar installers to induce homeowners into entering finance agreements for the purchase of solar energy

1

systems with false and fraudulent representations and omissions that the finance agreements were subject to low financing costs, such as a "low" annual percentage rate ("APR").

4.      However, the financing costs associated with these deals are deceptive, false, and misleading. Service Finance purposefully designed the deals so that a substantial finance charge was baked into the cash price of the goods and services. This finance charge was created and mandated by Service Finance—not the solar installers—and amounted to nearly 30% of the true cash value of the goods and services.

5.      Each finance agreement issued by Service Finance for the purchase of a solar energy system included a stated "cash price" on the face of the financing agreement that was false because it included the nearly 30% financing fee set by Service Finance.

6.      These finance agreements are created by Service Finance and provided to the solar installers to use in sales for which Service Finance will be providing credit. Service Finance sets the rate of the fees and requires the solar installers to use their form contract in order for Service Finance to finance the sale.

7.      Service Finance goes to great lengths to keep the fee and the true cash price of the energy systems a secret by instructing the solar installers not to disclose the financing fee and not to disclose the true cash price of the systems.

2

8.      Had the financing fee and true cash price been properly disclosed, the APRs provided in the finance agreements would have been closer to, if not exceeding, 30%.

9.      Plaintiffs are consumers who entered loans with Service Finance under the false pretense that the loans were offered at cash value with a low APR.

## II.     Parties, jurisdiction, and venue.

10.     The Hutchins are citizens of Washington who financed a solar energy system through Service Finance Co. for their home located in Lacey, Washington.

11.     Service Finance Company, LLC, is a Florida limited liability company with its headquarters in Boca Raton, Florida. All members of the LLC are citizens of Boca Raton, Florida.

12.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs allege federal claims against Defendants under the Truth in Lending Act.

13.     The Court has diversity jurisdiction over the state law claims raised pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is of diverse citizenship from one Defendants, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of costs and interest.

14.     This Court has personal jurisdiction over Defendant because Service Finance Company is a Florida limited liability company and is subject to general jurisdiction here.

3

15. Venue is appropriate in this district under 28 U.S.C. § 1391(b)(1) because this is where the Defendant resides.

### III. Service Finance's predatory and unlawful business practices.

16. Service Finance describes itself as a "nationally licensed finance company offering more than 70 different loan programs," including "many specialty loans serving the Solar and Commercial markets."

17. Service Finance uses predatory and unlawful business practices to induce homeowners into entering finance agreements for the purchase of solar energy systems.

18. The finance agreements issued by Service Finance for solar energy systems use standardized language that is uniform for all finance agreements issued by Service Finance within the relevant time period.

19. Service Finance is a finance company which has created digital applications to enable rapid loan applications and approvals to facilitate high-pressure solar sales. In this role, Service Finance has built an incredibly lucrative business by employing a variety of predatory and unlawful business practices, as detailed further below.

20. Upon information and belief, Service Finance has engaged in the predatory business practices detailed below since at least 2015 and has not remedied or modified its misconduct to date. The predatory and unlawful business practices described herein are based on the uniform business practices of Service Finance.

4

### A. *Service Finance provides solar loans through its various online and mobile platforms.*

21.     Service Finance is a "Finance Partner" to solar sales companies—meaning that it has entered into agreements with those companies to facilitate fast, ready to access financing for expensive solar systems.

22.     Service Finance serves this role because it is a so-called "fintech" (short for "financial technology") company which has developed online and mobile applications that can be quickly accessed by a salesperson to enable rapid solar loan applications and acceptance.

23.     A solar installer working with Service Finance must become a "registered dealer" with Service Finance by undergoing the company's Dealer Enrollment Process.

24.     The Dealer Enrolment Process comprises training and onboarding which the dealer must complete before they can offer Service Finance solar loans.

25.     Once a solar installer completes the Dealer Enrollment Process, they obtain access to the Service Finance Dealer Portal, which enables the installer's salespersons to apply for "loans" in the consumer's name.

26.     Service Finance's training materials make it clear that the solar installers that use their Dealer Portal do not extend credit themselves. Instead, the installers simply certify that a project has been completed and then "get paid" by Service Finance. Service Finance is the only company which extends credit during

5

the transaction, which is a key selling point the company touts in its training and promotional materials to solar installers.

27.     The solar companies that Service Finance partners with engage in high-pressure sales tactics, effectuated by door-to-door salespeople.

28.     Pursuant to this business model, the salesperson approaches a consumer's home uninvited and attempts to get them to sign a deal for solar that very same day. They employ high-pressure tactics to secure a signature that same day because it's well known within the industry that, the more time a consumer has to think about a transaction, research a company, and discuss options with neighbors and friends, the less likely that consumer is to go through with the deal.

29.     Through its Dealer Enrollment Process and other training programs and instructional materials, Service Finance enables and instructs solar salespeople to help consumers quickly apply for credit during the first sales visit. Service Finance's software is designed to streamline this process, allowing the salesperson to apply for credit in the homeowner's name by simply inputting name, contact information, loan product, and loan amount into the salesperson's tablet or similar device.

30.     More specifically, Service Finance streamlines its loan application process through its EZ Sign process, which can be accessed via the Service Finance mobile applications and allows Service Finance to collect signatures directly from salespersons' mobile devices:

6

*EZ Sign Documents*, available at https://www.youtube.com/watch?v=H2zvHpNl4io&list=PLflucXpDtCm6iHSFUyPp9U NtaMtGqc-Vl&index=3 (April 1, 2022).

31. The door-to-door sales approach is heavily dependent upon the use of small, difficult-to-read tablets, which the salesperson uses to obtain customer signatures. The homeowner is often not told that their signature would be transposed onto a written contract, and the homeowner is not given the opportunity to review the terms of a written contract.

32. The expediency of the transaction is dependent upon quick and easy financing being made available to the customer. This is the pivotal role Service Finance plays in the door-to-door solar fraud scheme. Indeed, Service Finance emphasizes the expediency of its "EZ Sign" process in its training and promotional materials, describing the process as providing "Simple Document Signing – Just 4 Clicks!" the "instant the loan is approved":

7



*EZ Sign Documents,* available at
https://www.youtube.com/watch?v=H2zvHpNl4io&list=PLflucXpDtCm6iHSFU
yPp9UNtaMtGqc-Vl&index=3 (April 1, 2022).

33. The "4 Clicks" referenced in the training materials include the entering "the loan number" and the last four digits of the homeowner's social security number:



*EZ Sign Documents,* available at
https://www.youtube.com/watch?v=H2zvHpNl4io&list=PLflucXpDtCm6iHSFU
yPp9UNtaMtGqc-Vl&index=3 (April 1, 2022).

8

34. The sales representative then confirms other details, including the consumer's name, the property address, sale price, loan amount, and loan program.

35. Service Finance has entered into contractual relationships with solar companies that enable those companies to use Service Finance's software and provide Service Finance credit arrangements to customers, including through the Dealer Enrollment Process.

36. Pursuant to those relationships, Service Finance provides training, guidelines, and requirements for the solar salespeople, which solar companies are required to follow.

37. Service Finance further incentivizes salespeople to push Service Finance financing agreements to consumers by providing substantial prizes to those salespeople that meet certain loan sale thresholds. Such prizes include gift cards and electronic devices.

38. The solar salespeople are authorized by Service Finance to solicit financing and to bind homeowners to financing agreements with Service Finance. To that end, the salespeople represent to homeowners that they are authorized to act on behalf of Service Finance.

39. Service Finance controls over the way its financing agreements are presented to solar customers through both its fintech software platform the salespeople use to generate quotes at the customer's home, as well as through the

9

agreements and business relationships that Service Finance separately maintains with the solar companies.

### B. Service Finance prepares the TILA disclosure and, in doing so, conceals a massive finance charge.

40.   When a solar installer closes a deal that will be financed by Service Finance, they must use the applications created by Service Finance. As a result, Service Finance dictates the language used on the contract and the amounts included for disclosures, including the "Cash Price," the "Amount Financed," the "Finance Charge," and the "APR."

41.   To be clear: Service Finance, through its Dealer Portal, online and mobile applications, and EZ Sign process, prepares the TILA disclosures. The solar installer does not provide any TILA disclosures; that process is handled by Service Finance through its applications. The solar installer simply follows the training and requirements imposed by Service Finance as a condition of using the Dealer Portal and online/mobile applications, including by inputting the Cash Price as being inclusive of the undisclosed finance charge Service Finance requires be imposed in order to access Service Finance solar loans, as detailed further below.

42.   In its training and promotional materials, Service Finance admits that it prepares and issues what it describes as a "Loan Package Delivery," which includes the TILA disclosures shown on the finance agreements.

43.   The contracts between Service Finance and its installer partners provide that Service Finance will provide financing to consumers in exchange for

a financing fee charged to the consumer. Service Finance sets the amount of the fee, which is set forth in a rate sheet shared between Service Finance and its solar partners.

44. It works like this: the door-to-door salespeople obtain a signature of a homeowner that is used to bind the homeowner to a financing agreement from Service Finance.

45. The contract used is created by Service Finance via the online and mobile applications described above. While the contract is set up to look like a retail installment contract between the solar installer and the homeowner, it is effectively a contract between the consumer and Service Finance. And, indeed, Service Finance describes the contracts as "loans" issued by Service Finances in its training and promotional materials provided to solar installers.

46. Once signed by the homeowner on the salesperson's tablet and the system is installed, Service Finance pays the solar installer for the "Purchase Price" of the instrument, which is defined in Service Finance's dealer agreements as the original "face amount" of the agreement "less the applicable Dealer Fee" set forth in the rate sheet.

47. The "Dealer Fee" is a fee imposed into the contract as a cost of financing. The finance fee (or Dealer Fee) is never disclosed to the homeowner.

48. The contracts all include a stated "Cash Price." The cash price stated in the contracts is the "Purchase Price"—or the true cost of the goods and services— *plus* the Dealer Fee imposed into the deals by Service Finance.

11

49.    Indeed, the solar installers increase the cash price of the solar energy systems specifically to cover the cost of Service Finance's Dealer Fee.

50.    Thus, the "Cash Price" in each finance agreement issued by Service Finance is false and misleading.

51.    According to the contracts, the homeowner agrees to pay the stated "Cash Price" in the agreement, plus the stated APR, "according to the payment schedule shown in the Truth-in-Lending Disclosure." The payment schedule states that the first payment is due "[m]onthly, beginning 30 days after the contract is purchased by Service Finance."

52.    The solar installer does not require a down payment, and no payments are owed at all under the contract until 30 days after Service Finance purchases the contract. All payments are paid directly to Service Finance, who is the entity to whom payments are initially owed under the terms of the written contracts. Consumers are never obligated to make payments to the solar installer under these financing agreements because payments are not owed until Service Finance completes the deal by paying the solar installer the true cash value of the systems.

53.    The contracts between Service Finance and its solar installers specifically state that the solar installers are not to accept payments of any kind from the buyers.

54.    In fact, the contracts between Service Finance and its solar Dealers set forth a procedure for if and when Service Finance opts to not fund the deal. In those instances, the solar Dealer is required to repurchase the finance agreement

from Service Finance. According to that procedure, Payments are never owed to the solar Dealer until after the contracts are repurchased and restructured.

55. The fact that the solar installer does not have to issue any form of credit is a primary selling point, which Service Finance makes in its training and promotional materials it issues to solar installers. In those materials, Service Finance makes it clear that the solar installer simply needs to have the consumer complete an application and "EZ Sign the Finance Agreement," then, once the job is installed, the installer simply "gets paid."

56. Upon information and belief, the finance fee charged to consumers for financing solar energy systems can amount to or even exceed 30% of the true cost of the energy system. If the financing fee had been properly disclosed and accounted for, the true APR of the deals would amount to or exceed 30%, exceeding even the rates of high-interest credit cards.

57. As a result of this financing structure, the interest collected by Service Finance from the solar loans is not its primary profit source; instead, the primary profit source is the hefty, undisclosed financing fee. As such, Service Finance provides very minimal baseline qualification standards (including a minimum credit score and home ownership) for its loans such that most homeowners will qualify.

58. After the first 18 months, the financing contracts re-amortize, resulting in significantly increased payment amounts after the first 18 months. The ballooning nature of the payment obligations is not explained to the customer.

59. More fundamentally, however, the sales pitch and loan terms do not disclose the fact that the amount financed includes not just the cost of the system, but also the large Dealer Fee which can total more than 30% of the amount financed.

60. The finance charge is not identified in the Service Finance fintech generated quote provided to consumers as part of the solar proposal. Instead, consumers are left with the impression that the loan principal goes entirely towards the hardware and installation costs of the system.

61. Service Finance takes great steps to keep its contractual terms with solar companies, including the rate sheet, hidden from consumers.

62. Pursuant to its agreements and business relationships, Service Finance instructs its solar company partners and their salespeople to not disclose the Dealer Fee or the true "cash price" of the solar system, as doing so might enable the consumer to deduce the existence of the huge undisclosed finance charge.

### C. Misrepresentations as to energy offsets and tax "rebates."

63. To induce the customer to enter into the deal, Service Finance's sales agents promise that the consumer will no longer have to pay an electrical bill because the solar system will completely offset their energy usage.

64. This is very rarely true; instead, consumers wind up with two bills: one to the electrical company and another to Service Finance.

14

65.     Similarly, Service Finance's sales agents routinely mischaracterize the federal Investment Tax Credit ("ITC") as a "rebate" entitling the consumer to a check from the government. The ITC is no such thing; instead, it's simply a credit to be offset against tax liability.

66.     Many solar customers do not have the tax liability necessary to fully benefit from the ITC. And, even if they do qualify for a tax write-off, the ITC is not a rebate and does not entitle the homeowner to a check from the government.

67.     At all relevant times, Service Finance knew of and encouraged its sales agents' misrepresentations as to energy savings and tax "rebates" because these tactics resulted in far more loans being applied for and issued than a more honest sales practice would have achieved.

68.     Indeed, upon information and belief, Service Finance provided sales tactics and tips to its sales agents in order to increase the number of loans issued, including training regarding energy offsets and tax "credits."

69.     The sales agents' formulaic pitch centers around the notion that the low APRs will result in inexpensive monthly payments. However, the APRs are "low" only because Service Finance misclassifies the hidden finance fee as included in the cash price. If the finance fee was properly identified as a cost of finance, the APR would be unusually high.

70.     The so-called "low" monthly payments are also significantly increased after the initial 18 months of the loan. The ballooning nature of the payments is not explained to homeowners before their signatures are collected, and

15

homeowners are not provided an opportunity to review the written terms and disclosures on the loan agreements.

71.     In short: Service Finance's profits depend upon a high volume of solar energy sales. Recognizing this interest, Service Finance partners with sales companies and instructs sales agents to misrepresent energy offsets and tax rebates—and then touts supposed "low APRs" as being more cost efficient than a traditional electricity bill. In reality, however, the entire formulaic sales pitch is false, deceptive, and conceals the fact that the consumers will be saddled with two bills instead of one, with the second bill to Service Finance bearing the weight of a hefty, undisclosed dealer fee.

> **D.   *Federal regulators, consumer advocacy groups, and others have recognized that the exact types of business practices Service Finance engages in are abusive, predatory, and illegal.***

72.     As discussed above, Solar Finance engages in a variety of predatory and unlawful business practices, including:

a.  Charging an undisclosed financing fee and misleading consumers into thinking that the principle of the loan goes entirely towards the solar energy system and installation costs, instead of the reality, which is that up to 30% of the financed transaction is actually a dealer fee windfall going to Service Finance;

16

b. Instructing and enabling its sales agents to misrepresent the amount of energy savings that the power systems will provide to induce those individuals to enter into the predatory loans;

c. Instructing and enabling its sales agents to misrepresent the nature, effect, and availability of the ITC and similar government programs as affording "rebates" or "checks" from the government in order to induce consumers to enter into the predatory loans;

d. Entrapping consumers into its predatory loans which feature ballooning payments where a substantial prepayment (which is supposed to be covered by the touted tax "rebates") is not able to be made within a short window of time;

e. Failing to provide required disclosures, including TILA disclosures, as alleged further below; and

f. Targeting elderly, low-income, minority, and non-English speaking consumers with its predatory business practices.

73. Federal regulators, state attorneys general, consumer advocacy groups, and others have recognized these practices as abusive, predatory, and illegal.

74. The Consumer Finance Protection Bureau ("CFPB") recently issued a report highlighting the abuse and predatory nature of the types of business practices Service Finance engages in, explaining:

17

The CFPB found that the rapid rise of nonbank lenders partnered with solar salespeople into the solar market is also raising the potential for illegal behavior and consumer harm. In contrast to auto loans or mortgages where consumers know they want a car or house and then seek out financing options, door-to-door salespeople are going directly to homeowners in attempts to convince them both to purchase a solar energy system and to do so via a loan through their company. Within this sales and lending scheme, many homeowners are discovering they are being duped and misled into contracts with inflated principals, ballooning monthly payments, and electricity savings lower than promised.

*CFPB Report Finds Lenders Cramming Markup Fees and Confusing Terms into Solar Energy Loans*, available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-report-finds-lenders-cramming-markup-fees-and-confusing-terms-into-solar-energy-loans/ (Aug. 7, 2024).

75. Further, "the CFPB has identified four areas of significant risks," which are:

- **Hidden markup fees:** Lenders build hidden fees into their loans by marking up the principals of the loans. These "dealer fees" often increase the loan cost by 30% or more above the cash price of a solar project. Lenders frequently bake these fees into a loan's principal without including them in the stated annual percentage rate (APR). Lenders also rarely and clearly separate these markups from the total cash price that consumers would otherwise pay for a system's installation.

- **Misleading claims about what consumers will pay**: While receiving a tax credit is not guaranteed and based on a number of factors, many solar loan sales pitches promote the 30% federal "Investment Tax Credit" for residential solar installations. In fact, lenders will present loan principals as a "net cost" that assume the tax credit will be received. Consumers may end up believing either the tax credit will subtract from the "net cost" or that the "net cost" is what will be paid regardless of whether they end up qualifying for and receiving the tax credit.

- **Ballooning monthly payments**: Loan terms may require a substantial prepayment by a certain date that is equal to the expected tax credit. If a homeowner does not qualify for the tax

18

credit, they will end up on the hook for the prepayment or face substantially higher monthly payments.

- **Exaggerated savings claims**: Homeowners report being told that solar panels will cover financing costs as well as eliminate future energy bills. While this promise may be true for some homeowners, the financial benefits of solar projects are uncertain and can vary significantly by geographic location and season.

*Id.*

76. Similarly, the Center for Responsible Lending ("CRL") recently published a report entitled "The Shady Side of Solar System Financing," observing that:

A critical problem is that typically the price of the solar system is substantially inflated if a consumer finances a system. For solar panels that would cost $20,000 if purchased outright with cash, the price of the panels is increased to $25,000 or more if there is financing. This increase is considered a dealer's fee. This practice enables door-to-door sellers to falsely represent to borrowers that they are getting low-cost financing by having contracts include a low nominal payment rate, while, in fact, most of the financing cost is hidden in the inflated price of the solar panel system. The financing company retains this markup—the difference between the inflated amount of the loan and the true price of the product—for its profit. This profit amount depends on the agreement between each installer and finance company. This amount is not revealed to the homeowner, and installers are often forbidden from disclosing this markup.

CRL, *The Shady Side of Solar System Financing*, available at www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-shady-side-solar-financing-jul2024.pdf (July 2024).

77. The CRL identified several other areas of concern, ultimately concluding:

Current residential solar energy sales, financing, and installation providers operate under a business model that profoundly harms consumers. If left unchecked, these harmful practices will undermine

19

homeowners' long-term investments in green energy and put families at risk of spending $15,000 or more on solar systems that:

- Fail to deliver promised performance;

- Increase—rather than decrease—homeowners' utility bills; and

- Put consumers at risk of losing their homes.

State Attorneys General, along with other federal and state regulators, must devote more enforcement resources to protect consumers from:

- Dishonest, predatory, and strong-arm sales tactics, including offering inflated estimates of future energy or tax savings;

- Hidden dealer fees that substantially increase the cost of systems bought on credit;

- Unscrupulous lender-installer partnerships that lock in their profits at the expense/disadvantage of the consumer; and

- Shoddy installers who, once paid, move on with no concern regarding whether the systems they sell are installed properly, permitted, and working as promised.

*Id.*

### IV. Plaintiffs and the Class were Defrauded by Service Finance

78. On August 12, 2022, a salesperson with the solar installation company, Smart Energy Today, Inc.,[1] knocked on the front door of the Hutchins' home in Lacey, Washington to solicit a solar energy system.

79. After the sale presentation, the salesperson had the Hutchins provide their signatures on the salesperson's tablet. Those signatures were transposed onto a financing agreement with Service Finance. (Exhibit 1).

---

[1] Smart Energy Today, Inc., merged into the solar company Lumio HX.

80. According to the financing agreement, the Hutchins borrowed $53,360.00, at an annual percentage rate of 2.99%, to be paid back in monthly installments over a 25-year period.

81. The financing agreement states that the "amount financed" ($53,360.00) was the same as the "cash price" of the goods and services.

82. However, the true cash price of the goods and services—aka the true "amount financed"—was significantly less than the "amount financed" listed on the agreement because Service Finance included a hidden and undisclosed finance charge in the "amount financed." As a result, the true "APR" is much higher than the APR listed on the agreement.

## V. The statutes of limitations are tolled.

83. Defendant successfully concealed the existence of the finance fee and unlawful sales practices described above from Plaintiffs and the Class by withholding all mention of it in the financing agreements and by colluding with their solar company partners to not disclose same, as alleged in detail above.

84. The affirmative acts of Defendant alleged herein, including the acts to conceal the existence of the Dealer Fee from Plaintiffs and the Class, were carried out in a manner that evaded detection.

85. Indeed, Defendant went so far as to prevent solar companies from offering cash prices to prevent Plaintiffs and the Class from independently deducing the existence of the Dealer Fee.

21

86.     Because the misconduct was both self-concealing and affirmatively concealed by Defendant, Plaintiffs and the Class had no knowledge of the misconduct, or of any facts or information that would have caused a reasonably diligent person to investigate whether misconduct existed.

87.     As a result, the statutes of limitations on the claims brought in this case are tolled or delayed in accrual by operation of the delayed discovery doctrine.

88.     The statutes of limitations are additionally tolled or delayed in accrual by application of the doctrines of fraudulent concealment and estoppel because Defendant took direct action to conceal the existence of the dealer fee from Plaintiff and the Class.

## VI.     Class action allegations.

89.     Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), Plaintiffs bring this action on behalf of themselves and on behalf of a National Class and subclasses, more specifically defined as:

### National Class

All persons in the United States who financed solar energy systems with Service Finance from January 1, 2015, through today.

### Washington Class

All persons in the State of Washington who financed a solar energy system with Service Finance from January 1, 2015, through today.

90.     Unless otherwise stated, the term "Class" refers jointly and severally to the all the Classes and to the Subclasses.

22

91.     Excluded from the Class are: (a) each Defendant and its board members, executive-level officers, attorneys, and immediate family members of any such persons; (b) the Court, the Court's immediate family, and the Court staff; and (c) any person who timely and properly excludes himself or herself from the Class.

92.     **Numerosity—Fed. R. Civ. P. 28(a)(1).** The members of the proposed Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable.

93.     Although the precise number of Class Members is unknown to Plaintiffs, upon information and belief, the Class would easily number in the thousands if not tens of thousands.

94.     **Typicality— Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of other Class Members' claims because Plaintiffs and the Class all financed solar energy systems through Service Finance and were charged undisclosed dealer fees.

95.     Plaintiffs and the Class were exposed to the same or substantially similar misrepresentations and omissions—namely, concealment of Service Finance's undisclosed fees and other predatory business practices.

96.     Plaintiffs and each Class member suffered economic damages that are calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would individually make similar legal and factual arguments to establish Defendant's liability.

23

97. **Rule 23(b)(3) Commonality & Predominance—Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Plaintiffs and the Class are united by a community of interest in obtaining appropriate remedies, including monetary, declaratory, and injunctive relief. This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class member. These include:

a. Whether Service Finance failed to properly disclose its dealer fees to Plaintiffs and the Class;

b. Whether an ordinary reasonable consumer would have financed through Service Finance had the dealer fee been disclosed;

c. Whether the written terms of Service Finance standard financing agreements are misleading and/or fraudulent;

d. Whether Plaintiffs and the Class were fraudulently induced into entering financing agreements with Service Finance;

e. Whether Service Finance violated the Truth In Lending Act by failing to disclose dealer fees to Plaintiffs and the Class;

f. Whether Service Finance violated Florida's Deceptive and Unfair Trade Practices Act by failing to disclose dealer fees to Plaintiffs and the Class;

g. Whether Service Finance is liable for common law fraud by failing to disclose dealer fees to Plaintiffs and the Class;

24

h. Whether Service Finance was unjustly enriched by failing to disclose and then collecting dealer fees from Plaintiffs and the Class;

i. Whether Plaintiffs and the Class are entitled to monetary damages as a result of Service Finance's failure to disclose dealer fees to Plaintiff and the Class;

j. Whether Plaintiffs and the Class are entitled to declaratory and equitable relief as a result of Service Finance's failure to disclose its dealer fees; and

k. Whether Service Finance should be subject to punitive or exemplary damages as a result of its failure to disclose its dealer fees and for its other predatory business practices.

98. The common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class member's claims.

99. The factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systemic policy decisions made by Defendant, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class Members.

100. **Adequacy of Representation— Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict

with the interests of the Class Members. Plaintiffs commit to protecting the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally. Plaintiffs have retained attorneys with exceptional experience in complex litigation, including extensive class action experience and experience in handling consumer protection cases. Plaintiffs and their attorneys will responsibly, ethically, and vigorously advocate on behalf of the Class, and Plaintiffs' counsel have ample resources to do so.

101. **Ascertainably.** The identities of the other Class Members are ascertainable from various sources including Defendant's loan agreements, databases, and other records.

102. **Predomination.** The common questions of law or fact identified above are substantially similar and predominate over those questions affecting only specific members of the Class.

103. **Superiority.** The proposed class action is superior to the other means available to the Class to obtain relief.

104. Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

105. Likewise, the judicial system has no interest in burdening a number of courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

106. Individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and to the courts, including this Court. By proceeding as a class action, the claims at issue can be managed efficiently through economies of scale.

107. Ultimately, the class action procedure is superior to other methods of adjudicating Plaintiffs' and the Class Members' claims. This is precisely why class actions exist—class treatment facilitates the fair, uniform, and efficient adjudication of claims, as it would here, and it promotes judicial economy while avoiding the undue financial, administrative, and procedural burdens that necessarily would result from a multiplicity of individual actions.

108. **Rule 32(b) Injunctive and Declaratory Relief—Fed. R. Civ. P. 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to the Class, making the award of equitable relief and/or restitution appropriate to the Class in their entirety.

109. **Particular Issues—Fed. R. Civ. P. 23(c)(4).** Any or all of the issues identified above are appropriate for certification pursuant to Rule 23(c)(4) because each is particular and common to the Class and the resolution of each or

all would materially advance the disposition of this action and the parties' interests.

110.    Certification of particular issues would move the litigation forward efficiently, saving money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

**COUNT I: Truth In Lending Act**
**On behalf of the National Class**

111.    Plaintiffs reallege paragraphs 1 through 110 above.

112.    Congress has long prohibited predatory lending practice through the Truth in Lending Act ("TILA"). TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

113.    To effectuate that purpose, TILA mandates that creditors, like Service Finance, disclose the "amount financed" as part of the consumer credit transaction. 15 U.S.C. § 1638(a)(2)(A). The amount financed is defined as "the amount of credit of which the consumer has actual use," and is calculated by:

> (1) Determining the . . . the cash price (subtracting any downpayment);
> (2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and
> (3) Subtracting any prepaid finance charge.

12 C.F.R. § 226.18(b).

28

114. TILA also requires that creditors separately disclosure any "finance charges." A "finance charge" is defined as "the amount of the finance charge in connection with any consumer credit transaction [and] shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a)

115. Finance charge is further defined in TILA's implementing regulation (Regulation Z) as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4.

116. Under TILA, when a creditor provides written disclosures and an itemization of the amount financed, it must provide those disclosures prior to the extension of credit. 15 U.S.C. § 1638(b)(1).

117. Service Finance regularly extends credit, which is payable by agreement in more than four installments and for which a finance charge is imposed. According to the financing agreements signed by all Plaintiffs and all putative Class Members, payments were initially payable directly to Service Finance and not to the solar installer. Accordingly, Service Finance meets the technical definition of a "creditor" under TILA. 15 U.S.C.A. § 1602.

118.     Service Finance's finance agreements with Plaintiffs and the Class did not disclose the finance charge imposed into the loans as the cost of borrowing money from Service Finance.

119.     The failure to disclose the true terms of the cost of borrowing money violates the requirements of 15 U.S.C. § 1638(a)(3). Service Finance also failed to provide any required disclosures prior to extension of credit in violation of § 1638(b)(1).

120.     Defendant's failure to disclose the true cost of financing has caused substantial injuries to Plaintiffs and the Class.

121.     Defendant is liable to Plaintiffs and the Class for actual damages, statutory damages, and attorneys' fees and costs in accordance with 15 U.S.C. § 1640.

122.     Plaintiffs and the Class seek all available monetary, declaratory, and injunctive relief to which they are entitled.

**COUNT II: Fraudulent Inducement**
**On behalf of the National Class**

123.     Plaintiffs reallege paragraphs 1 through 110 above.

124.     Plaintiffs bring this claim for fraudulent inducement on behalf of the National Class against Service Finance on the basis that the state laws involved do not conflict with one another in a case-dispositive manner and they involve the same key elements: duty to disclose, breach, reliance, and damages. Alternatively, Plaintiffs bring this claim under the laws of their respective states.

125. In the course of soliciting homeowners to enter financing agreements for solar energy systems, Service Finance relied on fraudulent misrepresentations related to the terms of the financing agreements, and intentionally failed to disclose material facts related to the finance fee included in the financing agreements.

126. Service Finance took great steps to conceal the true cost of the financing fee by instructing its solar partners not to disclose the true cost of solar energy systems, as doing so would allow Plaintiffs and Class Members to deduce the amount of the finance fee.

127. Plaintiffs and Class Members reasonably relied, to their detriment, upon Service Finance's intentional omission of material information regarding the cost of consumer financing.

128. As a result of Service Finance's omissions, Plaintiffs and Class Members were induced to enter into financing agreements with Service Finance, which caused them damages.

129. Defendant's conduct and material omissions were willful and wanton, and in blatant disregard of the rights of Plaintiffs and Class Members, justifying an award of punitive damages.

130. Plaintiffs and the Class seek all available monetary, declaratory, and injunctive relief to which they are entitled.

## COUNT III: Civil Conspiracy
### On behalf of the National Class

31

131.    Plaintiffs reallege paragraphs 1 through 110 above.

132.    Plaintiffs bring this claim for civil conspiracy on behalf of the National Class against Service Finance on the basis that the state laws involved do not conflict with one another in a case-dispositive manner and they involve the same key elements: an agreement between two or more individuals to do an unlawful act or a lawful act in an unlawful way, action taken in furtherance of the conspiracy, and damages. Alternatively, Plaintiffs bring this claim under the laws of their respective states.

133.    Service Finance conspired with its solar installer partners to charge undisclosed finance fees and misrepresent the true "Cash Price" of solar energy systems to consumers, including Plaintiffs and the Class, in order to fraudulently induce those class members to purchase and finance solar energy systems.

134.    The objective of the conspiracy—to conceal the finance charge and misrepresent the true "Cash Price" of the solar energy systems—is unlawful in that it constitutes the common law torts of fraud, fraudulent inducement, as well as violations of TILA.

135.    The conspiracy between Service Finance and its solar installer co-conspirators are memorialized in their dealer agreements and the training materials and protocols Service Finance requires its co-conspirators to follow in order to access the Dealer Portal and other online and mobile applications.

136.    Service Finance and its solar installer co-conspirators have performed thousands of overt acts in furtherance of the conspiracy, including by routinely

32

misrepresenting the Cash Price of solar energy systems when providing financing through Service Finance and its online and mobile applications.

137. Plaintiffs and the Class have suffered damages as a result of the actions Service Finance and solar installer co-conspirators have taken pursuant to their conspiracy, including by paying undisclosed finance charges.

138. Plaintiffs and the Class seek all available monetary, declaratory, and injunctive relief to which they are entitled.

### Count III: Florida's Deceptive and Unfair Trade Practices Act
### On behalf of the National Class

139. Plaintiffs reallege paragraphs 1 through 110 above.

140. Plaintiffs bring this claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.202, et seq. on behalf of themselves and the Class.

141. FDUTPA protects consumers from those "who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.202(2). A violation of FDUTPA may be based on "unfair, deceptive, or unconscionable acts or practices." § 501.203(3)(c).

142. At all relevant times, Plaintiffs and the Class Members were "consumers" as defined by Fla. Stat. § 501.203(7).

143. At all relevant times, Defendant was and is engaged in "trade or commerce" as defined by Section 501.203 (8).

144. Defendant engaged in a deceptive and unfair trade practice by:

33

a. Concealing the existence of the dealer fee in their financing agreements;

b. Conspiring with others, including the solar companies, to conceal the dealer fee;

c. Falsely representing that the proceeds of the loans were going towards the costs of the system and installation when, in fact, the loan was comprised of a significant hidden dealer fee;

d. Misrepresenting that the solar loans were subject to a "low APR" when the APR was artificially reduced by misclassifying the dealer fee as part of the "cash price" of the goods and services;

e. Collecting payments from homeowners before systems were operational and connected to the grid;

f. Training, condoning, and/or encouraging its sales agents to use misleading and deceptive sales tactics to induce homeowners to sign solar agreements;

g. Training, condoning, and/or encouraging its sales agents to falsely represent that solar systems would completely offset their regular electricity bill;

h. Training, condoning, and/or encouraging its sales agents to falsely represent that the ITC and similar tax credits are "rebates" or that they would result in a check being sent to the homeowner;

34

145. Service Finance's conduct occurred within and originated from Florida, where Service Finance maintains its headquarters. As a result, FDUTPA applies to all claims brought on behalf of Plaintiffs and the Class.

146. As a direct and proximate result of Defendant's FDUTPA violations, Plaintiffs and the Class incurred actual damages, including the amount of the undisclosed dealer fees. They are entitled to recoup those damages in this action, along with declaratory and injunctive relief, attorney's fees, and costs.

147. Plaintiffs seek all available monetary, declaratory, and injunctive relief to which they and the Class are entitled, including all such relief identified in the Prayer for Relief below.

## Count VI: Violation of the Washington Consumer Protection Act
### (Rev. Code Wash §§ 19.86.010, et seq.)
### On behalf of the Washington Class

148. Plaintiffs reallege paragraphs 1 through 110 above.

149. Service Finance's foregoing business practices constitute false, misleading or deceptive acts or practices under the Washington Deceptive Trade Practices–Consumer Protection Act, Rev. Code Wash. §§ 19.86.010, et seq. ("Washington DTPA"). Accordingly, Plaintiffs Horton, Firch, and Somers bring this count for violation of the Washington DTPA on behalf of themselves and the Washington Class.

150. Service Finance engaged in deceptive business practices prohibited by the Washington DTPA, including:

35

a. Concealing the existence of the dealer fee in their financing agreements;

b. Conspiring with others, including the solar companies, to conceal the dealer fee;

c. Falsely representing that the proceeds of the loans were going towards the costs of the system and installation when, in fact, the loan was comprised of a significant hidden dealer fee;

d. Misrepresenting that the solar loans were subject to a "low APR" when the APR was artificially reduced by misclassifying the dealer fee as part of the "cash price" of the goods and services;

e. Collecting payments from homeowners before systems were operational and connected to the grid;

f. Training, condoning, and/or encouraging its sales agents and/or co-conspirators to use misleading and deceptive sales tactics to induce homeowners to sign solar agreements;

g. Training, condoning, and/or encouraging its sales agents and/or co-conspirators to falsely represent that solar systems would completely offset their regular electricity bill; and

h. Training, condoning, and/or encouraging its sales agents and/or co-conspirators to falsely represent that the ITC and similar tax credits are "rebates" or that they would result in a check being sent to the homeowner.

36

151. Service Finance's conduct in violation of the Washington DTPA occurred in the conduct of trade or commerce.

152. Service Finance's actions impact the public interest because Plaintiffs and the Washington Class were injured in the exact same way as thousands of others purchasing and financing solar energy systems as a result of Service Finance's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Service Finance's business.

153. Plaintiffs and the Washington Class were injured as a result of Service Finance's conduct, including by paying an undisclosed dealer fee and by purchasing systems they would not have otherwise purchased had they been accurately informed as to the true costs and benefits of the systems.

154. Service Finance's conduct proximately caused injuries to Plaintiffs and the Washington Class.

155. Service Finance is liable to Plaintiffs and the Washington Class for damages in an amount to be proven at trial including attorneys' fees, costs, and treble damages.

156. Pursuant to Wash. Rev. Code Ann. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action pursuant to one or more of the proposed Classes, as they may be modified or amended, and respectfully request that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Fed. R. Civ. P. 23, and issue an order certifying the Classes as defined above;

B.    Appoint Plaintiffs as the representatives of the Classes and their counsel as Class counsel;

C.    Award damages, including compensatory damages, to Plaintiffs and all other Class Members;

D.    Award Plaintiffs and Class Members actual damages sustained;

E.    Award Plaintiffs and Class Members such additional damages, over and above the amount of their actual damages, which are authorized and warranted by law, including punitive and exemplary damages;

F.    Grant restitution to Plaintiffs and Class Members and require Defendants to disgorge inequitable gains;

G.    Provide all declaratory and equitable relief available, including rescission of contracts entered into between Plaintiffs, the Class Members, and Defendants;

H.    Award Plaintiffs and Class Members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

38

I.      Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted on April 4, 2025, by:

/s/ Amy L. Judkins
**Amy L. Judkins, Esq.**
Florida Bar No.: 125046
**Newsome Law, P.A.**
201 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282
ajudkins@newsomelaw.com
lusardi@newsomelaw.com

**Joshua R. Jacobson**
Florida Bar No.: 1002264
**Jacob L. Phillips**
Florida Bar No.: 120130
JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
Telephone: (407) 720-4057
jacob@jacobsonphillips.com
joshua@jacobsonphillips.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| **From:** | Amy Judkins |
| **To:** | Rich Newsome |
| **Subject:** | RE: Sexual Assault Referral from Richard Newsome, FL Atty |
| **Date:** | Thursday, April 17, 2025 4:22:21 PM |
| **Attachments:** | image001.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Thanks! I updated my full signature but forgot that I had to also do the reply signature. Will do that now.

**Amy L. Judkins**
Attorney at Newsome Melton
(407) 648-5977

**From:** Rich Newsome <newsome@newsomelaw.com>
**Sent:** Thursday, April 17, 2025 3:30 PM
**To:** Amy Judkins <ajudkins@newsomelaw.com>
**Subject:** Re: Sexual Assault Referral from Richard Newsome, FL Atty

Amy, please check your signature line, needs to say Newsome Law. Thank you!

Rich Newsome
Newsome Melton
NewsomeLaw.com



| From: | Amy Judkins |
|---|---|
| To: | Rich Newsome |
| Subject: | Resignation etter March 2, 2025 |
| Date: | Friday, May 2, 2025 4:14:55 M |
| Attachments: | image001.png |

Dear Rich,

Please accept this letter as my formal resignation from Newsome Law.

I want to express my deepest gratitude for the opportunity to work alongside you and the exceptional team at Newsome Melton and more recently at Newsome Law. It has been a privilege to be part of the firm, and I have gained invaluable experience during my time here. I am especially appreciative of your mentorship and support throughout my tenure.

When I joined the firm, I did so with the goal of helping build a class action division in partnership with Will Ourand. That opportunity was one of the main reasons I accepted the position. However, the dissolution of Newsome Melton and the subsequent changes in the firm's structure and composition have significantly altered that vision. As you know, successful class action litigation requires a collaborative team of attorneys to manage the complexity and scale of such matters. Given the current structure of the firm, I am concerned that my ability to grow and sustain a viable class action practice will be meaningfully constrained.

In less than two years, I believe we were off to a great start in building a soon to be successful class action practice at Newsome Melton. I successfully developed and advanced legal theories to obtain recovery for individuals impacted by solar financing fraud. These efforts led to my appointment to a leadership position in a federal multidistrict litigation—an achievement that I believe reflects both the strength of those legal theories and the momentum I was building. We generated over 200 solar clients due to my advocacy and engagement with social media groups—clients that were generated with zero cost to you or the firm. That appointment and the client base I generated were strong indicators that we were on the right path.

I want to note that a significant factor in my decision relates to the terms of the employment agreement drafted by you and your counsel. In particular, the provision regarding termination raises serious ethical concerns. Under the Rules Regulating the Florida Bar, clients have an unfettered right to choose their own counsel, and attorneys may not enter into agreements that improperly restrict that right. A Florida Bar Ethics Opinion has directly addressed agreements of this nature, holding that provisions requiring a departing attorney to remit 50% of future fees to their former firm are unethical because they interfere with the client's choice of counsel. The provision in your agreement that would require me to remit 50% to 66.67% of fees from any of my existing cases upon departure is even more restrictive. I believe this provision is inconsistent with the Florida Bar Rules and presents serious ethical and

professional concerns. Moreover, given the time it takes to work a class action case through to completion, the termination provisions would unfairly tie me to the firm for years to come, burdening my freedom to pursue other opportunities while also restricting my clients' right to continue with the counsel of their choosing.

Another reason I have chosen to resign is based on your expressed concerns about funding the overhead of the firm and my salary. I understand that class action litigation requires patience, long-term investment, and tolerance for delayed returns. However, your concerns about cash flow in relation to my position have left me lacking confidence in the stability and security of my future with the firm. This uncertainty is difficult to reconcile with the nature of class action practice, which depends heavily on long-term planning and sustained support.  I do not want to be a financial burden to you.

Regarding the clients with whom I have ongoing matters, I look forward to reaching an amicable agreement on a joint communication to notify them of my departure, in compliance with the Floria Bar Rules. I propose that we not offer my continued representation to clients whose cases originated through the Broughton Partners campaign and simply inform them that I have left the firm. I want to be mindful of the significant investment you and the firm have made in acquiring those clients. For the solar clients and my clients USTA clients, I hope we can agree to a joint communication that reflects both our input and prioritizes client clarity and continuity. If we are unable to agree on joint communication, I will proceed using the Florida Bar's standard form letter for departing attorneys. I have not worked on any of the Sunnova files, so my understanding of the Bar Rules is that we do not need to inform those clients of my departure.

This has been a difficult decision, and it is made with respect for the work we've done together and the firm you have built. I will make every effort to ensure a smooth and professional transition. Please let me know in writing how I can assist during this period.  I apologize that you are receiving this letter before the weekend, however, due to the pressure you are putting on me to respond to your proposed employment agreement, I cannot let this matter wait any longer.

Thank you again for the invitation to be part of Newsome Law. I am sincerely grateful to you.

Warm respect,

Amy
Amyjudkins707@gmail.com
407-607-5760

**Amy Judkins**
ajudkins@newsomelaw.com
(407) 648-5977

**Attorney**
201 S. Orange Ave.
Ste 1500

www.NewsomeLaw.com                    Orlando, FL 32801



**Exhibit 19**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA, individually and as the Personal Representative of the Estate of S.R.S III,

      Plaintiff,

      v.

CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; ALPHABET INC.,

      Defendants.

CASE NO.: 6:24-cv-01903-ACC-EJK

## NOTICE OF APPEARANCE AND E-MAIL DESIGNATION

Amy L. Judkins gives notice of her appearance as counsel of record for Plaintiff, MEGAN GARCIA, individually and as the Personal Representative of the Estate of S.R.S III, and requests that copies of all pleadings, correspondence, and documents to be filled or served in this cause be served upon her as counsel for Plaintiff.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

/s/ Amy L. Judkins
AMY JUDKINS, ESQUIRE

1

Florida Bar No.: 125046
NEWSOME MELTON
201 South Orange Avenue, Suite 1500
Orlando, Florida 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282
Attorney for Plaintiff
ajudkins@newsomelaw.com
lusardi@newsomelaw.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal            Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.
_____/

**PLACEHOLDER FOR EXHIBIT 20 TO NEWSOME
DECLARATION (EXHIBIT A TO RESPONSE TO JOINT
MOTION TO STRIKE CHARGING LIEN)**

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit
20 – protected email exchange** to Mr. Newsome's Declaration which is Exhibit A to
Newsome Law's Response to Joint Motion to Strike Notice of Charging Lien on
Newsome Law. Newsome Law has filed a Motion to Seal the unredacted Declaration
and 9 exhibits thereto (Doc. 253).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal
Representative of the Estate of
S.R.S. III,

Case No.: 6:24-cv-1903-ACC-DCI

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.

_____/

### PLACEHOLDER FOR EXHIBIT 21 TO NEWSOME DECLARATION (EXHIBIT A TO RESPONSE TO JOINT MOTION TO STRIKE CHARGING LIEN)

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit 21 – protected email exchange between co-counsel regarding *Garcia* matter** to Mr. Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal                Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

     Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

     Defendants.

_____/

**PLACEHOLDER FOR EXHIBIT 22 TO NEWSOME
DECLARATION (EXHIBIT A TO RESPONSE TO JOINT
MOTION TO STRIKE CHARGING LIEN)**

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit

22 – protected email exchange between co-counsel regarding *Garcia* matter** to Mr.

Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint

Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed

a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal
Representative of the Estate of
S.R.S. III,

       Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

       Defendants.

_____/

Case No.: 6:24-cv-1903-ACC-DCI

### PLACEHOLDER FOR EXHIBIT 23 TO NEWSOME DECLARATION (EXHIBIT A TO RESPONSE TO JOINT MOTION TO STRIKE CHARGING LIEN)

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit 23 – protected email exchange between co-counsel regarding *Garcia* matter** to Mr. Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal                Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.

_____/

**PLACEHOLDER FOR EXHIBIT 24 TO NEWSOME
DECLARATION (EXHIBIT A TO RESPONSE TO JOINT
MOTION TO STRIKE CHARGING LIEN)**

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit

24 – protected email exchange between co-counsel regarding *Garcia* matter** to Mr.

Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint

Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed

a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN GARCIA and
SEWELL SETZER JR.,
Individually and as the Personal          Case No.: 6:24-cv-1903-ACC-DCI
Representative of the Estate of
S.R.S. III,

      Plaintiffs,

v.

CHARACTER TECHNOLOGIES, INC.;
NOAM SHAZEER; DANIEL DE
FREITAS ADIWARSANA;
GOOGLE LLC,

      Defendants.

_____/

**PLACEHOLDER FOR EXHIBIT 25 TO NEWSOME
DECLARATION (EXHIBIT A TO RESPONSE TO JOINT
MOTION TO STRIKE CHARGING LIEN)**

Newsome Law P.A. ("Newsome Law") hereby files this placeholder **Exhibit

25 – protected email exchange between co-counsel regarding** *Garcia* **matter** to Mr.

Newsome's Declaration which is Exhibit A to Newsome Law's Response to Joint

Motion to Strike Notice of Charging Lien on Newsome Law. Newsome Law has filed

a Motion to Seal the unredacted Declaration and 9 exhibits thereto (Doc. 253).

| | |
|---|---|
| **From:** | Amy Judkins |
| **To:** | Dale Swope |
| **Cc:** | Alex Couch; Ed Normand |
| **Subject:** | Re: Letter From Dale Swope |
| **Date:** | Thursday, January 15, 2026 5:46:19 PM |
| **Attachments:** | image001.png |

You don't often get email from amy.judkins@normandpllc.com. Learn why this is important

Dear Mr. Swope,

Thank you for your letter. Your reputation precedes you, and while we have not yet had the pleasure of meeting, I hope we do so in person at some point. I appreciate the professional, collegial tone of your correspondence and your expressed desire to resolve these issues cooperatively and without unnecessary public dispute.

I have shared your letter with my partners, Ed Normand and Alex Couch, and have copied them here. All of us are available to discuss this matter, or any other matters in which Mr. Newsome contends quantum meruit is owed, at your convenience.

As I believe Rich has already conveyed to you, I have consistently agreed that Newsome is entitled to quantum meruit compensation for any work I performed on cases while employed with either Newsome Melton or Newsome Law. I do not have information sufficient to determine which specific entity employed me during the relevant time period, and I leave it to you and Rich to determine which entity asserts the claim. From the outset, it has always been my intention to ensure that Newsome is fairly compensated for my limited work on this case prior to my departure. Both Ed and Alex will confirm that I disclosed this obligation to them well before the case reached a preliminary settlement posture.

As you note, settlement has not yet been finalized. If and when settlement is finalized, we intend to resolve any quantum meruit obligation promptly. To that end, and in the interest of transparency and efficiency, below is my good-faith accounting of the time I spent on this matter prior to leaving the firm:

1. Drafting the personal-jurisdiction section of the individual defendants' motion to dismiss — 10 hours
   (This section comprised approximately five pages of briefing on issues with which I am extremely familiar; ten hours is a generous estimate.)

2. Editing and revising other sections of the motion to dismiss — 2 hours

3. Telephone conferences:

    a. Initial introduction to the case — 0.5 hours

    b. Conference regarding court procedures and press considerations — 0.3 hours

    c. Conference regarding motion-to-dismiss briefing strategy — 1 hour

    d. Conferences regarding argument allocation and preparation — 1 hour

4. Preparation for oral argument on personal jurisdiction — 4 hours

5. Preparation of motions related to bringing electronic equipment into the courthouse — 1 hour

6. Attendance at the hearing — 2 hours

This accounting totals 21.8 hours. To account for any incidental or unrecorded time that may not be captured above, we are adding an additional five (5) hours for a total of 26.8 hours. We believe that this total time, compensated at a reasonable hourly rate, more than adequately compensates Newsome for any quantum meruit interest arising from my work on this case.

Because a quantum meruit analysis does not hinge on the amount of the settlement, we are not aware of any legal mechanism that would permit disclosure of the amount of a confidential settlement. Accordingly, we do not intend to disclose the settlement amount absent an order from Judge Conway requiring such disclosure.

I appreciate your decision, and Rich's, to proceed in a manner designed to avoid disruption to the clients, and I share your desire to resolve this matter professionally and amicably. I look forward to speaking with you.

Warm regards,

**Amy L. Judkins**
Normand PLLC
(407) 603-6031

---

**From:** Dale Swope <dales@swopelaw.com>
**Sent:** Wednesday, January 14, 2026 3:11 PM
**To:** amyiudkins707@gmail.com <amyiudkins707@gmail.com>; Amy Judkins <alj@normandpllc.com>
**Subject:** Letter From Dale Swope

Ms. Judkins,

Please see attached.

**Dale Swope**
MANAGING PARTNER
1234 E. 5<u>th</u> Ave | Tampa, FL 33605
P (813) 273.0017
F (813) 223.3678

